RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; MYK@LNBYG.COM; KJM@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re: | Case No.: 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession | **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) AUTHORIZING THE CONTINUED USE OF ITS CASH MANAGEMENT SYSTEM; (II) AUTHORIZING THE MAINTENANCE OF CERTAIN PRE-PETITION BANK ACCOUNTS; AND (III) AUTHORIZING BANKS TO RELEASE ADMINISTRATIVE HOLDS AND/OR FREEZES ON THE DEBTOR'S PRE-PETITION ACCOUNTS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | **[Omnibus Declaration of Sankaet Pathak filed concurrently herewith]** |
| | DATE:  April 24, 2024 |
| | TIME:  2:00 p.m. |
| | PLACE:  Courtroom 303 |
| |      21041 Burbank Boulevard. |
| |      Woodland Hills, CA 91367 |

1

Synapse Financial Technologies, Inc. (the "Debtor"), debtor in possession in the above-captioned Chapter 11 bankruptcy case hereby moves, on an emergency basis (the "Motion"), pursuant to 11 U.S.C. §§ 105 and 363, for entry of an order: (1) authorizing the continued use of the Debtor's existing cash management system, (2) authorizing the maintenance and continued use of certain of the Debtor's existing bank accounts, and (3) authorizing the release of any administrative freezes or holds on the Debtor's bank accounts as a result of the bankruptcy filings (or for any other reason).

On April 22, 2024, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its business and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a technology and software company with a mission to ensure that everyone around the world has access to best-in-class financial products, regardless of their net worth. The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers ("Partner Financial Institutions").

The Debtor is one of the first, if not *the* first, tech company to pioneer a Banking as a Service (Baas) platform for fintechs and Partner Financial Institutions which have agreements with the Debtor to efficiently interface each other to allow for transactions (*i.e.,* the buy and sell) of their financial products and services to the fintechs' end users. The Debtor has in place certain agreements with Partner Financial Institutions and fintechs. Through the Debtor's software technologies and services, the Debtor provides customers of fintechs (referred to as "end users" to avoid confusing them with the fintechs which are the customers of the Debtor) with access to banking or other financial services provided by the Partner Financial Institutions through the fintech's own application. *By example,* an individual or a company business customer (*i.e.,* the end user) interested in obtaining various financial services such as opening an account will first sign up with a fintech which has contracted for the Debtor's services by utilizing the fintech's own application. The end user signs up for the specific banking or financial services by first

signing up for a user account through the fintech's application and agreeing to the fintech's terms and conditions (as well as those of the Debtor). Then, through the fintech's application, the end user can choose from financial products offered by the Partner Financial Institutions, as well as the relevant agreement with the Partner Financial Institutions (*e.g.,* deposit account agreement, card agreement, or the like). End users are customers of the fintechs and the Partner Financial Institutions, not the Debtor. The Debtor is not in the flow of funds and does not receive funds from the end users. The Partner Financial Institutions access information about the end users through the Debtor's software and technology services. The "network" between the fintech and the Partner Financial Institutions is created through the Debtor's technology and software which then allows for the fintechs, Partner Financial Institutions and the end users to communicate through their systems and programs to make transactions (for such things as deposits, withdrawals, credit cards, etc.), for monitoring and reporting, and the like.

In addition to providing access to its proprietary technology and platform that allows for the fintechs to offer financial products and services of the Partner Financial Institutions to the end users, the Debtor also provides related services to the Partner Financial Institutions and the fintechs, such as, for example, compliance check services (*e.g.*, ensuring that the end users are authorized to open accounts), and handles end-user disputes and customer service. As of January 2024, the Debtor had service contracts with over 20 Partner Financial Institutions (either directly or indirectly for sweep networks) and 48 fintechs, and approximately 6 million users through its technology platform.

As of the Petition Date, the Debtor collected revenue, disbursed funds and managed customer and Partner Financial Institution relationships and programs utilizing a network of bank accounts and other accounts at numerous depositories, as described below.

A.    **The Debtor's Operating Bank Accounts**.

From the Debtor's perspective, the only accounts that the Debtor would ordinarily be required to close immediately after the Petition Date and replace with "debtor in possession" accounts at approved depositories are a handful of bank accounts that the Debtor uses to deposit

revenue and make disbursements in the ordinary course of business. These bank accounts are the following:

| Financial Institution | Account Number | Account Description | Proposed Disposition |
|---|---|---|---|
| First Horizon Bank | X33074 | Savings | Close and transfer any funds to a debtor in possession operating account |
| iBank | x60012 | Business Checking – primarily used to fund operating expenses | Keep for a thirty (30) day period of time |
| iBank | X0495 | Small Business Checking – primarily used to fund payroll expenses | Keep for a thirty (30) day period of time |
| Evolve Bank and Trust | X42341 | Savings | Close and transfer any funds into a debtor in possession operating account |
| Silicon Valley Bank | x5986 | Operating Checking | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |
| Silicon Valley Bank | x9909 | Accounts Payable and Payroll Checking | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |
| Silicon Valley Bank | x9886 | Interchange account | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |
| Silicon Valley Bank | x9890 | Billing Collection Checking | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |

The Debtor requests authority to maintain the two iBank accounts for a temporary period of time following the Petition Date in order to minimize disruption to the Debtor's ability to conduct business post-petition, including to ensure that it is able to pay its post-petition payroll obligations. Immediately after the Petition Date, the Debtor will commence the process of opening new debtor in possession accounts (by converting its Silicon Valley Bank accounts into debtor in possession accounts which the Debtor understands Silicon Valley Bank will do) and will ultimately transition operating and disbursement activities to its debtor in possession accounts, into which the Debtor will ultimately deposit revenue and from which the Debtor will ultimately make disbursements.

**B.    <u>Accounts With Partner Financial Institutions</u>.**

Separate and apart from the above bank accounts, the Debtor also has an interest in, access to, or some control over certain other accounts held at Partner Financial Institutions. The Debtor's provision of services to Partner Financial Institutions are pursuant to agreements between the Debtor (and/or the Debtor's subsidiaries) and the Partner Financial Institutions, including, without limitation, Evolve Bank and Trust ("<u>Evolve</u>"), Lineage Bank ("<u>Lineage</u>"), AMG National Trust Bank ("<u>AMG</u>") and American Bank ("<u>AB</u>"). The Debtor also provides access to other financial services through its wholly-owned subsidiaries. Cash management services are provided through the Debtor's broker dealer subsidiary, who has indirect agreements with other financial institutions through its sweep network. In addition, the Debtor provides lending services through its lender subsidiary, which holds state lending licenses.

In addition, certain accounts required to provide services to fintechs and end users, which are maintained at Partner Financial Institutions, are not owned or controlled by the Debtor and the Debtor has no interest in such accounts; rather, they are controlled by the respective financial institutions at which the accounts are held. An example of such accounts are omnibus custodial accounts owned by Partner Financial Institutions, in which the Partner Financial Institution pools the funds held by end users, for their benefit (or in the case of a fintech, for the benefit of a fintech's end users) and the funds thereon, are not owned or controlled by the Debtor.

The Debtor generates revenue from these arrangements in the form of fees, interest and other charges, and the Debtor's provision of such services are pursuant to agreements between the Debtor and the Partner Financial Institutions.

The Debtor's agreements with Partner Financial Institutions, including its subsidiaries, require or provide for the establishment of certain accounts, including, without limitation reserve accounts, fee and revenue accounts and other accounts in connection with the program services provided by the Debtor to the Partner Financial Institutions, the Debtor's customers (fintechs) and end-users. These fee and revenue accounts, in particular, include technological integrations with third-party providers and fintechs for the receipt of revenue and payment of fees and costs. Therefore, these accounts are required to be maintained by Debtor as ancillary and necessary to its provision of services. For example, the Debtor maintains certain deposit accounts at the Partner Financial Institutions which are used to receive fees and compensation from Partner Financial Institutions and other third-parties and to also make payments of certain fees and compensation due and owing to fintechs and/or end users.

At this time, to the extent the Debtor has any control over or ability to close any such accounts with its Partner Financial Institutions, the Debtor does not intend to close any such accounts, and to the extent Court authority is required to continue to maintain such accounts with its Partner Financial Institutions, the Debtor requests Court authority to do so. In particular, the Debtor desires to ensure that there is no disruption to end-users' ability to access their funds (which are not funds that belong to the Debtor) and that there is no disruption to the flow of revenue to the Debtor in connection with interest, fees and charges to which the Debtor is entitled. Additionally, the Debtor is conducting a sale process and has a stalking horse bidder, and the Debtor's maintenance and continued administration of accounts with its Partner Financial Institutions in accordance with the Debtor's agreements with such Partner Financial Institutions may be a critical component of a sale of the Debtor's assets and an important condition of purchase by any buyer, including the Debtor's stalking horse bidder. Indeed, the Debtor's asset purchase agreement with the stalking horse bidder requires the Debtor to, pending approval of the sale, operate and conduct the Debtor's business in the ordinary course, consistent

6

with past practices. Moreover, the asset purchase agreement includes or may include certain bank accounts designated as "Purchased Assets."

As described above, the Debtor will open debtor in possession accounts (the Debtor contemplates opening a debtor in possession operating account and a debtor in possession payroll account) into which revenue received by the Debtor will ultimately be deposited and disbursements made by the Debtor to pay its post-petition expenses and any other expenses approved by the Court will be originated.

The relief requested herein will help ensure the Debtor's smooth transition into chapter 11 and avoid any interruption or disruption in the Debtor's ability to provide services to its customers, Partner Financial Institutions and end-users, continue to generate and collect revenue for the benefit of the estate and preserve and maintain operations and activities to help ensure a successful sale process. It is important that this Motion be heard on an emergency basis so that the Debtor may immediately comply with applicable requirements concerning its accounts and cash management system.

## ADDITIONAL INFORMATION

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the attached Declaration of Sankaet Pathak, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, on April __, 2024, the Debtor will serve a copy of this Motion and notice of the Motion and all supportive papers upon the Office of the United States Trustee, the Debtor's secured creditors and twenty largest unsecured creditors, the above-referenced financial institutions, and all those parties who have requested special notice **via overnight mail**.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

1.    Granting the Motion in its entirety;

2.    Affirming the adequacy of the notice given;

3.    Authorizing the Debtor to maintain its prepetition cash management system as set forth above;

4.    Authorizing the release of any administrative freezes or holds on any bank accounts of the Debtor; and

5.    Granting such other and further relief as the Court deems just and proper.

Dated:  April 22, 2024          SYNAPSE FINANCIAL TECHNOLOGIES, INC.

By:   */s/ Krikor J. Meshefejian*
      RON BENDER
      MONICA Y. KIM
      KRIKOR J. MESHEFEJIAN
      LEVENE, NEALE, BENDER,
      YOO & GOLUBCHIK L.L.P.
      Proposed Attorneys for Chapter 11 Debtor
      and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**PLEASE SEE DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND THE DECLARATION OF SANKAET PATHAK FOR BACKGROUND FACTS AND INFORMATION REGARDING THIS CASE, WHICH THE DEBTOR INCORPORATES HEREIN BY THIS REFERENCE.**

**A.     The Debtor's Pre-petition Cash Management System.**

1.     As of the Petition Date, the Debtor collected revenue, disbursed funds and managed customer and Partner Financial Institution relationships and programs utilizing a network of bank accounts and other accounts at numerous depositories, as described below.

**The Debtor's Operating Bank Accounts**

2.     From the Debtor's perspective, the only accounts that the Debtor would ordinarily be required to close immediately after the Petition Date and replace with "debtor in possession" accounts at approved depositories are a handful of bank accounts that the Debtor uses to deposit revenue and make disbursements in the ordinary course of business.  These bank accounts are the following:

| Financial Institution | Account Number | Account Description | Proposed Disposition |
|---|---|---|---|
| First Horizon Bank | X33074 | Savings | Close and transfer any funds to a debtor in possession operating account |
| iBank | x60012 | Business Checking – primarily used to fund operating expenses | Keep for a thirty (30) day period of time |
| iBank | X0495 | Small Business Checking – primarily used to fund payroll expenses | Keep for a thirty (30) day period of time |
| Evolve Bank and Trust | X42341 | Savings | Close and transfer any funds into a debtor in possession operating account |

| Silicon Valley Bank | x5986 | Operating Checking | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |
| Silicon Valley Bank | x9909 | Accounts Payable and Payroll Checking | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |
| Silicon Valley Bank | x9886 | Interchange account | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |
| Silicon Valley Bank | x9890 | Billing Collection Checking | Convert into a debtor in possession account, per the Debtor's agreement with Silicon Valley Bank |

3.      The Debtor requests authority to maintain the two iBank accounts for a temporary period of time following the Petition Date in order to minimize disruption to the Debtor's ability to conduct business post-petition, including to ensure that it is able to pay its post-petition payroll obligations.  Immediately after the Petition Date, the Debtor will commence the process of opening new debtor in possession accounts (by converting its Silicon Valley Bank accounts into debtor in possession accounts which the Debtor understands Silicon Valley Bank will do) and will ultimately transition operating and disbursement activities to its debtor in possession accounts, into which the Debtor will ultimately deposit revenue and from which the Debtor will ultimately make disbursements.

**Accounts Partner Financial Institutions**

4.      Separate and apart from the above bank accounts, the Debtor also has an interest in, access to, or some control over certain other accounts held at Partner Financial Institutions. The Debtor's provision of services to Partner Financial Institutions are pursuant to agreements

between the Debtor (and/or the Debtor's subsidiaries) and the Partner Financial Institutions, including, without limitation, Evolve Bank and Trust ("Evolve"), Lineage Bank ("Lineage"), AMG National Trust Bank ("AMG") and American Bank ("AB").  The Debtor also provides access to other financial services through its wholly-owned subsidiaries.  Cash management services are provided through the Debtor's broker dealer subsidiary, who has indirect agreements with other financial institutions through its sweep network.  In addition, the Debtor provides lending services through its lender subsidiary, which holds state lending licenses.

5.      The Debtor's software, among other things, provides financial technology companies (the Debtor's customers), and ultimately end-users the ability to access financial products offered by the Partner Financial Institutions via a single platform (the Synapse platform) such that the Debtor's customers, and, ultimately, end-users are able to access different financial institutions' products and, in theory, are not susceptible to the success or failure of a single financial institution.

6.      The Debtor generates revenue from these arrangements in the form of fees, interest and other charges, and the Debtor's provision of such services are pursuant to agreements between the Debtor and the Partner Financial Institutions.

7.      Therefore, the Debtor's agreements with Partner Financial Institutions, including its subsidiaries, require or provide for the establishment of certain accounts, including, without limitation reserve accounts, fee and revenue accounts and other accounts in connection with the program services provided by the Debtor to the Partner Financial Institutions, the Debtor's customers (fintechs) and end-users.  These fee and revenue accounts, in particular, include technological integrations with third-party providers and fintechs for the receipt of revenue and payment of fees and costs. Therefore, these accounts are required to be maintained by the Debtor as ancillary and necessary to its provision of services. For example, the Debtor maintains certain deposit accounts at the Partner Financial Institutions which are used to receive fees and compensation from Partner Financial Institutions and other third-parties and to also make payments of certain fees and compensation due and owing to fintechs and/or end users.

8.      In addition, certain accounts required to provide services to fintechs and end users, which are maintained at Partner Financial Institutions, are not owned or controlled by the Debtor and the Debtor has no interest in such accounts; rather, they are controlled by the respective financial institutions at which the accounts are held.  An example of such accounts are omnibus custodial accounts owned by Partner Financial Institutions, in which the Partner Financial Institution pools the funds held by end users, for their benefit (or in the case of a fintech, for the benefit of a fintech's end users) and the funds thereon, are not owned or controlled by the Debtor.

9.      At this time, to the extent the Debtor has any control over or ability to close any such accounts with its Partner Financial Institutions, the Debtor does not intend to close any such accounts, and to the extent Court authority is required to continue to maintain such accounts with its Partner Financial Institutions, the Debtor requests Court authority to do so.  In particular, the Debtor desires to ensure that there is no disruption to end-users' ability to access their funds (which are not funds that belong to the Debtor) and that there is no disruption to the flow of revenue to the Debtor in connection with interest, fees and charges to which the Debtor is entitled.  Additionally, the Debtor is conducting a sale process and has a stalking horse bidder, and the Debtor's maintenance and continued administration of accounts with its Partner Financial Institutions in accordance with the Debtor's agreements with such Partner Financial Institutions may be a critical component of a sale of the Debtor's assets and an important condition of purchase by any buyer, including the Debtor's stalking horse bidder.  Indeed, the Debtor's asset purchase agreement with the stalking horse bidder requires the Debtor to, pending approval of the sale, operate and conduct the Debtor's business in the ordinary course, consistent with past practices.  Moreover, the asset purchase agreement includes or may include certain bank accounts designated as "Purchased Assets."

10.      As described above, the Debtor will open debtor in possession accounts (the Debtor contemplates opening a debtor in possession operating account and a debtor in possession payroll account) into which revenue received by the Debtor will ultimately be deposited and

disbursements made by the Debtor to pay its post-petition expenses and any other expenses approved by the Court will be originated.

11.    The relief requested herein will help ensure the Debtor's smooth transition into chapter 11 and avoid any interruption or disruption in the Debtor's ability to provide services to its customers, Partner Financial Institutions and end-users, continue to generate and collect revenue for the benefit of the estate and preserve and maintain operations and activities to help ensure a successful sale process.  It is important that this Motion be heard on an emergency basis so that the Debtor may immediately comply with applicable requirements concerning its accounts and cash management system.

**II.**

**<u>DISCUSSION</u>**

Section 105(a) of the Bankruptcy Code provides:

> "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. § 105(a).  All of the relief requested herein is within the Court's authority to grant at its discretion.  The Debtor respectfully requests that the Court exercise its discretion to grant the relief requested herein.

**A.    <u>The Court Should Authorize The Debtor To Maintain Certain Aspects Of Its Prepetition Cash Management System And Accounts</u>.**

Courts have routinely granted chapter 11 debtors authority to continue using their existing cash management systems. *See In re Pathmark Stores. Inc. et al.*, Case No. 00-02963(JJF) (D. Del. July 13, 2000); *In re Safety-Kleen Corp.*, Case No. 00-02303(PJW) (Bankr. D. Del. June 13, 2000); *In re Eagle Food Centers, Inc.*, Case No. 00-01311(RRN) (D. Del.

13

March 2, 2000); *In re Philip Services (Delaware), Inc.*, Case No. 99-02385(MEW) (Bankr. D. Del. June 30, 1999); *see also, In re Grant Broadcasting of Philadelphia, Inc.*, 75 B.R. 819 (E.D. Penn. 1987); *In re Charter Company, et al.*, 778 F.2d 617 (11ᵗʰ Cir. 1985).

The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of chapter 11 cases. These guidelines require chapter 11 debtors to, among other things; (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession operating account and (iv) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession," the bankruptcy case number and the type of accounts.

The Debtor will close its ordinary operating accounts at Silicon Valley Bank, First Horizon Bank, and Evolve, and iBank as set forth in the chart above, except that the Debtor requests authority to keep open its accounts at iBank for a limited period of time to ensure that business interruptions and payment of post-petition expenses and any other expenses approved to be paid by the Court are not delayed as a result of the closure of those accounts at the immediate outset of the case. Such relief will allow the Debtor to conduct a smooth transition to debtor in possession accounts, particularly since this case involves an expedited sale process with a closing proposed to occur by no later than April 30, 2024 and potentially sooner.

To the extent Court authority is required to continue to maintain accounts with Partner Financial Institutions, the Debtor requests Court authority to do so. In particular, the Debtor desires to ensure that there is no disruption to end-users' ability to access their funds (which are not funds that belong to the Debtor) and that there is no disruption to the flow of revenue to the Debtor in connection with interest, fees and charges to which the Debtor is entitled. Additionally, the Debtor is conducting a sale process and has a stalking horse bidder, and the Debtor's maintenance and continued administration of accounts with its Partner Financial Institutions may be a critical component of a sale of the Debtor's assets and an important condition of purchase by any buyer, including the Debtor's stalking horse bidder.

As described above, the Debtor will open debtor in possession accounts (the Debtor contemplates opening a debtor in possession operating account and a debtor in possession payroll account) into which revenue received by the Debtor will ultimately be deposited and disbursements made by the Debtor to pay its post-petition expenses and any other expenses approved by the Court will be originated.

**B.** **The Court Should Authorize The Banking Institutions To Immediately Release Any And All Administrative Holds And/Or Freezes That They May Have On Any Of The Debtor's Bank Accounts.**

Some courts have found the placement of an administrative "freeze" or hold on the bank account of a Chapter 11 debtor results in, at a minimum, "unauthorized interference with the property of the Chapter 11 debtor without leave of the Court." *See e.g., In re Executive Associates, Inc.,* 24 B.R. 171, 172 (Bankr. S.D. Tex. 1982); *see accord In re LHG Resources, Inc.*, 34 B.R. 202, 203 (Bankr. W.D. Tex. 1983). Nevertheless, under some circumstances, some courts have found such actions not to be problematic. See e.g., *In re Lough,* 163 B.R. 586 (Bankr. D. Idaho 1994) (freeze which credit union placed on deposit securing its overdraft protection loan to debtor depositors was not improper "setoff," in violation of automatic stay).

The Debtor is not seeking any determination from the Court with respect to the validity or the permissibility of the policy described above. Nonetheless, in an abundance of caution, the Debtor respectfully request that the Court exercise its authority pursuant to Section 105 and *authorize* the immediate release on all holds or freezes, if any, on any of the Debtor's bank accounts so that the Debtor can transfer funds in such accounts to its debtor in possession accounts (once opened) and otherwise use such funds in accordance with a cash collateral order and this Motion.

### III.

### CONCLUSION

Based upon all of the foregoing, the Debtor respectfully requests that this Court enter an order:

1.      Granting the Motion in its entirety;

2.    Affirming the adequacy of the notice given;

3.    Authorizing the Debtor to maintain its prepetition cash management system as set
forth above;

4.    Authorizing the release of any administrative freezes or holds on any bank
accounts of the Debtor; and

5.    Granting such other and further relief as the Court deems just and proper.

Dated:  April 22, 2024                SYNAPSE FINANCIAL TECHNOLOGIES, INC.

By:    /s/ Krikor J. Meshefejian
RON BENDER
MONICA Y. KIM
KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER,
    YOO & GOLUBCHIK L.L.P.
Proposed Attorneys for Debtor and
Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A True And Correct Copy Of The Foregoing Document Entitled (*Specify*): **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) AUTHORIZING THE CONTINUED USE OF ITS CASH MANAGEMENT SYSTEM; (II) AUTHORIZING THE MAINTENANCE OF CERTAIN PRE-PETITION BANK ACCOUNTS; AND (III) AUTHORIZING BANKS TO RELEASE ADMINISTRATIVE HOLDS AND/OR FREEZES ON THE DEBTOR'S PRE-PETITION ACCOUNTS; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ***April 22, 2024***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyg.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) ***April 22, 2024***, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ***April 22, 2024***, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL ON**
**SECURED CREDITORS, THE 20 LARGEST UNSECUREDS, ALL KNOWN POTENTIAL BIDDERS, ANY STALKING HORSE BIDDER, ANY REGULATORY AGENCY WITH AN INTEREST IN THE ASSETS TO BE SOLD, & THE UNITED STATES TRUSTEE**

☒ Service by **OVERNIGHT MAIL/FEDEX** information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 22, 2024 | Lourdes Cruz | */s/ Lourdes Cruz* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                             **F 9013-3.1.PROOF.SERVICE**

Amazon Web Services, Inc.
PO Box 84023
Seattle, WA 98124-8423


Bergeson LLP
111 Market Street, Suite 600
San Jose, CA 95113


Digital 365 Main, LLC
365 Main Street Suite 1500
San Francisco, CA 94105


First Horizon Bank
4385 Poplar Avenue
ATTN: Proctor Ford
Memphis, TN 38117


Fiserv, Inc
Po Box 208457
Dallas, TX 75320-8457


FlemingMartin, LLC
822 Hartz Way Suite 215
Danville, CA 94526


Shinette Parin
Goodwin Procter LLP
Three Embarcadero Center
San Francisco, CA 94111


Jones Day
555 California Street 26th Floor
San Francisco, CA 94104-1500

Benjamin Au
Kroll Associates, Inc
600 3rd Ave Fl 4
New York, NY 10016


Lineage Bank
3359 Aspen Grove Drive Suite 150
Franklin, TN 37067


Linkedin Corporation
62228 Collections Center Drive
Chicago, IL 60693-0622


Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068


MasterCard International
2200 Mastercard Boulevard
O' Fallon, MO 63368-7263


John Rodriguez
Newfront Insurance, Inc
55 2nd Street, 18th Floor
San Francisco, CA 94105


Performiline, Inc
58 South Street 2nd Floor
Morristown, NJ 07960


Sloanne & Company, LLC
285 Fulton Street 69th Floor
New York, NY 10007

```
TabaPay, Inc
605 Ellis Street 110
Mountain View, CA 94043


Thomson Reuters
PO Box 6292 - West Payment Center
Carol Stream, IL 60197-6292


Trulioo Information Services, Inc
400-114 East 4th St
Vancouver, CA 94104


Adam Moelis
Yotta Technologies Inc
33 Irving Pl
New York, NY 10003
```

Russell Clementson
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Robert T. Honeywell
K&L Gates LLP
599 Lexington Ave.
New York, NY 10022

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

U.S. Securities and Exchange
Commission  Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

California Department of Tax and
Fee Administration
Account Information Group, MIC: 29
P.O. Box 942879
Sacramento, CA  94279-0029

Los Angeles County Tax Collector
P. O. Box 54110
Los Angeles, CA 90054-0110

FINRA
300 South Grand Avenue, Suite 1700
Los Angeles, CA 90071

Silcon Valley Bank, a division of
First-Citizens Bank & Trust Company
1437 7th Street, Suite 300
Santa Monica, CA 90401

TriplePoint Capital LLC
2755 Sand Hill Rd.
Suite 150
Menlo Park, CA 94025

David Poitras
BG Law
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367