RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; MYK@LNBYG.COM; KJM@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>Debtor and Debtor in Possession | Case No.: 1:24-bk-10646-MB<br><br>Chapter 11 Case<br><br>**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO HONOR AND/OR PAY PRE-PETITION WAGES, SALARIES, COMMISSIONS, AND VACATION, LEAVE AND OTHER BENEFITS, REIMBURSABLE EXPENSES, PAYROLL TAXES AND WORKERS' COMPENSATION INSURANCE COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Omnibus Declaration of Sankaet Pathak In Support of First Day Motions filed concurrently herewith]**<br><br>DATE:    April 24, 2024<br>TIME:    2:00 p.m.<br>PLACE:   Courtroom 303<br>         21041 Burbank Boulevard<br>         Woodland Hills, CA 91367 |

1

Synapse Financial Technologies, Inc. (the "Debtor"), debtor in possession in the above-captioned Chapter 11 bankruptcy case hereby moves, on an emergency basis (the "Motion"), for the entry of an order authorizing the Debtor to pay, in its sole discretion, certain pre-petition claims for, among other items, wages, salaries and commissions, federal and state withholding and payroll taxes, insurance costs, contributions to employee benefit plans, and all other employee benefits that the Debtor pays in the ordinary course of business, as well as reimbursable expenses (all such payments, contributions, and obligations as described herein, the "Employer Obligations"), provided that no one individual shall receive in value over the applicable statutory priority caps set forth in Section 507(a)(4) and (5) on account of his or her pre-petition claims. The relief requested in this Motion pertaining to the payment of any prepetition Employer Obligations does not apply to any insiders of the Debtor.

On April 22, 2024, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its business and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a technology and software company with a mission to ensure that everyone around the world has access to best-in-class financial products, regardless of their net worth. The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers ("Partner Financial Institutions").

The Debtor is one of the first, if not *the* first, tech company to pioneer a Banking as a Service (Baas) platform for fintechs and Partner Financial Institutions which have agreements with the Debtor to efficiently interface each other to allow for transactions (*i.e.,* the buy and sell) of their financial products and services to the fintechs' end users. The Debtor has in place certain agreements with Partner Financial Institutions and fintechs. Through the Debtor's software technologies and services, the Debtor provides customers of fintechs (referred to as "end users" to avoid confusing them with the fintechs which are the customers of the Debtor) with access to banking or other financial services provided by the Partner Financial Institutions through the

fintech's own application. *By example,* an individual or a company business customer (*i.e.,* the end user) interested in obtaining various financial services such as opening an account will first sign up with a fintech which has contracted for the Debtor's services by utilizing the fintech's own application. The end user signs up for the specific banking or financial services by first signing up for a user account through the fintech's application and agreeing to the fintech's terms and conditions (as well as those of the Debtor). Then, through the fintech's application, the end user can choose from financial products offered by the Partner Financial Institutions, as well as the relevant agreement with the Partner Financial Institutions (*e.g.,* deposit account agreement, card agreement, or the like). End users are customers of the fintechs and the Partner Financial Institutions, not the Debtor. The Debtor is not in the flow of funds and does not receive funds from the end users. The Partner Financial Institutions access information about the end users through the Debtor's software and technology services. The "network" between the fintech and the Partner Financial Institutions is created through the Debtor's technology and software which then allows for the fintechs, Partner Financial Institutions and the end users to communicate through their systems and programs to make transactions (for such things as deposits, withdrawals, credit cards, etc.), for monitoring and reporting, and the like.

As of the Petition Date, the Debtor had approximately 78 employees in the United States. The Debtor also engages approximately 18 personnel outside of the United States, but these personnel are engaged through a third-party employer service. With respect to any pre-petition obligation the Debtor requests authority to pay or honor, this Motion pertains only to the Debtor's employees in the United States who are not insiders (the "Employees"). With respect to any post-petition compensation for any insider of the Debtor, the Debtor will file and serve a Notice of Insider Compensation in accordance with applicable rules.

Payments to the Debtor's Employees are primarily on a salaried or hourly basis. The Employees are primarily paid via a payroll service that the Debtor contracts with and utilizes – Rippling People Center Inc. ("Rippling") – which provides employee payroll and human resources services and solutions to the Debtor. All Employees, including those that provide services to one or both of the Debtor's wholly-owned subsidiaries are employed directly by the

Debtor.  All Employees are compensated by the Debtor.  Virtually all Employees participate in one or more of the Debtor's benefits programs, which include health, vision, dental, disability and life insurance, a 401k plan pursuant to which the Debtor matches up to 4% of an Employee's contributions, and a flexible healthcare spending plan.

In the normal course of its relationship with Rippling, the Debtor transfers to Rippling the funds necessary for the payment of Employer Obligations by the payroll date and remits all withheld amounts and payroll taxes.

**The Pre-Petition Payroll Period of March 31, 2024 – April 13, 2024**

The Debtor is generally current with its payroll obligations to Employees, and Employees have been paid their wages current through April 13, 2024, provided, however, that for the payroll period of March 31, 2024 through April 13, 2024, the entirety of which is a pre-petition period (but well within the 180 day period prior to the Petition Date), health insurance and life insurance benefits of the Employees, respectively, totaling $120,540 and $11,118, respectively, have not yet been funded and are ordinarily funded approximately one week after the payroll date of April 13, 2024.  Pursuant to this Motion, the Debtor requests authority to honor those obligations to its Employees (all of which are non-insiders, and all of which are well within the statutory cap for benefits under section 507(a)(5)).

**The Payroll Period of April 14, 2024 – April 27, 2024, only a Portion of Which Constitutes a Pre-petition Period.**

On April 26, 2024, the Debtor will pay Employer Obligations to its Employees for the period from April 14, 2024 through and including April 27, 2024, a portion of which (approximately 5 days) constitutes pre-petition obligations.  The Debtor estimates that the total Employer Obligations due to its non-insider employees on April 26, 2024, including all payroll taxes and insurance obligations will be approximately $425,784 (approximately less than half of which is pre-petition), not including the Debtor's contributions to employee benefit plans.

The Debtor estimates that its total contribution to employee insurance benefit plans for the payroll period from April 13, 2024 through and including April 27, 2024 is approximately $131,658, of which approximately $65,829, would be for the prepetition period.

The Debtor estimates that the total amount of 401k match obligations of the Debtor pertaining to the payroll period of April 14, 2024 – April 27, 2024 date is approximately $12,137, of which approximately $6,069 would be for the prepetition period.

Pursuant to this Motion, the Debtor requests authority to honor these obligations to its Employees.

**Paid Time Off, Sick Leave and Vacation Benefits Accrued by Employees through the Petition Date.**

The total amount of paid time off/sick leave/vacation benefits accrued by Employees through the Petition Date is approximately $219,220.   Pursuant to this Motion, the Debtor requests authority to honor Employees' accrued pre-petition paid time off/sick leave/vacation benefits in the ordinary course of business by allowed Employees to take their accrued paid time off/sick leave/vacation time in the ordinary course of business.

**Timing Of Payroll And Benefits Funding And Requested Relief**

Rippling typically obtains the funds from the Debtor to pay the Employer Obligations *at least* two (2) days prior to disbursements to Employees (**which is why the Debtor is requesting an emergency hearing on this Motion**), and with respect to certain contributions to the Debtor such as for the Debtor's 401k match (up to 4%), Rippling obtains such funds within approximately one week after the payroll pay date.  The Debtor therefore requests expedited relief to ensure that it is able to timely fund all of its payroll obligations to the Employees. Additionally, the Debtor requests expedited relief to ensure that its Employees, many of which will be learning of the Debtor's bankruptcy filing now, may be provided assurance that the Debtor has taken immediate action to ensure that the Debtor is able to honor its Employer Obligations to the Employees and that there will not be disruption to the ordinary course payment of the Employer Obligations.

The source of the funds to be used to pay and/or honor the Employer Obligations will be the Debtor's cash, which constitutes the cash collateral of Silicon Valley Bank and Triple Point Capital.  Concurrently herewith, the Debtor has filed an emergency motion for authority to use cash collateral.

The Debtor has brought this Motion to (i) minimize the personal financial hardship that all of the Employees will suffer if the Employee Obligations are not immediately paid/honored by the Debtor; (ii) avoid the unnecessary delay in the payment of such priority claims, which delay will negatively impact and interfere with the administration of the Debtor's chapter 11 bankruptcy case; (iii) avoid the unfair and unintended consequences to the Employees of the timing of the Debtor's bankruptcy filing and to ensure that additional claims do not arise against the Debtor as a result of the Debtor's failure to pay the Employer Obligations; and (iv) ensure that there is no disruption to or jeopardization of the Debtor's sale efforts or any diminishment in the value of the Debtor's assets and business as a result of Employee attrition caused by an inability to honor the Employer Obligations.

The Debtor requires the services of the Employees to continue to operate, and would like to ensure that its Employees remain incentivized and willing to work for the Debtor post-petition.  It is crucial for the Debtor to retain at this time the Employees to operate the business, particularly during this crucial beginning phase of the Debtor's bankruptcy case where additional administrative and other obligations are imposed upon the Debtors, and also in connection with the sale process involving a stalking horse bidder and an executed Asset Purchase Agreement that contains various provisions requiring the continued operation of the Debtor and the avoidance of any material adverse changes to the Debtor's operations. If the Debtor does not continue to pay the Employees their ordinary and earned compensation and continue to honor employee benefits, the Employees may quit.  Without the Employees, the Debtor's business will be severely impaired, if not eviscerated altogether.  Without a functioning business, the Debtor's goal in this case of selling its assets for the highest and best price will be severely harmed. Based on the foregoing, the Debtor respectfully submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

## **ADDITIONAL INFORMATION**

This Motion is based upon Local Bankruptcy Rules 2081-1(a)(6) and 9075-1, 11 U.S.C. §§ 105(a), 363(b)(1) and (c)(1), and 507(a)(4), and Rule 6003 of the Federal Rules of Bankruptcy Procedure, the supporting Memorandum of Points and Authorities, the Omnibus

Declaration of Sankaet Pathak filed concurrently herewith, the arguments and statements of counsel made at the hearing on this Motion, and other admissible evidence properly brought before the Court.

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor has served this Motion upon the Office of the United States Trustee, its respective twenty largest general unsecured creditors, and its secured creditors via overnight mail.  Additional hard copies or electronic copies of this Motion are available upon request to proposed counsel for the Debtor, whose contact information is located on the upper-left hand corner of the first page of this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(1)    granting this Motion in its entirety;

(2)    authorizing the Debtor to pay and/or honor all pre-petition Employer Obligations owed to the Debtor's Employees;

(3)    authorizing the Debtor to honor paid time off, leave and other benefits in the ordinary course of business;

(4)    authorizing the Debtor to pay all taxes constituting, related to, or in connection with, the Employer Obligations; and

(5)    granting such other and further relief as the Court deems just and proper.

Dated:  April 22, 2024              SYNAPSE FINANCIAL TECHNOLOGIES, INC.

By:    _/s/ Krikor J. Meshefejian_____
RON BENDER
MONICA Y. KIM
KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

**PLEASE SEE DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND THE OMNIBUS DECLARATION OF SANKAET PATHAK FOR BACKGROUND FACTS AND INFORMATION REGARDING THIS CASE, WHICH THE DEBTOR INCORPORATES HEREIN BY THIS REFERENCE.**

**A.    Payment Of The Debtor's Employee's Compensation and Benefits.**

1.    As of the Petition Date, the Debtor had approximately 78 employees in the United States. The Debtor also engages approximately 18 personnel outside of the United States, but these personnel are engaged through a third-party employer service. With respect to any prepetition claims proposed to be paid or honored, this Motion pertains only to the Debtor's employees in the United States who are not insiders (the "Employees").

2.    All Employees, including those that provide services to one or both of the Debtor's wholly-owned subsidiaries are employed directly by the Debtor. All Employees are compensated by the Debtor. With respect to any post-petition compensation for any insider of the Debtor, the Debtor will file and serve a Notice of Insider Compensation in accordance with applicable rules.

3.    Payments to the Debtor's Employees are primarily on a salaried or hourly basis. The Employees are primarily paid via a payroll service that the Debtor contracts with and utilizes – Rippling People Center Inc. ("Rippling") – which provides employee payroll and human resources services and solutions to the Debtor. All Employees, including those that provide services to one or both of the Debtor's wholly-owned subsidiaries are employed directly by the Debtor. All Employees are compensated by the Debtor. Virtually all Employees participate in one or more of the Debtor's benefits programs, which include health, vision, dental, disability and life insurance, a 401k plan pursuant to which the Debtor matches up to 4% of an Employee's contributions, and a flexible healthcare spending plan. The Debtor's employee benefits plans for

2024 are all described in the Benefits Guide attached as **Exhibit 3** to the Omnibus Declaration of Sankaet Pathak filed concurrently herewith.

4.    In the normal course of its relationship with Rippling, the Debtor transfers to Rippling the funds necessary for the payment of Employer Obligations by the payroll date and remits all withheld amounts and payroll taxes.

### The Pre-Petition Payroll Period of March 31, 2024 – April 13, 2024

5.    The Debtor is generally current with its payroll obligations to Employees, and Employees have been paid their wages current through April 13, 2024, provided, however, that for the payroll period of March 31, 2024 through April 13, 2024, the entirety of which is a pre-petition period (but well within the 180 day period prior to the Petition Date), health insurance and life insurance benefits of the Employees, respectively, totaling $120,540 and $11,118, respectively, have not yet been funded and are ordinarily funded approximately one week after the payroll date of April 13, 2024.    Pursuant to this Motion, the Debtor requests authority to honor those obligations to its Employees (all of which are non-insiders, and all of which are well within the statutory cap for benefits under section 507(a)(5)).

### The Payroll Period of April 14, 2024 – April 27, 2024, only a Portion of Which Constitutes a Pre-petition Period.

6.    On April 26, 2024, the Debtor will pay Employer Obligations to its Employees for the period from April 14, 2024 through and including April 27, 2024, a portion of which (approximately 5 days) constitutes pre-petition obligations.    The Debtor estimates that the total Employer Obligations due to its non-insider employees on April 26, 2024, including all payroll taxes and insurance obligations will be approximately $425,784 (approximately less than half of which is pre-petition), not including the Debtor's contributions to employee benefit plans.

7.    The Debtor estimates that its total contribution to employee insurance benefit plans for the payroll period from April 13, 2024 through and including April 27, 2024 is approximately $131,658, of which approximately $65,829, would be for the prepetition period.

8. The Debtor estimates that the total amount of 401k match obligations of the Debtor pertaining to the payroll period of April 14, 2024 – April 27, 2024 date is approximately $12,137, of which approximately $6,069 would be for the prepetition period.

9. Pursuant to this Motion, the Debtor requests authority to honor these obligations to its Employees.

**Paid Time Off, Sick Leave and Vacation Benefits Accrued by Employees through the Petition Date.**

10. The total amount of paid time off/sick leave/vacation benefits accrued by Employees through the Petition Date is approximately $219,220. Pursuant to this Motion, the Debtor requests authority to honor Employees' accrued pre-petition paid time off/sick leave/vacation benefits in the ordinary course of business by allowed Employees to take their accrued paid time off/sick leave/vacation time in the ordinary course of business.

**Timing Of Payroll And Benefits Funding**

11. Rippling typically obtains the funds from the Debtor to pay the Employer Obligations at least two (2) days prior to disbursements to Employees, and with respect to certain contributions to the Debtor such as for the Debtor's 401k match (up to 4%), Rippling obtains such funds within approximately one week after the payroll pay date. The Debtor therefore requests expedited relief to ensure that it is able to timely fund all of its payroll obligations to the Employees. Additionally, the Debtor requests expedited relief to ensure that its Employees, many of which will be learning of the Debtor's bankruptcy filing now, may be provided assurance that the Debtor has taken immediate action to ensure that the Debtor is able to honor its Employer Obligations to the Employees and that there will not be disruption to the ordinary course payment of the Employer Obligations.

12. The source of the funds to be used to pay and/or honor the Employer Obligations will be the Debtor's cash, which constitutes the cash collateral of Silicon Valley Bank and Triple Point Capital. Concurrently herewith, the Debtor has filed an emergency motion for authority to use cash collateral.

13.     Attached as **Exhibit 4** to the Pathak Declaration is an analysis of the Debtor's anticipated Employer Obligations for the period from April 14, 2024 through and including April 27, 2024 (Exhibit 4a).  Included in **Exhibit 4** is an analysis of the statutorily capped payroll amounts proposed to be paid/honored (Exhibit 4b).

**B.     Relief Requested In This Motion.**

14.     By this Motion, the Debtor seeks authority to pay and/or honor all Employer Obligations owed to the Debtor's Employees.

15.     The source of the funds to be used to pay and/or honor the Employer Obligations will be the Debtor's cash, which constitutes the cash collateral of Silicon Valley Bank and triple Point Capital.  Concurrently herewith, the Debtor has filed an emergency motion for authority to use cash collateral.

16.     The Debtor has brought this Motion to (i) minimize the personal financial hardship that all of the Employees will suffer if the Employee Obligations are not immediately paid/honored by the Debtor; (ii) avoid the unnecessary delay in the payment of such priority claims, which delay will negatively impact and interfere with the administration of the Debtor's chapter 11 bankruptcy case; (iii) avoid the unfair and unintended consequences to the Employees of the timing of the Debtor's bankruptcy filing and to ensure that additional claims do not arise against the Debtor as a result of the Debtor's failure to pay the Employer Obligations; and (iv) ensure that there is no disruption to or jeopardization of the Debtor's sale efforts or any diminishment in the value of the Debtor's assets and business as a result of Employee attrition caused by an inability to honor the Employer Obligations.

17.     The Debtor requires the services of the Employees to continue to operate, and would like to ensure that its Employees remain incentivized and willing to work for the Debtor post-petition during the Debtor's expedited sale process.  It is crucial for the Debtor to retain at this time the Employees to operate the business, particularly during this crucial beginning phase of the Debtor's bankruptcy case where additional administrative and other obligations are imposed upon the Debtors, and also in connection with the sale process involving a stalking

horse bidder and an executed Asset Purchase Agreement that contains various provisions requiring the continued operation of the Debtor and the avoidance of any material adverse changes to the Debtor's operations. If the Debtor does not continue to pay the Employees their ordinary and earned compensation and continue to honor employee benefits, the Employees may quit. Without the Employees, the Debtor's business will be severely impaired, if not eviscerated altogether. Without a functioning business, the Debtor's goal in this case of selling its assets for the highest and best price will be severely harmed.    Based on the foregoing, the Debtor respectfully submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

## II.

## DISCUSSION

Sections 105(a), 363(b)(1) and (c)(1) and 507(a)(4) and (5) provide statutory support for the requested relief. Specifically, § 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing; and § 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing.    Local Bankruptcy Rule 2081-1(a)(6) also expressly permits a debtor to seek to pay prepetition employee obligations. Moreover, the obligations that the Debtor requests authority to pay and/or honor are generally entitled to priority in payment under §§ 507(a)(4), (5) and (8)(D).

**A.** **The Court Should Authorize The Debtor To Pay/Honor All Of The Employer Obligations.**

Pursuant to Section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The basic purpose of Section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid in their jurisdiction." 2 *Collier on Bankruptcy* ¶ 105.01 at 105-3 (15th ed. rev. 1998).    Essentially, Section 105(a) codifies the bankruptcy court's inherent equitable powers. *See Green v. Drexler (In re Feit & Drexler, Inc.)*, 760 F.2d 406 (2d Cir. 1985).

The United States Supreme Court in *Czyzewski v. Jevic Holding Corp.* has recognized that courts "[approve] interim distributions that violate ordinary priority rules," generally when there are "significant Code-related objective that priority-violating distributions serve," including "payment of employees' prepetition wages." 137 S.Ct. 973, 985 (2017).

The Debtor submits that to ensure that its employees remain incentivized to work for the Debtor post-petition, and maintain their morale at this critical time, as well as ensure that the Debtor's business operations are not disrupted during the Debtor's post-petition sale process, all of the Employee Obligations should be honored/paid by the Debtor.

*First*, the Debtor proposes to pay and/or honor those Employer Obligations attributed to the Employees that are entitled to priority treatment under Sections 507(a)(4) and (5) of the Bankruptcy Code. The Debtor is required to pay such priority claims in full to confirm any chapter 11 plan pursuant to Section 1129(a)(9)(B), and all such claims must be paid in full before there can be any distribution to general unsecured creditors. *See Czyzewski v. Jevic Holding Corp.* at 985 (recognizing that courts "approve[] interim distributions that violate ordinary priority rules," generally when there are "significant Code-related objectives that the priority violating distributions serve," including "payment of employees' prepetition wages.").

For a number of reasons, the Bankruptcy Code, case law and common practice affords special treatment to the prepetition priority claims of employees. Compared to a typical claim in a chapter 11 corporate bankruptcy, wages typically represent a large part of an employee's income, and the failure to pay such wages oftentimes results in unsustainable financial hardship to employees. Additionally, the typical employee does not have alternative sources of income and thus cannot diversify the risk of an employer's default. Moreover, the only reason the Employees are still owed Employer Obligations is because of the timing of the Debtor's bankruptcy filing. Under the circumstances, the failure to pay the Employer Obligations to Employees now would be tantamount to disregarding the special treatment the Bankruptcy Code, case law and common practice affords to employees and would cause a completely unnecessary and financially devastating impact upon these individuals who the Debtor needs in order to preserve the value of the Debtor's estate and allow for the Debtor to function as a going concern

***Second***, the earlier payment of the pre-petition Employer Obligation claims of the Employees is especially appropriate given that the Debtor's continued operation is the result of the hard work, dedication, and loyalty of such individuals.

***Third***, the Court should consider that the failure of the Debtor to pay the Employer Obligations owing to the Employees will negatively impact the morale of the Employees.

***Lastly***, payment of the Employer Obligations to the Employees is essential to the livelihood of the Employees, many of whom would suffer extreme personal hardship and financial difficulty if they are not paid.  None of the Employees are compensated extravagantly. Moreover, the Debtor's payment of the Employer Obligations to the Employees will not only compensate these individuals for the invaluable services that they performed and continue to perform for the Debtor, but also allow them to use such funds to pay for basic life necessities. Under these circumstances, the Court should authorize the Debtor to honor or pay the Employer Obligations of the Employees.  *In re First Magnus Fin. Corp.*, 390 B.R. 667, 678 (Bankr. D. Ariz. 2008) ("507(a)(4) of the Bankruptcy Code, Congress' intent is clear, and its precedent long-established.  In it, Congress plainly ***intended to provide some cushion to unfortunate unpaid employees*** who were injured by a bankruptcy filing, and who concurrently failed to receive their full compensation package.") (emphasis added).

**B.    <u>Sufficient Evidence Has Been Provided, In Compliance With Local Bankruptcy Rule 2081-1(a)(6), To Grant The Relief Requested Herein</u>.**

Local Bankruptcy Rule 2081-1(a)(6) provides that motions to pay pre-petition payroll and to honor pre-petition employment procedures must be supported with evidence that establishes:

(i)      The employees are still employed;

(ii)     The necessity for payment;

(iii)    The benefit of the procedures;

(iv)    The prospect of reorganization;

(v)     Whether the employees are insiders;

(vi)       Whether the employees' claims are within the limits established by 11 U.S.C.

§ 507; and that

(vii)      The payment will not render the estate administratively insolvent.

The foregoing factors are discussed individually below:

1.      <u>The employees are still employed</u>.  As set forth in the Omnibus Declaration of Sakaet Pathak, all of the Employees are current Employees, and are anticipated to continue to work for the Debtor post-petition.

2.      <u>The necessity for payment</u>.  The Debtor believes that the Employees will quit and the Debtor's business will be severely disrupted if the Debtor does not honor the Employer Obligations immediately.  The Debtor believes that the retention of its Employees is crucial to (i) the Debtor's continued operations without interruptions, (ii) preserve and maximize the value of the Debtors' assets, (iii) ensure compliance with the terms of the Debtor's asset purchase agreement with the proposed stalking horse bidder; and (iv) maximize recoveries for the Debtor's creditors.

3.      <u>The benefit of the procedures</u>.  The benefit of the procedures requirement is not relevant to the request to pay/honor the Employer Obligations.

4.      <u>The prospect of reorganization</u>.  The Debtor has an executed stalking horse asset purchase agreement and a proposed sale process and believes that it will be able to conduct a successful sale of its assets within an expedited timeframe, but in order to do so and generate the most money possible, the Debtor requires the continued services of its Employees while the Debtor conducts a sale process.

5.      <u>Whether the employees are insiders</u>.  The Debtor is not requesting authority to pay any pre-petition claims of any insiders.

6.      <u>Whether the employees' claims are within the limits established by 11 U.S.C. §
507</u>.  The Motion expressly provides that none of the Employees shall receive more than the applicable statutory limit on account of their pre-petition priority claims.  Furthermore, based on the information currently available and analysis to date, the Debtor anticipates that priority claims

will get paid in full in this case such that payment of the Employer Obligations to the employees is simply a matter of timing.

7.   <u>The payment will not render the estates administratively insolvent</u>.  Based on the information currently available and analysis to date, including the Debtor's asset purchase agreement, the Debtor does not believe that the payment of the Employer Obligations will render this bankruptcy estate administratively insolvent.  As indicated in the cash collateral budget addressed in the concurrently filed emergency cash collateral motion, the Debtor has sufficient funds available to pay the Employer Obligations.

## C.   **Applicable Bankruptcy and Non-Bankruptcy Law Requires Payment and Continuation of Certain of the Employer Obligations.**

A portion of the Employer Obligations constitute payroll taxes, which are required to be withheld from earnings and paid to taxing agencies.  If the Debtor does not remit those amounts, the employees may face legal action, and the Debtor may be burdened by inquiries and disputes concerning the Debtor's failure to submit legally required payments and potentially penalties and interest to the various taxing agencies.  Further, most, if not all, of the unremitted taxes constitute monies held in trust and are not property of the Debtor's bankruptcy estate.  With respect to any such amounts held in trust, the Debtor submits they are both entitled and required to continue directing such funds to the appropriate parties. *See In re Energy Res. Co., Inc.*, 871 F.2d 223, 225 (1st Cir. 1989) (observing that federal law requires employers to hold withheld funds in trust for the United States); *DuCharmes & Co. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 195-96 (6th Cir. 1988) (noting that "individual officials of an employer who fail to pay over [federal withholding] taxes have been withheld are subject to personal liability").  Accordingly, the Debtor requests authority to remit the withheld amounts to the appropriate taxing agencies.

## D.   **The Debtor Should Be Authorized To Continue to Maintain All Of Its Employee Benefits Programs**

The Debtor requests authority to continue to maintain its employee benefits programs, including health vision, dental, disability and life insurance benefit programs, the Debtor's 401k plan program which includes a 4% match by the Debtor, and the flexible healthcare spending

account program in the ordinary course of its business.  Such programs constitute a portion of the Employer Obligations and the compensation offered to the Debtor's Employees.

With respect to the relatively modest prepetition amounts owed by the Debtor on account of such programs, section 507(a)(5) provides priority status to "claims for contributions to an employee benefit plan- (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (B) for each such plan, to the extent of – (i) the number of employees covered by each such plan multiplied by $15,150, less (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan." *See* 11 U.S.C. § 507(a)(5).

Here, there are approximately 56 - 64 Employees (not including insiders) covered by the Debtor's employee benefit plans[1].  Assuming that all of the employee benefits offered by the Debtor constitute a single plan and using a conservative figure of 56 Employees "covered" by the benefits plan, the aggregate amount for purposes of Section 507(a)(5)(B)(i) totals approximately $848,400.  The aggregate amount proposed to be paid to the Employees under paragraph (4) of Section 507(a) is the sum of approximately $432,112 (the sum of accrued prepetition paid time off/sick leave/vacation benefits and pre-petition payroll).  The difference of $416,288 would approximately be the statutory cap under section 507(a)(5) for priority treatment of contributions to a single employee benefit plan before taking into any other employee benefit plan.  The total amount of contributions to all employee benefit plans collectively the Debtor proposes to honor/pay pursuant to this Motion arising from services provided by Employees immediately prior to the Petition Date is approximately $203,556, which the Debtor submits is well within the statutory cap.

**E.**  **The Relief Requested Herein Is Necessary To Avoid Immediate And Irreparable Harm And Is Therefore Warranted Under Rule 6003 Of The Federal Rules Of Bankruptcy Procedure.**

---

[1] Six Employees do not participate in benefits, but still receive life and disability insurance benefits. Fourteen Employees are not participating in the Debtor's 401k plan.

Rule 6003 of the Federal Rules of Bankruptcy Procedure states, in relevant part:

> "Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding the following:
>
> [...]
>
>      (b)    a motion to use, sell, lease, or otherwise incur an obligation, regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001; [...]."

Fed. R. Bankr. Pro. 6003.

For the reasons noted above, the Debtor's failure to pay the Employer Obligations will likely result in severe disruptions to the Debtor's essential operations and may jeopardize the Debtor's ability to preserve and maximize the value of its operations and assets for the benefit of creditors. Accordingly, the Debtor respectfully submits that the honoring or payment of the Employer Obligations is necessary to avoid immediate and irreparable harm, and is therefore warranted under Rule 6003 of the Federal Rules of Bankruptcy Procedure.

### III.

### <u>CONCLUSION</u>

Based upon all of the foregoing, the Debtor respectfully requests entry of an order:

(1)    granting this Motion in its entirety;

(2)    authorizing the Debtor to pay and/or honor all pre-petition Employer Obligations;

(3)    authorizing the Debtor to honor paid time off, leave and all other benefits and contribution plans in the ordinary course of business;

(4)    authorizing the Debtor to pay all taxes constituting, related to, or in connection with, the Employer Obligations; and

(5)    granting such other and further relief as the Court deems just and proper.

Dated:  April 19, 2024            SYNAPSE FINANCIAL TECHNOLOGIES, INC.

                         By:    */s/ Krikor J. Meshefejian*
                                RON BENDER
                                MONICA Y. KIM

KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER,
     YOO & GOLUBCHIK L.L.P.
Proposed Attorneys for Debtor and
Debtor in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A True And Correct Copy Of The Foregoing Document Entitled (*Specify*): **DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO HONOR AND/OR PAY PRE-PETITION WAGES, SALARIES, COMMISSIONS, AND VACATION, LEAVE AND OTHER BENEFITS, REIMBURSABLE EXPENSES, PAYROLL TAXES AND WORKERS' COMPENSATION INSURANCE COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_April 22, 2024_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender     rb@lnbyg.com**
- **Russell Clementson     russell.clementson@usdoj.gov**
- **United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov**

**2.   SERVED BY UNITED STATES MAIL**: On (*date*) **_April 22, 2024_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_April 22, 2024_**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL ON**
**SECURED CREDITORS, THE 20 LARGEST UNSECUREDS, ALL KNOWN POTENTIAL BIDDERS, ANY STALKING HORSE BIDDER, ANY REGULATORY AGENCY WITH AN INTEREST IN THE ASSETS TO BE SOLD, & THE UNITED STATES TRUSTEE**

☒ Service by **OVERNIGHT MAIL/FEDEX** information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 22, 2024 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

Amazon Web Services, Inc.
PO Box 84023
Seattle, WA 98124-8423


Bergeson LLP
111 Market Street, Suite 600
San Jose, CA 95113


Digital 365 Main, LLC
365 Main Street Suite 1500
San Francisco, CA 94105


First Horizon Bank
4385 Poplar Avenue
ATTN: Proctor Ford
Memphis, TN 38117


Fiserv, Inc
Po Box 208457
Dallas, TX 75320-8457


FlemingMartin, LLC
822 Hartz Way Suite 215
Danville, CA 94526


Shinette Parin
Goodwin Procter LLP
Three Embarcadero Center
San Francisco, CA 94111


Jones Day
555 California Street 26th Floor
San Francisco, CA 94104-1500

Benjamin Au
Kroll Associates, Inc
600 3rd Ave Fl 4
New York, NY 10016


Lineage Bank
3359 Aspen Grove Drive Suite 150
Franklin, TN 37067


Linkedin Corporation
62228 Collections Center Drive
Chicago, IL 60693-0622


Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068


MasterCard International
2200 Mastercard Boulevard
O' Fallon, MO 63368-7263


John Rodriguez
Newfront Insurance, Inc
55 2nd Street, 18th Floor
San Francisco, CA 94105


Performiline, Inc
58 South Street 2nd Floor
Morristown, NJ 07960


Sloanne & Company, LLC
285 Fulton Street 69th Floor
New York, NY 10007

TabaPay, Inc
605 Ellis Street 110
Mountain View, CA 94043


Thomson Reuters
PO Box 6292 - West Payment Center
Carol Stream, IL 60197-6292


Trulioo Information Services, Inc
400-114 East 4th St
Vancouver, CA 94104


Adam Moelis
Yotta Technologies Inc
33 Irving Pl
New York, NY 10003

Russell Clementson
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Robert T. Honeywell
K&L Gates LLP
599 Lexington Ave.
New York, NY 10022

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

U.S. Securities and Exchange
Commission  Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

California Department of Tax and
Fee Administration
Account Information Group, MIC: 29
P.O. Box 942879
Sacramento, CA  94279-0029

Los Angeles County Tax Collector
P. O. Box 54110
Los Angeles, CA 90054-0110

FINRA
300 South Grand Avenue, Suite 1700
Los Angeles, CA 90071

Silcon Valley Bank, a division of
First-Citizens Bank & Trust Company
1437 7th Street, Suite 300
Santa Monica, CA 90401

TriplePoint Capital LLC
2755 Sand Hill Rd.
Suite 150
Menlo Park, CA 94025

David Poitras
BG Law
21650 Oxnard Street
Suite 500
Woodland Hills, CA 91367