RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

In re:

SYNAPSE FINANCIAL TECHNOLOGIES, INC.,

　　　　Debtor and Debtor in Possession.

Case No.: 1:24-bk-10646-MB

Chapter 11

**SUPPLEMENTAL DECLARATION OF SANKAET PATHAK IN SUPPORT OF BIDDING PROCEDURES MOTION AND SALE MOTION**

Date:　April 26, 2024
Time:　10:30 a.m.
Place:　Courtroom 303
　　　　21041 Burbank Boulevard
　　　　Woodland Hills, CA 91367

I, Sankaet Pathak, hereby declare as follows:

1.　I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.　I am the Founder and Chief Executive Officer of Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case ("Debtor").

3.　In my capacity as the Founder and CEO of the Debtor, I have access to the Debtor's books and records and am familiar with the organization, operations and financial condition of the Debtor. Any records and documents referred to in this declaration constitute

1

writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own review and knowledge of the Debtor's books and records, and my own knowledge of the Debtor's efforts to raise additional capital and market and sell the Debtor's assets as a going concern over the course of the past six+ months.

4.    I make this supplemental declaration in support of the following emergency first-day motions (each a "Motion" and, collectively, the "Motions"):

    a.    Debtor's Emergency Motion For An Order (A) Approving Bidding Procedures With Respect To The Transfer And Sale Of Substantially All Of The Debtor's Assets, (B) Approving Bidding Protections For The Stalking Horse Bidder, (C) Approving Procedures Related To The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, (D) Approving The Form And Manner Of Notices Related To The Auction And Sale, (E) Scheduling The Sale Hearing, And (F) Granting Related Relief (the "Bidding Procedures Motion"); and

    b.    Debtor's Emergency Motion For An Order (A) Approving Sale Of Substantially All Of The Debtor's Assets Free And Clear Of All Liens, Claims, Interests And Encumbrances; (B) Approving Assumption And Assignment Of Unexpired Leases And Executory Contracts; (C) Waiving The 14-Day Stay Periods Of Bankruptcy Rules 6004(h) And 6006(d); And (D) Granting Related Relief (the "Sale Motion").

5.    Unless otherwise stated with specificity or implied by context, capitalized defined terms used in this declaration have the same meanings as attributed to them in the Motions.

6.    The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") on April 22, 2024 (the "Petition Date"). The Debtor is operating its business, managing its financial affairs and administering its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7.    The Debtor was founded by me as "Synapse Payments LLC" in 2014 and changed its name, pursuant to its conversion to a corporation, to "Synapse Financial Technologies, Inc." in 2016. The Debtor is a technology and software company with a mission to ensure that everyone around the world has access to best-in-class financial products,

2

regardless of their net worth. The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as "End Users" to avoid confusing them with the fintechs which are the Debtor's only customers) through the Debtor's relationships with bank partners and other financial service providers (referred to as "Partner Financial Institutions").

8. The Debtor is one of the first, if not *the* first, tech company to pioneer a Banking as a Service (BaaS) platform to allow for the provision of Partner Financial Institutions financial products (*e.g.,* bank accounts, card products, cash management accounts and related services, and loan products) to the customers of the fintechs (*i.e.,* the End Users). The Debtor, a non-bank, has in place certain agreements with Partner Financial Institutions to enable the provision of financial products through the Debtor's software and technology services. The fintechs provide the user interface in which End Users access the products of the Partner Financial Institution through the Debtor's software.

9. The Debtor's primary assets consist of its cash on hand (which, as of the Petition Date, is approximately $2 million) and its proprietary technology platform, customer agreements, and equity interests in its subsidiaries, which, are proposed to be sold for total cash consideration of $9.7 million. In addition, the Debtor has reached a settlement agreement with Evolve which has agreed to pay $2 million to the estate, and has substantial causes of action against Mercury Technologies, Inc. and possibly other third parties from which the Debtor expects that it will recover substantial funds. These recoveries are expected to serve as the primary sources of recovery for unsecured creditors in this case.

10. Additional background information is included in my declaration filed on April 22, 2024, at Docket No. 12 (the "April 22, 2024 Declaration").

11. Pre-petition, the Debtor determined that it needed to explore investment, restructuring and sale options, and, in that regard, around the Spring of 2022, the Debtor engaged William Blair as its investment banker to solicit proposals for the infusion of capital.

12. William Blair conducted an extensive investor outreach, and I understand that as of November 2023, William Blair had contacted 98 potential investors (primarily strategic investors, but also potential sponsors), including TabaPay (i.e., Buyer), there were three potential investors that had been reviewing pre-NDA materials, there were 28 potential investors that had executed non-disclosure agreements and/or received invites/access to a virtual data room that was populated with material and information provided by the Debtor, there had been approximately ten phone calls scheduled and held with potential investors, and 43 potential investors contacted had passed on the opportunity.

13. At that time, there were open requests pending from engaged parties, including Buyer, and the Debtor was responding to numerous information requests from William Blair and potential investors in connection with potential investors' due diligence questions. The level of engagement of potential investors varied, and while William Blair's efforts produced several proposals, including an initial offer from Buyer, around December 2023, the Debtor determined that it needed to replace William Blair, and sought to engage Jefferies LLC ("Jefferies") as the Debtor's investment banker.

14. I sought to engage Jefferies to conduct a reach-out to potential buyers of the Debtor's assets as a going concern, and as of February 2024, Jefferies had reached out to approximately 93 parties (many of which had previously been contacted by William Blair) to gauge such parties' interest in a transaction. I understand that one party (Buyer) demonstrated high interest in engaging with the Debtor, and three other parties demonstrated some interest (though lower than Buyer), and 89 parties passed on the opportunity.

15. In connection with the Debtor's efforts to sell its assets as a going-concern, the Debtor received two other non-binding proposals (other than that from Buyer) in November 2023 and December 2023.

16. One of the non-binding proposals provided for the acquisition of 100% of the equity interests in the Debtor on a debt-free/cash-free basis where the Debtor would receive stock in the acquiring entity. Another non-binding proposal also involved the acquisition of

1 | 100% of the equity interests in the Debtor. The above offers did not provide cash necessary to pay off the Debtor's secured lenders and ultimately no formal biding proposals were achieved.

17. The Debtor focused its efforts on engaging in further discussions with Buyer, and over the course of the past approximately five months, the Debtor and Buyer engaged in intensive negotiations, due diligence activities and the preparation of transaction documents including the APA. The sale of the Debtor's assets has been a complex, time-intensive process that has involved extensive, time-consuming and heavily-negotiated and documented terms and conditions.

18. The Debtor made every effort to finalize the terms and conditions of a sale to Buyer, file a bankruptcy case, and conduct a post-petition, further, marketing process after the filing of a bankruptcy case, as soon as possible, but the Debtor's business is complex, and a sale transaction involving the Debtor's assets, programs with Partner Financial Institutions, and the transition thereof to a buyer, will be, and has been time intensive and complicated. Indeed, the Debtor's and Buyer's respective representatives have spent significant time engaging in due diligence activities, addressing program reconciliation matters, and ultimately arriving at an agreement, which contains a number of conditions precedent to closing, including Court approval of the Debtor's settlement agreement with Evolve Bank & Trust, which settlement agreement the Debtor negotiated prior to the bankruptcy filing.

19. On April 19, 2024, the Debtor and Buyer executed the Asset Purchase Agreement attached as **Exhibit 9** to my April 22, 2024 Declaration. On April 22, 2024, the Debtor filed this bankruptcy case and the Bidding Procedures Motion and requested that the Court approve the Bidding Procedures on an expedited basis, and schedule an emergency hearing on the Sale Motion for April 29, 2024, so that the sale could close by April 30, 2024. The Debtor requested such expedited relief not only because the APA contains as a condition that the "Initial Closing" occur by April 30, 2024, but also because the Debtor is quickly running out of cash, and every day that passes that the sale is not approved and does not close, means there will be less cash available for the bankruptcy estate.

5

20. While there is no assurance that the proposed sale to Buyer will actually close, the best chance this estate has of preserving as much cash as possible is by virtue of a sale as soon as possible, because otherwise, every day that passes that the Debtor continues to operate its business in the ordinary course (a requirement of the APA), the Debtor will lose additional money. The Debtor's cash position and projected revenue are very tenuous and uncertain as demonstrated by my concurrently filed declaration which provides updated cash collateral budgets (prepared on a cash basis) and additional information regarding the Debtor's expected revenue, expenses and cash positions over the coming weeks. For example, I believe that it is very speculative and there is high risk that such revenue may be delayed or collected in smaller amounts than set forth in the cash collateral budgets, which will impair the Debtor's ability to fund its expenses which are not speculative. Indeed, there is no way of knowing exactly when and what portion of revenue projected in the budgets will actually be collected. An expedited sale closing will reduce revenue risk and the risk that the Debtor runs out of cash prior to the closing of a sale. Accordingly, the Debtor requests that the Court schedule a sale hearing as soon as possible and in a timeline that allows for the sale to close by May 10, 2024 which would require a sale hearing and entry of a sale order by no later than May 9, 2024.

21. Additionally, not only will delay harm the estate by reducing available cash (and potentially jeopardizing the Debtor's ability to close a transaction if the Debtor is unable to continue to operate), I do not believe that there will be any benefit gained by providing an additional extended period of time to market the Debtor's assets. I do not anticipate that there will be any overbids given the marketing and sale process already conducted, and I do not expect that, even if the Debtor had sufficient cash to continue to operate for a material period of time (such, as for example, another four-eight weeks), that such additional time would bring forth a higher and better offer (or any meaningful offer at all) for the Debtor's assets. However, to the extent that there is a qualified overbidder that can quickly close, the Debtor has proposed

a process pursuant to which an auction could be held and such an overbidder could provide an overbid.[1]

22. The proposed Bidding Procedures and bid protections which the Debtor negotiated with the Stalking Horse Bidder and which the Debtor is requesting the Court to approve are attached to the proposed Bidding Procedures Order which is attached as **Exhibit 5** to my April 22, 2024 Declaration.

23. The Debtor proposes, subject to reviewing and discussing with Buyer, to modify the Bidding Procedures originally proposed with the following modified timeline:

| May 8, 2024 at 5 p.m. (prevailing Pacific time) | Deadline by when all prospective overbidders must do all of the following:<br>1. Submit a redlined version of the Asset Purchase Agreement indicating all changes that are requested to be made to the Asset Purchase Agreement along with a proposed purchase price or overbid;<br>2. Submit all documents to enable the Debtor to determine whether the proposed bidder is financially qualified to participate in the Auction; and<br>3. Submit a deposit equal to 10% of the cash portion of the purchase price in the Alternative APA, which deposit would be deemed non-refundable if the overbidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court. |
|---|---|
| May 9, 2024 | Auction to be held concurrently with the Sale Hearing |
| May 9, 2024 | Sale Hearing to be conducted before the |

---

[1] The Debtor was contacted by a potential overbidder on April 25, 2024 which potential overbidder has indicated it would be willing and able to present a competitive bid along the timeline originally proposed.

7

|  |  |
|---|---|
|  | Bankruptcy Court for the Bankruptcy Court to approve the Debtor's sale of the Purchased Assets to the winning bidder at the Auction (the "Sale Hearing"). |
| **May 10, 2024** | Outside date by when the Winning Bidder at the Auction is required to close its purchase of all the Purchased Assets other than Debtor's equity interests in the Broker-Dealer Subsidiary and the State Lender Licensing Subsidiary unless the Winning Bidder and the Debtor jointly agree to extend this outside closing date (the "Initial Closing"). |

24. In connection with such a timeline, the Debtor proposes to file and serve on all creditors of the Debtor and its non-debtor subsidiaries, prospective overbidders and other parties in interest, its Proposed Sale Notice (see **Exhibit 6** to my April 22, 2024 Declaration), via overnight mail and via email to the extent email addresses are known so that it is delivered no later than April 30, 2024.

25. Additionally, and similarly, the Debtor proposes to file and serve on all non-debtor counterparties, its Proposed Assignment Notice (see **Exhibit 7** to my April 22, 2024 Declaration), via overnight mail and via email to the extent email addresses are known so that it is delivered no later than April 30, 2024.

26. At the hearing held on April 24, 2024, on the Bidding Procedures Motion and various other motions, which I attended, the Court raised questions regarding whether the Debtor obtains/maintains personally identifiable information. The Debtor does receive and maintains personally identifiable information in connection with the products and services it offers. The Debtor also has a privacy policy that can be viewed here: https://synapsefi.com/privacy. The Debtor's privacy policy does not appear to contain a policy prohibiting the transfer of personally identifiable information about individuals to a purchaser of the Debtor's assets. In fact, the Debtor's privacy policy specifically discloses in the "How We Share Your Personal Data" section that the Debtor "may share the information that [the

8

Main Document    Page 9 of 11

Debtor collects] about [individuals]…to any other person or entity as part of any business or asset sale, equity transaction, merger, acquisition or in preparation for any of these events." The Debtor's privacy policy does contain various provisions alerting individuals of their various rights including under certain circumstances to direct a business to stop selling "Personal Information" but the Debtor's privacy policy does not appear to contain a prohibition on the transfer of, and expressly contemplates the provision of personal information in connection with, an asset sale.

27. Additionally, at the hearing on April 24, 2024, the Court asked about the amount of general unsecured debt of the Debtor. We are dedicating an enormous amount of time and resources to prepare and file Schedules D, E, F and G, and will make every effort to file them prior to the April 26, 2024 hearing at 10:30 a.m. but it is possible that we will not be able to do so until after the hearing. We estimate that as of the Petition Date, the Debtor had approximately $4.25 million of unsecured debt. We estimate that rejection of any executory contracts and unexpired leases which are not assumed and assigned to Buyer will increase the total amount of unsecured debt against the estate, including potentially approximately $1.7 million of rejection damages claims (some of which may be entitled to priority treatment) in connection with the rejection of pre-petition retention agreements between the Debtor and its employees providing for, among other things, certain bonuses. To the extent the Buyer does not designate such agreements for assumption and assignment, such agreements, along with virtually all other agreements that are not assumed and assigned to the Buyer, will be rejected by the Debtor pursuant to separate motion, and counterparties may assert rejection damages claims in connection therewith. Additionally, certain customers may assert claims for rebates/other payments they believe they are entitled to receive, but which they have not received/may no receive as a result of the Debtor itself not having received such payments from its Partners Financial Institutions. While the Debtor does not believe that such customers are entitled to allowed claims against the Debtor, it is possible that some customers may file such claims against the Debtor (which the Debtor would dispute). Finally, the Debtor is engaged in litigation with Mercury, and to the extent Mercury obtains an allowed claim against the Debtor,

that claim would be a general unsecured claim and would impact the estimate of total general unsecured claims provided above².

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 21ˢᵗ day of April 2024.

_____
SANKAET PATHAK

---

² Additionally, recoveries to general unsecured claims in this case will depend on a number of factors, including, without limitation, the amount of administrative claims against the estate, the timing of any sale, whether a sale closes, and other factors.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A True And Correct Copy Of The Foregoing Document Entitled (*Specify*): **SUPPLEMENTAL DECLARATION OF SANKAET PATHAK IN SUPPORT OF BIDDING PROCEDURES MOTION AND SALE MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **April 25, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyg.com
- Russell Clementson    russell.clementson@usdoj.gov
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- Lance N Jurich    ljurich@loeb.com, pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
- Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
- Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
- Krikor J Meshefejian    kjm@lnbyg.com
- David M Poitras    dpoitras@bg.law, ecf@bg.law
- Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
- Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

**2**. **SERVED BY UNITED STATES MAIL**: On (*date*) **April 25, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3**. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **April 25, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service by **OVERNIGHT MAIL/FEDEX** information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 25, 2024 | Krikor J. Meshefejian | /s/ Krikor J. Meshefejian |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**