RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com

Proposed Attorneys for Debtor and Debtor in Possession

**FILED & ENTERED**

**APR 26 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION

**CHANGES MADE BY COURT**

| | |
|---|---|
| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>Debtor and Debtor in Possession. | Case No.: 1:24-bk-10646-MB<br><br>Chapter 11<br><br>**INTERIM ORDER: (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**<br><br>Date:    April 24, 2024 at 2:00 p.m.<br>           April 26, 2024 at 10:30 a.m.<br>Time:    2:00 p.m.<br>Place:    Courtroom 303<br>           21041 Burbank Boulevard<br>           Woodland Hills, CA 91367 |

An interim hearing ("Interim Hearing") was held on April 24, 2024, at 2:00 p.m. and on April 26, 2024 at 10:30 a.m., before the Honorable Martin R. Barash in Courtroom 303 located at 21041 Burbank Blvd., Woodland Hills, CA 91367, for the Court to consider the motion ("Motion") brought on an emergency basis by Synapse Financial Technologies, Inc., the chapter

1

11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case ("Debtor"), pursuant to Local Bankruptcy Rules 2081-1 and 9075-1, 11 U.S.C. §§ 105(a), 361, 363, 549, and 1108 and Rule 6003 of the Federal Rules of Bankruptcy Procedure, for the entry of an interim order ("Interim Order") and for the entry of a final order ("Final Order" and with the Interim Order, the "Financing Orders") following a final hearing, which provide for, among other things:

(a)    authorization for the Debtor's use of cash collateral, as such term is defined in 11 U.S.C. § 363(a), in accordance with the Debtor's 18-week cash flow forecast ("Budget") which sets forth all projected cash receipts and cash disbursements following the Petition Date including the honoring of certain pre-petition obligations to customers and banking partners in the ordinary course of its business, subject to the Budget Variances (as defined below), attached as **Exhibit 2** to the Omnibus Declaration of Sankaet Pathak filed in support of the Motion, and all future budgets, and in accordance with the terms and conditions set forth in the Financing Orders, as applicable;

(b)    in addition to all the existing security interests and liens previously granted to Silicon Valley Bank, a division of First-Citizens Bank & Trust Company (successor by purchase to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bridge Bank, N.A. (as successor to Silicon Valley Bank)) ("SVB"), and TriplePoint Capital LLC ("TriplePoint" and with SVB, collectively, the "Secured Creditors"), as adequate protection for, and to secure the payment of an amount equal to the diminution of the value of the prepetition collateral to the fullest extent authorized under the Bankruptcy Code and applicable case law interpreting the same, and as an inducement for the Secured Creditors to permit the Debtor's use of the cash collateral as provided for in this Interim Order, the Secured Creditors are hereby granted the following adequate protection (the "Adequate Protection Obligations"), pursuant to sections 361, 362, 363, and 507 of the Bankruptcy Code:

(i)    continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "Adequate Protection Liens") all prepetition and postpetition tangible and intangible

2

property and assets, whether real or personal of the Debtor, including, without limitation, all assets and property pledged under the Prepetition Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts, and all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, shares, contract claims, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), any other choses in action, books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products, and substitutions, if any, of any of the foregoing, and subject to entry of the Final Order, the Adequate Protection Collateral shall include the proceeds of any recoveries by the Debtor, by settlement or otherwise, in respect of claims or causes of action to which the Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of a debtor or the estate of a debtor under chapter 5 of the Bankruptcy Code (the "Adequate Protection Collateral"); provided, that Adequate Protection Collateral shall also include the economic value of the proceeds of any sale or other disposition of, and any other proceeds or products of Adequate Protection Collateral;

(ii)    allowed superpriority administrative expense claims in the Debtor's bankruptcy case and any successor cases (the "Adequate Protection Superpriority Claim") with priority over all other administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a),

507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code except Court costs and quarterly fees owed to the United States Trustee;

(c)    authorizing the Debtor to honor certain pre-petition obligations to customers and banking partners which are due in the ordinary course of business, as reflected in the Budget, subject to the Budget Variances;

(d)    instructing and ordering all banks holding or in possession of the Debtor's funds to immediately release such funds to the Debtor to enable the Debtor to transfer and deposit such funds into its debtor in possession bank accounts at SVB irrespective of any pre-petition agreements, including, without limitation, any deposit account control agreements[1];

(e)    pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the scheduling of an interim hearing (the "Interim Hearing") on the Motion for this Court to consider entry of the Interim Order;

(f)    the scheduling of a final hearing (the "Final Hearing") on the Motion no later than the twenty-first (21st) day following the entry of the Interim Order to consider entry of a Final Order granting the relief requested in the Motion on a final basis; and

(g)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of the Interim Order.

The Court having considered the Motion, the Omnibus Declaration of Sankaek Pathak ("Omnibus Declaration"), the Declaration of Monica Y. Kim, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and notice of the Motion and the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014; and the Interim Hearing having been held and concluded; and it appearing that granting the relief requested in the Motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing, and is otherwise fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and is essential for the preservation of the value of the Debtor's assets; and all

---

[1] Concurrently herewith, the Debtor has also filed an emergency motion seeking relief with respect to their pre-petition cash management system.

objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**IT IS FOUND AND DETERMINED THAT:**[3]

A.     **Commencement of Chapter 11 Case**.  On April 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with this Court. The Debtor is continuing to operate its business as a debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

B.     **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334 and General Order No. 13-05 from the United States District Court for the Central District of California, and over the persons and property affected hereby.  Venue for the Debtor's bankruptcy case and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

C.     **Notice**.  Notice of the Interim Hearing and the Motion has been provided by the Debtor to (i) the U.S. Trustee for the Central District of California (the "UST"), (ii) the Internal Revenue Service, (iii) the Debtor's twenty (20) largest unsecured creditors (excluding insiders), (iv) counsel to the Secured Creditors, and (v) all other known holders of prepetition liens, encumbrances or security interests against the Debtor's property, and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the Interim Hearing and the Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (d), and the Local Bankruptcy Rules.

---

[3]     The findings and conclusions set forth herein constitute the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    **Debtor's Stipulations**.    After consultation with its attorneys, and without prejudice to the rights of parties-in-interest as set forth in paragraph 15 herein, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees as follows:

(i)    **SVB Secured Loan**.  As of the Petition Date, pursuant to that certain *Loan and Security Agreement*, dated as of February 19, 2021 among the Debtor and SVB (as amended, supplemented, or otherwise modified, the "SVB Loan Agreement" and, together with all other agreements, documents and instruments executed and/or delivered in connection therewith, as all of the same have been amended, supplemented, or otherwise modified at any time prior to the Petition Date, the "SVB Loan Documents"), the Debtor was indebted and liable, without defense, counterclaim, or offset of any kind, to SVB in the aggregate principal amount of not less than $1,513,472.83 (the "SVB Facility").  All obligations of the Debtor arising under the SVB Loan Agreement or any other SVB Loan Documents, including under the SVB Facility, shall hereinafter be referred to collectively as the "SVB Loan Obligations".

(ii)    **SVB Liens**.  As set forth more fully in the SVB Loan Agreement and the Motion, prior to the Petition Date, to secure the SVB Loan Obligations, the Debtor granted to SVB first priority liens (the "SVB Liens") on substantially all of the Debtor's assets, including, but not limited to, all goods, accounts, equipment, inventory, products and proceeds of intellectual property, contract rights, leases, general intangibles, commercial tort claims, cash, deposit accounts and letters of credit (collectively, the "SVB Collateral").

(iii)    **SVB Additional Stipulations**.  The Debtor acknowledges that as of the Petition Date, (a) the SVB Liens on the SVB Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, SVB for fair consideration and reasonably equivalent value, (b) the SVB Liens were senior in priority over any and all other liens on the SVB Collateral, subject only to certain liens senior by operation of law (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), or otherwise permitted by the SVB Loan Agreement (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the SVB Liens as of the Petition Date), (c) the SVB Loan Obligations constitute legal, valid,

6

binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of

the SVB Loan Agreement, (d) no offsets, recoupments, challenges, objections, defenses, claims,

or counterclaims of any kind or nature to any of the SVB Liens or SVB Loan Obligations exist,

and no portion of the SVB Liens or SVB Loan Obligations is subject to any challenge or defense

including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable

or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (e) the Debtor

and its estate have no claims, objections, challenges, causes of action, and/or choses in action,

including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law

equivalents or actions for recovery or disgorgement, against SVB or any of its affiliates, agents,

attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or

related to the SVB Facility, (f) the Debtor has waived, discharged, and released any right to

challenge any of the SVB Loan Obligations, the priority of the Debtor's obligations thereunder,

and the validity, extent, and priority of the liens securing the SVB Loan Obligations, and (g) the

SVB Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and

506 of the Bankruptcy Code.

(iv)    **TPC Secured Loan.** As of the Petition Date, pursuant to that certain *Plain English Growth Capital Loan and Security Agreement*, dated on or about July 29, 2022 among Borrower and TriplePoint Capital LLC ("TPC") (as amended, supplemented, or otherwise modified, the "TPC Loan Agreement" and, together with all other agreements, documents and instruments executed and/or delivered in connection therewith, as all of the same have been amended, supplemented, or otherwise modified at any time prior to the Petition Date, the "TPC Loan Documents"), the Debtor was indebted and liable, without defense, counterclaim, or offset of any kind, to TPC in the aggregate amount of not less than $6,722,496.81 (the "TPC Facility"). All obligations of the Debtor arising under the TPC Loan Agreement or any other TPC Loan Documents, including under the TPC Facility, shall hereinafter be referred to collectively as the "TPC Loan Obligations".

(v)    **TPC Liens**. As set forth more fully in the TPC Loan Agreement and the Motion, prior to the Petition Date, to secure the TPC Loan Obligations, the Debtor granted to TPC

7

ny-2678585

first priority liens (the "TPC Liens"), subject to the SVB Liens, on substantially all of the Debtor's assets, including, but not limited to, all goods, accounts, equipment, inventory, products and proceeds of intellectual property, contract rights, leases, general intangibles, commercial tort claims, cash, deposit accounts and letters of credit (collectively, the "TPC Collateral").

(vi)    **TPC Additional Stipulations**.  The Debtor acknowledges that as of the Petition Date, (a) the TPC Liens on the TPC Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, TPC for fair consideration and reasonably equivalent value, (b) the TPC Liens were senior in priority over any and all other liens on the TPC Collateral, subject only to the SVB Liens and certain other liens senior by operation of law (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) or otherwise permitted by the TPC Loan Agreement (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the TPC Liens as of the Petition Date), (c) the TPC Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the TPC Loan Agreement, (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the TPC Liens or TPC Loan Obligations exist, and no portion of the TPC Liens or TPC Loan Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (e) the Debtor and its estate have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of TPC or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the TPC Facility, (f) the Debtor has waived, discharged, and released any right to challenge any of the TPC Loan Obligations, the priority of the Debtor' obligations thereunder, and the validity, extent, and priority of the liens securing the TPC Loan Obligations, and (g) the TPC Loan Obligations

8

1    constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy

2    Code.

3          (vii)    **Subordination Agreement**.  That certain *Subordination Agreement*, dated

4    as of July 29, 2022 between SVB and TPC (as amended, modified, and in effect from time to

5    time, the "Subordination Agreement"), which governs, among other things, the relative priorities

6    of the SVB Liens and the TPC Liens (the "Prepetition Liens") in respect of the SVB Collateral

7    and the TPC Collateral (the "Prepetition Collateral") is binding and enforceable against the Debtor

8    and the Secured Creditors in accordance with its terms, and the Debtor and the Secured Creditors

9    are not entitled to take any action that would be contrary to the provisions thereof.

10   Notwithstanding anything to the contrary contained in this Interim Order, any right that may be

11   exercised, or action taken, by a Prepetition Lender under the terms of this Interim Order shall be

12   expressly subject to the terms of the Subordination Agreement and shall not be taken by the

13   Prepetition Lender if such exercise or action would violate the terms of the Subordination

14   Agreement.

15         (viii)    **No Claims**.  The Debtor has no valid claims (as such term is defined in

16   section 101(5) of the Bankruptcy Code) or causes of action against the Secured Creditors with

17   respect to the SVB Loan Documents or the TPC Loan Documents (together, the "Prepetition Loan

18   Documents"), the SVB Loan Obligations or the TPC Loan Obligations (together, the "Prepetition

19   Loan Obligations"), the SVB Facility or the TPC Facility (together, the "Prepetition Facilities"),

20   the Prepetition Liens, any prior financing transactions, or otherwise, whether arising at law or at

21   equity, including, without limitation, any challenge, recharacterization, subordination, avoidance,

22   or other claims arising under or pursuant to sections 105, 510, 541, or 542 through 553, inclusive,

23   of the Bankruptcy Code.

24         (ix)    **Release**.  The Debtor, for itself and on behalf of its successors, assigns,

25   agents, attorneys, officers, directors, partners, relatives, executors, administrators, shareholders,

26   subsidiaries, other affiliates and representatives (in their representative capacities, the foregoing

27   individuals and entities herein referred to as the "**Releasors**"), hereby stipulates and agree that

28   they forever, unconditionally and irrevocably release, discharge and acquit the Secured Creditors

and each of their respective predecessors, successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys, and agents, past, present, and future, and their respective heirs, predecessors, successors, and assigns (collectively, the "<u>Releasees</u>") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions, and causes of action of any and every kind whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the Prepetition Facilities, the Prepetition Loan Documents, and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection, or avoidability of the liens or claims of the Secured Creditors.  The Debtor, on behalf of itself and the Releasors, further waive and release any defense, right of counterclaim, right of set-off, or deduction to the payment of the Prepetition Loan Obligations which the Debtor now has or may claim to have, directly or indirectly against the Releasees, arising out of, connected with or relating to any and all acts, omissions, or events occurring prior to the Court entering this Interim Order.  The Debtor acknowledges that it is its intention, on behalf of itself and the Releasors, to effect a general release as provided in California Civil Code § 1542, and the Debtor specifically waives the protections of California Civil Code § 1542, which reads as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

ny-2678585

The Debtor, on behalf of itself and the Releasors, expressly waives and releases any right or benefit which it or they might now or in the future have under California Civil Code § 1542 (or any other laws of similar effect) to the fullest extent that such rights or benefits may be lawfully waived and released.  The Debtor, on behalf of itself and the Releasors, acknowledges that it may hereafter discover facts different from the facts now known or believed by the Debtor and/or the Releasors to be true with respect to the matters covered by this release, and agrees that this release nevertheless will be binding on the Debtor and the Releasors and remain in full force and effect.

(x)    **No Control**.  The Secured Creditors do not control the Debtor or its properties or operations, do not have authority to determine the manner in which any of the Debtor's operations are conducted, and are not control persons or insiders of the Debtor or any of its affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the Prepetition Facilities, and/or the Prepetition Loan Documents.

(xi)    **Cash Collateral**.  Any and all of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, whether subject to control agreements or otherwise, and any amount generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, whether existing on the Petition Date or thereafter, constitutes the Cash Collateral of the Secured Creditors.

E.    **Need for Use of Cash Collateral**.  An immediate need exists for the Debtor to obtain access to the Cash Collateral in order to continue operations, to fund payroll and operating expenses, and to administer and preserve the value of its estate pending the Final Hearing.  The ability of the Debtor to operate by using Cash Collateral on an interim basis is vital to the preservation and maintenance of the going concern value of the Debtor's estate, to maximize the value of the Debtor's assets for the benefit of their creditors, and to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors.

F.    **Good Cause for Immediate Entry**.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  In particular, the authorization granted herein for the Debtor to continue using Cash Collateral is necessary to avoid

11

ny-2678585

immediate and irreparable harm to the Debtor and its estate.  Entry of this Interim Order is in the best interests of the Debtor, its estate, and creditors.  The terms of the Debtor's use of Cash Collateral as set forth in this Interim Order are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

G.    **Arm's-Length Negotiation; Good Faith**.  The Debtor and the Secured Creditors have negotiated the terms and conditions of this Interim Order in good faith and at arm's-length.  The terms of the use of the Cash Collateral pursuant to this Interim Order shall be, and hereby are, deemed to have been extended and made, as the case may be, in "good faith" and at arm's-length among the Debtor and the Secured Creditors, and pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Secured Creditors are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under Bankruptcy Code section 363(m).

H.    **Good Cause**.  The ability of the Debtor to continue to use Cash Collateral is vital to the Debtor, its estate, creditors, and other parties in interest.  The liquidity to be provided through the use of the Cash Collateral will enable the Debtor to continue to operate their business in the ordinary course and preserve the value of its business.  The Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors, as its implementation will, among other things, allow for the sustained operation of the Debtor's existing businesses and further enhance the Debtor's prospects for a successful restructuring.

I.    **Adequate Protection**.  The Secured Creditors are entitled to adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to Bankruptcy Code sections 361 and 363.  Based on the Motion, all evidence submitted in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the Debtor's prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided*, that nothing in this Interim Order shall prejudice, limit, or otherwise impair the rights of the Secured Creditors to seek new,

different, or additional adequate protection (or the Debtor's rights to object to such new, different, or additional adequate protection).

J.  **Immediate And Irreparable Harm**.  The Court hereby specifically finds, in accordance with Bankruptcy Rule 6003, that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

**NOW, THEREFORE,** based upon the foregoing findings, and upon consideration of the Motion and the record made before this Court with respect to the Motion, all evidence submitted in support of the Motion, and the record created during the Interim Hearing, and with the consent of the Debtor and the Secured Creditors to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND DECREED:**

1.  **Motion Granted**.  The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived, or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.  **Authorization to Use Cash Collateral**.  Subject to the terms of this Interim Order, the Debtor is hereby authorized to continue to use Cash Collateral from and after the Petition Date until the earlier to occur of (a) April 30, 2024, and (c) the Termination Date (as defined herein), only for the purposes specifically set forth in the Prepetition Loan Documents and this Interim Order and in strict compliance with the Budget (as defined herein), subject to the "Budget Variances" (as defined in paragraph 7 below) permitted by this Interim Order.  Except as expressly provided herein including paragraphs 10 and 11 below, the Debtor shall be immediately prohibited from using the Cash Collateral from and after the Termination Date.  Notwithstanding anything to the contrary herein, nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order and in accordance with the Budget (as defined herein).

13

3.     **Adequate Protection**.  In addition to all the existing security interests and liens previously granted to the Secured Creditors, as adequate protection for, and to secure the payment of an amount equal to the diminution of the value of the Prepetition Collateral to the fullest extent authorized under the Bankruptcy Code and applicable case law interpreting the same, and as an inducement for the Secured Creditors to permit the Debtor's use of the Cash Collateral as provided for in this Interim Order, the Secured Creditors are hereby granted the following adequate protection (the "Adequate Protection Obligations"), pursuant to sections 361, 362, 363, and 507 of the Bankruptcy Code:

(i)     continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "Adequate Protection Liens") all prepetition and postpetition tangible and intangible property and assets, whether real or personal of the Debtor, including, without limitation, all assets and property pledged under the Prepetition Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts, and all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, shares, contract claims, commercial tort claims and claims that may constitute commercial tort claims (known and unknown), any other choses in action, books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products, and substitutions, if any, of any of the foregoing, and subject to entry of the Final Order, the Adequate Protection Collateral shall include the proceeds of any recoveries by the Debtor, by settlement or otherwise, in respect of claims or causes of action to which the Debtor may be entitled to

14

assert by reason of any avoidance or other power vested in or on behalf of a debtor or the estate of a debtor under chapter 5 of the Bankruptcy Code (the "Adequate Protection Collateral"); provided, that Adequate Protection Collateral shall also include the economic value of the proceeds of any sale or other disposition of, and any other proceeds or products of Adequate Protection Collateral;

(ii)    allowed superpriority administrative expense claims in the Debtor's bankruptcy case and any successor cases (the "Adequate Protection Superpriority Claim") with priority over all other administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code except Court costs and quarterly fees owed to the United States Trustee;

(iii)    payment of interest on the SVB Loan Obligations at the contractual, non-default rate that would otherwise be applicable under the SVB Loan Documents, which interest shall be payable monthly in cash and otherwise in accordance with the terms of the SVB Loan Documents, and payment of interest on the TPC Loan Obligations at the contractual, non-default rate that would otherwise be payable under the TriplePoint Loan Documents, which interest shall be payable beginning on May 7, 2024 in cash and otherwise in accordance with the terms of TPC Loan Documents solely in the event TriplePoint has not received the sum of $7,199,624,29 on or prior to May 6, 2024; and

(iv)    payment to SVB in cash within five (5) business days of receipt all reasonable and documented legal fees and out-of-pocket expenses incurred in connection with the Chapter 11 Case, whether arising before or after the Petition Date.  Such fees and expenses through the date of entry of the Interim Order shall be paid in cash upon entry of the Interim Order; and

(v)    beginning on May 7, 2024, and solely in the event TriplePoint has not received the sum of $7,199,624,29 on or prior to May 6, 2024, payment to TriplePoint in

cash within five (5) business days of receipt all reasonable and documented legal fees and out-of-pocket expenses incurred in connection with the Chapter 11 Case, whether arising before or after the Petition Date. The invoices for SVB's and TriplePoint's fees and expenses shall not be required to comply with any UST guidelines related to the payment of fees and expenses of retained estate professionals, may be in summary form only, and shall not be subject to application or allowance by the Court.

4.    **Priority of Adequate Protection Liens**. The Adequate Protection Liens shall be first priority perfected security interests, liens, and mortgages on all Adequate Protection Collateral to the extent such Adequate Protection Collateral was not subject to valid, perfected, enforceable, and non-avoidable security interests, liens, or mortgages in existence on Petition Date, including the Prepetition Liens (the "Prior Permitted Liens"). The Adequate Protection Liens shall be junior security interests, liens and mortgages on all Adequate Protection Collateral that was subject to a Prior Permitted Lien in existence on the Petition Date; provided, that the Adequate Protection Liens shall be subject only to the Prior Permitted Liens. Other than as set forth herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Debtor's bankruptcy case or any successor cases, and shall be valid and enforceable against any trustee appointed in the Debtor's bankruptcy case or any successor cases, or upon the dismissal of the Debtor's bankruptcy case or any successor case. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

5.    **Validity of Adequate Protection Obligations**. The Adequate Protection Obligations shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms thereof. The Adequate Protection Liens as approved under this Interim Order shall become effective on an interim basis upon entry of this Interim Order and on a final basis upon entry of the Final Order. No obligation, payment, transfer, or grant of security interest or lien under this Interim Order or the Final Order shall be voided, voidable, or

16

recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.  The Debtor shall not consent to relief from the automatic stay by any person or entity other than the Secured Creditors to proceed against any Adequate Protection Collateral without the express written consent of Secured Creditors.

6.      **Postpetition Lien Perfection**.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, the Secured Creditors may, in their sole discretion, file such financing statements, mortgages, notices of liens, and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Debtor's bankruptcy case.  The Debtor shall execute and deliver to the Secured Creditors all such financing statements, mortgages, notices, and other documents as the Secured Creditors may reasonably request to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, the Adequate Protection Liens granted pursuant hereto.  The Secured Creditors, in their sole discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Interim Order.  To the extent required, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the Debtor to grant the liens and security interests to the Secured Creditors contemplated by this Interim Order.

17

7.    **Budget**.    The budget annexed hereto as **Exhibit A** (as it may be updated periodically in accordance with this Interim Order, the "Budget"), is hereby approved.  Beginning on the second Friday following the Petition Date, and then no later than the Friday of each subsequent calendar week, the Debtor shall deliver to the Secured Creditors an updated, proposed Budget (each, a "Proposed Budget") for the following 13-week period, which shall be in form and substance satisfactory to the Secured Creditors.  A Proposed Budget shall become the new Budget upon approval by the Secured Creditors (which must be in writing, including via email).  If the Secured Creditors reject or fail to approve a Proposed Budget, the prior approved budget shall continue in place and shall govern and the parties shall negotiate in good faith regarding the terms of the Proposed Budget.  The Debtor shall not permit the percentage variance with respect to (a) projected receipts in each then-current Budget to exceed (i) 12.5% on an individual basis of actual receipts for a specific line item and (ii) 10% on an aggregate basis of total actual receipts, in each case, on a cumulative four-week rolling basis, and (b) projected disbursements in each then-current Budget to exceed (i) 12.5% on an individual basis of actual disbursements for a specific line item and (ii) 10% on an aggregate basis of total actual disbursements (collectively, the "Budget Variances"; all references in this Interim Order to "Budget" shall mean the Budget as it is subject to the Budget Variances).  The Debtor shall also deliver with each updated Budget a variance report reflecting on a line item and an aggregate basis, the Debtor's actual unrestricted cash receipts and cash disbursements compared to the Budget for such immediately preceding week and for the period commencing on the Petition Date through and including the end of the week immediately preceding the date of the variance report; and such variance report shall be in form and substance satisfactory to the Secured Creditors and certified as complete and accurate by a responsible officer to the responsible officer's reasonable belief.

8.    **Cash Management**.    The Debtor shall maintain their cash management arrangements in a manner consistent with that described in the motion seeking entry of an order authorizing the Debtor to maintain its existing cash management system, which order shall be in form and substance acceptable to the Secured Creditors, unless directed otherwise by the Court or the UST.

9.      **Protection of Secured Creditors' Rights**.  A "Termination Event" means: (i) the Debtor shall violate the terms of this Interim Order, including without limitation, failing to make any adequate protection payment required pursuant to Paragraph 3 above; (ii) (a) the relief granted in this Interim Order has not been approved, on a final basis, on or before the date that is 35 days after the Petition Date, (b) the Debtor has not filed a motion seeking to sell all or substantially all of the Debtor's assets to Tabapay or its designee ("Buyer"), in a form and substance acceptable to the Secured Creditors in all respects within two (2) business days after the Petition Date, or (c) the Court shall not have entered an order, in a form and substance acceptable to the Secured Creditors in all respects, approving the sale to the Buyer by May 6, 2024; (iii) this Interim Order ceasing to be in full force and effect for any reason (except to the extent superseded by the Final Order in form and substance acceptable to the Secured Creditors in their sole and absolute discretion); (iv) Debtor shall file, propose, or support confirmation of a chapter 11 plan that is not reasonably acceptable to SVB; (v) the Debtor shall file, propose, or support any sale process for, or sell, a material portion of their assets without the prior written consent of SVB; (vi) the Debtor investigates, asserts, or prosecutes (x) any claims or causes of action against any of the Secured Creditors arising under or related to the Prepetition Loan Documents, or (y) any Challenge (as defined herein) or raise any defenses to the Prepetition Loan Obligations.

10.      **Additional Rights Upon Termination Event**.  Subject to the provisions of paragraph 11 below, upon the occurrence and during the continuance of a Termination Event, unless such Termination Event is waived by the SVB or unless the Court orders otherwise, SVB may declare (a) all Adequate Protection Obligations and Prepetition Loan Obligations immediately due and owing, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Debtor, whereupon all Adequate Protection Obligations and Prepetition Loan Obligations shall be immediately due and payable; and (b) that the Debtor shall have no right to use any Cash Collateral, except (i) towards the satisfaction of the Adequate Protection Obligations and Prepetition Loan Obligations and/or (ii) as otherwise ordered by the Court. Upon the indefeasible repayment in full of the Adequate Protection

ny-2678585

Obligations (if any) and the SVB Loan Obligations, TPC shall be permitted to exercise its rights

pursuant to subsections (a) and (b) above in accordance with the Subordination Agreement.

11.    **Notice of Termination Event; Exercise of Remedies**.  Five (5) business days

after the delivery by a Prepetition Lender to the Debtor and its counsel of a written notice (the

"Remedies Notice"), which may be via email or otherwise, of the occurrence of a Termination

Event (such date, the "Termination Date"), the Secured Creditors may seek relief from the

automatic stay from the Court on an emergency or expedited bases (and the Debtor hereby consent

to the emergency and expedited nature of such request) to exercise all rights and remedies

available under applicable non-bankruptcy law or the Prepetition Loan Documents with respect

to the Adequate Protection Collateral (to the extent of the Adequate Protection Obligations) and

the Prepetition Collateral; *provided*, *however*, that within five (5) business days after the delivery

of the Remedies Notice, the Debtor may seek authority to use Cash Collateral from the Court on

an emergency or expedited bases and the Debtor may use Cash Collateral solely to fund expenses

critically necessary to preserve the value of the Debtor's business subject to the Budget.  Within

two (2) business days after the delivery of the Remedies Notice, the Debtor shall provide a line-

by-line itemization of the Budget to the Secured Creditors as of the date of the Remedies Notice.

12.    **Modifications of Prepetition Loan Documents**.  The Debtor and the Secured

Creditors are hereby authorized to implement, in accordance with the terms of the Prepetition

Loan Documents, any modifications to the Prepetition Loan Documents (other than to this Interim

Order) that are not materially adverse to the Debtor's estate or creditors without further notice,

motion, or application to, order of, or hearing before this Court.  Any material modification or

amendment to the Prepetition Loan Documents shall only be permitted pursuant to an order of

this Court (which may be sought on an expedited basis), *provided*, *however*, that any forbearance

from, or waiver of the following shall not require an order of this Court: (a) a breach by the Debtor

of a covenant, representation or any other agreement relating to the use of Cash Collateral or (b)

a Termination Event.

13.    **Waiver of Requirement to File Proofs of Claim**.  The Secured Creditors shall

not be required to file proofs of claim in the Debtor's bankruptcy case or any successor cases in

order to maintain their respective claims for payment of the obligations under their respective Prepetition Loan Documents.

14. **Payment of Compensation**. Nothing herein shall be construed to obligate the Secured Creditors to pay any professional fees or to assure that the Debtor has sufficient funds on hand to pay any professional fees. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtor or shall affect the right of the Secured Creditors to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget.

15. **Effect of Stipulations**.

(i) **Generally**. The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph D of this Interim Order (collectively, the "Prepetition Lien and Claim Stipulations") are and shall be binding on the Debtor. In addition, the Prepetition Lien and Claim Stipulations shall be binding on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including any statutory committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtor, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (a) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph) challenging the Prepetition Lien and Claim Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than the date that is sixty (60) days after the date of entry of this Interim Order (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time with the consent of the Debtor and the affected Prepetition Lender (which written consent may be via email), and (b) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 11 trustee

21

is appointed or the Debtor's bankruptcy case is converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Debtor's bankruptcy case to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause, and (2) if a statutory committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of such committee in such Challenge.

(ii)    **Binding Effect**.    To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Stipulations shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Debtor's case, and their successors and assigns, and in any successor cases for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtor's estate.    Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (i) above except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (i) above, and only as to the parties to such Challenge.    To the extent any such Challenge proceeding is timely and properly commenced, the Secured Creditors shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Loan Documents in defending themselves in any such proceeding as adequate protection.    If any such Challenge is timely commenced and/or sustained, the stipulations contained in Paragraph D shall nonetheless remain binding on the Debtor's estate and all parties

22

in interest, except to the extent that such stipulations were expressly challenged in such Challenge, and only as to the parties to such Challenge. Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any statutory committee, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, any Challenges, without prior express Court approval.

16.    **Limitation on Charging Expenses Against Collateral**. Subject to entry of the Final Order, (i) no costs or expenses of administration of the Debtor's case, any successor case or any other future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code shall be charged against or recovered from the Adequate Protection Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or equity, and (ii) the Debtor (and any successor thereto, including any representatives thereof, including any trustee appointed in these Chapter 11 Cases or any successor cases) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the Secured Creditors, the Adequate Protection Collateral or the Prepetition Collateral. Nothing contained in this Interim Order shall be deemed a consent by the Secured Creditors to any charge, lien, assessment, or claim against, or in respect of, the Adequate Protection Collateral or the Prepetition Collateral under 506(c) of the Bankruptcy Code or otherwise.

17.    **Carve-Out**. Notwithstanding anything to the contrary in this Interim Order, any Prepetition Lien, Adequate Protection Lien, Prepetition Loan Obligations, Adequate Protection Superiority Claim, or Adequate Protection Obligations are subject and subordinate to a carve out for the payment of the following (the "**Carve-Out**"): (A) all fees required to be paid pursuant to the Clerk of the Court and to the UST under section 1930(a) of title 28 of the United States Code prior to or after delivery by SVB of a Remedies Notice plus interest at the statutory rate, plus (B) all reasonable and documented fees and expenses of the Debtor's bankruptcy counsel and financial advisors incurred prior to a Termination Event and allowed under section 330 of the Bankruptcy Code, but not to exceed the line item for such fees and expenses in the Budget, plus (C) all reasonable fees and expenses up to $250,000 of counsel to the Debtor or any official

ny-2678585

committee that are incurred after a Termination Event and allowed under section 330 of the Bankruptcy Code, plus (D) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code.

18.    **Limitations on the Use of Prepetition Collateral, Cash Collateral, and Carve-Out**.  The Prepetition Collateral, Cash Collateral, and any Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type (i) adverse to the interests of the Secured Creditors, or their rights and remedies under the Prepetition Loan Documents, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any official committee of unsecured creditors appointed in the Debtor's case in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition Obligations or Adequate Protection Obligations, (ii) for monetary, injunctive or other affirmative relief against the Secured Creditors, or (iii) preventing, hindering, or otherwise delaying the exercise by the Secured Creditors of any rights and remedies under this Interim Order, the Prepetition Loan Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court, or otherwise) by the Secured Creditors upon any of the Prepetition Collateral; (b) so long as the Prepetition Loan Obligations are outstanding, to make any distribution under a plan of reorganization in the Debtor's bankruptcy case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the Secured Creditors, except as contemplated by the Budget or approved by the Court; (d) to object to, contest, or interfere with in any way the Secured Creditors' enforcement or realization upon any of the Prepetition Collateral, as applicable, once an Event of Default has occurred; (e) so long as the Prepetition Loan Obligations are outstanding, to use or seek to use any insurance proceeds constituting Prepetition Collateral without the prior written consent of the Secured Creditors; (f) so long as the

ny-2678585

Prepetition Loan Obligations are outstanding, to incur indebtedness outside the ordinary course of business without the prior written consent of the Secured Creditors; (g) to object to or challenge in any way the claims, security interests, liens, or other interests (including interests in the Prepetition Collateral) held by or on behalf of the Secured Creditors; (h) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Secured Creditors; (i) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations, the Adequate Protection Obligations, or any other rights or interests of the Secured Creditors; or (j) to prevent (or attempt to prevent), hinder, or otherwise delay the exercise by the Secured Creditors of any rights and remedies granted under this Interim Order; *provided*, that any official committee of unsecured creditors appointed in the Debtor's case may use up to $25,000 (in the aggregate) in connection with the investigation (including discovery proceedings), initiation, or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Secured Creditors.

19.    **Payments Free and Clear**.  Any and all payments or proceeds remitted to the Secured Creditors pursuant to the provisions of this Interim Order or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment, or other liability, including without limitation, subject to the entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.  No payments authorized by this Interim Order shall be subject to recharacterization, avoidance, subordination, or disgorgement.

20.    **No Marshaling / Applications of Proceeds**.  Subject to entry of the Final Order, the Secured Creditors shall not be subject to the equitable doctrine of 'marshaling' or any other similar doctrine with respect to any of the Adequate Protection Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim

25

Order and the Prepetition Loan Documents notwithstanding any other agreement or provision to the contrary.

21.      **Section 552(b)**.  The Secured Creditors shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Secured Creditors in any respect.

22.      **Limitation of Liability**.  Nothing in this Interim Order or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Creditors, or any of their successors or predecessors, of any liability for any claims arising from the prepetition or postpetition activities of the Debtor or any affiliate of the Debtor.

23.      **Indemnification**.  The Debtor shall indemnify and hold harmless the Secured Creditors and their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors, and assigns in accordance with the Prepetition Loan Documents, which indemnification is hereby authorized and approved; *provided*, that the Secured Creditors shall not be indemnified with respect to any judgment in favor of the Debtor's estate in any timely and properly commenced Challenge proceeding where such judgment has become a final judgment that is not subject to any further review or appeal.

24.      **Credit Bidding**.  Each Prepetition Lender shall have the unqualified right to credit bid (a) up to the full amount of its Adequate Protection Obligations and Prepetition Loan Obligations in any sale of the Prepetition Collateral (or any part thereof), and (b) any unpaid amounts due and owing to such Prepetition Lender under this Interim Order, without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; *provided that* with respect to a credit bid submitted by TPC, TPC's right to credit bid is subject to the indefeasible repayment in full in cash of the SVB Loan Obligations in accordance with the Subordination Agreement.

25.    **Monitoring of Collateral**. During normal business hours and after advanced written notice to the Debtor's counsel (email shall suffice), the Secured Creditors, and their representatives, consultants and advisors, shall be given reasonable access to the Debtor's books, records, assets, and properties for purposes of monitoring the Debtor's business and the value of the Adequate Protection Collateral.

26.    **No Third Party Rights**.  This Interim Order does not create any rights for the benefit of any party, creditor, equity holder, or other entity other than the Secured Creditors and the Debtor, and their respective successors and assigns.

27.    **Rights Preserved**.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Secured Creditors' right to seek any other or supplemental relief in respect of the Debtor, including the right to seek new, different, or additional adequate protection, as applicable. Nothing contained in this Interim Order shall be deemed a finding by the Court or an acknowledgement by the Secured Creditors that the adequate protection granted in this Interim Order does in fact adequately protect the Secured Creditors against any diminution in value of the Prepetition Collateral.

28.    **Reversal or Modification on Appeal**.  The reversal or modification on appeal of a grant of priority or a lien under this Interim Order shall not affect the validity of any priority or lien so granted to the Secured Creditors under this Interim Order.

29.    **Binding Nature of Order**.  The provision**s** of this Interim Order shall be binding upon the Debtor and its successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of the Debtor's estate or with respect to their property).

30.    **Survival of Order**.  Solely with respect to the Secured Creditors, the provisions of this Interim Order and any actions taken pursuant hereto (a) shall survive the entry of any order: (i) confirming any plan of restructuring in the Debtor's case; (ii) converting the Debtor's case to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissing the Debtor's bankruptcy case; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the

ny-2678585

claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until (x) all of the Adequate Protection Obligations are indefeasibly paid or otherwise satisfied in full and discharged in accordance with this Interim Order and (y) the obligations owed to the Secured Creditors are indefeasibly paid or otherwise satisfied in full.  The Adequate Protection Obligations shall not be discharged by the entry of any order confirming any plan in the Debtor's case that does not provide for payment in full of the Adequate Protection Obligations or such other treatment of the Adequate Protection Obligations as may be agreed to by the Secured Creditors.

31.    **Priority of Terms**.  To the extent of any conflict between or among the Motion, the terms of any "first day" orders (including any provisions contained in such orders authorizing the Debtor to make any payments), and this Interim Order, the terms and provisions of this Interim Order (including the provisions hereof relating to the Budget) shall govern.

32.    **Disposition of Collateral**.  The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Adequate Protection Collateral without an order of the Court or the prior written consent of the Secured Creditors (and no such consent shall be implied, from any other action, inaction, or acquiescence by the Secured Creditors or an order of this Court).

33.    **No Waivers or Modification of Interim Order**.  The Debtor irrevocably waives any right to seek any modification or extension of this Interim Order without the prior written consent of the Secured Creditors, and no such consent shall be implied by any other action, inaction, or acquiescence of the Secured Creditors.

34.    **Continued Hearing**.  A continued hearing to consider <u>further interim relief will be held on April 29, 2024 at 9:00 a.m.</u> ~~entry of the Final Order is scheduled for April 26, 2024 at 10:30 a.m. prevailing Pacific time at the United States Bankruptcy Court for the Central District of California.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.  Within two (2) business days following entry of this Interim Order, the Debtor shall serve, by e-mail or United States mail, first-class~~

28

1    ~~postage prepaid, notice of the entry of this Interim Order, together with copies of this Interim~~

2    ~~Order, on: (i) the parties having been given notice of the Interim Hearing, (ii) any party which has~~

3    ~~filed prior to such date a request for notices with this Court, (iii) counsel for any statutory~~

4    ~~committee, if any, (iv) the UST, (v) the Internal Revenue Service, (vi) counsel to the Secured~~

5    ~~Creditors, and (vii) the Securities and Exchange Commission~~.  Notwithstanding the terms of this

6    Interim Order, this Court is not precluded from entering a Final Order <u>(or further interim order)</u>

7    containing provisions that are inconsistent with, or contrary to any of the terms in this Interim

8    Order; *provided*, that the Secured Creditors shall have the right to terminate the use of Cash

9    Collateral if such Final Order is not acceptable to them.  In the event this Court modifies any of

10   the provisions of this Interim Order following such further hearing, such modifications shall not

11   affect the rights and priorities of Secured Creditors pursuant to this Interim Order with respect to

12   the Adequate Protection Collateral, and this Interim Order shall remain in full force and effect

13   except as specifically amended or modified at such Final Hearing~~.~~

14       35.      **Nunc Pro Tunc Effect**.  This Interim Order shall constitute findings of fact and

15   conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable

16   nunc pro tunc to the Petition Date immediately <u>as of 3:30 p.m. on April 24, 2024.</u> ~~upon execution~~

17   ~~thereof~~.

18

19       ///

20

21       ///

22

23       ///

24

25       ///

26

27       ///

28

36.    **Waiver of Stay of Effectiveness of the Interim Order**.    Notwithstanding Bankruptcy Rules 6003 and 6004 or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable as of 3:30 p.m. on April 24, 2024, ~~upon its entry~~ and there shall be no stay of execution or effectiveness of this Interim Order.

37.    **Retention of Jurisdiction**.    This Court has and will retain exclusive jurisdiction to enforce this Interim Order and over all matters, including, without limitation, disputes, relating hereto.

# # #

Date: April 26, 2024

Martin R Barash
United States Bankruptcy Judge