| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RON BENDER (SBN 143364)<br>MONICA Y. KIM (180139)<br>KRIKOR J. MESHEFEJIAN (SBN 255030)<br>LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.<br>2818 La Cienega Avenue<br>Los Angeles, California 90034<br>Telephone: (310) 229-1234; Facsimile: (310) 229-1244<br>Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com;<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Chapter 11 Debtor in Possession | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.<br><br><br>Debtor(s). | CASE NO.: 1:24-bk-10646-MB<br><br>CHAPTER: 11<br><br><br>**NOTICE OF SALE OF ESTATE PROPERTY** |
|---|---|

| **Sale Date:** 05/09/2024 | **Time:** 9:00 am |
|---|---|
| **Location:** Courtroom 303, 21041 Burbank Blvd., Woodland Hills, CA 91367 | |

**Type of Sale**:  ☒ Public   ☐ Private      **Last date to file objections**: May 7, 2024, at 5:00 p.m. PST

**Description of property to be sold**:  All of the Debtor's right, title and interest in and to all of the assets of the Debtor. Attached as Exhibit A is the Notice of Auction and Sale Hearing and related deadlines (the "Auction and Sale Notice") and attached as Exhibit 1 to the Auction and Sale Notice are the Court-approved Bidding Procedures.  The deadline to submit bids is May 8, 2024 at 5:00 p.m. PST, and the Auction and Sale hearing will take place on May 9, 2024, at 9:00 a.m. PST.

**Terms and conditions of sale**:  Free and clear of all liens, claims, encumbrances and other interests.  See Bidding Procedures attached as Exhibit 1 to the attached Auction and Sale Notice attached hereto as Exhibit A.

**Proposed sale price**: $9,700,000.00 plus additional consideration.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Overbid procedure (*if any*)**: See Bidding Procedures attached as Exhibit 1 to tthe Auction and Sale Notice attached hereto as Exhibit A.

**If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:**

Date: May 9, 2024

Time: 9:00 a.m. PST

Place:  United States Bankruptcy Court, Central District of California

       Courtroom 303 located at 21041 Burbank Blvd., Woodland

       Hills, CA 91367

See attached Auction and Sale Notice for further instructions.

**Contact person for potential bidders (*include name, address, telephone, fax and/or email address*):**

See attached Bidding Procedures.

Parties requesting additional information may contact

Levene, Neale, Bender, Yoo & Golubchik L.L.P.; Attn: Krikor J.

Meshefejian; Email: KJM@LNBYG.COM; Tel: (310) 229-1234

Date: 04/29/2024

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 2                                    **F 6004-2.NOTICE.SALE**

# EXHIBIT "A"

RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>Chapter 11 Debtor in Possession | Case No.: 1:24-bk-10646-MB<br><br>Chapter 11 Case<br><br>**NOTICE OF HEARING ON DEBTOR'S EMERGENCY MOTION FOR AN ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) APPROVING OF DEBTOR'S ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND DETERMINING CURE AMOUNTS; (C) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (D) GRANTING RELATED RELIEF**<br><br>Date:  May 9, 2024<br>Time:  9:00 a.m.<br>Place:  Courtroom 303<br>          21041 Burbank Blvd.<br>          Woodland Hills, CA 91367 |

**PLEASE TAKE NOTICE** that a hearing will be held on May 9, 2024, commencing at 9:00 a.m., at the above-referenced Courtroom, for the Court to consider approval of the motion ("Motion") filed by Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor in

possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), seeking entry of an order of the Court: (1) approving the Debtor's sale of substantially all of its assets (the "Purchased Assets") to TabaPay Holdings LLC ("Buyer") or to the highest or otherwise best overbidder or back-up bidder selected at an auction to be held on May 9, 2024 (the "Auction"), free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f); (2) approving the Debtor's assumption and assignment of certain executory contracts and unexpired leases and determining cure amounts; (3) waiving the 14-day stay periods set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and (4) granting related relief.

PLEASE TAKE FURTHER NOTICE that at a hearing held on April 29, 2024, the Bankruptcy Court approved the bidding procedures (the "Bidding Procedures") attached as **Exhibit 1** to this Notice.[1] **Creditors, equity interest holders, prospective bidders and parties in interest should carefully read the Bidding Procedures, which set forth detailed instructions, requirements and deadlines pertaining to bid qualifications, the Auction and the sale of the Purchased Assets. If you would like a copy of the Motion, Declarations in support of the Motion, the APA or any other pleadings filed in this case, please contact proposed bankruptcy counsel to the Debtor – Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Krikor J. Meshefejian, Email: KJM@LNBYG.COM; Telephone: (310) 229-1234.**

PLEASE TAKE FURTHER NOTICE that any opposition to the Motion, any relief requested in the Motion, or to the sale of the Purchased Assets as contemplated by the Sale Motion or the Debtor's assumption and assignment of contracts and leases to Buyer or another winning bidder or winning back-up bidder as contemplated in the Sale Motion, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be accompanied by all evidence the objecting party relies on in support of the objection; and (d) be filed with the clerk of the Court for the Central District of California (or filed electronically via

---

[1] Capitalized terms not otherwise defined have the same meaning provided to such terms in the Bidding Procedures.

CM/ECF with the Court) and actually received by the following parties (collectively, the "Notice Parties"): (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Ron Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com); Krikor J. Meshefejian (kjm@lnbyg.com), Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com); (ii) counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell (Robert.honeywell@klgates.com) and Brandy A. Sargent (Brandy.sargent@klgates.com); (iii) counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn:  Alexander G. Rheaume (arheaume@mofo.com); (iv) counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (A) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn: Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (B) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com); and (v) the US Trustee, Attn: Russell Clementson (Russell.Clementson@usdoj.gov), on or before **5:00 p.m. PST on May 7, 2024** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing (1) any supplemental evidence in support of the Sale Motion, (2) evidence from Buyer in support of finding that there is adequate assurance of future performance with respect to executory contracts and unexpired leases to be assumed and assigned to Buyer, and (3) a statement by the Debtor and/or Buyer of which executory contracts and unexpired leases are being assumed and assigned to Buyer and which are being rejected by the Debtor, is on or before 5:00 p.m. PST on May 8, 2024.

**PLEASE TAKE FURTHER NOTICE** that all declarants offered in support of or in opposition to the Motion must be present, in person, for cross-examination by any adverse party or questioning by the Court.  The Court may strike any declaration as to which the declarant is not present, in person at the May 9, 2024 hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that any counsel that wishes to cross-examine a declarant must be present, in person, in Court.  Any counsel that wishes to offer legal argument on the matters set forth for hearing on May 9, 2024 may participate by ZoomGov.  But only

counsel present in the courtroom may participate in the examination of a declarant.

**PLEASE TAKE FURTHER NOTICE** that the ZoomGov information for the hearing on the Motion is as follows:

Meeting URL:      https://cacb.zoomgov.com/j/1602454265

Meeting ID:       160 245 4265

Password:         747786

**PLEASE TAKE FURTHER NOTICE** that the failure of a party in interest to file and serve a timely objection to the Motion may be deemed by the Court to constitute such party's consent to all of the relief requested by the Debtor in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice, the Memorandum of Points and Authorities attached to the Motion, any Declarations filed in support of the Motion, and all Exhibits attached thereto, the entire record of the Debtor's bankruptcy case, the statements, arguments, and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court.

## Additional Information

This case was commenced April 22, 2024 (the "Petition Date") by the Debtor's filing of a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a technology company with a mission to ensure that everyone around the world has access to best-in-class financial products, regardless of their net worth. The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers ("Partner Financial Institutions").

The Debtor is one of the first, if not *the* first, tech company to pioneer a Banking as a Services (Baas) platform for fintechs and Partner Financial Institutions which have agreements

with the Debtor to efficiently interface each other to allow for transactions (*i.e.,* the buy and sell) of their financial products and services to the fintechs' end users.

Pre-petition, the Debtor determined that it needed to explore investment, restructuring and sale options, and, in that regard, around the Spring of 2022, the Debtor engaged William Blair as its investment banker to solicit proposals for the infusion of capital. The Debtor also engaged and worked with Sherwood Partners, Inc. as its financial advisor to assist generally with its financial affairs as well as to evaluate all of its options pre-petition. The Debtor later replaced William Blair and sought to engage Jefferies LLC in the Fall of 2023 to assist the Debtor with conducting a marketing process for its sale as a going concern, which the Debtor conducted over a number of months prior to the Petition Date. The Debtor received several offers for the purchase of the Debtor's assets, one of which was made by Buyer. Over the course of the past approximately five months, the Debtor and Buyer engaged in intensive negotiations due diligence activities and the preparation of transaction documents including an Asset Purchase Agreement dated April 19, 2024 (the "APA"). The sale of the Debtor's assets has been a complex, time-intensive process that has involved extensive, time-consuming and heavily-negotiated and documented terms and conditions.

On April 19, 2024, the Debtor and Buyer executed the APA pursuant to which Buyer has agreed to acquire substantially all of the Debtor's assets including the Debtor's equity interests in and to the Debtor's two non-debtor, wholly-owned subsidiaries in exchange for the cash payment of $9,700,000.00 plus other consideration as described in the APA, including Buyer's agreement to assume certain obligations and certain leases and contracts of the Debtor and pay for all cure obligations associated with the assumed leases and contracts. The sale to Buyer is subject to an expedited overbid process though the Debtor does not anticipate that there will be any overbids given the extensive marketing and sale process already conducted which has not generated any better offers due to the complexity of the Debtor's business.

The APA contemplates a three-tiered closing process, with (i) the initial closing where Buyer will acquire all "Purchased Assets" other than the Debtor's equity interests in its two

subsidiaries which the Debtor expects to occur by May 10, 2024 (defined in the APA as the "Outside Closing Date") upon the completion of certain conditions to closing, including program reconciliations, the acquisition of certain third-party consents and releases and the occurrence of certain other closing conditions, at which time the $9,700,000.00 Purchase Price will be paid; (ii) a second closing for Buyer's acquisition of the Debtor's equity in its broker-dealer subsidiary, to occur as soon as the "change of ownership or control" can be made with respect to such subsidiary pursuant to the procedures governed by FINRA[2] and the occurrence of certain program reconciliations and other closing conditions, with such closing to occur no later than May 30, 2024; and (iii) a third and final closing for Buyer's acquisition of the Debtor's equity in its lending subsidiary, to occur by April 19, 2025 (*i.e.*, the first anniversary of the date of signing of the APA) upon the acquisition of certain governmental and other third-party consents and the occurrence of certain other closing conditions. Based on the foregoing, the Debtor expects that the full Purchase Price will be funded by May 10, 2024, or shortly thereafter.

The obligation of Buyer to consummate its purchase of the Purchased Assets from Seller at each of the Initial Closing, the BD Closing and the Final Closing, as applicable, in each case, is subject to the fulfillment, or the waiver in writing by Buyer, at or prior to the applicable closing, of a number of conditions precedent (all as set forth in Article VIII of the APA).

The Debtor's primary assets consist of its cash on hand (which, as of the Petition Date, is approximately $2 million) and its proprietary technology platform, customer agreements, and equity interests in its two subsidiaries, which, as evidenced by the APA, will be sold (not including cash) for a cash payment of $9,700,000, and other consideration.  In addition, the Debtor may have causes of action against third parties from which the Debtor believes that it may recover additional funds.

The Debtor prepared, submitted to the Court, and obtained Court approval of the Bidding Procedures, which the Debtor believes provide the optimal procedures and timetable in order to

---

[2] The Debtor understands that such "change of ownership or control" can occur after approximately 30 days from the filing date of the application to transfer ownership or control with FINRA.

achieve the highest and best price for the Purchased Assets.  The Bidding Procedures explain to prospective bidders how a prospective bidder becomes qualified to participate in the Auction and how the Auction would proceed in the event that there is one or more qualified bidders.

For all of these reasons and the others set forth in the Motion, the Memorandum of Points and Authorities attached to the Motion, and the concurrently filed Declaration(s), the Debtor requests that the Court grant the Motion without delay to allow the Debtor to consummate its sale of the Purchased Assets to the Winning Bidder or the Winning Back-Up Bidder at the hearing on May 9, 2024, and immediately thereafter enter the Debtor's proposed sale order.

**WHEREFORE**, the Debtor respectfully requests that the Bankruptcy Court:

1.      Find that notice of the Motion was proper, timely, adequate, appropriate and sufficient and that no other or further notice of the Motion, the hearing on the Motion, or the sale of the Purchased Assets is or shall be required;

2.      Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Debtor's sale of the Purchased Assets;

3.      Approve the sale of the Purchased Assets to the Winning Bidder and the Winning Back-Up Bidder at the Auction free and clear of all liens, claims, encumbrances and other interests;

4.      Find that the Winning Bidder and Winning Back-Up Bidder at the Auction are good faith buyers entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code;

5.      Enter a sale order in a form that is mutually agreed to between the Debtor and the Winning Bidder and Wining Back-up Bidder;

6.      Authorize the Debtor to enter into an APA in a form that is consistent with the terms of the sale order;

7.      Waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

8.      Grant such other and further relief as the Court deems just and proper.

Dated: April 29, 2024                              LEVENE, NEALE, BENDER, YOO

& GOLUBCHIK L.L.P.


By:   */s/ Krikor J. Meshefejian*
        RON BENDER
        MONICA Y. KIM
        KRIKOR J. MESHEFEJIAN
        Proposed Attorneys for Chapter 11 Debtor
        and Debtor in Possession

**EXHIBIT 1**

# BIDDING PROCEDURES[1]

These bidding procedures (the "Bidding Procedures") relate to the proposed free and clear sale by Synapse Financial Technologies, Inc. (the "Debtor") of substantially all of its assets (except the Excluded Assets) (the "Purchased Assets") and will govern the bidding and auction (the "Auction") for the Purchased Assets.

At a hearing held before the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") in Case No. 1:24-bk-10646-MB, the Bankruptcy Court approved these Bidding Procedures, which are intended to ensure that the highest and best possible price is paid for the Purchased Assets by a purchaser who has the financial ability to close on the sale of the Purchased Assets (the "Sale"). A copy of the Bankruptcy Court order approving these Bidding Procedures, once entered, is available upon request to proposed bankruptcy counsel to the Debtor – Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Krikor J. Meshefejian, Email: KJM@LNBYG.COM; Telephone: (310) 229-1234.

The Debtor has entered into that certain Asset Purchase Agreement dated April 19, 2024 (the "Asset Purchase Agreement"), by and among the Debtor and TabaPay Holdings, LLC, a Delaware limited liability company ("Buyer" or the "Stalking Horse Bidder") pursuant to which the Debtor shall, among other things, transfer and sell to Buyer the Purchased Assets as set forth set forth in the Asset Purchase Agreement. A copy of the Asset Purchase Agreement is attached as **Exhibit 9** to the Declaration of Sankaet Pathak filed as Docket Number 12 in support of the Debtor's motion to approve the Bidding Procedures. The transaction contemplated by the Asset Purchase Agreement (the "Sale Transaction") is subject to higher and better offers as set forth in these Bidding Procedures.

## 1. Free and Clear Sale of Assets

The Debtor is offering for sale the Purchased Assets. Except as otherwise agreed to in the definitive sale documents, all of the Debtor's rights, title and interest in and to the Purchased Assets shall be sold, transferred and assigned free and clear of all Liens (as defined in the Asset Purchase Agreement) (except as otherwise set forth in the Asset Purchase Agreement) pursuant to Section 363(b) and (f) of the Bankruptcy Code, with any Liens that exist against the Purchased Assets that are not Assumed Indebtedness to attach to the proceeds of the sale with the same validity and priority as such Liens have in and to the Purchased Assets.

## 2. Stalking Horse Bidder

The Court has authorized Buyer (a) to act as the Stalking Horse Bidder in the Auction (if any) for the Purchased Assets, and (b) to receive, in the event that Buyer is not the winning bidder at the Auction and subject to the Asset Purchase Agreement, the Expense Reimbursement (as defined in the Asset Purchase Agreement) subject to a cap of $300,000 plus the Break-Up Fee of $300,000 with the Expense Reimbursement and Break-Up Fee collectively defined here as the "Stalking

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

1

Horse Bidder Fee".

**3.      Bidding Process**

The Debtor and the Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") will jointly conduct the Auction.

**4.      Key Dates for Interested Bidders**

These Bidding Procedures provide interested parties with a detailed explanation of what they need to do to participate in the Auction.

The key dates for the Auction and related free and clear asset sale process are as follows:

| | |
|---|---|
| **May 8, 2024 at 5 p.m. (prevailing Pacific time)** | Deadline by when all prospective overbidders must do all of the following:<br>1. Submit a redlined version of the Asset Purchase Agreement indicating all changes that are requested to be made to the Asset Purchase Agreement along with a proposed purchase price or overbid;<br>2. Submit all documents to enable the Debtor to determine whether the proposed bidder is financially qualified to participate in the Auction; and<br>3. Submit a deposit equal to 10% of the cash portion of the purchase price in the Alternative APA, which deposit would be deemed non-refundable if the overbidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court. |
| **May 9, 2024 at 9:00 a.m. (prevailing Pacific time)** | Auction to be held concurrently with the Sale Hearing |
| **May 9, 2024 at 9:00 a.m. (prevailing Pacific time)** | Sale Hearing to be conducted before the Bankruptcy Court for the Bankruptcy Court to approve the Debtor's sale of the Purchased Assets to the winning bidder at the Auction (the "Sale Hearing"). |
| **May 10, 2024** | Outside date by when the Winning Bidder at the Auction is required to close its purchase |

| | of all the Purchased Assets other than Debtor's equity interests in the Broker-Dealer Subsidiary and the State Lender Licensing Subsidiary unless the Winning Bidder and the Debtor jointly agree to extend this outside closing date (the "Initial Closing"). |
|---|---|
| **Subject to APA terms** | Outside date by when the Winning Bidder at the Auction is required to close its purchase of the Debtor's equity interests in the Broker-Deal Subsidiary and the State Lender Licensing Subsidiary unless the Winning bidder and the Debtor jointly agree to extend this outside closing date, *provided, however,* that the Winning Bidder shall pay the entirety of the Purchase Price for the Purchased Assets no later than the Initial Closing. |

### 5.    Due Diligence Access/Participation Requirements

To participate in the Auction process as an overbidder, a person or entity interested in purchasing the Purchased Assets (a "Potential Overbidder") must deliver or have previously delivered to the Debtor and the Consultation Parties all of the following documents (the "Participation Requirements"): (1) an executed non-disclosure agreement with the form to be obtained from the Debtor; (2) a statement demonstrating a bona fide interest in purchasing the Purchased Assets; and (3) one of the following: (i) written evidence of readily available funds equal to the Potential Overbidder's initial bid and any increase the Potential Overbidder desires to have authority to bid to, with the Debtor to keep such information completely confidential, (ii) a firm commitment for financing sufficient for the Potential Overbidder to timely consummate its purchase of the Purchased Assets, or (iii) other sufficient information, which may include current audited financial statements and the latest unaudited financial statements of the Potential Overbidder and/or its equity holders, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtor (following consultation with the Consultation Parties) to make a reasonable determination as to the Potential Overbidder's financial and other capabilities to timely consummate its purchase of the Purchased Assets. Any Potential Overbidder who has satisfied the foregoing Participation Requirements will be afforded, subject to the other provisions of these Bidding Procedures, due diligence access and additional information through access to an online data room, as well as, upon reasonable advance notice, direct communication with management as the Potential Overbidder desires and the Debtor determines to be appropriate under the circumstances and subject to the availability of such management.  For the avoidance of doubt, the Stalking Horse Bidder is deemed to have met the Participation Requirements.

### 6.    Due Diligence Limitations

The Debtor shall not be obligated to furnish any due diligence information to any Potential Overbidder after the Bid Deadline. In its discretion, the Debtor may, but shall not be obligated to, furnish additional information after the Bid Deadline to Qualified Bidders.  The Debtor reserves the right to withhold any due diligence materials from any Potential Overbidder

that the Debtor determines (following consultation with the Consultation Parties) are business-sensitive or otherwise not appropriate for disclosure to any Potential Overbidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor.

Neither the Debtor nor any of its representatives or advisors shall be obligated to furnish information of any kind whatsoever to any person or entity who is not determined to have satisfied the Participation Requirements.

### 7.    **Due Diligence from Potential Overbidders**

Each Potential Overbidder shall comply with all reasonable requests for additional information by the Debtor regarding such Potential Overbidder, including without limitation, the Potential Overbidder's financial ability to close a Sale Transaction.  The failure by a Potential Overbidder to comply with any such requests may be a basis for the Debtor to determine that such Potential Overbidder is not or cannot be a Qualified Bidder.

### 8.    **Bid Deadline for Prospective Overbidders**

The deadline for all Potential Overbidders to submit their initial bid for the Purchased Assets is **May 8, 2024, at 5:00 p.m. (prevailing Pacific time)** (the "Prospective Overbidder Bid Deadline" or "Bid Deadline").  A bid may be transmitted electronically and must be received on or before the Prospective Overbidder Bid Deadline by the following parties (collectively, the "Receiving Parties"):

(i)    the Debtor, Attn: Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com);

(ii)    counsel to the Debtor, Levene, Neale, Bender, Yoo & Golubchik L.L.P. Attn: Ron Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com) and Krikor J. Meshefejian (kjm@lnbyg.com);

(iii)    counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell (robert.honeywell@klgates.com) and Brandy A. Sargent (brandy.sargent@klgates.com);

(iv)    counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn:  Alexander G. Rheaume (arheaume@mofo.com); and

(v)    counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (a) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn: Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (b) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com).

The term "Consultation Parties" shall mean (a) Silicon Valley Bank, (b) TriplePoint Capital LLC, and (c) any official committee of unsecured creditors appointed in this chapter 11 case; provided, that if any party that submits a bid to purchase the Purchased Assets shall no longer be a Consultation Party, so long as such party's bid remains open.

A bid received after the Prospective Overbidder Bid Deadline shall not be considered unless the Debtor, for good cause and following consultation with the Consultation Parties, consents.

## 9.    Bid Requirements

To be eligible to participate in the Auction, each bid and each Potential Overbidder submitting a bid (each, an "Overbidder") must be determined by the Debtor (following consultation with the Consultation Parties) to have satisfied all of the conditions listed below (collectively, the "Bid Requirements"):

(a) **Terms**.  A bid must be accompanied by an executed Asset Purchase Agreement, as modified by the Overbidder (the "Alternative APA"), along with an electronic mark-up showing all changes to the Asset Purchase Agreement.  The form Asset Purchase Agreement in Word format can be obtained by any Potential Overbidder from LNBYG.  The Alternative APA must include binding, executed transaction documents, be signed by an authorized representative of the Overbidder and shall be on substantially the same terms as the Asset Purchase Agreement.

(b) **Minimum Overbid**.  The proposed purchase price to be paid for the Purchased Assets must (i) be in an amount at least $100,000 more than the Cash Purchase Price contained in the Asset Purchase Agreement, plus (ii) include the amount of the Stalking Horse Bidder Fee (the "Minimum Overbid").  Without limiting the generality of the foregoing, a bid (i) may not contain representation or warranties, conditions precedent, covenants, or termination rights materially more onerous to the Debtor in the aggregate than are set forth in the Asset Purchase Agreement, as determined by the Debtor (following consultation with the Consultation Parties), (ii) may not be conditioned upon obtaining financing, or any internal, regulatory, or other third party approvals more onerous than are set forth in the Asset Purchase Agreement, or on the outcome or review of due diligence, (iii) may not provide for a closing date/closing dates that will be later than those set forth in the Asset Purchase Agreement, unless both the Debtor (following consultation with the Consultation Parties) and the winning bidder jointly agree to extend the sale closing date(s) at their sole and absolute discretion, and (iv) may not be conditioned upon the Bankruptcy Court order approving the sale becoming a "final order" and must instead agree that the sale may be consummated immediately upon entry of an order pursuant to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

(c) **Irrevocable**.  A bid must state that such offer is binding and irrevocable until the conclusion of the Sale Hearing (defined below) and such bid must continue to remain binding and irrevocable through the sale closing if the bid or any other higher bid submitted at the Auction is accepted by the Debtor at the Auction as the Winning Bid (defined below) or the Winning Back-Up Bid (defined below) and approved by the Bankruptcy Court at the Sale Hearing.

(d) **Identity of Bidder**.  A bid must fully disclose the following information (collectively, "Identifying Information"): (A) each entity or person that will be bidding for or purchasing the Purchased Assets; (B) all material equity holders (i.e., parties that own

at least 10% of the equity of the Overbidder) in the case of an Overbidder that is an entity; (C) any entity that will be financing or otherwise participating in connection with such bid, and the complete terms of any such financing or participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid; (D) any connection with or participation by any "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtor or any relative or any affiliate of any "insider" of the Debtor; and (E) any connection with or participation by any current creditor or equity holder of the Debtor or the Stalking Horse Bidder. A bid must also fully disclose, to the extent such bid includes the acquisition of the equity of S Credit and/or S Brokerage, any provisions in such bid for any internal, regulatory, or other third-party approvals, that may be required for a change in control of such subsidiary or subsidiaries (collectively, "Third Party Approvals").

(e) **Contact Information**.  A bid must include the names and contact information (including phone numbers and email addresses) of all authorized representatives of the Overbidder who will be available to answer questions regarding the bid, including advisors and related parties.

(f) **Deposit**.  A bid must include a good-faith deposit in immediately available funds equal to the sum of: (i) the Stalking Horse Bidder Fee (defined above) and (ii) ten percent (10%) of the cash portion of the purchase price in the Alternative APA (the sum of (i) and (ii), the "Deposit").  If an Overbidder elects to increase the amount of its bid at the Auction, neither the Overbidder nor the Stalking Horse Bidder will be required to increase the amount of its Deposit.  If a bid is determined to be the Winning Bid at the Auction and the Overbidder who submitted such bid fails to timely close the sale after approval by the Bankruptcy Court at the Sale Hearing, the Deposit shall become non-refundable and be forfeited to the Debtor.  The same shall apply to the Stalking Horse Bidder (subject to the provisions in the APA for the forfeiture of the "Deposit" as defined therein) if determined to be Winning Back-Up Bidders, and any other Winning Back-Up Bidder in the event (a) the Winning Bidder fails to timely close the Sale, (b) the Winning Back-Up Bidder is notified in writing that it is now the Winning Bidder, and (c) the Winning Back-Up Bidder fails to close its purchase by the Outside Closing Date set forth in the applicable Asset Purchase Agreement unless such Winning Back-Up Bidder and the Debtor jointly agree to extend the applicable sale closing date.  All Deposits of all Qualified Bidders shall be held in an account maintained by LNBYG and shall be returned (other than with respect to the Winning Bidder and the Winning Back-Up Bidder) promptly after the conclusion of the Auction, subject to the return conditions set forth in the applicable Asset Purchase Agreement or Alternative APA submitted with such bids.

(g) **Financing Sources**.  A bid must contain written evidence of available funds or a firm irrevocable commitment for financing sufficient to consummate the proposed sale with appropriate contact information for such financing sources, with the Debtor (following consultation with the Consultation Parties) to determine whether such evidence of financing satisfies these Bidding Procedures and enables the Overbidder to participate in the Auction, with such determination to be in the Debtor's sole and absolute discretion and reasonably acceptable to each of the Consultation Parties.

(h) ***Designation of Assigned Contracts and Leases.*** Subject to the ability of the Debtor to obtain an order of the Bankruptcy Court approving of the Debtor's assumption and assignment of any executory contract or unexpired lease to the Winning Bidder, a bid must include an initial list of all of the Debtor's executory contracts and unexpired leases with respect to which the Overbidder seeks assumption and assignment from the Debtor (including without limitation any Debtor contracts or leases to which the Debtor's non-debtor subsidiaries are also parties).

(i) ***Designation of Assumed Liabilities***. A bid must identify all liabilities that the Overbidder proposes to assume.

(j) ***No Breakup Fee***. A bid must not request or entitle the Overbidder to receive any fee analogous to the Stalking Horse Bidder Fee, any termination fee, transaction or breakup fee, expense reimbursement or similar fee or payment. For the avoidance of doubt, by submitting a bid, the Overbidder agrees that it shall not be entitled to any such fee and waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its bid or its participation in the Auction.

Each person or entity that submits a bid shall be deemed to have consented to the Debtor making the contents of such bid public, including in filings in the Court.

**10. <u>Qualified Bidders and Bids</u>**

Potential Overbidders who have satisfied the Participation Requirements and Bid Requirements will be deemed "<u>Qualified Bidders</u>," and bids that meet all of the Bid Requirements described above will be deemed "<u>Qualified Bids</u>," in each case, only if the Debtor (following consultation with the Consultation Parties) concludes in the exercise of its business judgment, that such bid would be consummated if selected as the Winning Bid; <u>provided</u>, <u>however</u>, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtor to its satisfaction, the Debtor (following consultation with the Consultation Parties) shall have the right, in their sole and absolute discretion, to disqualify any Qualified Bidder and Qualified Bid, and such Bidder shall not be entitled to attend or otherwise participate in the Auction. For the avoidance of doubt, the Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse Bidder's bid, as set forth in the Asset Purchase Agreement, is a Qualified Bid, and each bid received from the Stalking Horse Bidder at the Auction that complies with the Bidding Procedures shall be a Qualified Bid.

**11.    <u>Notice of Qualified Bids</u>**

As soon as practicable following the Bid Deadline, the Debtor (following consultation with the Consultation Parties) shall identify to all Qualified Bidders: (a) each and every bid that the Debtor considers to be a Qualified Bid and (b) if more than one Qualified Bid has been timely received, the Qualified Bid that will constitute the "<u>Initial Bid</u>" at the Auction (which must equal at least the Minimum Overbid) and the bidding order in which the Auction will be conducted.

**12.    <u>No Auction if Only One Qualified Bid</u>**

If, by the Bid Deadline, the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor (following consultation with the Consultation Parties) shall not conduct an Auction and the Stalking Horse Bidder will be deemed the Winning Bidder and its bid the Winning Bid. If this occurs, the Debtor shall proceed to request at the Sale Hearing that the Court approve the transfer and sale of the Purchased Assets to the Stalking Horse Bidder in accordance with Buyer's Asset Purchase Agreement and request that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

**13.    <u>Auction</u>**

If by the Bid Deadline, more than one Qualified Bid has been received by the Debtor, the Debtor will conduct the Auction with all Qualified Bidders. The Auction will be held concurrently with the Sale Hearing in the United States Bankruptcy Court for the Central District of California – San Fernando Valley Division, with virtual participation permitted.

**14.    <u>Participation in and Attendance at Auction</u>**

The Auction will occur at the Sale Hearing, which is a public hearing.

**15.    <u>Consent to Jurisdiction, No Collusion and Good Faith Bona Fide Offer</u>**

All Qualified Bidders shall be deemed to have consented to the exclusive and core jurisdiction of the Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the transfer and sale of the Purchased Assets, and any other matter relating to, or contemplated by, Buyer's Asset Purchase Agreement and any Alternative APA.  Any and all disputes related to the Auction shall be determined solely by the Bankruptcy Court.  Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding or with any other bidder or prospective bidder; (ii) its bid is a good-faith *bona fide* offer; (iii) it intends to consummate the proposed transaction if selected as the Winning Bidder; and (iv) it acknowledges that, if chosen, it will serve as the Winning Back-Up Bidder.

**16.    Initial Bid at the Auction**

The bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted by the Bid Deadline, as determined by the Debtor (following consultation with the Consultation Parties). Each subsequent bid shall be in increments of no less than $100,000 and by figures which are wholly divisible by $100,000. The Debtor will notify all Qualified Bidders and the Consultation Parties in advance of the Auction which bid has been accepted as the Initial Bid at the Auction and the order in which the bidding at the Auction will proceed.

**17.    Conducting the Auction**

The Debtor and LNBYG will direct and preside over the Auction. At the start of the Auction, and after each Qualified Bidder acknowledges on the record that (i) it has not engaged in any collusion with respect to the bidding, (ii) that its bid is a good faith bona fide offer, and (iii) that it intends to consummate the proposed transaction if selected as the Winning Bidder or the Winning Back-Up Bidder, the Debtor and LNBYG will identify, confirm and describe the Initial Bid. The bidding will then ensue in the bidding order provided by the Debtor to all Qualified Bidders in advance of the Auction. All bidding after the Initial Bid shall continue in bidding increments of at least $100,000 or figures that are wholly divisible by $100,000. All bids will be made and received in one room (or otherwise in the presence via Zoom, Webex or similar virtual means of all parties), on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the Identifying Information of each bidder and the material terms of each Qualified Bid (including any Third Party Approvals) will be fully disclosed to all Qualified Bidders before the Auction, and all successive bids made at the Auction, will be fully disclosed to all Qualified Bidders. All Qualified Bidders will be permitted to bid at the Auction based on what the Debtor and LNBYG (following consultation with the Consultation Parties), and subject to the Court's approval at the Sale Hearing, determine to be an appropriate amount of time to respond to each prior submitted bid.

Prior to the Auction, the Debtor will randomly assign to each Qualified Bidder a bidder number, except that the bidder whose bid was accepted as the Initial Bid will be assigned bidder number 1. Once the Initial Bid has been described by the Debtor and LNBYG, the bidding will then pass to bidder number 2. Bidder number 2 will have the option of submitting an overbid to the Initial Bid of at least the sum of (A) the Initial Bid (inclusive of the Stalking Horse Bidder Fee) plus (B) $100,000, or dropping out of the Auction. Once a bidder drops out of the Auction, such bidder will no longer be permitted to participate in the Auction. After bidder number 2 either submits a qualifying overbid or drops out of the Auction, the bidding will then pass to bidder number 3. This process will continue until only two Qualified Bidders are left, in which case the Qualified Bidder who submits the highest and best Qualified Bid will be deemed the Winning Bidder at the Auction, and the Qualified Bidder who submits the second highest Qualified Bid will be deemed the Winning Back-Up Bidder at the Auction.

Except as expressly provided in the Bidding Procedures Order or the provisions of these Bidding Procedures, the Debtor (following consultation with the Consultation Parties) shall have the right to conduct the Auction in the manner they reasonably determine, in the exercise of their business judgment, to be in the best interests of the Debtor's bankruptcy estate. The Debtor shall also have the right to deviate from these Bidding Procedures or announce and employ at the

Auction other procedural rules without the need for any further order of the Bankruptcy Court if the Debtor reasonably determines, in the exercise of its business judgment and following consultation with the Consultation Parties, that doing so would be in the best interests of the Debtor's bankruptcy estate and is not inconsistent with any of the provisions of the Bankruptcy Code or any previously entered order of the Bankruptcy Court including the Bidding Procedures Order.

The Debtor and LNBYG (following consultation with the Consultation Parties) may (1) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer in terms of both amount and execution risk and (2) reject at any time any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (iii) contrary to the best interests of the Debtor or its bankruptcy estate; <u>provided</u> that, the highest, best, and otherwise financially superior offer shall be the Qualified Bid at the Auction reasonably expected to result (including after taking into account execution risk) in the highest amount of money being paid to the Debtor for the purchase of the Purchased Assets.

### 18. <u>Selection of the Winning Bid and Winning Back-Up Bid</u>

The Auction shall continue until there is one Qualified Bid that the Debtor determines (following consultation with the Consultation Parties), subject to Bankruptcy Court approval, to be the highest and best bid (the "<u>Winning Bid</u>"), and another Qualified Bid to be the second highest and best bid (the "<u>Winning Back-Up Bid</u>"), at which point the Auction will be deemed concluded. The Debtor will not consider any bids submitted after the conclusion of the Auction.

Subject to the Bankruptcy Court approving the Winning Bid and entering an order approving of the Debtor's free and clear sale of the Purchased Assets to the Winning Bidder in accordance with the Asset Purchase Agreement or Alternative APA, as the case may be, submitted by the Winning Bidder (the "<u>Sale Order</u>"), the Winning Bidder shall be required to close the sale by the outside closing date set forth in such Asset Purchase Agreement or Alternative APA (unless the Debtor and the Winning Bidder jointly agree to an extension of this outside Sale closing date which will be in their sole and absolute discretion), or the Winning Bidder will be deemed to have forfeited its Deposit to the Debtor subject to the terms and conditions for such forfeiture set forth in such Asset Purchase Agreement or Alternative APA, as applicable. Promptly following the closing of the sale to the Winning Bidder, LNBYG shall return the Deposit of the Winning Back-Up Bidder to the Winning Back-Up Bidder.

If the Winning Bidder fails to close the sale of all of the Purchased Assets other than the Debtor's equity interests in S Credit and S Brokerage by the outside closing date for such initial closing (as set forth in the Asset Purchase Agreement or Alternative APA, as applicable), unless the Debtor and the Winning Bidder mutually agree in their sole and absolute discretion to extend such closing date, the Debtor shall so notify the Winning Back-Up Bidder. The Winning Back-Up Bidder will then have ten (10) days following the date of having been notified by the Debtor to close the purchase of such assets (*i.e.*, all of the Purchased Assets other than the Debtor's equity interests in S Credit and S Brokerage). If the Winning Back-Up Bidder fails to close the sale within this time period, unless the Debtor, following consultation with the Consultation Parties, and the Winning Back-Up Bidder mutually agree in their sole and absolute discretion to extend such initial closing date, the Winning Back-Up Bidder will be deemed to have forfeited

its Deposit to the Debtor subject to any conditions for such forfeiture in the applicable Asset Purchase Agreement or Alternative APA.

### 19. **Sale Hearing**

The hearing for the Bankruptcy Court to approve the outcome of the Auction and the Debtor's sale of the Purchased Assets to the Winning Bidder and to the Winning Back-Up Bidder if the Winning Bidder fails to close (the "Sale Hearing") shall be held on May 9, 2024, at 9:00 a.m., or at such other date and time set by the Bankruptcy Court.

### 20. **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the transfer and sale of the Purchased Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Winning Bid, the Winning Back-Up Bid, and/or any other matter that in any way relates to the foregoing.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A True And Correct Copy Of The Foregoing Document Entitled (*Specify*): **NOTICE OF SALE OF ESTATE PROPERTY**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
***April 29, 2024***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender     rb@lnbyg.com**
- **Russell Clementson     russell.clementson@usdoj.gov**
- **Michael G. Farag     mfarag@gibsondunn.com**
- **Steven T Gubner     sgubner@bg.law, ecf@bg.law**
- **Lance N Jurich     ljurich@loeb.com,
  pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com**
- **Monica Y Kim     myk@lnbyg.com, myk@ecf.inforuptcy.com**
- **Jeffrey C Krause     jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com**
- **Adam A Lewis     alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com**
- **Krikor J Meshefejian     kjm@lnbyg.com**
- **David M Poitras     dpoitras@bg.law**
- **Brandy A Sargent     brandy.sargent@klgates.com,
  litigation.docketing@klgates.com;janna.leasy@klgates.com**
- **Jason D Strabo     jstrabo@mwe.com, jbishopjones@mwe.com**
- **United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov**

**2. SERVED BY UNITED STATES MAIL**: On (*date*) ***April 29, 2024***, I served the following persons and/or entities at the
last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ***April 29, 2024***, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service by **OVERNIGHT MAIL/FEDEX** information continued on attached **SERVICE LISTS**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 29, 2024 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**