RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**FILED & ENTERED**

**MAY 01 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

CHANGES MADE BY COURT

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No.: 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 |
| Chapter 11 Debtor in Possession | **ORDER (A) APPROVING BIDDING PROCEDURES WITH RESPECT TO THE TRANSFER AND SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING BIDDING PROTECTIONS FOR THE STALKING HORSE BIDDER, (C) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF NOTICES RELATED TO THE AUCTION AND SALE, (E) SCHEDULING THE SALE HEARING, AND (F) GRANTING RELATED RELIEF** |
| | Date:      April 29, 2024 |
| | TIME:        9:00 a.m. |
| | PLACE:    Courtroom 303 |
| | 21041 Burbank Blvd. |
| | Woodland Hills, CA 91367 |

Upon the emergency motion (the "Motion")[1] of Synapse Financial Technologies, Inc., chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), for, among other things, entry of an order (this "Bidding Procedures Order"): (a) approving (i) the bidding and auction procedures (the "Bidding Procedures"), annexed hereto as **Exhibit A**, with respect to the following: (x) the sale, assignment and transfer of the Debtor's right, title and interest in and to substantially all of its assets (the "Purchased Assets") and (y) the assumption and assignment of certain executory contracts and unexpired leases related thereto (collectively, the "Assigned Contracts"); (ii) the payment of the Break-Up Fee and Expense Reimbursement (collectively, the "Stalking Horse Bidder Fee") to TabaPay Holdings LLC ("Buyer"), which serves as the "stalking horse bidder" (in such capacity, the "Stalking Horse Bidder") pursuant to that certain Asset Purchase Agreement dated as of April 19, 2024, by and among the Debtor and Buyer, attached as **Exhibit 9** to the Declaration of Sankaet Pathak filed by the Debtor in support of the Motion as Docket Number 12 (the "Asset Purchase Agreement"); (iii) approving procedures governing assumption and assignment (the "Assignment Procedures") of the Assigned Contracts; (iv) approving the form and manner of certain notices related to the Auction and sale of the Purchased Assets; (b) scheduling the Auction and a hearing (the "Sale Hearing") to approve the transfer and sale of the Purchased Assets, and the other transactions contemplated under the Asset Purchase Agreement (such transactions, the "Transaction"); and (c) granting related relief, all as more fully set forth in the Motion; and the Court, having reviewed the Motion and other papers and pleadings filed in connection therewith and having heard the statements in support of the relief requested therein at the hearings held before this Court on April 24, 26 and 29, 2024 (together, the "Hearing"); and due, proper and sufficient notice of the Motion having been given; and the Court, having determined that the legal and factual bases set forth in the Motion, the Declaration of Sankaet Pathak filed in support of the Motion as Docket Number 12 and the Supplemental Declaration of Sankaet Pathak filed in support of the Motion as Docket

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Number 54 and proffered at the Hearing establish just cause for the relief granted herein, and that such relief is in the best interests of the Debtor, its bankruptcy estate and its creditors; and upon all of the pleadings and proceedings before the Court; based upon the Court's oral findings and conclusions set forth on the Court's record at the hearing held on April 29, 2024, and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]**

A.    <u>Jurisdiction and Venue.</u> The Court has jurisdiction over the Motion and the transactions contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    <u>Statutory Predicates.</u> The statutory bases for the relief requested in the Motion are (i) sections 105(a), 363(b), (f), and (m), 365, 503, and 507 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), and (h), 6006(a) and (c), 9006, 9007, and 9014; and (iii) Local Bankruptcy Rules 9006-1, 9014-1 and 9075-1.

C.    <u>Notice.</u> Good and sufficient notice of the Motion and the relief sought therein has been provided to notice parties specified in the Motion, and no other or further notice is required except as set forth herein. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to all parties-in-interest.

D.    <u>Justification for Relief.</u> The Debtor has articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures; (ii) approve the Stalking Horse Bidder Fee; (iii) approve the manner and form of notice of certain matters related to the transfer and sale of the Purchased Assets; (iv) approve the Assignment Procedures and the form of the Assignment Notice; (v) set the date for the Sale Hearing; and (vi) grant such additional relief as requested in

---

[2] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. To the extent any of the following findings constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the Motion as related to the foregoing.  The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate and creditors of its estate and other parties-in-interest.

       E.      <u>Bidding Procedures.</u> The Debtor's proposed Bidding Procedures, attached hereto as **<u>Exhibit A</u>** and which are hereby approved on an interim basis, (i) are designed to maximize the value to be achieved for the Purchased Assets; (ii) will ensure a competitive and efficient bidding process; and (iii) are fair and reasonable under the circumstances.

       F.      <u>Stalking Horse Bidder Fee.</u> The Stalking Horse Bidder Fee as modified at the Hearing and set forth in the Bidding Procedures, shall be paid in accordance with the terms of this Order, and (i) if triggered, will be an actual and necessary cost and administrative expense of preserving the Debtor's estate, within the meaning of section 503(b)(1) of the Bankruptcy Code, (ii) is reasonable and appropriate, particularly in light of the size and nature of the Transaction and the efforts and costs and expenses that have been, and are continuing to be, expended by the Stalking Horse Bidder notwithstanding that the proposed transaction is subject to higher and/or better offers for the Purchased Assets, (iii) was negotiated by the parties at arms-length and in good faith, and the Stalking Horse Bidder would not have entered into the Asset Purchase Agreement in the absence of the Debtor's obligation to pay such Stalking Horse Bidder Fee if triggered, and (iv) is necessary to ensure that the Stalking Horse Bidder will continue to pursue the proposed transaction on the terms set forth in the Asset Purchase Agreement.

       G.      <u>Auction and Sale Hearing Notice.</u> The Debtor's proposed Auction and Sale Hearing Notice, attached hereto as **<u>Exhibit B</u>**, as approved and served in accordance herewith, is appropriate and reasonably calculated to provide all interested parties with timely and sufficient information that they may require about the Auction process, including: (a) announcement that the Court has approved the bidding and Auction process pursuant to the Bidding Procedures; (b) information on how to obtain a copy of the Bidding Procedures and the Bidding Procedures Order; (c) the Bid Deadline; (d) the time, date, and location of the Auction; (e) the time, date, and location of the Sale Hearing; and (f) procedures for objecting to the Auction, the Motion and the transfer and sale contemplated by the Motion. The proposed Auction and Sale Hearing Notice complies with the requirements of the Bankruptcy Rules and the Local Bankruptcy Rules.

H.     <u>Assumption and Assignment Procedures.</u> The Debtor's proposed Assignment Procedures are designed to ensure that the Debtor assumes and assigns the Assigned Contracts in accordance with section 365 of the Bankruptcy Code.

I.     <u>Assignment Notice.</u> The Debtor's proposed Assignment Notice, attached as **Exhibit C** hereto, as approved and served in accordance herewith, is reasonably calculated to provide: (1) all third-party counterparties (the "<u>Counterparties</u>") to the Assigned Contracts with proper notice of the potential assumption and assignment of such Assigned Contracts and any cure or pecuniary loss amounts relating thereto (the "<u>Cure Amount</u>"), and (2) all Counterparties to contracts and leases that will not be assumed and assigned of the rejection of such contracts and leases; and will be served on such Counterparties in accordance with paragraphs 13-19 hereof.

J.     <u>Compliance with Bankruptcy Law.</u> The Motion and this Bidding Procedures Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

**NOW THEREORE, IT IS HEREBY ORDERED THAT:**

1.     The relief requested in the Motion relating to the matters covered in this Bidding Procedures Order, is GRANTED and APPROVED as provided herein, on an interim basis. A final hearing on the Motion shall be held on May 9, 2024, at 9:00 a.m.

2.     Any and all objections and responses to the Motion relating to the matters covered in this Bidding Procedures Order that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are overruled and denied.

**Bidding Procedures**

3.     The Bidding Procedures are hereby authorized and approved in the form annexed hereto as **Exhibit A.** The Bidding Procedures shall govern the bidding process and the Auction with respect to the Purchased Assets or the sale of assets of the Debtor in addition to the Purchased Assets. The Debtor is authorized to take any and all actions necessary to implement the Bidding Procedures.

4.       The Debtors shall cause the Auction and Sale Hearing Notice to be served by, unless otherwise indicated below, overnight mail so that it is received by April 30, 2024, to the following parties: (i) all potential purchasers identified by the Debtor; (ii) the Office of the United States Trustee (the "U.S. Trustee") and any government agencies regulating the Debtor; (iii) all known creditors of the Debtor and its non-debtor subsidiaries; (iv) contract and lease counterparties; (v) any party in interest who has requested notice pursuant to Bankruptcy Rule 2002; and (v) Buyer and its counsel.

5.       If, by the Bid Deadline (i.e., May 8, 2024, at 5:00 p.m. (prevailing Pacific time)), the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor, after consultation with the Consultation Parties, shall not conduct an Auction, and the Stalking Horse Bidder will be deemed the Winning Bidder and its bid the Winning Bid. If this occurs, the Debtor shall request at the Sale Hearing that the Court approve the transfer and sale of the Purchased Assets to the Stalking Horse Bidder in accordance with the Asset Purchase Agreement and the assumption and assignment of the Assigned Contracts designated to be assumed by the Debtor and assigned to the Stalking Horse Bidder, and request that the Sale Order be entered by the Court and that the Sale Order shall become effectively immediately upon entry, notwithstanding the provisions of Rules 6004(h) and 6006(d) of the Bankruptcy Rules and Rule 62(g) of the Federal Rules of Civil Procedure.

**Stalking Horse Bidder and Stalking Horse Bidder Fee**

6.       Buyer is approved as the Stalking Horse Bidder with respect to the Auction pursuant to the Asset Purchase Agreement.

7.       The Stalking Horse Bidder Fee and the other amounts payable (in each case, to the extent payable under the Asset Purchase Agreement) in accordance with the Asset Purchase Agreement, the Bidding Procedures, and this Order are approved, authorized, and binding upon the Debtor and its estate as an administrative expense pursuant to section 503(b)(1) of the Bankruptcy Code.

8.       In accordance with, and subject to the terms of, the Asset Purchase Agreement, the Debtor is authorized and directed, without further order of this Court to pay the Stalking Horse Bidder Fee to the Stalking Horse Bidder in full in cash (by wire transfer) in conjunction with the

closing of sale to a Winning Bidder other than Buyer. <u>For the avoidance of any doubt, this fee is limited to $300,000, plus up to $300,000 in expense reimbursement.</u>

**<u>Objections</u>**

9.    Objections, if any, to the Sale Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be accompanied by all evidence the objecting party relies on in support of the objection; and (d) be filed with the clerk of the Court for the Central District of California (or filed electronically via CM/ECF with the Court) and actually received by the following parties (collectively, the "<u>Notice Parties</u>"): (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Ron Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com); Krikor J. Meshefejian (kjm@lnbyg.com), Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com); (ii) counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell (Robert.honeywell@klgates.com) and Brandy A. Sargent (Brandy.sargent@klgates.com); (iii) counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn: Alexander G. Rheaume (arheaume@mofo.com); (iv) counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (A) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn: Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (B) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com); and (v) the U.S. Trustee, Attn: Russell Clementson (Russell.clementson@usdoj.gov), **on or before 5:00 p.m. PST on May 7, 2024** (the "<u>Objection Deadline</u>").

**<u>Supplemental Evidence and Reply to Objections</u>**

10.    Supplemental evidence in support of the Sale Motion, evidence in support of a finding that there is adequate assurance of future performance with respect to Assigned Contracts, and a statement by the Debtor and/or the Stalking Horse Bidder of which executory contracts and unexpired leases are being assumed and assigned to the Stalking Horse Bidder and which are being rejected by the Debtor, must be filed with the Court and served on the U.S Trustee, secured creditors, the twenty largest unsecured creditors, any government agencies regulating the Debtor, any party that

has filed a request for notice in the case, any party that has filed an objection or other response regarding the Sale Motion, including with respect to the assumption and assignment of an executory contract or unexpired lease, by **May 8, 2024, at 5:00 p.m. PST**.

**Sale Hearing**

11.     The Sale Hearing, and the Auction (if any), shall be held before the Court on **May 9, 2024, commencing at 9:00 a.m. PST**. The Sale Hearing may be adjourned without need for any further notice by announcement of the adjourned Sale Hearing date in open Court or by filing a notice thereof as soon as reasonably practicable before the Sale Hearing date with the Court.

12.     At the Sale Hearing, the Debtor will request that the Court (a) approve the Transaction, or, if the Winning Bidder is not the Stalking Horse Bidder, the Transaction contemplated by such Winning Bid; (b) approve the Winning Bid and Winning Back-Up Bid; and (c) enter the Sale Order providing for this relief.

**Assignment Procedures**

13.     The Debtor shall file with the Court and serve, by overnight mail (postage prepaid) so that it is received by no later than April 30, 2024, on all creditors and the Counterparties (including non-debtor subsidiaries if applicable) the Assignment Notice for the Assigned Contracts to be assumed and assigned in accordance with the Asset Purchase Agreement.

14.     The Stalking Horse Bidder shall provide to the Debtor a final list of Assigned Contracts by no later than May 8, 2024, at 9:00 a.m. PST, and the Debtor shall file and serve such list of Assigned Contracts by no later than May 8, 2024, at 5:00 p.m. PST.

15.     If the Winning Bidder is not the Stalking Horse Bidder, and if such Winning Bidder and its Winning Bid includes (i) a different list of Assigned Contracts to be assumed and assigned, or (ii) different Cure Amount(s) than those listed in the Initial Assignment Notice, then the Debtor shall file and serve on the same Counterparties that were served with the Assignment Notice a pleading setting forth the changes to the Assignment Notice (the "Supplemental Assignment Notice"). The Supplemental Assignment Notice shall include, to the extent the Winning Bidder is not the Stalking Horse Bidder, a description of the Winning Bidder and a

statement as to its ability pay all required Cure Amounts and perform the Debtor's obligations under such Assigned Contracts in accordance with section 365 of the Bankruptcy Code.

16.    For the avoidance of doubt, the listing of any Assigned Contracts on the Assignment Notice or the Supplemental Assignment Notice does not require or guarantee that such agreements will be assumed and assigned, and all rights of the Debtor with respect to such agreements are reserved.

17.    Objections to any matter pertaining to the assumption and assignment of the Assigned Contracts, including without limitation as to adequate assurance of future performance or payment of the applicable Cure Amounts, must be filed with the Court no later than (a) May 7, 2024 at 5:00 p.m. (PST) (the "Initial Objection Deadline"), with respect to the Assignment Notice, and (b) up until the Sale Hearing (the "Supplemental Objection Deadline"), with respect to the Supplemental Assignment Notice. Any such objections must be served so as to be actually received by the Notice Parties and the Winning Bidder no later than the Objection Deadline or the Supplemental Objection Deadline (as applicable).

18.    To the extent that any Counterparty or other party in interest does not timely serve an objection to the Assignment Notice or Supplemental Assignment Notice as set forth above, such party shall be deemed to have (i) consented to the assumption and assignment of the applicable Assigned Contracts to the Winning Bidder; (ii) agreed that the Winning Bidder has provided adequate assurance of future performance within the meaning of sections 365(b) and (f) of the Bankruptcy Code; (iii) consented to the applicable Cure Amount; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

19.    Upon the filing of an objection by a Counterparty or other party in interest to the Assignment Notice or Supplemental Assignment Notice, the Debtor will contact the objecting party and the Winning Bidder to attempt to consensually resolve any timely filed objection. The Debtor will work with the Winning Bidder in good faith in this regard, and the Winning Bidder must consent to any increase in the proposed Cure Amount for the applicable Assigned Contract. If the Debtor and Winning Bidder are unable to resolve such an objection, such objection will be

heard at the Sale Hearing (as may be adjourned by the Court without such objecting party's consent); provided, further, that in the event an objection relates solely to a Cure Amount (a "Cure Objection"), then such objecting party will be deemed to consent to the assumption and assignment of its Assigned Contract, notwithstanding such objection.  In the event the Debtor and the Winning Bidder are unable to resolve a Cure Objection prior to the Sale Hearing, the Winning Bidder may elect not to include the applicable contract or lease in its purchase of the Purchased Assets, subject to any conditions set forth in the Asset Purchase Agreement or Alternative APA (as applicable).

**Other Matters**

20.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived, and this Bidding Procedures Order shall be effective immediately upon its entry.

21.    All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.    The Debtor is authorized to take any and all reasonable actions necessary to effectuate and implement the relief granted pursuant to this Bidding Procedures Order.

23.    The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Bidding Procedures Order.

///

///

///

///

///

24.     All declarants in favor of, and in opposition to, sale must be present in person, in court, for cross examination on May 9, 2024.  The declaration of any declarant who fails to appear in person, in court, may be stricken.  Any counsel who wishes to cross examine a declarant must be present in court to do so.  Counsel wishing only to make legal arguments may appear via Zoom.

25.     Debtor is permitted to set its motion to reject executory contracts and unexpired leases not being assumed by Buyer for May 9, 2024, at 9:00 a.m.  In such event, the deadline for opposition to the motion is to be May 7, 2024, at 5:00 p.m. prevailing Pacific Time.

# # #

Date: May 1, 2024

Martin R Barash
United States Bankruptcy Judge

# EXHIBIT A

## BIDDING PROCEDURES[3]

These bidding procedures (the "Bidding Procedures") relate to the proposed free and clear sale by Synapse Financial Technologies, Inc. (the "Debtor") of substantially all of its assets (except the Excluded Assets) (the "Purchased Assets") and will govern the bidding and auction (the "Auction") for the Purchased Assets.

At a hearing held before the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Bankruptcy Court") in Case No. 1:24-bk-10646-MB, the Bankruptcy Court approved these Bidding Procedures, which are intended to ensure that the highest and best possible price is paid for the Purchased Assets by a purchaser who has the financial ability to close on the sale of the Purchased Assets (the "Sale"). A copy of the Bankruptcy Court order approving these Bidding Procedures, once entered, is available upon request to proposed bankruptcy counsel to the Debtor – Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Krikor J. Meshefejian, Email: KJM@LNBYG.COM; Telephone: (310) 229-1234.

The Debtor has entered into that certain Asset Purchase Agreement dated April 19, 2024 (the "Asset Purchase Agreement"), by and among the Debtor and TabaPay Holdings, LLC, a Delaware limited liability company ("Buyer" or the "Stalking Horse Bidder") pursuant to which the Debtor shall, among other things, transfer and sell to Buyer the Purchased Assets as set forth set forth in the Asset Purchase Agreement. A copy of the Asset Purchase Agreement is attached as **Exhibit 9** to the Declaration of Sankaet Pathak filed as Docket Number 12 in support of the Debtor's motion to approve the Bidding Procedures. The transaction contemplated by the Asset Purchase Agreement (the "Sale Transaction") is subject to higher and better offers as set forth in these Bidding Procedures.

### 1.    Free and Clear Sale of Assets

The Debtor is offering for sale the Purchased Assets. Except as otherwise agreed to in the definitive sale documents, all of the Debtor's rights, title and interest in and to the Purchased Assets shall be sold, transferred and assigned free and clear of all Liens (as defined in the Asset Purchase Agreement) (except as otherwise set forth in the Asset Purchase Agreement) pursuant to Section 363(b) and (f) of the Bankruptcy Code, with any Liens that exist against the Purchased Assets that are not Assumed Indebtedness to attach to the proceeds of the sale with the same validity and priority as such Liens have in and to the Purchased Assets.

### 2.    Stalking Horse Bidder

The Court has authorized Buyer (a) to act as the Stalking Horse Bidder in the Auction (if any) for the Purchased Assets, and (b) to receive, in the event that Buyer is not the winning bidder at the Auction and subject to the Asset Purchase Agreement, the Expense Reimbursement (as defined

---

[3] All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

in the Asset Purchase Agreement) subject to a cap of $300,000 plus the Break-Up Fee of $300,000 with the Expense Reimbursement and Break-Up Fee collectively defined here as the "Stalking Horse Bidder Fee".

### 3.    Bidding Process

The Debtor and the Debtor's bankruptcy counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") will jointly conduct the Auction.

### 4.    Key Dates for Interested Bidders

These Bidding Procedures provide interested parties with a detailed explanation of what they need to do to participate in the Auction.

The key dates for the Auction and related free and clear asset sale process are as follows:

| | |
|---|---|
| **May 8, 2024 at 5 p.m. (prevailing Pacific time)** | Deadline by when all prospective overbidders must do all of the following:<br>1. Submit a redlined version of the Asset Purchase Agreement indicating all changes that are requested to be made to the Asset Purchase Agreement along with a proposed purchase price or overbid;<br>2. Submit all documents to enable the Debtor to determine whether the proposed bidder is financially qualified to participate in the Auction; and<br>3. Submit a deposit equal to 10% of the cash portion of the purchase price in the Alternative APA, which deposit would be deemed non-refundable if the overbidder is deemed to be the winning bidder at the Auction and then the Debtors' proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court. |
| **May 9, 2024 at 9:00 a.m. (prevailing Pacific time)** | Auction to be held concurrently with the Sale Hearing |
| **May 9, 2024 at 9:00 a.m. (prevailing Pacific time)** | Sale Hearing to be conducted before the Bankruptcy Court for the Bankruptcy Court to approve the Debtor's sale of the Purchased Assets to the winning bidder at the Auction (the "Sale Hearing"). |

| May 10, 2024 | Outside date by when the Winning Bidder at the Auction is required to close its purchase of all the Purchased Assets other than Debtor's equity interests in the Broker-Dealer Subsidiary and the State Lender Licensing Subsidiary unless the Winning Bidder and the Debtor jointly agree to extend this outside closing date (the "<u>Initial Closing</u>"). |
|---|---|
| Subject to APA terms | Outside date by when the Winning Bidder at the Auction is required to close its purchase of the Debtor's equity interests in the Broker-Deal Subsidiary and the State Lender Licensing Subsidiary unless the Winning bidder and the Debtor jointly agree to extend this outside closing date, *provided, however,* that the Winning Bidder shall pay the entirety of the Purchase Price for the Purchased Assets no later than the Initial Closing. |

## 5.    **Due Diligence Access/Participation Requirements**

To participate in the Auction process as an overbidder, a person or entity interested in purchasing the Purchased Assets (a "<u>Potential Overbidder</u>") must deliver or have previously delivered to the Debtor and the Consultation Parties all of the following documents (the "<u>Participation Requirements</u>"): (1) an executed non-disclosure agreement with the form to be obtained from the Debtor; (2) a statement demonstrating a bona fide interest in purchasing the Purchased Assets; and (3) one of the following: (i) written evidence of readily available funds equal to the Potential Overbidder's initial bid and any increase the Potential Overbidder desires to have authority to bid to, with the Debtor to keep such information completely confidential, (ii) a firm commitment for financing sufficient for the Potential Overbidder to timely consummate its purchase of the Purchased Assets, or (iii) other sufficient information, which may include current audited financial statements and the latest unaudited financial statements of the Potential Overbidder and/or its equity holders, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtor (following consultation with the Consultation Parties) to make a reasonable determination as to the Potential Overbidder's financial and other capabilities to timely consummate its purchase of the Purchased Assets. Any Potential Overbidder who has satisfied the foregoing Participation Requirements will be afforded, subject to the other provisions of these Bidding Procedures, due diligence access and additional information through access to an online data room, as well as, upon reasonable advance notice, direct communication with management as the Potential Overbidder desires and the Debtor determines to be appropriate under the circumstances and subject to the availability of such management. For the avoidance of doubt, the Stalking Horse Bidder is deemed to have met the Participation Requirements.

## 6.    **Due Diligence Limitations**

The Debtor shall not be obligated to furnish any due diligence information to any Potential Overbidder after the Bid Deadline. In its discretion, the Debtor may, but shall not be obligated to, furnish additional information after the Bid Deadline to Qualified Bidders. The

Debtor reserves the right to withhold any due diligence materials from any Potential Overbidder that the Debtor determines (following consultation with the Consultation Parties) are business-sensitive or otherwise not appropriate for disclosure to any Potential Overbidder who is a competitor of the Debtor or is affiliated with any competitor of the Debtor.

Neither the Debtor nor any of its representatives or advisors shall be obligated to furnish information of any kind whatsoever to any person or entity who is not determined to have satisfied the Participation Requirements.

**7.    Due Diligence from Potential Overbidders**

Each Potential Overbidder shall comply with all reasonable requests for additional information by the Debtor regarding such Potential Overbidder, including without limitation, the Potential Overbidder's financial ability to close a Sale Transaction. The failure by a Potential Overbidder to comply with any such requests may be a basis for the Debtor to determine that such Potential Overbidder is not or cannot be a Qualified Bidder.

**8.    Bid Deadline for Prospective Overbidders**

The deadline for all Potential Overbidders to submit their initial bid for the Purchased Assets is **May 8, 2024, at 5:00 p.m. (prevailing Pacific time)** (the "Prospective Overbidder Bid Deadline" or "Bid Deadline"). A bid may be transmitted electronically and must be received on or before the Prospective Overbidder Bid Deadline by the following parties (collectively, the "Receiving Parties"):

(i)    the Debtor, Attn: Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com);

(ii)    counsel to the Debtor, Levene, Neale, Bender, Yoo & Golubchik L.L.P. Attn: Ron Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com) and Krikor J. Meshefejian (kjm@lnbyg.com);

(iii)    counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell    (robert.honeywell@klgates.com)    and    Brandy    A.    Sargent (brandy.sargent@klgates.com);

(iv)    counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn: Alexander G. Rheaume (arheaume@mofo.com); and

(v)    counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (a) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn: Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (b) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com).

The term "Consultation Parties" shall mean (a) Silicon Valley Bank, (b) TriplePoint Capital LLC, and (c) any official committee of unsecured creditors appointed in this chapter 11 case; provided, that if any party that submits a bid to purchase the Purchased Assets shall no longer be a

Consultation Party, so long as such party's bid remains open.

A bid received after the Prospective Overbidder Bid Deadline shall not be considered unless the Debtor, for good cause and following consultation with the Consultation Parties, consents.

### 9.    Bid Requirements

To be eligible to participate in the Auction, each bid and each Potential Overbidder submitting a bid (each, an "Overbidder") must be determined by the Debtor (following consultation with the Consultation Parties) to have satisfied all of the conditions listed below (collectively, the "Bid Requirements"):

(a) **Terms**.  A bid must be accompanied by an executed Asset Purchase Agreement, as modified by the Overbidder (the "Alternative APA"), along with an electronic mark-up showing all changes to the Asset Purchase Agreement.  The form Asset Purchase Agreement in Word format can be obtained by any Potential Overbidder from LNBYG.  The Alternative APA must include binding, executed transaction documents, be signed by an authorized representative of the Overbidder and shall be on substantially the same terms as the Asset Purchase Agreement.

(b) **Minimum Overbid**.  The proposed purchase price to be paid for the Purchased Assets must (i) be in an amount at least $100,000 more than the Cash Purchase Price contained in the Asset Purchase Agreement, plus (ii) include the amount of the Stalking Horse Bidder Fee (the "Minimum Overbid").  Without limiting the generality of the foregoing, a bid (i) may not contain representation or warranties, conditions precedent, covenants, or termination rights materially more onerous to the Debtor in the aggregate than are set forth in the Asset Purchase Agreement, as determined by the Debtor (following consultation with the Consultation Parties), (ii) may not be conditioned upon obtaining financing, or any internal, regulatory, or other third party approvals more onerous than are set forth in the Asset Purchase Agreement, or on the outcome or review of due diligence, (iii) may not provide for a closing date/closing dates that will be later than those set forth in the Asset Purchase Agreement, unless both the Debtor (following consultation with the Consultation Parties) and the winning bidder jointly agree to extend the sale closing date(s) at their sole and absolute discretion, and (iv) may not be conditioned upon the Bankruptcy Court order approving the sale becoming a "final order" and must instead agree that the sale may be consummated immediately upon entry of an order pursuant to Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

(c) **Irrevocable**.  A bid must state that such offer is binding and irrevocable until the conclusion of the Sale Hearing (defined below) and such bid must continue to remain binding and irrevocable through the sale closing if the bid or any other higher bid submitted at the Auction is accepted by the Debtor at the Auction as the Winning Bid (defined below) or the Winning Back-Up Bid (defined below) and approved by the Bankruptcy Court at the Sale Hearing.

(d) **Identity of Bidder**.  A bid must fully disclose the following information (collectively, "Identifying Information"): (A) each entity or person that will be bidding for or

purchasing the Purchased Assets; (B) all material equity holders (i.e., parties that own at least 10% of the equity of the Overbidder) in the case of an Overbidder that is an entity; (C) any entity that will be financing or otherwise participating in connection with such bid, and the complete terms of any such financing or participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid; (D) any connection with or participation by any "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtor or any relative or any affiliate of any "insider" of the Debtor; and (E) any connection with or participation by any current creditor or equity holder of the Debtor or the Stalking Horse Bidder. A bid must also fully disclose, to the extent such bid includes the acquisition of the equity of S Credit and/or S Brokerage, any provisions in such bid for any internal, regulatory, or other third-party approvals, that may be required for a change in control of such subsidiary or subsidiaries (collectively, "Third Party Approvals").

(e) **Contact Information**. A bid must include the names and contact information (including phone numbers and email addresses) of all authorized representatives of the Overbidder who will be available to answer questions regarding the bid, including advisors and related parties.

(f) **Deposit**. A bid must include a good-faith deposit in immediately available funds equal to the sum of: (i) the Stalking Horse Bidder Fee (defined above) and (ii) ten percent (10%) of the cash portion of the purchase price in the Alternative APA (the sum of (i) and (ii), the "Deposit"). If an Overbidder elects to increase the amount of its bid at the Auction, neither the Overbidder nor the Stalking Horse Bidder will be required to increase the amount of its Deposit. If a bid is determined to be the Winning Bid at the Auction and the Overbidder who submitted such bid fails to timely close the sale after approval by the Bankruptcy Court at the Sale Hearing, the Deposit shall become non-refundable and be forfeited to the Debtor. The same shall apply to the Stalking Horse Bidder (subject to the provisions in the APA for the forfeiture of the "Deposit" as defined therein) if determined to be Winning Back-Up Bidders, and any other Winning Back-Up Bidder in the event (a) the Winning Bidder fails to timely close the Sale, (b) the Winning Back-Up Bidder is notified in writing that it is now the Winning Bidder, and (c) the Winning Back-Up Bidder fails to close its purchase by the Outside Closing Date set forth in the applicable Asset Purchase Agreement unless such Winning Back-Up Bidder and the Debtor jointly agree to extend the applicable sale closing date. All Deposits of all Qualified Bidders shall be held in an account maintained by LNBYG and shall be returned (other than with respect to the Winning Bidder and the Winning Back-Up Bidder) promptly after the conclusion of the Auction, subject to the return conditions set forth in the applicable Asset Purchase Agreement or Alternative APA submitted with such bids.

(g) **Financing Sources**. A bid must contain written evidence of available funds or a firm irrevocable commitment for financing sufficient to consummate the proposed sale with appropriate contact information for such financing sources, with the Debtor (following consultation with the Consultation Parties) to determine whether such evidence of financing satisfies these Bidding Procedures and enables the Overbidder

to participate in the Auction, with such determination to be in the Debtor's sole and absolute discretion and reasonably acceptable to each of the Consultation Parties.

(h) ***Designation of Assigned Contracts and Leases.*** Subject to the ability of the Debtor to obtain an order of the Bankruptcy Court approving of the Debtor's assumption and assignment of any executory contract or unexpired lease to the Winning Bidder, a bid must include an initial list of all of the Debtor's executory contracts and unexpired leases with respect to which the Overbidder seeks assumption and assignment from the Debtor (including without limitation any Debtor contracts or leases to which the Debtor's non-debtor subsidiaries are also parties).

(i) ***Designation of Assumed Liabilities***. A bid must identify all liabilities that the Overbidder proposes to assume.

(j) ***No Breakup Fee***. A bid must not request or entitle the Overbidder to receive any fee analogous to the Stalking Horse Bidder Fee, any termination fee, transaction or breakup fee, expense reimbursement or similar fee or payment. For the avoidance of doubt, by submitting a bid, the Overbidder agrees that it shall not be entitled to any such fee and waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its bid or its participation in the Auction.

Each person or entity that submits a bid shall be deemed to have consented to the Debtor making the contents of such bid public, including in filings in the Court.

**10.    Qualified Bidders and Bids**

Potential Overbidders who have satisfied the Participation Requirements and Bid Requirements will be deemed "Qualified Bidders," and bids that meet all of the Bid Requirements described above will be deemed "Qualified Bids," in each case, only if the Debtor (following consultation with the Consultation Parties) concludes in the exercise of its business judgment, that such bid would be consummated if selected as the Winning Bid; provided, however, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtor to its satisfaction, the Debtor (following consultation with the Consultation Parties) shall have the right, in their sole and absolute discretion, to disqualify any Qualified Bidder and Qualified Bid, and such Bidder shall not be entitled to attend or otherwise participate in the Auction. For the avoidance of doubt, the Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse Bidder's bid, as set forth in the Asset Purchase Agreement, is a Qualified Bid, and each bid received from the Stalking Horse Bidder at the Auction that complies with the Bidding Procedures shall be a Qualified Bid.

**11.    Notice of Qualified Bids**

As soon as practicable following the Bid Deadline, the Debtor (following consultation with the Consultation Parties) shall identify to all Qualified Bidders: (a) each and every bid that the Debtor considers to be a Qualified Bid and (b) if more than one Qualified Bid has been timely received, the Qualified Bid that will constitute the "Initial Bid" at the Auction (which

must equal at least the Minimum Overbid) and the bidding order in which the Auction will be conducted.

### 12.    No Auction if Only One Qualified Bid

If, by the Bid Deadline, the only timely Qualified Bid received by the Debtor is from the Stalking Horse Bidder, the Debtor (following consultation with the Consultation Parties) shall not conduct an Auction and the Stalking Horse Bidder will be deemed the Winning Bidder and its bid the Winning Bid. If this occurs, the Debtor shall proceed to request at the Sale Hearing that the Court approve the transfer and sale of the Purchased Assets to the Stalking Horse Bidder in accordance with Buyer's Asset Purchase Agreement and request that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure.

### 13.    Auction

If by the Bid Deadline, more than one Qualified Bid has been received by the Debtor, the Debtor will conduct the Auction with all Qualified Bidders. The Auction will be held concurrently with the Sale Hearing in the United States Bankruptcy Court for the Central District of California – San Fernando Valley Division, with virtual participation permitted.

### 14.    Participation in and Attendance at Auction

The Auction will occur at the Sale Hearing, which is a public hearing.

### 15.    Consent to Jurisdiction, No Collusion and Good Faith Bona Fide Offer

All Qualified Bidders shall be deemed to have consented to the exclusive and core jurisdiction of the Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the transfer and sale of the Purchased Assets, and any other matter relating to, or contemplated by, Buyer's Asset Purchase Agreement and any Alternative APA. Any and all disputes related to the Auction shall be determined solely by the Bankruptcy Court. Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that: (i)it has not engaged in any collusion with respect to the bidding or with any other bidder or prospective bidder; (ii) its bid is a good-faith *bona fide* offer; (iii) it intends to consummate the proposed transaction if selected as the Winning Bidder; and (iv) it acknowledges that, if chosen, it will serve as the Winning Back-Up Bidder.

**16.**     **Initial Bid at the Auction**

The bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted by the Bid Deadline, as determined by the Debtor (following consultation with the Consultation Parties). Each subsequent bid shall be in increments of no less than $100,000 and by figures which are wholly divisible by $100,000. The Debtor will notify all Qualified Bidders and the Consultation Parties in advance of the Auction which bid has been accepted as the Initial Bid at the Auction and the order in which the bidding at the Auction will proceed.

**17.**     **Conducting the Auction**

The Debtor and LNBYG will direct and preside over the Auction. At the start of the Auction, and after each Qualified Bidder acknowledges on the record that (i) it has not engaged in any collusion with respect to the bidding, (ii) that its bid is a good faith bona fide offer, and (iii) that it intends to consummate the proposed transaction if selected as the Winning Bidder or the Winning Back-Up Bidder, the Debtor and LNBYG will identify, confirm and describe the Initial Bid. The bidding will then ensue in the bidding order provided by the Debtor to all Qualified Bidders in advance of the Auction. All bidding after the Initial Bid shall continue in bidding increments of at least $100,000 or figures that are wholly divisible by $100,000. All bids will be made and received in one room (or otherwise in the presence via Zoom, Webex or similar virtual means of all parties), on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the Identifying Information of each bidder and the material terms of each Qualified Bid (including any Third Party Approvals) will be fully disclosed to all Qualified Bidders before the Auction, and all successive bids made at the Auction, will be fully disclosed to all Qualified Bidders. All Qualified Bidders will be permitted to bid at the Auction based on what the Debtor and LNBYG (following consultation with the Consultation Parties), and subject to the Court's approval at the Sale Hearing, determine to be an appropriate amount of time to respond to each prior submitted bid.

Prior to the Auction, the Debtor will randomly assign to each Qualified Bidder a bidder number, except that the bidder whose bid was accepted as the Initial Bid will be assigned bidder number 1. Once the Initial Bid has been described by the Debtor and LNBYG, the bidding will then pass to bidder number 2. Bidder number 2 will have the option of submitting an overbid to the Initial Bid of at least the sum of (A) the Initial Bid (inclusive of the Stalking Horse Bidder Fee) plus (B) $100,000, or dropping out of the Auction. Once a bidder drops out of the Auction, such bidder will no longer be permitted to participate in the Auction. After bidder number 2 either submits a qualifying overbid or drops out of the Auction, the bidding will then pass to bidder number 3. This process will continue until only two Qualified Bidders are left, in which case the Qualified Bidder who submits the highest and best Qualified Bid will be deemed the Winning Bidder at the Auction, and the Qualified Bidder who submits the second highest Qualified Bid will be deemed the Winning Back-Up Bidder at the Auction.

Except as expressly provided in the Bidding Procedures Order or the provisions of these Bidding Procedures, the Debtor (following consultation with the Consultation Parties) shall have the right to conduct the Auction in the manner they reasonably determine, in the exercise of their business judgment, to be in the best interests of the Debtor's bankruptcy estate. The Debtor shall also have the right to deviate from these Bidding Procedures or announce and employ at the

Auction other procedural rules without the need for any further order of the Bankruptcy Court if the Debtor reasonably determines, in the exercise of its business judgment and following consultation with the Consultation Parties, that doing so would be in the best interests of the Debtor's bankruptcy estate and is not inconsistent with any of the provisions of the Bankruptcy Code or any previously entered order of the Bankruptcy Court including the Bidding Procedures Order.

The Debtor and LNBYG (following consultation with the Consultation Parties) may (1) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer in terms of both amount and execution risk and (2) reject at any time any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures, or (iii) contrary to the best interests of the Debtor or its bankruptcy estate; <u>provided</u> that, the highest, best, and otherwise financially superior offer shall be the Qualified Bid at the Auction reasonably expected to result (including after taking into account execution risk) in the highest amount of money being paid to the Debtor for the purchase of the Purchased Assets.

**18.    <u>Selection of the Winning Bid and Winning Back-Up Bid</u>**

The Auction shall continue until there is one Qualified Bid that the Debtor determines (following consultation with the Consultation Parties), subject to Bankruptcy Court approval, to be the highest and best bid (the "<u>Winning Bid</u>"), and another Qualified Bid to be the second highest and best bid (the "<u>Winning Back-Up Bid</u>"), at which point the Auction will be deemed concluded.  The Debtor will not consider any bids submitted after the conclusion of the Auction.

Subject to the Bankruptcy Court approving the Winning Bid and entering an order approving of the Debtor's free and clear sale of the Purchased Assets to the Winning Bidder in accordance with the Asset Purchase Agreement or Alternative APA, as the case may be, submitted by the Winning Bidder (the "<u>Sale Order</u>"), the Winning Bidder shall be required to close the sale by the outside closing date set forth in such Asset Purchase Agreement or Alternative APA (unless the Debtor and the Winning Bidder jointly agree to an extension of this outside Sale closing date which will be in their sole and absolute discretion), or the Winning Bidder will be deemed to have forfeited its Deposit to the Debtor subject to the terms and conditions for such forfeiture set forth in such Asset Purchase Agreement or Alternative APA, as applicable.  Promptly following the closing of the sale to the Winning Bidder, LNBYG shall return the Deposit of the Winning Back-Up Bidder to the Winning Back-Up Bidder.

If the Winning Bidder fails to close the sale of all of the Purchased Assets other than the Debtor's equity interests in S Credit and S Brokerage by the outside closing date for such initial closing (as set forth in the Asset Purchase Agreement or Alternative APA, as applicable), unless the Debtor and the Winning Bidder mutually agree in their sole and absolute discretion to extend such closing date, the Debtor shall so notify the Winning Back-Up Bidder.  The Winning Back-Up Bidder will then have ten (10) days following the date of having been notified by the Debtor to close the purchase of such assets (*i.e.*, all of the Purchased Assets other than the Debtor's equity interests in S Credit and S Brokerage).  If the Winning Back-Up Bidder fails to close the sale within this time period, unless the Debtor, following consultation with the Consultation Parties, and the Winning Back-Up Bidder mutually agree in their sole and absolute discretion to extend such initial closing date, the Winning Back-Up Bidder will be deemed to have forfeited

its Deposit to the Debtor subject to any conditions for such forfeiture in the applicable Asset Purchase Agreement or Alternative APA.

**19.    <u>Sale Hearing</u>**

The hearing for the Bankruptcy Court to approve the outcome of the Auction and the Debtor's sale of the Purchased Assets to the Winning Bidder and to the Winning Back-Up Bidder if the Winning Bidder fails to close (the "<u>Sale Hearing</u>") shall be held on May 9, 2024, at 9:00 a.m., or at such other date and time set by the Bankruptcy Court.

**20.    <u>Jurisdiction</u>**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the transfer and sale of the Purchased Assets, the Bidding Procedures, the Sale Hearing, the Auction, the Winning Bid, the Winning Back-Up Bid, and/or any other matter that in any way relates to the foregoing.

# EXHIBIT B

## <u>SALE NOTICE</u>

1  RON BENDER (SBN 143364)
   MONICA Y. KIM (SBN 180139)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com
   Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession
6

7                    **UNITED STATES BANKRUPTCY COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
8                    **SAN FERNANDO VALLEY DIVISION**

9  In re:                                    Case No.: 1:24-bk-10646-MB

10 SYNAPSE FINANCIAL TECHNOLOGIES,          Chapter 11 Case
   INC.,
11                                           **NOTICE OF HEARING ON DEBTOR'S**
12          Chapter 11 Debtor in Possession  **EMERGENCY MOTION FOR AN**
                                             **ORDER (A) APPROVING SALE OF**
13                                           **SUBSTANTIALLY ALL OF THE**
                                             **DEBTOR'S ASSETS FREE AND CLEAR**
14                                           **OF ALL LIENS, CLAIMS,**
                                             **ENCUMBRANCES AND INTERESTS;**
15                                           **(B) APPROVING OF DEBTOR'S**
                                             **ASSUMPTION AND ASSIGNMENT OF**
16                                           **CERTAIN EXECUTORY CONTRACTS**
                                             **AND UNEXPIRED LEASES AND**
17                                           **DETERMINING CURE AMOUNTS; (C)**
                                             **WAIVING THE 14-DAY STAY**
18                                           **PERIODS SET FORTH IN**
                                             **BANKRUPTCY RULES 6004(h) AND**
19                                           **6006(d); AND (D) GRANTING**
                                             **RELATED RELIEF**
20

21

22                                           Date:  May 9, 2024
                                             Time:  9:00 a.m.
23                                           Place:  Courtroom 303
                                                    21041 Burbank Blvd.
24                                                   Woodland Hills, CA 91367

25

26         **PLEASE TAKE NOTICE** that a hearing will be held on May 9, 2024, commencing at

27 9:00 a.m., at the above-referenced Courtroom, for the Court to consider approval of the motion

28 ("Motion") filed by Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor in

                                          1

possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), seeking entry of an order of the Court: (1) approving the Debtor's sale of substantially all of its assets (the "Purchased Assets") to TabaPay Holdings LLC ("Buyer") or to the highest or otherwise best overbidder or back-up bidder selected at an auction to be held on May 9, 2024 (the "Auction"), free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f); (2) approving the Debtor's assumption and assignment of certain executory contracts and unexpired leases and determining cure amounts; (3) waiving the 14-day stay periods set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and (4) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that at a hearing held on April 29, 2024, the Bankruptcy Court approved the bidding procedures (the "Bidding Procedures") attached as **Exhibit 1** to this Notice.[4]  **Creditors, equity interest holders, prospective bidders and parties in interest should carefully read the Bidding Procedures, which set forth detailed instructions, requirements and deadlines pertaining to bid qualifications, the Auction and the sale of the Purchased Assets.  If you would like a copy of the Motion, Declarations in support of the Motion, the APA or any other pleadings filed in this case, please contact proposed bankruptcy counsel to the Debtor – Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Krikor J. Meshefejian, Email: KJM@LNBYG.COM; Telephone: (310) 229-1234.**

**PLEASE TAKE FURTHER NOTICE** that any opposition to the Motion, any relief requested in the Motion, or to the sale of the Purchased Assets as contemplated by the Sale Motion or the Debtor's assumption and assignment of contracts and leases to Buyer or another winning bidder or winning back-up bidder as contemplated in the Sale Motion, must (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be accompanied by all evidence the objecting party relies on in support of the objection; and (d) be filed with the clerk of the Court for the Central District of California (or filed electronically via

---

[4] Capitalized terms not otherwise defined have the same meaning provided to such terms in the Bidding Procedures.

CM/ECF with the Court) and actually received by the following parties (collectively, the "Notice Parties"): (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Ron Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com); Krikor J. Meshefejian (kjm@lnbyg.com), Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com); (ii) counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell (Robert.honeywell@klgates.com) and Brandy A. Sargent (Brandy.sargent@klgates.com); (iii) counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn:  Alexander G. Rheaume (arheaume@mofo.com); (iv) counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (A) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn: Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (B) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com); and (v) the US Trustee, Attn: Russell Clementson (Russell.Clementson@usdoj.gov), on or before **5:00 p.m. PST on May 7, 2024** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing (1) any supplemental evidence in support of the Sale Motion, (2) evidence from Buyer in support of finding that there is adequate assurance of future performance with respect to executory contracts and unexpired leases to be assumed and assigned to Buyer, and (3) a statement by the Debtor and/or Buyer of which executory contracts and unexpired leases are being assumed and assigned to Buyer and which are being rejected by the Debtor, is on or before 5:00 p.m. PST on May 8, 2024.

**PLEASE TAKE FURTHER NOTICE** that all declarants offered in support of or in opposition to the Motion must be present, in person, for cross-examination by any adverse party or questioning by the Court.  The Court may strike any declaration as to which the declarant is not present, in person at the May 9, 2024 hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that any counsel that wishes to cross-examine a declarant must be present, in person, in Court.  Any counsel that wishes to offer legal argument on the matters set forth for hearing on May 9, 2024 may participate by ZoomGov.  But only counsel present in the courtroom may participate in the examination of a declarant.

**PLEASE TAKE FURTHER NOTICE** that the ZoomGov information for the hearing on the Motion is as follows:

Meeting URL:          https://cacb.zoomgov.com/j/1602454265

Meeting ID:           160 245 4265

Password:             747786

**PLEASE TAKE FURTHER NOTICE** that the failure of a party in interest to file and serve a timely objection to the Motion may be deemed by the Court to constitute such party's consent to all of the relief requested by the Debtor in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice, the Memorandum of Points and Authorities attached to the Motion, any Declarations filed in support of the Motion, and all Exhibits attached thereto, the entire record of the Debtor's bankruptcy case, the statements, arguments, and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court.

## Additional Information

This case was commenced April 22, 2024 (the "Petition Date") by the Debtor's filing of a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtor continues to operate its business, manage its financial affairs and operate its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor is a technology company with a mission to ensure that everyone around the world has access to best-in-class financial products, regardless of their net worth. The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers ("Partner Financial Institutions").

The Debtor is one of the first, if not *the* first, tech company to pioneer a Banking as a Services (Baas) platform for fintechs and Partner Financial Institutions which have agreements with the Debtor to efficiently interface each other to allow for transactions (*i.e.,* the buy and sell) of their financial products and services to the fintechs' end users.

Pre-petition, the Debtor determined that it needed to explore investment, restructuring and sale options, and, in that regard, around the Spring of 2022, the Debtor engaged William Blair as its investment banker to solicit proposals for the infusion of capital. The Debtor also engaged and worked with Sherwood Partners, Inc. as its financial advisor to assist generally with its financial affairs as well as to evaluate all of its options pre-petition. The Debtor later replaced William Blair and sought to engage Jefferies LLC in the Fall of 2023 to assist the Debtor with conducting a marketing process for its sale as a going concern, which the Debtor conducted over a number of months prior to the Petition Date. The Debtor received several offers for the purchase of the Debtor's assets, one of which was made by Buyer. Over the course of the past approximately five months, the Debtor and Buyer engaged in intensive negotiations due diligence activities and the preparation of transaction documents including an Asset Purchase Agreement dated April 19, 2024 (the "APA"). The sale of the Debtor's assets has been a complex, time-intensive process that has involved extensive, time-consuming and heavily-negotiated and documented terms and conditions.

On April 19, 2024, the Debtor and Buyer executed the APA pursuant to which Buyer has agreed to acquire substantially all of the Debtor's assets including the Debtor's equity interests in and to the Debtor's two non-debtor, wholly-owned subsidiaries in exchange for the cash payment of $9,700,000.00 plus other consideration as described in the APA, including Buyer's agreement to assume certain obligations and certain leases and contracts of the Debtor and pay for all cure obligations associated with the assumed leases and contracts. The sale to Buyer is subject to an expedited overbid process though the Debtor does not anticipate that there will be any overbids given the extensive marketing and sale process already conducted which has not generated any better offers due to the complexity of the Debtor's business.

The APA contemplates a three-tiered closing process, with (i) the initial closing where Buyer will acquire all "Purchased Assets" other than the Debtor's equity interests in its two subsidiaries which the Debtor expects to occur by May 10, 2024 (defined in the APA as the "Outside Closing Date") upon the completion of certain conditions to closing, including program reconciliations, the acquisition of certain third-party consents and releases and the occurrence of

certain other closing conditions, at which time the $9,700,000.00 Purchase Price will be paid; (ii) a second closing for Buyer's acquisition of the Debtor's equity in its broker-dealer subsidiary, to occur as soon as the "change of ownership or control" can be made with respect to such subsidiary pursuant to the procedures governed by FINRA[5] and the occurrence of certain program reconciliations and other closing conditions, with such closing to occur no later than May 30, 2024; and (iii) a third and final closing for Buyer's acquisition of the Debtor's equity in its lending subsidiary, to occur by April 19, 2025 (*i.e.*, the first anniversary of the date of signing of the APA) upon the acquisition of certain governmental and other third-party consents and the occurrence of certain other closing conditions. Based on the foregoing, the Debtor expects that the full Purchase Price will be funded by May 10, 2024, or shortly thereafter.

The obligation of Buyer to consummate its purchase of the Purchased Assets from Seller at each of the Initial Closing, the BD Closing and the Final Closing, as applicable, in each case, is subject to the fulfillment, or the waiver in writing by Buyer, at or prior to the applicable closing, of a number of conditions precedent (all as set forth in Article VIII of the APA).

The Debtor's primary assets consist of its cash on hand (which, as of the Petition Date, is approximately $2 million) and its proprietary technology platform, customer agreements, and equity interests in its two subsidiaries, which, as evidenced by the APA, will be sold (not including cash) for a cash payment of $9,700,000, and other consideration.  In addition, the Debtor may have causes of action against third parties from which the Debtor believes that it may recover additional funds.

The Debtor prepared, submitted to the Court, and obtained Court approval of the Bidding Procedures, which the Debtor believes provide the optimal procedures and timetable in order to achieve the highest and best price for the Purchased Assets.  The Bidding Procedures explain to prospective bidders how a prospective bidder becomes qualified to participate in the Auction and how the Auction would proceed in the event that there is one or more qualified bidders.

---

[5] The Debtor understands that such "change of ownership or control" can occur after approximately 30 days from the filing date of the application to transfer ownership or control

For all of these reasons and the others set forth in the Motion, the Memorandum of Points and Authorities attached to the Motion, and the concurrently filed Declaration(s), the Debtor requests that the Court grant the Motion without delay to allow the Debtor to consummate its sale of the Purchased Assets to the Winning Bidder or the Winning Back-Up Bidder at the hearing on May 9, 2024, and immediately thereafter enter the Debtor's proposed sale order.

**WHEREFORE**, the Debtor respectfully requests that the Bankruptcy Court:

1.    Find that notice of the Motion was proper, timely, adequate, appropriate and sufficient and that no other or further notice of the Motion, the hearing on the Motion, or the sale of the Purchased Assets is or shall be required;

2.    Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Debtor's sale of the Purchased Assets;

3.    Approve the sale of the Purchased Assets to the Winning Bidder and the Winning Back-Up Bidder at the Auction free and clear of all liens, claims, encumbrances and other interests;

4.    Find that the Winning Bidder and Winning Back-Up Bidder at the Auction are good faith buyers entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code;

5.    Enter a sale order in a form that is mutually agreed to between the Debtor and the Winning Bidder and Wining Back-up Bidder;

6.    Authorize the Debtor to enter into an APA in a form that is consistent with the terms of the sale order;

7.    Waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

8.    Grant such other and further relief as the Court deems just and proper.

---

with FINRA.

Dated: April 29, 2024

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.


By: ___/s/ Krikor J. Meshefejian___
RON BENDER
MONICA Y. KIM
KRIKOR J. MESHEFEJIAN
Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

# EXHIBIT C

## <u>CONTRACTS NOTICE</u>

RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: rb@lnbyg.com; myk@lnbyg.com; kjm@lnbyg.com
Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>    Chapter 11 Debtor in Possession | Case No.: 1:24-bk-10646-MB<br><br>Chapter 11 Case<br><br>**NOTICE OF: (1) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (2) ESTABLISHMENT OF CURE AMOUNTS IN CONNECTION THEREWITH; (3) PROCEDURES AND DEADLINES REGARDING OPPOSITIONS TO ASSUMPTION AND ASSIGNMENT, AND CURE AMOUNTS; AND (4) HEARING THEREON**<br><br>Date:  May 9, 2024<br>Time:  9:00 a.m.<br>Place:  Courtroom 303<br>       21041 Burbank Blvd.<br>       Woodland Hills, CA 91367 |

**PLEASE TAKE NOTICE** that a hearing will be held on May 9, 2024, commencing at 9:00 a.m., at the above-referenced Courtroom, for the Court to consider:

     A.     Approval of the motion ("Sale Motion") filed by Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), seeking entry of an order of the Court (the "Sale Order"): (1) approving the Debtor's sale of substantially all of its assets (the "Purchased Assets") to TabaPay Holdings LLC ("Buyer") or to the highest or otherwise best overbidder or back-up bidder

1

selected at an auction to be held on April 24, 2024 (the "Auction"), free and clear of all liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f); (2) approving the Debtor's assumption and assignment of certain executory contracts and unexpired leases and determining cure amounts; (3) waiving the 14-day stay periods set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and (4) granting related relief; and

B.    Approval of the motion filed by the Debtor, seeking the entry of an order of the Court (the "Rejection Order") approving the Debtor's rejection of those executory contracts and unexpired leases that are not assumed and assigned to Buyer or to the highest or otherwise best overbidder or back-up bidder selected at the Auction.

**PLEASE TAKE FURTHER NOTICE** that a schedule of all of the Debtor's known executory contracts and unexpired leases (the "Contracts and Leases Schedule"), along with the Debtor's and Buyer's belief as to all outstanding cure amounts owning by the Debtor to the other parties to those executory contracts and unexpired leases (the "Cure Amount"), is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that an executory contract and/or unexpired lease to which you are a counterparty may be assumed and assigned to Buyer or to the highest or otherwise best overbidder or back-up bidder (an "Alternative Winning Bidder") selected at the Auction.  Any executory contract and/or unexpired lease which is not assumed and assigned will be rejected by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, by way of the Sale Motion, the Debtor is seeking the Court's authority to assume and assign to Buyer or an Alternative Winning Bidder all of the Debtor's executory contracts and unexpired leases that the Winning Bidder wants to have assigned to it and to fix the required Cure Amounts that would need to be paid to the other parties to the executory contracts and unexpired leases to enable compliance with the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule unless the other parties to the executory contracts and unexpired leases file a timely objection to the Sale Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule.  By way of the Sale

Motion, the Debtor is also seeking a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtor so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b) and (f) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that by way of the Rejection Motion, the Debtor is seeking the Court's authority to reject all of the Debtor's executory contracts and unexpired leases that are not assumed and assigned to Buyer or the winning bidder.

Since the identity of the winning bidder is not known at this time (and will not be known until the conclusion of the Auction), the Debtor has no way of knowing which executory contracts and unexpired leases, if any, the winning bidder will want to have assigned to it, and which executory contracts and unexpired leases will be rejected. Accordingly, this Notice has been served on <u>every</u> counterparty to all executory contracts or unexpired leases; thus, every counterparty to an executory contract or unexpired lease that could be subject to an assumption and assignment should read this Notice and **<u>Exhibit 1</u>** to this Notice and consider the relief being requested by the Debtor, and to the extent they oppose any of the relief being requested by the Debtor in either the Sale Motion or the Rejection Motion, comply with the procedures and deadlines set forth below.

**PLEASE TAKE FURTHER NOTICE** that the deadline for filing (1) any supplemental evidence in support of the Sale Motion or Rejection Motion, (2) evidence from Buyer in support of finding that there is adequate assurance of future performance with respect to executory contracts and unexpired leases to be assumed and assigned to Buyer, and (3) a statement by the Debtor and/or Buyer of which executory contracts and unexpired leases are being assumed and assigned to Buyer and which are being rejected by the Debtor, is on or before 5:00 p.m. PST on May 8, 2024.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of a contract or lease in **<u>Exhibit 1</u>** to this Notice shall not constitute or be deemed a determination or admission by the Debtor, the winning bidder or any other party in interest that such document is, in fact, an

executory contract or unexpired lease within the meaning of the Bankruptcy Code or that such contract or lease will be assumed.  The Debtor reserves all of its rights, claims and causes of action with respect to the contracts or leases listed in **Exhibit 1** to this Notice and any other contracts or leases to which the Debtor is a party.

**PROCEDURES FOR OPPOSING ASSUMPTION AND ASSIGNMENT OF CONTRACT OR LEASE, OR OBJECTING TO CURE AMOUNT**

**PLEASE TAKE FURTHER NOTICE that if you are a party to an executory contract or unexpired lease with the Debtor and you: (A) oppose the Sale Motion; (B) oppose the assumption or assignment of any executory contract or unexpired lease; (C) object to the form of adequate assurance of future performance proposed to be provided or contend that adequate assurance of future performance must be provided; or (D) contend that (i) the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule and/or (ii) you have suffered any actual pecuniary loss resulting from any default by the Debtor and you contend that additional payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b) and (f) of the Bankruptcy Code, you must file a written opposition to the Sale Motion with the Court by no later than May 7, 2024, at 5:00 p.m. (PST) (the "Objection Deadline"), setting forth (A) your opposition to the assumption and assignment of your contract and/or lease; (B) all evidence you rely on in support of your opposition; (C) your contention as to adequate assurance of future performance; (D) your contention as to the required Cure Amount and/or (E) your contention of the extent to which you have suffered actual pecuniary loss resulting from any default by the Debtor that you contend must be satisfied beyond the proposed Cure Amounts to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.  Any such written opposition must state the basis for such objection, state with specificity what Cure Amount(s) you believe is required (in all cases with appropriate documentation in support thereof), be accompanied by all evidence you rely on in support of your opposition, and actually be received by the following parties: (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Ron**

Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com); Krikor J. Meshefejian (kjm@lnbyg.com), Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com); (ii) counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell (Robert.honeywell@klgates.com) and Brandy A. Sargent (Brandy.sargent@klgates.com); (iii) counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn:  Alexander G. Rheaume (arheaume@mofo.com); (iv) counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (A) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn:  Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (B) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com); and (v) the US Trustee, Attn: Russell Clementson (Russell.Clementson@usdoj.gov), on or before the Objection Deadline.

**To the extent that any contract counterparty or other party in interest does not timely serve an objection as set forth above, such party shall be deemed to have (i) consented to the assumption and assignment of the applicable contracts or leases to the winning bidder; (ii) agreed that the winning bidder has provided adequate assurance of future performance within the meaning of sections 365(b) and (f) of the Bankruptcy Code; (iii) consented to the applicable Cure Amount; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.**

**PLEASE TAKE FURTHER NOTICE** that upon the filing of an objection by a Counterparty or other party in interest to the Assignment Notice or Supplemental Assignment Notice, the Debtor will contact the objecting party and the winning bidder to attempt to consensually resolve any timely filed objection. The Debtor will work with the winning bidder in good faith in this regard, and the winning bidder must consent to any increase in the proposed Cure Amount for the applicable Assigned Contract.  If the Debtor and winning bidder are unable to resolve such an objection, such objection will be heard at the Sale Hearing (as may be adjourned by the Court without such objecting party's consent); provided, further, that in the event an objection relates solely to a Cure Amount (a "Cure Objection"), then such objecting

party will be deemed to consent to the assumption and assignment of its contract or lease, notwithstanding such objection.  In the event the Debtor and the winning bidder are unable to resolve a Cure Objection prior to the Sale Hearing, the winning bidder may elect not to include the applicable contract or lease in its purchase of the Purchased Assets, subject to any conditions set forth in its Asset Purchase Agreement.

## **PROCEDURES FOR OPPOSING REJECTION OF CONTRACT OR LEASE THAT IS NOT ASSUMED AND ASSIGNED**

**PLEASE TAKE FURTHER NOTICE** that if you are a party to an executory contract or unexpired lease with the Debtor and you oppose the Rejection Motion and the rejection of any executory contract or unexpired lease that is not assumed and assigned, **you must file a written opposition to the Rejection Motion with the Court by no later than the Objection Deadline of May 7, 2024, at 5:00 p.m. (PST)**.  Any such written opposition must state the basis for such objection and be accompanied by all evidence you rely on in support of your opposition, and actually be received by the following parties: (i) the Debtor's counsel, Levene, Neale, Bender, Yoo & Golubchik L.L.P., Attn: Ron Bender (rb@lnbyg.com), Monica Y. Kim (myk@lnbyg.com); Krikor J. Meshefejian (kjm@lnbyg.com), Sankaet Pathak (s@synapsefi.com) and Tracey Guerin (tracey@synapsefi.com); (ii) counsel to the Stalking Horse Bidder, K&L Gates LLP, Attn: Robert T. Honeywell (Robert.honeywell@klgates.com); (iii) counsel to Silicon Valley Bank, Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, Massachusetts 02116, Attn:  Alexander G. Rheaume (arheaume@mofo.com); (iv) counsel to TriplePoint Capital LLC, McDermott Will & Emery LLP, (A) 2049 Century Park E., Suite 3800, Los Angeles, California 90067, Attn: Gary Rosenbaum (grosenbaum@mwe.com) and Michael Rostov (mrostov@mwe.com) and (B) One Vanderbilt Ave., New York, New York 10017-3852, Attn: Darren Azman (dazman@mwe.com); and (v) the US Trustee, Attn: Russell Clementson (Russell.Clementson@usdoj.gov), on or before the Objection Deadline.

## **ADDITIONAL REQUIREMENTS AND INFORMATION**

**PLEASE TAKE FURTHER NOTICE** that all declarants offered in support of or in

opposition to the Sale Motion, the assumption and assignment of any executory contract or unexpired lease, or cure amount, or the Rejection Motion, must be present, in person, for cross-examination by any adverse party or questioning by the Court.  The Court may strike any declaration as to which the declarant is not present, in person at the May 9, 2024 hearings on the Sale Motion and Rejection Motion.

**PLEASE TAKE FURTHER NOTICE** that any counsel that wishes to cross-examine a declarant must be present, in person, in Court.  Any counsel that wishes to offer legal argument on the matters set forth for hearing on May 9, 2024 may participate by ZoomGov.  But only counsel present in the courtroom may participate in the examination of a declarant.

**PLEASE TAKE FURTHER NOTICE** that the ZoomGov information for the hearings on the Sale Motion and Rejection Motion is as follows:

| | |
|---|---|
| Meeting URL: | https://cacb.zoomgov.com/j/1602454265 |
| Meeting ID: | 160 245 4265 |
| Password: | 747786 |

Dated: April 29, 2024

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.


By:   */s/ Krikor J. Meshefejian*
RON BENDER
MONICA Y. KIM
KRIKOR J. MESHEFEJIAN
Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession