STEVEN T. GUBNER – Bar No. 156593
DAVID M. POITRAS – Bar No. 141309
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:      sgubner@bg.law
            dpoitras@bg.law

JEFFREY NAIMON – DC Bar No. 429409 (*Admitted Pro Hac Vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2001 M Street NW
Washington, DC 20036
Telephone: (202) 349-8030
Email:      jnaimon@orrick.com

Attorneys for Evolve Bank & Trust

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 |
| | **EMERGENCY MOTION OF EVOLVE BANK & TRUST ("EVOLVE") FOR AN ORDER DIRECTING THE DEBTOR TO RESTORE EVOLVE'S ACCESS TO THE DEBTOR'S DASHBOARD SYSTEM; OR, ALTERNATIVELY, AUTHORIZING EVOLVE TO CLOSE ALL OF THE DEBTOR'S DEMAND DEPOSIT ACCOUNTS AT EVOLVE ASSOCIATED WITH DEBTOR'S PROGRAMS; DECLARATION OF W. CHRISTOPHER STAAB IN SUPPORT THEREOF** |
| Debtor and Debtor-in-Possession | |
| | **Hearing:** |
| | Date:      [To Be Set] |
| | Time:      [To Be Set] |
| | Place:     Courtroom 303 |
| |             Zoom Only |
| | **Movant requests that the Motion be heard on May 13, 2024 at 2:30pm when other matters in the Case are scheduled. Movant has been unable to connect with Chambers prior to filing motion.** |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, SECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:**

Pursuant to Local Bankruptcy Rules 2081-1 and 9075-1, 11 U.S.C. Sections 105(a), 363, 701, 1106 and 1107, Evolve Bank & Trust ("Evolve"), a creditor and party-in-interest in the above-referenced chapter 11 case, hereby files this Motion (the "Motion"), on an emergency basis, for *An Order Directing the Debtor to Restore Evolve's Access to the Debtor's Dashboard System; or, Alternatively, Authorizing Evolve to Close All End User Demand Deposit Accounts at Evolve Associated with Debtor's Programs.*

## BRIEF BACKGROUND INFORMATION

Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor-in-possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), filed a voluntary petition under Chapter 11 of Title 11, 11 U.S.C. Sections 101 *et seq.* (the "Bankruptcy Code") on April 22, 2024 (the "Petition Date"). As of the date of this Motion, the Debtor is continuing to operate its business, manage its financial affairs and administer its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Notwithstanding, at a hearing held May 9, 2024, the Debtor advised the Court and parties in interest that: (i) the proposed sale of substantially all of its assets to TabaPay, LLC (as set forth in detail in *Debtor's Emergency Motion for an Order (A) Approving Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests and Encumbrances; (B) Approving Assumption and Assignment of Unexpired Leases and Executory Contracts and Determining Cure Amounts; (C) Waiving the 14-Day Stay Periods of Bankruptcy Rules 6004(h) and 6006(d); and (D) Granting Related Relief* (the "Sale Motion")[Docket No. 8]) was not going forward, and (ii) the Debtor would likely cease substantially all operations in the near term. As of the date of this Motion, the Order Authorizing the Debtor's Interim Use of Cash Collateral expires May 14, 2024 [Docket No. 90]. **A further hearing on the Debtor's use of cash collateral is set for May 13, 2024 at 2:30 p.m. – for the reasons set forth below, Evolve requests that this Motion be set for hearing along with the cash collateral motion on May 13, 2024 at 2:30 p.m.**

1

## EVOLVE'S NEED FOR EMERGENCY RELIEF

Evolve seeks emergency relief from the Court because it has been denied access to an essential system owned and maintained by Debtor and has been forced to freeze End User accounts as a result.  Evolve asks the Court to issue an order directing Debtor to restore Evolve's access to the Debtor's system, called the "Dashboard," or alternatively, to authorize Evolve to close all End User demand deposit accounts at Evolve associated with Debtor's programs under the September 23, 2022 Master Bank Services Agreement between Debtor and Evolve (the "MBSA").

### A.    Overview of the Dashboard

The MBSA required Debtor to create and maintain an online platform through which Evolve can view and access all information related to the Parties' programs, including information concerning bank services, critical subcontractors, end users, deposits, transactions, and any other services (the "Dashboard").  The Dashboard is essential to Evolve's ability to oversee Debtor's activities as a service provider, and is the system Evolve uses to, among other things, (i) access current balances, transactions, and other real-time data about end users and their accounts, (ii) confirm that transactions authorized by the Debtor issuing platform or other transactions processing systems are posting to end user accounts, (iii) assess whether transactions are fraudulent or unauthorized, and (iv) validate that end users have gone through proper sanctions screening or other Bank Secrecy Act ("BSA") or anti-money laundering-related processes, such as transactions monitoring.  In performing these important oversight functions, Evolve typically accesses the Dashboard throughout the day as circumstances require, such as when transactions and or accounts are flagged for suspicious activity.

As the Dashboard is a system owned and maintained by Debtor, Evolve employees must use credentials issued by the Debtor to log into the Dashboard.  The login process requires two-factor authentication, which means that in addition to entering a correct UserID and password combination, Evolve employees must enter a six-digit numeric code that is sent to their mobile device or email address.

///

///

**B.  Evolve is Denied Access to the Dashboard**

At approximately 8:42 A.M. Pacific time on Saturday May 11, 2024, Evolve employees discovered that they could no longer successfully log into the Dashboard.  Specifically, during the second phase of the two-factor authentication process, Evolve employees were unable to successfully log in, and were shown a notice at the top of the screen: "! CRAA007 – User is not authorized to access this application."   At the time of filing, approximately 60 Evolve employees who had been able to access the Dashboard prior to May 11, 2024, have not been able to log into the Dashboard.

**C.  Evolve's Immediate Response to Losing Access to the Dashboard**

Without access to the Dashboard, Evolve was left without its principal tool for identifying, preventing, and rectifying unlawful, fraudulent, unauthorized, and/or other irregular activity in connection with Debtor's programs.  The situation required the urgent attention of Evolve's senior management team responsible for overseeing Debtor's programs.  Throughout the morning of May 11, 2024, members of management met with counsel to develop a plan for responding to the loss of Dashboard access.  Evolve determined that without access to the Dashboard, the only course of action to prevent harm to End Users and the bank would be to (i) attempt to confirm the loss of Dashboard access with Debtor, and (ii) absent a change in circumstances, freeze all account activity associated with Debtor's programs pending restoration of system access and investigation of any irregular, unlawful, or unauthorized activity impacting End User accounts.  Evolve is permitted to freeze End User accounts in accordance with the demand deposit account agreement(s) between Evolve and each End User, including when the Bank suspects that any irregular, unauthorized, or unlawful activity may be occurring in connection with the account, and to comply with regulations issued by the U.S. Treasury Department's Office of Foreign Assets Control.

At 10:22 A.M. Pacific time, counsel for Evolve sent an email with a "High Importance" flag to Debtor's counsel, stating that Evolve's access credentials for the Dashboard no longer worked and seeking confirmation from Debtor by 12:00 P.M. Pacific time as to whether Evolve's access credentials had been revoked, suspended, or otherwise rendered inoperative.  At 1:22 P.M. Pacific time, Debtor's General Counsel replied with a single-line email: "Will check in with the team."  At

that point, Evolve determined that in order to timely address the serious risks presented by the lack of Dashboard access, it was necessary to move forward with freezing account activity to prevent potential unlawful, fraudulent, unauthorized, or other irregular activity from occurring without the possibility of detection or mitigation by Evolve.

Accordingly, at 1:54 P.M. Pacific time, Evolve notified the Debtor's CEO by email that in light of the revocation of Evolve's access to the Synapse dashboard, and for the security and integrity of end user accounts, Evolve would be freezing all account activity for DDAs in the Debtor's program and Synapse Brokerage program, effective immediately.  At 2:20 P.M. Pacific time, Debtor's CEO responded that he was "not sure which access has been discontinued."  He additionally stated that Debtor was "working with third parties and will provide information to you as appropriate and permissible."  Following this response from Debtor's CEO, Evolve proceeded to notify fintech platforms of the account freeze in email communications sent at 2:40 P.M. and 2:44 P.M. Pacific time, and directed platforms to notify their End Users regarding the status of their accounts, cards, and future transactions.

At 2:47 P.M. Pacific time, Evolve instituted a freeze on activity for any Evolve account in Debtor's programs.  This covered any debit and credit card programs that are sponsored by Evolve, as well as payment processing services for Synapse Brokerage LLC.  Additionally, Evolve took the same actions to freeze a limited number of accounts that are Evolve Bank and Trust demand deposit accounts ("DDAs") that total $5.9 million in end user deposits.  Evolve did not freeze any corporate accounts belonging to Debtor, and the Synapse Brokerage sweep account was not frozen.

Following the freeze, Evolve received communications from one fintech indicating that Debtor claimed that Evolve's Dashboard access had not been revoked.  However, since instituting the freeze, Evolve has performed periodic checks of its Dashboard access throughout May 12, 2024 (and through the filing of this Motion), and has confirmed that Evolve continues to be denied access to the system.

Evolve again attempted to resolve the issue by sending an email demand to Debtor's CEO on Sunday May 12, 2024 at 12:33 P.M. Pacific time, explaining the significance of the impact on Evolve, End Users and the fintechs and providing a screenshot showing the login screen and error

message.  At 12:35 P.M. Pacific time, Debtor's CEO replied, "Thanks for the screenshot, we will

investigate further."  Evolve has received no further communication from Debtor at the time of filing

of this Motion regarding restoration of Dashboard access.  Evolve can only speculate as to the reason

why it has been locked out of the Dashboard and the Debtor's lack of urgency in seeking to resolve

the situation, notwithstanding its significant impact on the End Users, the fintechs and Evolve.

### D.    <u>Emergency Relief is Warranted to Protect End Users and Evolve</u>

Evolve seeks relief from this Court in the form of an order directing Debtor to restore

Evolve's access to the Dashboard, and not to make any other material changes to the Dashboard.  In

addition, Debtor has failed to provide Evolve with data and reports that it has customarily provided,

since May 6, 2024, including, but not limited to, reports regarding debit and credit card transactions

and reports showing the DDA ledger.  If Dashboard access is timely restored, Evolve will review

any material changes that might have been made without Evolve's knowledge or authorization when

the Dashboard access was initially revoked.  If no unlawful, fraudulent, unauthorized, or other

irregular activity is identified, and Synapse Brokerage transfers to Evolve good funds to settle all

card settlement activity as appropriate for end users in the Synapse Brokerage ecosystem, Evolve

will unfreeze accounts and resume normal operations.

Alternatively, given that the MBSA between Evolve and Debtor expired on September 29,

2023, and in light of the migration of the vast majority of Debtor's platforms and End Users to a

separate program offered by Debtor's wholly-owned non-debtor subsidiary, Synapse Brokerage

LLC, Evolve seeks the Court's authorization to close all End User demand deposit accounts at

Evolve associated with Debtor's programs under the MBSA.

Broadly, as described in paragraphs 7-14 of Debtor's Declaration of Sankaet Pathak in

Support of All of the Debtor's "First-Day Motions" ("Pathak Declaration")[Docket No. 12],

Debtor's technology and processes are a crucial intermediary between fintech platforms (and their

customers, the End Users) and partner financial institutions that provide financial services to End

Users.  As noted above, the MBSA between Evolve and Debtor expired at the end of September

2023 and has been in a wind-down period since that time.  Rather than replacing Evolve's position in

the Debtor's structure and processes with another banking institution, Debtor migrated the vast

majority of the fintechs and End Users that remain part of the Debtor's program away from Evolve, and established new accounts at Synapse Brokerage, which "offers, <u>directly to End Users</u>, cash management products and related services through the Debtor's relationships with fintechs and network of program banks which enables End Users to spread their risk across banks. [Synapse] Brokerage's cash management program enables End Users' funds to be placed across a number of program banks[1] to receive potential increased FDIC deposit insurance of such funds."[emphasis added]  Pathak Declaration, Paragraph 13.

Critically, as also described in Paragraph 13 of the Pathak Declaration, Synapse Brokerage "does not directly have any employees. Rather, the Debtor provides administrative support and services to [Synapse] Brokerage such as technology, transaction processing, record keeping, sales, legal and other back-office services, for which [Synapse] Brokerage pays a monthly service fee to the Debtor."  As a result, and notwithstanding the fact that Synapse Brokerage is not in a bankruptcy proceeding, both the End Users whose funds are generally held in accounts at Evolve (i.e., End Users whose fintechs have neither left the Debtor's program nor migrated to Synapse Brokerage) and the End Users whose funds were migrated to new accounts at Synapse Brokerage are highly dependent on Debtor's "technology, transaction processing, record keeping" and other services to successfully operate.

In order to ensure that End Users and fintech platforms have clarity regarding the management and location of End User funds as Synapse winds down its operations, Evolve seeks permission to close End Unser DDAs at Evolve, pursuant to Evolve's DDA account agreements with each End User, while the fintech platforms can still operate using the Synapse technology.  In addition to facilitating an orderly closing of accounts, the timely distribution of funds held by Evolve will reduce the inconvenience that End Users with funds at Evolve could face if their funds were frozen for a sustained period.

Evolve does not believe that account closures will harm or prejudice Synapse.  Indeed, the Debtor has rejected its Agreements with Evolve.  [Docket Nos. 76 and 130].  This provides further

---

[1] Evolve is <u>not</u> a "program bank" in the Synapse Brokerage program, but rather continues to provide payment services to those End Users as a contractor of Debtor.

indication that Evolve is not a necessary component for any foreseeable operation of the Debtor's programs.

**E.**   <u>**Authority for Relief Requested**</u>

The relief requested goes directly to the Debtor's administration of this chapter 11 estate. Accordingly, the Court has jurisdiction and the authority to order the relief requested pursuant to Section 704(a)(7) of the Bankruptcy Code, which provides – "[t]he trustee [in this case the debtor in possession] shall – unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as requested by a party in interest."  Section 704(a)(7) is applicable here pursuant to Sections 1107(a) and 1106(a)(1) of the Bankruptcy Code.  In addition, pursuant to Section 105(a) of the Bankruptcy Code, the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title, which provides the Court with further authority to grant the relief requested.

Respectfully submitted,

DATED:  May 13, 2024                          BG LAW LLP


By:  /s/ David M. Poitras
Steven T. Gubner
David M. Poitras
Attorneys for Evolve Bank & Trust

### DECLARATION OF W. CHRISTOPHER STAAB

I, W. Christopher Staab, hereby declare as follows:

1.    I am the Chief Technology Officer ("CTO") of Evolve Bank & Trust ("Evolve").  I have held this position since 2022.  As CTO, my duties and responsibilities include overseeing all of the technology for Evolve.  In addition, I have worked extensively with Evolve's Open Banking Division, which supports fintech clients and aggregators such as Synapse Financial Technologies, Inc. ("Synapse").  For the last eight months I have been working closely with the Synapse team as they have struggled with issues related to maintaining a ledger for their brokerage business at Synapse Brokerage LLC ("Synapse Brokerage").  This has included material deficiencies with the balances held by Synapse Brokerage customers at AMG, American Bank, Lineage and ADMC.  Through this work I have become familiar with the Synapse platform, including the Synapse dashboard system ("Dashboard").  The Synapse systems are leveraged by various departments within Evolve for the oversight of customer activity. I hold a bachelor's degree in business administration from Boston University.  I have more than twenty years of experience in the financial services industry.  Capitalized terms used in this declaration and not specifically defined herein shall have the meaning ascribed to such terms in the Motion.

2.    The MBSA required Debtor to create and maintain an online platform through which Evolve can view and access all information related to the Parties' programs, including information concerning bank services, critical subcontractors, end users, deposits, transactions, and any other services (the "Dashboard").  The Dashboard is essential to Evolve's ability to oversee Debtor's activities as a service provider, and is the system Evolve uses to, among other things, (i) access current balances, transactions, and other real-time data about end users and their accounts, (ii) confirm that transactions authorized by the Debtor issuing platform or other transactions processing systems are posting to end user accounts, (iii) assess whether transactions are fraudulent or unauthorized, and (iv) validate that end users have gone through proper sanctions screening or other Bank Secrecy Act ("BSA") or anti-money laundering-related processes, such as transactions monitoring.  In performing these important oversight functions, Evolve typically accesses the

Dashboard throughout the day as circumstances require, such as when transactions and or accounts are flagged for suspicious activity.

3.      As the Dashboard is a system owned and maintained by Debtor, Evolve employees must use credentials issued by the Debtor to log into the Dashboard.  The login process requires two-factor authentication, which means that in addition to entering a correct UserID and password combination, Evolve employees must enter a six-digit numeric code that is sent to their mobile device or email address.

4.      At approximately 8:42 A.M. Pacific time on Saturday May 11, 2024, Evolve employees discovered that they could no longer successfully log into the Dashboard.  Specifically, during the second phase of the two-factor authentication process, Evolve employees were unable to successfully log in, and were shown a notice at the top of the screen: "! CRAA007 – User is not authorized to access this application."   At the time of filing, approximately 60 Evolve employees who had been able to access the Dashboard prior to May 11, 2024, have not been able to log into the Dashboard.

5.      Without access to the Dashboard, Evolve was left without its principal tool for identifying, preventing, and rectifying unlawful, fraudulent, unauthorized, and/or other irregular activity in connection with Debtor's programs.  The situation required the urgent attention of Evolve's senior management team responsible for overseeing Debtor's programs.  Throughout the morning of May 11, 2024, members of management met with counsel to develop a plan for responding to the loss of Dashboard access.  Evolve determined that without access to the Dashboard, the only course of action to prevent harm to End Users and the bank would be to (i) attempt to confirm the loss of Dashboard access with Debtor, and (ii) absent a change in circumstances, freeze all account activity associated with Debtor's programs pending restoration of system access and investigation of any irregular, unlawful, or unauthorized activity impacting End User accounts.  Evolve is permitted to freeze End User accounts in accordance with the demand deposit account agreement between Evolve and each End User, including when the Bank suspects that any irregular, unauthorized, or unlawful activity may be occurring in connection with the

account, and to comply with regulations issued by the U.S. Treasury Department's Office of Foreign Assets Control.

6.      At 10:22 A.M. Pacific time, counsel for Evolve sent an email with a "High Importance" flag to Debtor's counsel, stating that Evolve's access credentials for the Dashboard no longer worked and seeking confirmation from Debtor by 12:00 P.M. Pacific time as to whether Evolve's access credentials had been revoked, suspended, or otherwise rendered inoperative.  At 1:22 P.M. Pacific time, Debtor's General Counsel replied with a single-line email: "Will check in with the team."  At that point, Evolve determined that in order to timely address the serious risks presented by the lack of Dashboard access, it was necessary to move forward with freezing account activity to prevent potential unlawful, fraudulent, unauthorized, or other irregular activity from occurring without the possibility of detection or mitigation by Evolve.

7.      At 1:54 P.M. Pacific time, Evolve notified the Debtor's CEO by email that in light of the revocation of Evolve's access to the Synapse dashboard, and for the security and integrity of end user accounts, Evolve would be freezing all account activity for DDAs in the Debtor's program and Synapse Brokerage program, effective immediately.  At 2:20 P.M. Pacific time, Debtor's CEO responded that he was "not sure which access has been discontinued."  He additionally stated that Debtor was "working with third parties and will provide information to you as appropriate and permissible."  Following this response from Debtor's CEO, Evolve proceeded to notify fintech platforms of the account freeze in email communications sent at 2:40 P.M. and 2:44 P.M. Pacific time, and directed platforms to notify their End Users regarding the status of their accounts, cards, and future transactions.

8.      At 2:47 P.M. Pacific time, Evolve instituted a freeze on activity for any Evolve account in Debtor's programs.  This covered any debit and credit card programs that are sponsored by Evolve, as well as payment processing services for Synapse Brokerage.  Additionally, Evolve took the same actions to freeze a limited number of accounts that are Evolve Bank and Trust demand deposit accounts ("DDAs") that total $5.9 million in end user deposits.  Evolve did not freeze any corporate accounts belonging to Debtor, and the Synapse Brokerage sweep account was not frozen.

9.      Following the freeze, Evolve received communications from one fintech indicating that Debtor claimed that Evolve's Dashboard access had not been revoked. However, since instituting the freeze, Evolve has performed periodic checks of its Dashboard access throughout May 12, 2024 (and through the time this Motion was filed), and has confirmed that Evolve continues to be denied access to the system.

10.     Evolve again attempted to resolve the issue by sending an email demand to Debtor's CEO on May 12, 2024 at 12:33 P.M. Pacific time, explaining the significance of the impact on Evolve, End Users and the fintechs and providing a screenshot showing the login screen and error message. At 12:35 P.M. Pacific time, Debtor's CEO replied, "Thanks for the screenshot, we will investigate further." Evolve has received no further communication from Debtor at the time of filing of this Motion regarding restoration of Dashboard access.

11.     If Dashboard access is timely restored, Evolve will review any material changes that might have been made without Evolve's knowledge or authorization when the Dashboard access was initially revoked. If no unlawful, fraudulent, unauthorized, or other irregular activity is identified, and Synapse Brokerage transfers to Evolve good funds to settle all card settlement activity as appropriate for end users in the Synapse Brokerage ecosystem, Evolve will unfreeze accounts and resume normal operations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of May, 2024, at Hingham, Massachusetts.


W. CHRISTOPHER STAAB

11

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled: **EMERGENCY MOTION OF EVOLVE BANK & TRUST ("EVOLVE") FOR AN ORDER DIRECTING THE DEBTOR TO RESTORE EVOLVE'S ACCESS TO THE DEBTOR'S DASHBOARD SYSTEM; OR, ALTERNATIVELY, AUTHORIZING EVOLVE TO CLOSE ALL OF THE DEBTOR'S DEMAND DEPOSIT ACCOUNTS AT EVOLVE ASSOCIATED WITH DEBTOR'S PROGRAMS; DECLARATION OF W. CHRISTOPHER STAAB IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **May 13, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **_____,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**\*\*JUDGE'S COPY NOT REQUIRED IF LESS THAN 25 PAGES (GENERAL ORDER 23-01).**

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 13, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

### VIA EMAIL

#### Official Committee of Unsecured Creditors

Kroll Associates, Inc.
Attn: Heather Elizabeth Saydah
55. East 52nd Street, 17th Floor
New York, NY 10055
Heather.saydah@kroll.com

Mercury Technologies, Inc.
Attn Celeste Ferber
333 Bush Street, Suite 1900
San Francisco, CA 94104
celeste@mercury.com

☒    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 13, 2024 | Jennifer Warner | /s/ Jennifer Warner |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

**AND**

**3. SERVED BY EMAIL**

- **Ron Bender**    rb@lnbyg.com
- **J Scott Bovitz**    bovitz@bovitz-spitzer.com
- **Russell Clementson**    russell.clementson@usdoj.gov
- **Andrew Michael Cummings**    andrew.cummings@hklaw.com,
  philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
- **Michael G. Farag**    mfarag@gibsondunn.com
- **Paul R. Glassman**    pglassman@stradlinglaw.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Ralph P Guenther**    rguenther@guentherlawgroup.com
- **Robert T. Honeywell**    robert.honeywell@klgates.com
- **Lance N Jurich**    ljurich@loeb.com,
  pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
- **Monica Y Kim**    myk@lnbyg.com, myk@ecf.inforuptcy.com
- **Jeffrey C Krause**    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Adam A Lewis**    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Fred Neufeld**    fneufeld@sycr.com, tingman@sycr.com
- **David M Poitras**    dpoitras@bg.law
- **Brandy A Sargent**    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
- **Zev Shechtman**    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- **Jason D Strabo**    jstrabo@mwe.com, jbishopjones@mwe.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Jeffrey C Wisler**    jwisler@connollygallagher.com, dperkins@connollygallagher.com
- **Beth Ann R. Young**    bry@lnbyg.com, bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED E- MAIL**

## Request for Special Notice

Jason D. Strabo, Esq.
McDermott Will & Emery
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
jstrabo@mwe.com

Darren Azman, Esq.
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017-3852
dazman@mwe.com

Jake Jumbeck, Esq.
McDermott Will & Emery LLP
444 W. Lake Street, Suite 4000
Chicago, Illinois 60606-0029
jjumbeck@mwe.com

Jeffrey C. Krause, Esq.
Ilissa Samplin, Esq.
Daniel Nowicki, Esq.
Michael G. Farag, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
jkrause@gibsondunn.com
isamplin@gibsondunn.com
dnowicki@gibsondunn.com
mfarag@gibsondunn.com

Robert T. Honeywell, Esq.
K&L Gates LLP
599 Lexington Ave
New York, NY 10022
robert.honeywell@klgates.com

Brandy A. Sargent, Esq.
K&L Gates LLP
1 SW Columbia Street, Suite 1900
Portland, OR 97258
brandy.sargent@klgates.com

Robert J. Labate, Esq.
400 South Hope Street, 8th Floor Los
Angeles, CA 90071
robert.labate@hklaw.com

Andrew M. Cummings, Esq.
Holland & Knight LLP
4675 MacArthur Court, Suite 900
Newport Beach, CA 92660
andrew.cummings@hklaw.com

Jeffrey C. Wisler, Esq.
Connolly Gallagher LLP
1201 North Market Street, 20th Floor
Wilmington, DE 19801
jwisler@connollygallagher.com

Chris Glenos, Esq.
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
cglenos@bradley.com

Paul R. Glassman, Esq.
Fred Neufeld, Esq.
Stradling Yocca Carlson & Rauth LLP
10100 N. Santa Monica Blvd.
Suite 1450
Los Angeles, CA 90067
pglassman@stradlinglaw.com
fneufeld@stradlinglaw.com

Benjamin Waisbren, Esq.
Boies, Schiller Flexner LLP
1401 New York Avenue, N.W.
11th Floor
Washington, DC 20005
bwaisbren@bsfllp.com

John Kucera, Esq.
Boies, Schiller Flexner LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
jkucera@bsfllp.com

Simon Leen, Esq.
Boies, Schiller Flexner LLP
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
sleen@bsfllp.com

Marc Ayala, Esq.
Boies, Schiller Flexner LLP
333 Main Street
Armonk, NY 10504
mayala@bsfllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**