RON BENDER (SBN 143364)
BETH ANN R. YOUNG (SBN 143945)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; MYK@LNBYG.COM; KJM@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re: | Case No.: 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession | **STATUS REPORT RE EVOLVE BANK & TRUST'S ACCOUNT FREEZE AND DECLARATIONS OF TRACEY GUERIN, ESQ. AND SANKAET PATHAK** |
| | DATE:      May 24, 2024<br>TIME:       8:00 a.m.<br>PLACE:    Courtroom 303<br>                 21041 Burbank Boulevard<br>                 Woodland Hills, CA 91367 |

Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case ("Debtor"), hereby files this further update regarding the Evolve Bank & Trust ("Evolve") freeze of Evolve's customers' accounts maintained at Evolve and the funds on deposit therein, as follows:

2

# I.

## SUMMARY OF ARGUMENT

The timeline of events is important as it underscores the calculated decisions by Evolve intended to disrupt the Debtor's business operations, derail the Debtor's orderly wind-down in chapter 11, and evade Evolve's obligation to fund the approximately $50 million FBO Account Deficit (defined below) that Evolve is responsible for.

As Evolve has acknowledged, Evolve is contractually responsible for establishing certain "omnibus custodial account[s] owned by Evolve, in which Evolve holds [Depositor] Deposits for the benefit of [Depositors]" ("FBO Accounts"). *See* Evolve Statement ISO 9019 Motion. Debtor has no custody or control over such Evolve's FBO Accounts. Evolve's FBO Accounts are separate from the omnibus accounts maintained by Debtor's subsidiary, Synapse Brokerage LLC ("Synapse Brokerage") at other financial institutions.   Synapse Brokerage similarly has no control or custody of Evolve's FBO Accounts. Synapse Brokerage has no account at Evolve and no contractual relationship with Evolve. All funds deposited with Evolve through Debtor-related programs are in the control and custody of Evolve.

On or about September 15, 2023, Debtor's CEO had a telephone conference with Scot Lenoir, CEO of Evolve, in which he notified Mr. Lenoir of his concern regarding the discovery of Evolve's improper debits since 2017 exceeding $27,000,000.00 from Depositor funds in Evolve's FBO Accounts, which Evolve used to pay itself and its third-party compensation.

In retaliation, on September 25, 2023, Evolve sent Synapse a notice of an alleged breach for failure to "fully fund" Evolve's own FBO Accounts (presumably for the debit of fees unilaterally initiated by Evolve), demanding that Synapse post a $50 million "reserve," and advising that Evolve intended to withhold all remaining compensation due to Synapse (which amount that ultimately exceeds $43 million). On that same day, Mercury Technologies, Inc. ("Mercury"), a fintech platform that had contracted with Debtor for banking as a service, notified Debtor that it intended to not renew the parties' contract. Two days later, Mercury and Evolve notified Debtor that they would be moving over $3 billion of alleged Mercury depositor funds from the Debtor-related program to an Evolve-direct program.

3

Exhibit "F" to the Pathak Declaration is a true and correct copy of the Schedule of the balance of funds owed by Evolve to its depositors, categorized by each fintech for ease of reference, which reflects that Evolve owes the sum of $150,437,659.89 to depositors as of May 14, 2024.  Exhibit "G" is a true and correct copy of a screen shot of Evolve's banking portal which demonstrates that it holds $102,694,725.72 on balance in 49 FBO Accounts in Evolve's sole custody and control.  Evolve is obligated to fund the difference between the amounts it owes to its depositors and the balance in Evolve's FBO Accounts (the "FBO Account Deficit").  (*See* Pathak Declaration, ¶¶ 9–10 and Exs. "F" and "G.")

During the following two weeks, as last represented by Evolve, Mercury and Evolve improperly transferred (without Debtor's review or participation) over $49 million of Synapse-related depositor funds to Mercury's direct program at Evolve. Since October 2023, Debtor has sent Evolve documentation, on a near daily basis, detailing the basis for its claims that Evolve was required to return over $92 million to its FBO Accounts to fund the FBO Account Deficit. To date, Evolve has not disputed the FBO Account Deficit but instead has only asserted contractual defenses that the Debtor disputes, and that presumably have no impact on Evolve's obligations to its depositors.

Recognizing the FBO Account Deficit, Evolve entered into a Settlement Agreement with Debtor and agreed to fully fund Evolve's FBO Accounts by April 22, 2024. Debtor filed a motion seeking the Court's approval of such settlement agreement. However, because Evolve failed to fully fund the FBO Account Deficit, the settlement failed and was withdrawn.

Despite the fact that the settlement agreement never became effective, Evolve has admitted to moving Debtor's reserve funds exceeding $43,000,000, partially to a "FBO Account, to cover a deficiency of at least $35,322,630.78." *See* Evolve's Statement ISO 9019 Motion. As of the date hereof, Evolve still owes approximately $50 million to its FBO Accounts to cover the FBO Account Deficit. (See, Pathak Declaration at ¶ 10.)

A sale of the Debtor's assets was scheduled for consideration by the Court on May 9, 2024, and would have transferred the administration of the Debtor's business operations to Tabapay on May 10, 2024 in an orderly manner (the "Tabapay Acquisition").   Since

approximately November 2023, Evolve has been working directly with Tabapay, almost on a daily basis, to plan for the continued support as a Partner Bank of Debtor's existing business after the Tabapay Acquisition. The Debtor's crucial need to transfer the administration of the Debtor's business operations (due to the actions of Evolve) was the "exigent circumstance" that warranted the Debtor's expedited sale motion and related requests.  This "meltdown" with Evolve, which arose entirely from Evolve's own actions, is exactly what Debtor sought to avoid for depositors.  As noted above, Debtor's Tabapay Acquisition involved a concurrent settlement agreement with Evolve, which required Evolve to fund the massive FBO Account Deficit that Evolve is liable for.  Tabapay required that the FBO Account Deficit be funded by Evolve in order to close the sale, and the Debtor wanted that issue resolved for the depositors' benefit before its business operations ended.

For months both before the settlement agreement was executed and then continuing while the 9019 Motion was pending, Evolve persistently represented to the Debtor that it needed additional time to fund the FBO Account Deficit.  Counsel for Evolve represented this same mantra to the Court in connection with its repeated requests for a continuance of hearings and extension of Evolve's funding deadline required pursuant to the settlement agreement. However, on the evening of May 8, 2024, Evolve proudly announced that it had already fully funded one singular FBO Account[1] one month earlier, on April 8, 2024 when it transferred funds from the Debtor's Reserve Account (and paid itself almost $9 million in fees) in anticipation of Debtor's chapter 11 filing, and that no further amounts were required. (See, Guerin Declaration at ¶ 6.)

The Debtor disagreed with Evolve's unsubstantiated calculation of the FBO Account Deficit (for which Evolve had provided no accounting beyond a single face page conclusion). (See, Pathak Declaration at ¶12.)  When Tabapay learned of Evolve's failure to further fund the FBO Accounts on the evening of May 8, 2024, the sale imploded, Tabapay walked away, and

---

[1]  Despite repeated requests, Evolve has failed to respond to requests for information regarding the other 46 known (to Debtor) FBO Accounts or the additional 113 FBO accounts (unknown to Debtor) Evolve's auditors claim are related to the Debtor program despite Debtor having no information for them.

1    mayhem ensued. The Debtor does not believe that it is a coincidence that Evolve ceased

2    processing transactions on May 8, 2024, at the same time as Evolve's decision to not fund the

3    FBO Account Deficit, which, in turn, caused the Tabapay Acquisition to fail.  (See, Pathak

4    Declaration at ¶ 14.)

5          Although Evolve contends that the reason for its decision to freeze depositors' funds on

6    May 11, 2024 was the pause in access to the Debtor's Dashboard, the fact of the matter is that

7    Evolve stopped processing transactions days earlier, In fact, Evolve inappropriately requested the

8    ability to close all depositor accounts in its emergency motion filed on May 13, 2024.   The

9    decision to freeze access to depositors' funds in the FBO Accounts was made by Evolve and

10   Evolve alone.

11         The Debtor's pause on the Dashboard on the morning of Saturday, May 11, 2024, was in

12   an effort to evaluate the situation given Evolve's shocking representation and alternative

13   transition plans for fintechs and depositors to ensure an orderly wind down after the sale fell

14   through. (See, Pathak Declaration at ¶ 16.)  Historical records demonstrate that Evolve did not

15   access the Dashboard every day on weekends.   However, supposedly in response to the

16   temporary pause of its access to the Dashboard, Evolve immediately froze all depositor accounts,

17   rejecting any depositor transactions being processed during that time.  (See, Pathak Declaration

18   at ¶15.)   The response by Evolve was not proportional to the pause, particularly where Evolve's

19   access to the Dashboard was restored early in the day on May 13, 2024.   (See, Pathak

20   Declaration at ¶ 15 and 17.)  However, to this day, Evolve continues to refuse to unfreeze the

21   depositor accounts or permit any flow of funds to depositors' external accounts at other banks.

22         As the week of May 13, 2024 continued, Evolve asserted one excuse after another for

23   why it would not unfreeze its depositors' funds and go back to maintaining the status quo during

24   the Debtor's wind down process. Attached as Exhibits "A" through "D" to the Guerin

25   Declaration are communications between the Debtor and Evolve on this topic, which outline the

26   continued efforts of the Debtor to unfreeze the depositors' accounts—efforts that Evolve

27   continues to stymie.

28

On May 13, 2024, after access to the Dashboard had already been restored, Evolve filed its motion asking for the Dashboard to be restored and seeking leave to terminate all of its depositors' accounts. The problem from the Debtor's perspective was already resolved on May 13, 2024 when the Dashboard was again accessible to Evolve. However, from that point forward, the Debtor has been forced to play a perverse game of "whack-a-mole" with unreasonable demands from Evolve as conditions to unfreezing the depositor accounts, all while the depositors suffer lack of access to their funds.[2]  (See, Pathak Declaration at ¶ 13.)

**A. <u>MAY 13, 2024 and MAY 14, 2024</u>:**

On May 13, 2024, even though its access to the Dashboard had already been restored, Evolve filed an emergency motion requesting that (a) the Dashboard be restored, and (b) the Court authorize Evolve to terminate all of its depositors' Synapse-related FBO Accounts. The Court agreed with Debtor that the emergency Motion was asking for forgiveness for actions already taken by Evolve, not seeking to do anything, and in any event, because Debtor had already provided Evolve with access to the Dashboard that issue was essentially moot. However, the Court indicated that if the Dashboard access had not been restored, it should be (but since it had been restored, there was nothing further for the Debtor to do). The Court denied the second part of Evolve's request, indicating that Evolve failed to provide any evidence that it was prudent to authorize cancellation of its depositors' accounts and had provided no legal authority for such a remarkable position. Debtor contends that Evolve's request to close such accounts is made solely in an effort to try to avoid Evolve's responsibility to remedy the FBO Account Deficit.

Although Evolve refused to acknowledge at the hearing on May 13, 2024 that access to the Dashboard had been restored (which it had been), Evolve eventually admitted on May 14, 2024 that the sole issue it had with regard to the Dashboard was that historical account statements could not be accessed. (See, Exhibit "B"). As set forth in Exhibit "B," Evolve was reminded that "Evolve has been made aware for several month now of the statements issue –

---

[2]  Exhibits "A"-"D" confirm Debtor worked tirelessly to address concerns posed by Evolve, to no avail. Evolve came up with on reason after another to delay unfreezing depositor accounts, even as depositors lodged complaints advising of their personal hardships. (Guerin Decl. at ¶ 6.)

7

summaries, not statements have been generated, *due to Evolve's failure to settle activity.* This is not new or novel." (See, Exhibit "B") During this same time, in order to get the depositors' accounts unfrozen and activated again, Debtor continued to offer meetings with Evolve to address any questions or issues regarding the Dashboard, which Evolve refused to engage in. (See, Guerin Declaration at ¶ 6.)

What is readily evident from the emails attached as Exhibits "A" and "B" is that Debtor continued to try and work with Evolve to answer questions and resolve any perceived issues, but Evolve was non-responsive or evasive. For example, on May 13, 2024, acting under the belief that with restoration of the Dashboard, payment processing would resume for depositors, Debtor asked Evolve "[w]ill you please provide Synapse with advanced notice of when payment processing and card processing will be turned on so that, for example, we can ensure we can communicate with fintechs as implored by the Court today?" However, Evolve did not respond.

The next day, on the morning of May 14, 2024, Debtor followed up again, advising that "[w]e really need to understand what Evolve's plan is to unfreeze end-user's access to the funds" and that Debtor's logs show that Evolve has had access to the Dashboard and has been accessing data since May 13, 2024. (See, Exhibit "B"). Still no response from Evolve.

In the afternoon on May 14, 2024, Debtor again inquired "[c]hecking in again to see if you can please share *any* information whatsoever. ***We are in the dark here and trying to plan a wind-down that ensures the best possible outcome for fintechs and end-users***. We need to ensure that end-users will have access to their funds." (See, Exhibit "B," emphasis added).

By the end of the day on May 14, 2024 at 9:46 p.m., almost two days after Dashboard access had been restored, Evolve finally responded that it was "continuing to review each area of the Dashboard impacted by the revocation of system access to confirm functionality…" and was missing end user statements. Debtor offered to resend any copies of statements Evolve was missing (to which no response has ever been received) and offered to meet with Evolve at any time after 3:00 am. Later that night / morning, Evolve finally responded that "right now the piece I'm aware of is the statements, so let's cancel the meeting for now." (See, Exhibit "C" at page 6.) Nothing else was identified by Evolve related to the Dashboard for the basis for the freeze.

### B. **MAY 15, 2024**

On May 15, 2024, only being advised that Evolve did not have access to historical account statements[3], Debtor again inquired: "Can Evolve now please confirm when it will unfreeze accounts?" Evolve responded that in order to lift the freeze on payment activity, Synapse must provide "essential Information and services" relating to Ledger Files, Required Reporting and Transaction Settlements.  Because Evolve knew its actions would destroy the Tabapay Acquisition, Evolve should have had reasonable continuity plans in place for Debtor's immediate wind-down given Evolve's intimate knowledge since September 2023 of Debtor's cash position and operational capacity stemming from Evolve's own actions beginning in September 2023 of, including among other things, withholding all Debtor revenue and failing and refusing to remedy the FBO Account Deficit.

Evolve again reiterated that it wanted the Dashboard access to be "the same level of access that Evolve had on May 9th" (See, Exhibit "C" at page 4.)  However, since the historical account statements had not been issued as Evolve was aware, Synapse offered once again to send Evolve copies of such statements while it works to update the remaining statements. Within hours, Debtor provided a detailed response to the three categories of questions posed by Evolve, explaining each and every issue. (See, Exhibit "C" at pages 1 – 3.).  Fundamental disputes continued, and Debtor had to remind Evolve that "Synapse Brokerage has no relationship with Evolve," and that "Evolve's obligation to process transactions is an obligation [Evolve] has to its DDA depositors." [4]   Yet, Evolve still refused to remove the freeze.

---

[3]  Since December 2023, Debtor has been unable to generate account statements as a direct result of Evolve's actions in failing and refusing to settle with Synapse Brokerage LLC in relation to accounts at AMG.  Evolve has known this to be the case and represented that settlement would resume after the Tabapay Acquisition.

[4] On May 13, 2024, Evolve was again reminded that Evolve "has no agreement with Synapse Brokerage LLC and holds no account in its name; Evolve and Synapse Brokerage LLC have no agreement in place for payment processing services which is the reason why the parties were in discussions and negotiating a potential ACH agreement; and that all payment processing services performed by Evolve are pursuant to Evolve's DDA program. (See, Exhibit "A").

### C. **MAY 16, 2024**:

In a further effort to provide as much information to Evolve as possible, on May 16, 2024, Debtor provided detailed responses to a series of 9 questions Evolve put forth.  (See, Exhibit "D" at pages 1 – 2.)

### D. **MAY 17, 2024**

In the early morning on May 17, 2024, after working around the clock, Debtor provided each fintech with reports detailing (1) total balances owed to each depositor for the fintechs program, (2) a break-down of the depositors' funds owed by each bank or financial institution. Debtor provided Evolve with ledger records detailing the amount Evolve owes to each depositor listed in the DDA Program. Debtor provided Lineage with ledger records detailing the amount Lineage owes to each depositor listed in the DDA Program. Debtor provided American Bank with ledger records detailing the funds that were previously held at American Bank for card services related to the DDA Programs. Debtor provided Synapse Brokerage LLC banks holding cash management account funds (which do not include Evolve or Lineage) with ledger records detailing the amount Synapse Brokerage LLC owes to each depositor listed in the Cash Management Program. Evolve and Lineage did not respond.  (See, Pathak Declaration at ¶ 18.)

At the evidentiary hearing on May 17, Christopher Staab testified on behalf of Evolve. Although Mr. Staab could not answer all of the questions presented, and was evasive in responding to certain questions, what Mr. Staab did admit under oath is that, among other things, (a) Evolve had access to the Dashboard on May 13, 2024; (b) the information on the Dashboard includes the name, address, and other identifying information of each end user, the debit and credit transactions conducted by each end user in real time, and also the individual account balance as of that date; and (c) he could not identify any information in the historical account statements that would be relevant to Evolve unfreezing the depositors' accounts.

As the Court will recall, at the May 17, 2024 hearing, the Court ordered the parties to meet and confer in an effort to unfreeze funds access.  The Court also made clear that it has made "no judgment as to who is to blame."  Remarkably, following the May 17, 2024 hearing, Evolve issued a press release that misrepresents what actually occurred, contending that the Court

somehow validated Evolve's position. A true and correct copy of the press release is attached to the Guerin Declaration as Exhibit "E." Certainly, ordering the parties to meet and confer to resolve the freeze is not a resounding vindication of Evolve's position as misrepresented in the Press Release, and of course, the Court made clear that it has made "no judgment as to who is to blame," a fact Evolve's self-serving press release also fails to mention. Moreover, the point of ordering the parties to the meet and confer was, as stated by Court at the conclusion of the hearing, so that "Evolve can be persuaded to move money and start processing backlogged transactions." It appears that Evolve is more interested in saving face than working with the Debtor to provide depositors access to their money.

### E. **MAY 20, 2024**

As directed by the Court, the Debtor participated in a meet-and-confer on May 20, 2024, which started at 10:00 am and concluded at approximately 5:30 pm. Although the Debtor worked diligently to persuade Evolve to unfreeze its depositors' accounts, and notwithstanding the assistance of Judge Mitchel Goldberg, Evolve did not change its position and its depositors' funds remain frozen. Federal Rule of Evidence 408 prevents the Debtor from discussing Evolve's asserted reasons for its continued refusal to unfreeze depositors' funds, but Debtor believes those reasons are baseless.

### F. **MAY 21, 2024**

As of May 21, 2024, neither Evolve nor Lineage had responded to Debtor regarding the ledger reports provided on May 17, 2024. All other banks worked in good faith with Debtor to confirm accuracy of, and agreement with, the reports provided.

On May 21, 2024, though not ordered by the Court, given that all activity was still frozen, Debtor again worked tirelessly with limited resources to create final ledger reports for each fintech and bank, which reports were delivered. In addition, Debtor provided each fintech with template depositor notices to be sent to each depositor as soon as possible. The depositor notice, among other things, (1) provides the depositor with the respective amount of funds owed by each bank or financial institution holding their funds, and (2) requests that the depositor confirm their

external account information or to provide new external account information into which their funds may be sent.

### G. MAY 22, 2024

Five days after its receipt, Evolve finally responded to Debtor's trial balance report provided on May 17, 2024 with significant requests. Debtor is in the final stages of wind-down, has few staff or resources to provide ongoing support of this nature to Evolve.  A copy of the communication between Debtor and Evolve is attached as Exhibit "I" to the Guerin Declaration.

As of the date hereof, Lineage has not responded to the trial balance reports.

As of the date hereof, all other applicable banking institutions holding depositor funds are working diligently and in good faith with Debtor to achieve a full release of all funds owed to depositors by each such institution.

### II.

### DEPOSITS AT EVOLVE BANK AND TRUST AS OF MAY 20, 2024

Attached to the Pathak Declaration as Exhibit "F" is a true and correct copy of the Schedule of Evolve's liability to its depositors for funds that should be maintained in Evolve FBO Accounts, categorized by each fintech for ease of reference.  The Schedule shows that Evolve owes the sum of $150,437,659.89 to its depositors as of May 14, 2024.  Mr. Staab testified on behalf of Evolve, Evolve relies on Debtor's ledger records. Therefore, because Evolve has Debtor's ledgers demonstrating the amount of funds Evolve owes to each depositor, Evolve has no legitimate justification for its continued refusal to release such funds to depositors immediately.

Attached to the Pathak Declaration as Exhibit "G" is a true and correct copy of a screen shot of Evolve's banking portal which demonstrates that Evolve holds $102,694,725.72 of depositors' funds in 49 accounts[5] in Evolve's **sole** custody and control. Therefore, Evolve is

---

[5]  As noted above, Evolve has failed, since at least March 19, 2024, to respond to Debtor's continued requests for information on other potential FBO accounts holding Synapse-related funds given representations from Evolve's auditor's that an additional 113 accounts exist. Attached to the Guerin Declaration as Exhibit "H" is a true and correct copy of emails between Debtor and Evolve to which no information has been provided.

required to fund the resulting FBO Account Deficit to ensure it has funds on hand for the $150,437,659.89 aggregate liability it owes to its own depositors, each of which agreed to Evolve's account agreement.

## III.

## STATUS OF DEBTOR'S WIND DOWN

As outlined above, Debtor has continued to exhaust all possible paths for the orderly transition of the administration of the Debtor's services to a third party. Evolve has repeatedly undermined Debtor's efforts.

### A.  STATUS OF FUNDS AT EVOLVE

Once the Tabapay Acquisition was terminated, and while Debtor was working tirelessly on an orderly wind down, Evolve has undermined those efforts by freezing depositors' accounts. Evolve's freeze has significantly distracted Debtor's focus and attention at a critical time in its chapter 11 case. Both fintechs and depositors have confirmed Debtor's efforts and attention, as Debtor has worked around the clock to ensure that final reports are provided to both fintechs and Banks. Meanwhile, Evolve has caused utter chaos and needless administrative burden (monetary and otherwise) through its Evolve's unilateral decision to freeze depositors' accounts. Evolve did so in furtherance of its ulterior motive to just close depositors' accounts completely, in a self-serving effort to shrink its liability for the FBO Account Deficit. While the Court denied Evolve's request for leave to close the depositors' accounts, Debtor has received messages from fintechs and Evolve depositors' who assert that Evolve closed accounts on May 7, 2024. After detailing the Tabapay Acquisition, Evovle has revoked Debtor's prior level of access to Evolve's portal and Debtor cannot confirm whether in fact Evolve in fact closed depositors' accounts *before* it filed its Emergency Motion (and was thus asking for forgiveness not permission).

In any case, it is Evolve that will need to honor its contractual obligations to the depositors, provide them access to their funds and administer the deposit accounts in accordance with regulatory requirements.  Evolve cannot use the Debtor as a scapegoat for Evolve's failure to properly account for its customer deposits and administer the depositors' accounts and the funds in the FBO Accounts in accordance with sound banking practices.

Evolve has the information needed to provide its depositors access to their funds. Evolve and Evolve alone, is responsible for the continued freeze of depositor funds. Evolve's continued failure and refusal of Evolve to fund the FBO Account Deficit, as Evolve was required to do under the parties' settlement agreement, is the cause for this freeze—not any action by Debtor. Debtor respectfully requests that the Court deny the balance of the relief requested in Evolve's emergency motion (which is moot in any event) and direct Evolve to promptly work with fintechs and return funds—in full—to its depositors.

## B.  STATUS OF DEPOSITS AT LINEAGE BANK

Similar to Evolve, Lineage has all of the information needed to provide depositors access to their funds. Debtor continues to work in partnership with fintechs to implore Lineage to provide depositors with access to their funds.  As of the date hereof, Debtor has learned that Lineage now requires as its own condition an order from this Court to release depositor funds, a requirement that goes against the clear and unambiguous urging of the Court to get depositors their funds. In the interest of expediting that process, Debtor respectfully requests that the Court direct Lineage to promptly work with fintechs and return funds to depositors.

## C.  STATUS OF DEPOSITS IN THE SYNAPSE BROKERAGE LLC CASH MANAGEMENT PROGRAM

Prior to Evolve's decision to freeze its depositors' accounts, all depositor transaction activity occurred on the depositors' bank account at Evolve or Lineage. Depositors were able to deposit funds in the cash management program, or withdraw funds from the cash management program, only through their bank account at Evolve or Lineage. The sole service provided by Synapse Brokerage LLC was the sweep program service, nothing else. Therefore, the freezing of funds on deposit with Evolve and Lineage  impacted depositors' access to funds in the cash management program.

As of the date hereof, Debtor and its non-debtor subsidiary Synapse Brokerage have been working with applicable banks (that do not include Evolve or Lineage) and with appropriate regulatory bodies to implement a plan to disburse all funds in the custody of Synapse Brokerage LLC (which includes *no* funds deposited at Evolve or Lineage) to Synapse Brokerage LLC

customers in the upcoming days. Synapse Brokerage LLC's cash management program is fully
funded and no deficit exists impacting depositor balances.

### D.  DEBTOR'S FROZEN OPERATING CAPITAL AT EVOLVE AND AMERICAN BANK

On May 22, 2024, as a result of Evolve and American Bank continuing to freeze Debtor's
operating capital, Debtor e-mailed both Evolve and American Bank demanding that each release
Debtor's funds, which are being held by Evolve and American Bank in violation of the automatic
stay and interfering with property of the estate.

Evolve and American Bank refuse to return Debtor's funds, causing further chaos and
making it impossible for Debtor to operate.


Dated:  May 23, 2024                    SYNAPSE FINANCIAL TECHNOLOGIES, INC.

                                        By:___/s/ Beth Ann R. Young_____
                                            RON BENDER
                                            BETH ANN R. YOUNG
                                            MONICA Y. KIM
                                            KRIKOR J. MESHEFEJIAN
                                            LEVENE, NEALE, BENDER,
                                            YOO & GOLUBCHIK L.L.P.
                                            Proposed Attorneys for Chapter 11 Debtor
                                            and Debtor in Possession

1

## DECLARATION OF TRACEY GUERIN

2        I, Tracey Guerin, hereby declare as follows:

3        1.      I have personal knowledge of the facts set forth below and, if called to testify,

4    would and could competently testify thereto.

5        2.      Since June 2022, I have served as General Counsel of Synapse Financial

6    Technologies, Inc., the debtor in possession in the above-captioned, chapter 11 bankruptcy case

7    ("Debtor").   From June 14, 2018 until June 2022, I served as Associate General Counsel of

8    Debtor.

9        3.      In my capacity as the General Counsel of the Debtor, I have access to the

10   Debtor's books and records and am familiar with the organization, operations and financial

11   condition of the Debtor.   Any records and documents referred to in this declaration constitute

12   writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at

13   or near the time of each act, condition or event to which they relate by persons employed by the

14   Debtor who had a business duty to the Debtor to accurately and completely take, make, and

15   maintain such records and documents.   The statements set forth in this declaration are based

16   upon my own review and knowledge of the Debtor's books and records.

17       4.      I make this declaration in support of the Debtor's Status Report filed

18   concurrently herewith.

19       5.      A sale of the Debtor's assets was set to be considered by the Court on May 9,

20   2024, which sale would have transferred the administration of the Debtor's business operations

21   to Tabapay on May 10, 2024 in an orderly manner ("Tabapay Acquisition").

22       6.      Exhibits "A" through "D" attached hereto contain e-mail communications

23   between Debtor and Evolve between May 13-16, 2024. Each time Debtor has resolved one

24   concern, Evolve raises another.

25       7.      Exhibit "E" attached hereto is a true and correct copy of a press release issued by

26   Evolve after the May 17, 2024 hearing, entitled "Evolve Bank & Trust Response to Synapse

27   Bankruptcy Hearing."

28

8.    Exhibit "H" attached hereto is a true and correct copy of e-mail communications between Debtor and Evolve between March 12, 2024 and May 17, 2024. Evolve has refused to respond or to provide any information to Debtor regarding these 113 accounts allegedly at Evolve or to explain why certain Evolve accounts are missing from its auditor's letter.

9.    Exhibit "I" attached hereto is a true and correct copy of e-mail communications between Debtor and Evolve on May 22, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 23rd day of May 2024 at Rome, Italy.


_____
TRACEY GUERIN

## DECLARATION OF SANKAET PATHAK

I, Sankaet Pathak, hereby declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am the Founder and Chief Executive Officer of Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case ("Debtor").

3.    In my capacity as the Founder and CEO of the Debtor, I have access to the Debtor's books and records and am familiar with the organization, operations and financial condition of the Debtor.  Any records and documents referred to in this declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of each act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own review and knowledge of the Debtor's books and records, and my own knowledge of the Debtor's efforts to raise additional capital and market and sell the Debtor's assets as a going concern over the course of the past seven+ months.

4.    I make this declaration in support of the Debtor's Status Report filed concurrently herewith.

5.    On or about September 15, 2023, I had a telephone conference with Scot Lenoir, CEO of Evolve, in which I notified Mr. Lenoir of my concern regarding the discovery of Evolve's improper debits which I now know exceed $27,000,000.00 from its own FBO Accounts holding depositor funds since 2017 to pay itself and its third-party compensation. In retaliation, Evolve sent Debtor a notice on September 25, 2023 of an alleged breach for failure to "fully fund" Evolve's own FBO Accounts (presumably for the debit of fees initiated by Evolve), required Synapse to post a $50 million reserve, and that Evolve intended to seize all remaining compensation due to Synapse (which amount ultimately exceeds $43,000,000).

6.      On that same day (September 25, 2023), Mercury Technologies, Inc. ("Mercury") notified Debtor that it intended to not renew the parties' contract. Two days later, Mercury and Evolve notified Debtor that they would be moving over $3 billion of alleged Mercury depositor funds from the Debtor-related program to an Evolve-direct program.

7.      During the following two weeks, as last represented by Evolve, Mercury and Evolve improperly transferred (without Debtor's review or participation) over $49,000,000.00 of Synapse-related depositor funds to Mercury's direct program at Evolve. Since October 2023, Debtor has sent Evolve documentation, on a near daily basis, detailing the basis for its claim that Evolve is required to return over $92,000,000 to its FBO Accounts to fund the FBO Account Deficit. To date, Evolve has not disputed the FBO Accounts Deficit but has only asserted contractual defenses that presumably have no impact on its own obligations to depositors.

8.      Since approximately November 2023, Evolve has been working directly with Tabapay, nearly on a daily basis, to plan for the continued support as a Partner Bank of Debtor's existing business after the Tabapay Sale. The Debtor's crucial need to transfer the administration of the Debtor's business operations (which Debtor claims is due to the actions of Evolve and Mercury) was the "exigent circumstance" that warranted the Debtor's expedited sale motion and related requests.  This "meltdown" with Evolve is exactly what Debtor sought to avoid for depositors.  As noted above, Debtor's sale of assets to Tabapay was in conjunction with the settlement agreement with Evolve, which required Evolve to fund the massive FBO Account Deficit. Tabapay required that the FBO Account Deficit be funded by Evolve in order to close the sale, and the Debtor wanted that serious issue resolved for the depositors' benefit before its business operations ended.

9.      For months both before the settlement agreement was executed and then continuing for weeks thereafter while the 9019 Motion was pending, Evolve persistently represented to the Debtor (through me and others) that it needed additional time to fund the FBO Accounts Deficit.  Indeed, the Court will recall that counsel for Evolve also represented this same mantra to the Court in connection with its repeated requests for a continuance of hearings and extension of Evolve's funding deadline required pursuant to the settlement agreement.

However, on the evening of May 8, 2024, Evolve proudly announced that it had already fully funded one singular FBO Account one month earlier, on April 8, 2024 when it transferred funds from the Debtor's Reserve Account (and paid itself almost $9,000,000 in fees) in anticipation of Debtor's chapter 11 filing, and that no further amounts were required.

10.    With regard to the FBO Accounts Deficit, Evolve entered into a Settlement Agreement with Debtor and agreed to fully fund its FBO Accounts by April 22, 2024. Evolve has failed to fully fund its FBO Accounts. Evolve has admitted to moving Debtor's reserve funds exceeding $43,000,000, partially to a "FBO Account, to cover a deficiency of at least $35,322,630.78." *See* Evolve's Statement ISO 9019 Motion. As of today's date, I believe that the deficit in the FBO Accounts remains and the sum of approximately $50,000,000 is required to cover the FBO Accounts Deficit.

11.    Attached hereto as Exhibit "F" is a true and correct copy of the Schedule of Evolve's liability to its depositors categorized by each fintech for ease of reference.   The Schedule shows that Evolve owes the sum of $150,437,659.89 to depositors as of May 14, 2024.

12.    Attached hereto as Exhibit "G" is a true and correct copy of a screen shot of Evolve's banking portal which demonstrates that it holds $102,694,725.72 on balance in 49 accounts in Evolve's custody and control. Therefore, Evolve is required to fund the remaining FBO Accounts Deficit to ensure it has funds on hand for the $150,437,659.89 liability it owes to depositors.

13.    Evolve has all of the data from which Evolve can provide depositor's access to their funds. Debtor contends that such failure and refusal of Evolve to fund its FBO Accounts Deficit as Evolve was required to do under the parties' settlement agreement is the cause for this freeze, not any action by Debtor.

14.    Debtor disagrees that Evolve has funded its FBO Accounts as required. Evolve has not provided any accounting related to the FBO Account Deficit or justification for its failure to fund its FBO Accounts. When Tabapay learned of this failure to further fund the FBO Account on the evening of May 8, 2024, the sale imploded, Tabapay walked away, and mayhem ensued. Indeed, the Debtor does not believe that it is a coincidence that Evolve ceased processing

transactions on May 8, 2024 unrelated to Evolve's decision to not further fund the FBO Account Deficit and the sale transactions failing.

15.    Although Evolve contends that the reason for freezing its depositor's funds on May 11, 2024 was the pause in access to the Debtor's Dashboard, the fact of the matter is that Evolve stopped processing transactions days earlier. Debtor contends that Evolve freezing funds in response to the Dashboard claim without making a single phone call to Debtor or its counsel, was a pretext for terminating all of the deposit accounts, and in fact, that was part of Evolve's request in its emergency motion filed on May 13, 2024.

16.    The Debtor's pause on the Dashboard on the morning of Saturday, May 11, 2024, was in an effort to evaluate the situation given Evolve's shocking representation and alternative transition plans for fintechs and depositors to ensure an orderly wind down after the sale fell through.

17.    Historical records demonstrate that Evolve did not always access the Dashboard every weekend.  However, in response to the temporary pause on access to the Dashboard, Evolve immediately froze all depositor accounts, rejecting any depositor transactions being processed during that time.  The response by Evolve was not proportional to the pause, particularly where full access to the Dashboard was restored early in the day on May 13, 2024. However, to this day Evolve continues to refuse to unfreeze the depositor accounts or permit any flow of funds to the depositor's external accounts at other banks.

18.    In the early morning on May 17, 2024 and again on May 21, 2024, Debtor provided each fintech with reports detailing (1) total balances owed to each depositor for the fintechs program, (2) a break-down of the depositors' funds owed by each bank or financial institution. Debtor provided Evolve with ledger records detailing the amount Evolve owes to each depositor listed in the DDA Program. Debtor provided Lineage with ledger records detailing the amount Lineage owes to each depositor listed in the DDA Program. Debtor provided American Bank with ledger records detailing the funds that were previously held at American Bank for card services related to the DDA Programs. Debtor provided Synapse Brokerage LLC banks holding cash management account funds (which do not include Evolve or

Lineage) with ledger records detailing the amount Synapse Brokerage LLC owes to each depositor listed in the Cash Management Program. Lineage has not responded. Five days after the initial report was provided, on May 22, 2024, Evolve sent an e-mail to Debtor requesting additional information, which Debtor currently does not have the resources to respond to as a result of Evolve's unilateral actions and failure to release Debtor's funds to it.

19.    Debtor has been working in good faith with those banking partners of Synapse Brokerage LLC (which do not include Evolve or Lineage), and such financial institutions have been supportive. In particular, AMG has been an extraordinary partner and diligently working to assist Debtor and its subsidiary in strategizing and supporting means of which to provide depositors' with access to the funds in their cash management account.

20.    Neither Debtor nor Synapse Brokerage LLC have any custody or control of any funds maintained at Evolve or Lineage.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.  Executed this 23rd  day of May 2024, at Santorini, Greece.

_____
SANKAET PATHAK

# EXHIBIT "A"

---------- Forwarded message ---------
From: **Sankaet Pathak** <s@synapsefi.com>
Date: Mon, May 13, 2024 at 2:22 PM
Subject: Response to your emergency motion
To: Hank Word <hword@getevolved.com>, Scot Lenoir <slenoir@getevolved.com>,
Stapleton, Caroline <cstapleton@orrick.com>, Tracey Guerin <tracey@synapsefi.com>

Scot and Hank:

I write to you in response to Evolve's Emergency Motion filed today in the bankruptcy court
regarding its request that Synapse restore access to its dashboard. As I told you yesterday,
in light of (i) Evolve's public misrepresentation of the ledger and its DDA responsibility to
end users (ii) Evolve's continued undocumented, unsubstantiated and improper transfers and
misappropriation of reserve funds in anticipation of the chpt 11 filing, (iii) Evolve's
continued undocumented, **un**substantiated and improper transfers of end user funds, (iv)
actual and potential misuse of the Synapse services to misappropriate end user funds and to
harm end-users, Synapse is working with third parties to evaluate how to best safeguard
fintech and end-user interests.

We are surprised that Evolve filed this Emergency Motion given that (i) Evolve knew the
chaos that would ensue from its last minute change in position and refusal to fund its FBO
accounts (ii) Evolve knew Synapse's cash position and the toll already taken to its financials
in providing Evolve with a month-long extension to its funding requirement and that
Synapse operations may cease, and (iii) Evolve should have its own copy of all data
per **Evolve's regulatory obligations**. The brief pause in full dashboard access
(which Evolve was aware of) while the Synapse team attempted to evaluate alternative
transition plans for fintechs and end-users was reasonable under the circumstances,
especially in light of communication from Evolve that it would be pausing processing of
transactions in any case.

Notwithstanding, we are also surprised that Evolve filed this Emergency Motion given my
understanding that the **Synapse** team had communicated to your team early this morning that
full access would resume today.

I want to reiterate the fact that Evolve Bank & Trust has no agreement with Synapse Brokerage LLC and holds no account in its name. Evolve's messages, which are being sent to customers and potentially end-users, commits UDAAP and other potential violations of law. Evolve and Synapse Brokerage LLC have no agreement in place for payment processing services, which is the reason why the parties were in discussions and negotiating a potential ACH agreement between Evolve and Synapse Brokerage LLC just this past week (redlines which were never finalized) to, for instance, support the Lineage return of funds. All payment processing services performed by Evolve are pursuant to Evolve's DDA program, a fact which Evolve is well-aware and which disclosures to end-users Evolve has reviewed on numerous occasions. We will follow up separately regarding this and other points, but in the meantime **we demand that Evolve cease and desist from further communication that misrepresents Evolve's status as custodian of end-user's DDA accounts and Evolve's responsibility for all funds at Evolve as reflected in the trial balance Evolve has received from Synapse on a daily basis.**

Finally, Evolve's Emergency Motion states that the "Synapse brokerage sweep account was not frozen," that end users "migrated" "to a separate program offered by ... Synapse Brokerage LLC" and that Evolve requires Synapse Brokerage to transfer funds to Evolve to settle card activity as appropriate for end users "in the Synapse Brokerage ecosystem." Again, Synapse Brokerage LLC has no account open at Evolve and all transactions processed by Evolve relate to end-users Evolve DDA accounts. Such purported argument by Evolve to try to shift the well-documented deficit from itself to other banks and programs is made, at a minimum, in bad faith. No end-user DDAs have been closed -- a fact which Evolve acknowledges by now asking the court to close them. Contrary to statements made in Evolve's Emergency Motion, DDA accounts cannot "migrate" to another program or convert into brokerage accounts. Evolve's DDA program has remained unchanged since each account was opened. As Evolve knows, certain end-users separately opened brokerage accounts at *other* financial institutions and enrolled in a sweep program. This separate account has no bearing on Evolve's DDAs or its liability to end-users, something Evolve is quite familiar with given its participation in its intraFI program.

Based upon the above documented facts and circumstances, Synapse demands that Evolve cease and desist from all inaccurate, untrue, and misleading statements, including misrepresentations regarding Synapse Brokerage LLC. To the extent that Evolve believes that any account in the name of Synapse Brokerage or Debtor is open at Evolve, we demand that you provide information of this account immediately, as such account was opened without proper authorization. Though just as of last week, Synapse Brokerage LLC was willing to open a brokerage account (for the first time) at Evolve to assist in Evolve's receiving Evolve DDA end-user balances from Lineage, this account was the first account discussed being opened and clear direction was sent withdrawing any authorization.

This email is not intended to provide an exhaustive overview of the issues currently pending or claims existing -- but in the interest of end-users and fintechs, we send this initial notice and expect Evolve to comply.

```
Sankaet

Founder & CEO @ Synapse
```

--
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# EXHIBIT "B"

| | |
|---|---|
| **From:** | Tracey Guerin |
| **To:** | Stapleton, Caroline |
| **Cc:** | Scot Lenoir; Sankaet Pathak |
| **Subject:** | Re: Synapse and Evolve - Processing |
| **Date:** | Tuesday, May 14, 2024 1:58:30 PM |

Caroline and Scot:

I'm copying Sankaet to this email. He and the appropriate people at Synapse sit waiting to
meet on a zoom to go through each evolve user's access and walk through API calls live.

Best,
Tracey

On Tue, May 14, 2024 at 12:53 PM Tracey Guerin <tracey@synapsefi.com> wrote:
Caroline - We are available right now to sit with Evolve's employees to see what if anything
is not available and fix it immediately. Waiting until 13 minutes before our hearing is
demonstrably bad faith. It takes less than a second (as demonstrated by our logs of Evolve
users) to access the dashboard. Evolve should focus on restoring end-users access to their
funds rather than conducting a bad faith examination of the dashboard. Evolve has been
made aware for several months now of the statements issue -- summaries, not statements
have been generated, due to Evolve's failure to settle activity. This is not new or novel.

We put Evolve on notice not to further misrepresent its access to the dashboard.

Please let us know who is available and we will send a zoom. We have people waiting.


On Tue, May 14, 2024 at 12:46 PM Stapleton, Caroline <cstapleton@orrick.com> wrote:

Tracey – Evolve still does not have full access to key information in the
Dashboard, including end user statements.  Please let us know when the Bank
will have full Dashboard access and explain why full Dashboard access has not
been restored at this point.  The Bank is also continuing to review each area of
the Dashboard impacted by the revocation of system access to confirm
functionality – but the fact that Dashboard access has only been partially restored
is deeply concerning, and may speak to a broader Dashboard integrity issue.



Best,

Caroline

---

**From:** Tracey Guerin <tracey@synapsefi.com>
**Sent:** Tuesday, May 14, 2024 3:20 PM
**To:** Scot Lenoir <slenoir@getevolved.com>; Stapleton, Caroline
<cstapleton@orrick.com>

**Subject:** Re: Synapse and Evolve - Processing

[EXTERNAL]

Caroline and Scot:

Checking in again to see if you can please share *any* information whatsoever. We are in the dark here and trying to plan a wind-down that ensures the best possible outcome for fintechs and end-users. We need to ensure that end-users will have access to their funds.

Best,

Tracey

On Tue, May 14, 2024 at 10:13 AM Tracey Guerin <tracey@synapsefi.com> wrote:

> Caroline and Scot:
>
> We really need to understand what Evolve's plan is to unfreeze end-user's access to their funds. Evolve is forwarding end-user complaints to Synapse, but providing us with no information whatsoever on when it intends to resume access.
>
> Again, our logs show that Evolve's users have had access to the Synapse dashboard and have been successfully accessing data since early yesterday. So we are understandably concerned.
>
> Best,
>
> Tracey
>
> On Mon, May 13, 2024 at 6:17 PM Tracey Guerin <tracey@synapsefi.com> wrote:
>
> > Scot and Caroline:
> >
> > Will you please provide Synapse with advanced notice of when payment processing

and card processing will be turned on so that, for example, we can ensure we can communicate with fintechs as implored by the Court today?

And, as a reminder, in the event you ever believe there is an emergency, you have my cell phone number (608-658-1143).

Best,

Tracey

--

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

--

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

--

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

\-\-
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

\-\-
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# EXHIBIT "C"

---

---------- Forwarded message ---------
From: **Tracey Guerin** <tracey@synapsefi.com>
Date: Wed, May 15, 2024 at 2:38 PM
Subject: Re: Evolve<>Orrick<>Synapse
To: Stapleton, Caroline <cstapleton@orrick.com>
Cc: Naimon, Jeffrey <JNaimon@orrick.com>


Caroline:

This gamesmanship is unfair to the many depositors who have been without any
access to funds which they require for their basic needs. Evolve has
dashboard access necessary to resume account activity and its attempts to muddy
the waters and place blame on Synapse is a waste of time that should be spent on
remediating this horrible impact to depositors.

Evolve has represented in appearances at hearings and in filings that they froze
accounts due to their temporary inability to access the Synapse dashboard. *See e.g.*
*"*Evolve determined that in order to timely address the serious risks presented by the
lack of Dashboard access, it was necessary to move forward with freezing account
activity." (Evolve's Emergency Motion). Evolve has full access to the dashboard as
needed and appropriate.

Historical monthly statements are not currently available and Evolve has known for
months now that their failure to settle transactions was the sole cause of this technical
issue. As I've stated in my emails, Synapse will make historical statements which
Evolve does not have copies of, available to them -- we just need to know which
statements Evolve requires. I'm not sure what the delay is here. Once final
statements are available, that API call will be available.

But evidence demonstrates that Evolve is and has continued to access all necessary
and appropriate data to continue account activity. It has all ledgers prior to its
cessation of activity and access to the dashboard. Does Evolve not have its own
records since it halted activity and should have foreseen these circumstances before
it?

Furthermore, to date, Synapse has made itself available to troubleshoot any access
issues Evolve purports to have. *See* Evolve's 10.14.24 responsive email regarding
Dashboard access noting, "right now the piece [of access] I'm aware of is the
statements, so let's cancel the meeting for now and we can reach out if there are

other access issues that would be helpful to meet and discuss on zoom."

For clarity, Synapse stands ready, willing and able to fulfill its obligations as necessary to protect end-user funds. Synapse relies upon Evolve for timely processing. Evolve ceased processing ACH files on or about May 8, 2024, knowingly causing disruption to Synapse's ability to produce ledger files to Evolve given its abrupt cessation of processing services and freezing of accounts. Evolve knew that by abruptly failing to process ACH transactions on May 8, 2024 (and then freezing all activity), such action would require substantial manual work by the teams to properly update the ledger. Such exercise has, in fact, been necessary in the past when Evolve has similarly failed to process as expected. Moreover, Evolve has received daily reports prior to this abrupt processing failure and should have its own essential information to be able to resume activity.

We also repond to your requests below in red:

**Evolve Request:** "Ledger Files.  Synapse has not sent Evolve a daily ledger file since May 6, 2024.  Synapse must resume sending Evolve the ledger files that it is required to send on a daily basis, including files from all days after May 6th.  As Synapse is aware from years of working with Evolve, we know you understand that once the Bank receives those files, it will have to process them for each day beginning with May 7th to validate their accuracy before payment activity can resume.  This is particularly important since we know Synapse experienced system issues over the weekend – Evolve must ensure the integrity of the data it receives from Synapse.  The Bank will process this information as quickly as possible, but understand it will take at least 24 hours – this timeframe is based on how the Bank's systems work and the nature of the review required.  The sooner Synapse can start sending complete files, the better."

- See above response.  Evolve knew that by abruptly failing to process ACH transactions on May 8, 2024 (and then freezing all activity), such action would require substantial manual work by the teams to properly update the ledger and that a ledger would not be available daily. Had Evolve worked with Synapse with any good faith at all, Synapse could have understood in advance that ACH files would not be processed and the teams could have worked together to manually update the ledger at such time. Instead, Evolve failed to communicate in any manner with Synapse, leaving Synapse uncertain as to the reason, timing of delay, etc. of the impact on May 8, 2024 (prior to any alleged dashboard issue).
- In addition, Synapse, as you know, did not experience system issues over the weekend. Evolve has no evidence, because none exists, of this allegation which we understand to be argued in bad faith as an attempt to avoid Evolve's obligations.
- As part of its wind down planning, Synapse will provide Evolve with a copy of the May 14, 2024 trial balance report no later than tomorrow..

**Evolve Request: "**<u>Required Reporting.</u>  Evolve has not sent Evolve daily MasterCard settlement reporting since May 6, 2024.  Synapse must provide this reporting, which is required reporting to Evolve.  Including the MasterCard settlement reporting for each day since May 6th.  Evolve cannot be blind to the activity that the Bank is liable for.  As with the ledger files, those reports will need to be validated to ensure that there are no data integrity issues given Synapse's system issues.  Again, time is of the essence."

- See above response.
- Again, there are no system issues and evolve has confirmed no issues are known with the exception to access to historical statements which evolve should already have copies of (but which synapse can make accessible once we know which it does not have)

**Evolve Request: "**<u>Transaction Settlement.</u>  Synapse must settle for all transactions that are related to Brokerage.  The Bank will need specific reporting identifying that activity.  Evolve must ensure that funds held at other institutions for Brokerage are being appropriately accounted for and advanced when a Brokerage end user performs a transaction."

- Synapse Brokerage has no relationship with Evolve, as it knows. Evolve's obligation to process transactions is an obligation it has to its DDA depositors.

**In summary, Synapse views Evolve's continued freezing of account activity to be in bad faith and we demand that Evolve provide us with a time in which we can communicate that activity and access will resume.**

Best,
Tracey

On Wed, May 15, 2024 at 9:37 AM Stapleton, Caroline <<u>cstapleton@orrick.com</u>> wrote:

> Tracey,
>
> As we have advised repeatedly and throughout, in order to lift the freeze on payment activity, Synapse, as a critical service provider to Evolve, must provide the following essential information and services:
>
> 1. <u>Ledger Files.</u>  Synapse has not sent Evolve a daily ledger file since May 6, 2024. Synapse must resume sending Evolve the ledger files that it is required to send on a daily basis, including files from all days after May 6th.  As Synapse is aware from years of working with Evolve, we know you understand that once the Bank receives those files, it will have to process them for each day beginning with May 7th to validate their accuracy before payment activity can resume.  This is particularly important since we know Synapse experienced system issues over the weekend –

Evolve must ensure the integrity of the data it receives from Synapse.  The Bank will process this information as quickly as possible, but understand it will take at least 24 hours – this timeframe is based on how the Bank's systems work and the nature of the review required.  The sooner Synapse can start sending complete files, the better.

2.  <u>Required Reporting.</u>  Evolve has not sent Evolve daily MasterCard settlement reporting since May 6, 2024.  Synapse must provide this reporting, which is required reporting to Evolve.  Including the MasterCard settlement reporting for each day since May 6th.  Evolve cannot be blind to the activity that the Bank is liable for.  As with the ledger files, those reports will need to be validated to ensure that there are no data integrity issues given Synapse's system issues.  Again, time is of the essence.

3.  <u>Transaction Settlement.</u>  Synapse must settle for all transactions that are related to Brokerage.  The Bank will need specific reporting identifying that activity.  Evolve must ensure that funds held at other institutions for Brokerage are being appropriately accounted for and advanced when a Brokerage end user performs a transaction.

We also reiterate that full Dashboard access still has not been fully restored. The restoration of that access should be to the same level of access that Evolve had on May 9th.  That has not happened at this point, but notwithstanding, Evolve is willing to move forward as long as the other essential actions above have been taken.

Best,

Caroline

**Caroline M. Stapleton**
Partner

Orrick
Washington, DC
T 202-461-2904
M 843-597-2497
cstapleton@orrick.com



**From:** Tracey Guerin <tracey@synapsefi.com>
**Sent:** Wednesday, May 15, 2024 9:46 AM
**To:** Stapleton, Caroline <cstapleton@orrick.com>
**Subject:** Re: Evolve<>Orrick<>Synapse

**[EXTERNAL]**

Thanks Caroline. Can Evolve now please confirm when it will unfreeze accounts?

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

On Wed, May 15, 2024 at 5:11 AM Stapleton, Caroline <cstapleton@orrick.com> wrote:

Thanks Tracey, agree with this plan. We'll cancel the meeting at 6PT.

Get Outlook for iOS

**From:** Tracey Guerin <tracey@synapsefi.com>
**Sent:** Wednesday, May 15, 2024 1:54 AM

**To:** Stapleton, Caroline <cstapleton@orrick.com>
**Subject:** Re: Evolve<>Orrick<>Synapse

**[EXTERNAL]**

Caroline - Apolgies- I didn't see this email until now. If the only issue is historical statements, then i agree we can cancel the meeting and work together on understanding which statements Evolve needs us to send them.

Best,

Tracey

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

On Tue, May 14, 2024 at 9:41 PM Stapleton, Caroline <cstapleton@orrick.com> wrote:

> Thanks Tracey - right now the piece I'm aware of is the statements, so let's cancel the meeting for now and we can reach out if there are other access issues that would be helpful to meet and discuss on zoom. Does that work?
>
> Get Outlook for iOS
>
> ---
>
> **From:** Tracey Guerin <tracey@synapsefi.com>
> **Sent:** Wednesday, May 15, 2024 12:36:26 AM
>
> **To:** Stapleton, Caroline <cstapleton@orrick.com>
> **Subject:** Re: Evolve<>Orrick<>Synapse
>
> **[EXTERNAL]**
>
> Hey Caroline - Thanks for your message. Synapse was making itself available to trouble shoot Evolves access issues. If Evolve does not have any access issues beyond

statements (which we are requesting for evolve to tell us which statements they do not have their own copies of), then we will respond to the questions via email to the extent Synapse deems a response is appropriate.

Please let me know whether Evolve has any issues accessing any data on the dashboard besides historical statements, and Synapse will attend the meeting in order to trouble shoot.

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

On Tue, May 14, 2024 at 9:22 PM Stapleton, Caroline <cstapleton@orrick.com> wrote:

Hey, I just sent over the questions from Evolve. We can keep the 6am PT call or move it to later in the day if you think that, based on Evolve's questions, it makes sense to wait until Chris Staab can join a call. I know Sankaet is on a flight mid-day - not sure if he is available later in the afternoon. Maybe see if Sankaet wants to wait to have a call with Chris on, or if we could do a mid-day call without him if you and others at Synapse could join?

Just let me know. Going to turn in shortly but can wait up a bit if you think that would be useful - thanks.

Get Outlook for iOS

**From:** Tracey Guerin <tracey@synapsefi.com>
**Sent:** Wednesday, May 15, 2024 12:18 AM
**To:** Stapleton, Caroline <cstapleton@orrick.com>

**Subject:** Re: Evolve<>Orrick<>Synapse

**[EXTERNAL]**

Caroline - any chance you can let me know when you know whether a call will be needed? I would appreciate it as my husband is out of town and I'll be running around trying to get my kids ready for school.

On Tue, May 14, 2024 at 5:31 PM Stapleton, Caroline <cstapleton@orrick.com> wrote:

> Yes, let's do 6 Pacific, and if a call isn't necessary once you receive our list, we can always cancel.
>
> Jemela, would you please circulate an invite - attendees from Evolve are Scott Stafford, Hank, and me. Thanks.
>
> Get Outlook for iOS
> ─────────────────────────────
> **From:** Sankaet Pathak <s@synapsefi.com>
> **Sent:** Tuesday, May 14, 2024 8:25:05 PM
> **To:** Stapleton, Caroline <cstapleton@orrick.com>
> **Cc:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word <hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>; Chris Staab <Chris.Staab@getevolved.com>; Tracey Guerin <tracey@synapsefi.com>
> **Subject:** Re: Evolve<>Orrick<>Synapse
>
> **[EXTERNAL]**
>
> Caroline, I am on a flight at that time, would 6 or 7 am pst work?
>
> --
>
> Sankaet
>
> On Tue, May 14th, 2024 at 5:20 PM, "Stapleton, Caroline" <cstapleton@orrick.com> wrote:

Sankaet, sorry for the fast follow and confusion on schedule coordination  - for tomorrow morning, our team is available at 9:00 Pacific, would that work for the Synapse folks?

Get Outlook for iOS

---

**From:** Stapleton, Caroline
**Sent:** Tuesday, May 14, 2024 8:04:43 PM
**To:** Sankaet Pathak <s@synapsefi.com>
**Cc:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word <hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>; Chris Staab <Chris.Staab@getevolved.com>; Tracey Guerin <tracey@synapsefi.com>
**Subject:** RE: Evolve<>Orrick<>Synapse

Thanks Sankaet – I spoke with Tracey, and Evolve is going to send an email with the information that it needs from Synapse related to system/information access.  Should we set a call tomorrow morning at 8AM Central (6AM Pacific) in case we need to meet to discuss the information requests?

**Caroline M. Stapleton**
Partner

Orrick
Washington, DC
T 202-461-2904
M 843-597-2497
cstapleton@orrick.com

---

**From:** Sankaet Pathak <s@synapsefi.com>
**Sent:** Tuesday, May 14, 2024 6:26 PM
**To:** Stapleton, Caroline <cstapleton@orrick.com>; Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word <hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>; Chris Staab <Chris.Staab@getevolved.com>; Tracey Guerin <tracey@synapsefi.com>
**Subject:** RE: Evolve<>Orrick<>Synapse

**[EXTERNAL]**

lets do tonight, anytime tonight works, lmk when, literally anytime, 3 am PST and I will be there.

--

Sankaet

On Tue, May 14th, 2024 at 3:24 PM, "Stapleton, Caroline"
<cstapleton@orrick.com> wrote:

> Thanks Sankaet – our team can't make that time, but what is the
> earliest you all could meet tomorrow morning?
>
> ---
>
> **From:** Sankaet Pathak <s@synapsefi.com>
> **Sent:** Tuesday, May 14, 2024 6:18 PM
> **To:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word
> <hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>;
> Stapleton, Caroline <cstapleton@orrick.com>; Chris Staab
> <Chris.Staab@getevolved.com>; Sankaet Pathak s@synapsefi.com
> <s@synapsefi.com>; Tracey Guerin <tracey@synapsefi.com>
> **Subject:** Re: Evolve<>Orrick<>Synapse
>
>
> [EXTERNAL]
>
> I have a conflict at this time, earliest I can meet is 5:30 pm PST if that works
> for Tracey as well
>
> --
>
> Sankaet
>
>
> On Tue, May 14th, 2024 at 3:07 PM, Jemela Bajrovic
> <Jemela.Bajrovic@getevolved.com> wrote:
>
>> # Microsoft Teams Need help?
>>
>> ## Join the meeting now
>>
>> Meeting ID: 292 742 623 021
>> Passcode: M69fEf
>>
>> ---
>>
>> **Dial in by phone**

[+1 901-443-4411,,380143599#](#) United States, Memphis

[(844) 263-7480,,380143599#](#) United States (Toll-free)

[Find a local number](#)

Phone conference ID: 380 143 599#

For organizers: [Meeting options](#) | [Reset dial-in PIN](#)

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at [https://www.orrick.com/Privacy-Policy](https://www.orrick.com/Privacy-Policy) to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at [https://www.orrick.com/Privacy-Policy](https://www.orrick.com/Privacy-Policy) to learn about how we use this information.



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

--

**Tracey Guerin**

General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a

communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.


\-\-
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.


\-\-
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# EXHIBIT "D"

| | |
|---|---|
| **From:** | Tracey Guerin |
| **To:** | Stapleton, Caroline |
| **Cc:** | Sankaet Pathak; Hank Word; Scott Stafford; Chris Staab; Scot Lenoir; Beth R. Young; Ron Bender; Krikor J. Meshefejian; Monica Y. Kim |
| **Subject:** | Re: Evolve<>Orrick<>Synapse |
| **Date:** | Thursday, May 16, 2024 1:22:06 PM |

Caroline and Evolve:

As Evolve is well-aware, there was no outage of the Synapse dashboard and Synapse believes Evolve is merely attempting to delay providing access to depositor funds based on its own failures. We are surprised by Evolve's questions that reflect a lack of basic understanding regarding how our systems operate. Evolve should have presumably, conducted its own diligence required for its own regulatory obligations since 2017 regarding the Synapse systems to know that Evolve's user access has no bearing on the integrity of the system and to have a basic understanding of our security measures. It appears Evolve is attempting to understand our systems for the first time, which is quite concerning. Nonetheless, Synapse provides the following information.

**1. Explanation of the Outage and Root Cause Analysis (RCA):**
There was no outage, as evidenced by our status page, which reflects our system's uptime: Synapse Status Page. These uptime metrics are derived from Pingdom and cannot be manipulated. All our services were operational during the period in question.

**2. Impact on Evolve's Access to the Dashboard:**
Evolve's users which were flagged, were subsequently unflagged. As evidenced by the logs, all of Evolve's users have had access to the dashboard since at least Monday morning.

**3. Validations Ensuring Proper Restoration and Data Integrity:**
Evolve's access to the dashboard has been validated through evidence of continuous access logs and other data. Data within our databases remains intact and unaltered. Our systems are designed to ensure data integrity regardless of account-specific access issues, as Evolve would know through the diligence we assume they have conducted regarding our systems since 2017.

**4. System Compromise and Security Assurance:**
Our systems were not compromised. We employ continuous intrusion detection monitoring and maintain our infrastructure in a private cluster adhering to industry best practices. This robust security framework ensures the integrity and security of our systems at all times.

**5. Access to Nodes & Statements:**

As verified by both Evolve and Synapse logs, Evolve has had the appropriate access to the dashboard since at least the morning of May 13, 2024. Any perceived lack of access to statements specifically is due to historical known statement issues. Synapse is actively working to provide final statements, complicated by Evolve's failure to settle and process transactions as expected. Should Evolve require any specific statements, we have asked Evolve repeatedly to notify us, and we will provide the necessary documents.

**6. Non-receipt of Ledgers and Files:**

Evolve ceased ACH processing on May 8, 2024. As previously experienced during the December/January incident when Evolve failed to process transactions, this cessation prevents Synapse from automating trial balance reports. The failure to process as expected necessitates significant manual intervention, which Evolve has not supported. We request Evolve to outline its plan to ensure continued access to funds after stopping the processing on May 8th, which hindered Synapse from closing the transaction with TabaPay.

**7. Non-receipt of Reports (e.g., MasterCard Settlement Reports):**

The non-receipt of these reports is unrelated to any system outage, as no outage occurred. The reasons are similar to those affecting the ledger files and are due to Evolve's cessation of ACH processing 3 days prior to any purported concern by Evolve regarding dashboard access.

**8. Ensuring System and Data Integrity:**

As Evolve knows, our systems were not impacted by any outage, and data integrity remains uncompromised. Our application servers and database clusters are segregated, ensuring that even in the event of an outage, data integrity would not be affected. This is the first instance Evolve has raised an integrity concern, and we encourage Evolve to revisit its due diligence.

If there are any further questions or if additional clarifications are needed, please do not hesitate to contact us.

On Tue, May 14, 2024 at 9:19 PM Stapleton, Caroline <cstapleton@orrick.com> wrote:
Sankaet - here are the questions from Evolve:

1. Please explain the outage and provide an RCA?
2. Did this only impact Evolve's access to the Dashboard?
3. What validations have been done to ensure that access was properly restored and there was no data loss?
4. At any point were your systems compromised?  If not how do you know?
5. On May 9th Evolve had access to all the nodes & statements, we do not seem to have

that same access anymore.  Can you please explain?  Was any code or configuration changes made that would impact users access?

6. The last ledger we have received from Synapse was on 5/6, why have we not received any subsequent files?  Was the system outage over the weekend the reason we have not received those files?  When will we be sent those FTL files for each day?

7. We have also not received any reports from Synapse since 5/6.  Most notably the MasterCard settlement reports you provide us daily.  Is this also related to the outage over the weekend?  When will Evolve receive those reports?

8. How do we ensure the integrity of the system and its data?

9. If this issue was the result of an unauthorized change what safeguards have you implemented?

Thanks,
Caroline

Get Outlook for iOS

---

**From:** Sankaet Pathak <s@synapsefi.com>
**Sent:** Tuesday, May 14, 2024 8:32 PM
**To:** Stapleton, Caroline <cstapleton@orrick.com>
**Cc:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word <hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>; Chris Staab <Chris.Staab@getevolved.com>; Tracey Guerin <tracey@synapsefi.com>
**Subject:** Re: Evolve<>Orrick<>Synapse

**[EXTERNAL]**

thanks

--

Sankaet

On Tue, May 14th, 2024 at 5:30 PM, "Stapleton, Caroline" <cstapleton@orrick.com> wrote:
Yes, let's do 6 Pacific, and if a call isn't necessary once you receive our list, we can always cancel.

Jemela, would you please circulate an invite - attendees from Evolve are Scott Stafford, Hank, and me. Thanks.

Get Outlook for iOS

---

**From:** Sankaet Pathak <s@synapsefi.com>
**Sent:** Tuesday, May 14, 2024 8:25:05 PM
**To:** Stapleton, Caroline <cstapleton@orrick.com>
**Cc:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word <hword@getevolved.com>;

Scott Stafford <sstafford@getevolved.com>; Chris Staab <Chris.Staab@getevolved.com>; Tracey
Guerin <tracey@synapsefi.com>
**Subject:** Re: Evolve<>Orrick<>Synapse


[EXTERNAL]

Caroline, I am on a flight at that time, would 6 or 7 am pst work?


--

Sankaet

On Tue, May 14th, 2024 at 5:20 PM, "Stapleton, Caroline" <cstapleton@orrick.com>
wrote:

> Sankaet, sorry for the fast follow and confusion on schedule coordination  - for
> tomorrow morning, our team is available at 9:00 Pacific, would that work for the
> Synapse folks?

> Get Outlook for iOS

---

**From:** Stapleton, Caroline
**Sent:** Tuesday, May 14, 2024 8:04:43 PM
**To:** Sankaet Pathak <s@synapsefi.com>
**Cc:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word
<hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>; Chris Staab
<Chris.Staab@getevolved.com>; Tracey Guerin <tracey@synapsefi.com>
**Subject:** RE: Evolve<>Orrick<>Synapse

Thanks Sankaet – I spoke with Tracey, and Evolve is going to send an email with the
information that it needs from Synapse related to system/information access.  Should
we set a call tomorrow morning at 8AM Central (6AM Pacific) in case we need to
meet to discuss the information requests?

**Caroline M. Stapleton**
Partner

Orrick
Washington, DC
T 202-461-2904
M 843-597-2497
cstapleton@orrick.com

**From:** Sankaet Pathak <s@synapsefi.com>
**Sent:** Tuesday, May 14, 2024 6:26 PM
**To:** Stapleton, Caroline <cstapleton@orrick.com>; Jemela Bajrovic
<Jemela.Bajrovic@getevolved.com>; Hank Word <hword@getevolved.com>; Scott Stafford
<sstafford@getevolved.com>; Chris Staab <Chris.Staab@getevolved.com>; Tracey Guerin
<tracey@synapsefi.com>
**Subject:** RE: Evolve<>Orrick<>Synapse

[EXTERNAL]

lets do tonight, anytime tonight works, lmk when, literally anytime, 3 am PST and I will be
there.

--

Sankaet

On Tue, May 14th, 2024 at 3:24 PM, "Stapleton, Caroline" <cstapleton@orrick.com> wrote:

> Thanks Sankaet – our team can't make that time, but what is the earliest you all
> could meet tomorrow morning?
>
> ---
>
> **From:** Sankaet Pathak <s@synapsefi.com>
> **Sent:** Tuesday, May 14, 2024 6:18 PM
> **To:** Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>; Hank Word
> <hword@getevolved.com>; Scott Stafford <sstafford@getevolved.com>; Stapleton,
> Caroline <cstapleton@orrick.com>; Chris Staab <Chris.Staab@getevolved.com>; Sankaet
> Pathak s@synapsefi.com <s@synapsefi.com>; Tracey Guerin <tracey@synapsefi.com>
> **Subject:** Re: Evolve<>Orrick<>Synapse
>
> [EXTERNAL]
>
> I have a conflict at this time, earliest I can meet is 5:30 pm PST if that works for Tracey as
> well
>
> --
>
> Sankaet
>
> On Tue, May 14th, 2024 at 3:07 PM, Jemela Bajrovic <Jemela.Bajrovic@getevolved.com>
> wrote:

## Microsoft Teams [Need help?](#)

## [Join the meeting now](#)

Meeting ID: 292 742 623 021

Passcode: M69fEf

### Dial in by phone

[+1 901-443-4411,,380143599#](#) United States, Memphis

[(844) 263-7480,,380143599#](#) United States (Toll-free)

[Find a local number](#)

Phone conference ID: 380 143 599#

For organizers: [Meeting options](#) | [Reset dial-in PIN](#)

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at [https://www.orrick.com/Privacy-Policy](#) to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

---

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

--
**Tracey Guerin**
General Counsel @ *Synapse*

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# EXHIBIT "E"



Home » About » Evolve Responds to Friday's Court Hearing



# Evolve Bank & Trust Responds to Synapse Bankruptcy Hearing

Evolve Bank & Trust supports today's (Friday, May 17, 2024) United States Bankruptcy court rulings regarding our motion and maintains unwavering dedication to safeguarding the security of all end user funds. Since the unfortunate necessity of freezing certain transactions, our teams have been tirelessly working to guarantee account accuracy, enhancing security measures, and ultimately restoring access to funds for our valued customers.

Today's rulings and Judge Martin R. Barash's remarks serve to validate what we have steadfastly asserted all along: Synapse's abrupt shutdown of essential systems without notice and failure to provide necessary records needlessly jeopardized end users by hindering our ability to verify transactions, confirm end user balances, and comply with applicable law. Evolve's position is further corroborated by the U.S. Trustee's emergency filing, which warns of Synapse's "gross mismanagement" in deciding to cut off access to its computer systems over a weekend.

As a robustly well-capitalized FDIC institution exceeding the capital thresholds for the highest category of capitalization under PCA ("well capitalized"), our primary focus is on ensuring the protection of end user funds. This becomes paramount when essential reporting and information necessary for transaction processing are not forthcoming from our critical service provider.

Evolve operates in accordance with federal regulations governing financial institutions. Any insinuation suggesting that Evolve has intentionally mishandled or withheld funds is entirely false and defamatory.

As we move forward, Evolve Bank & Trust reaffirms our commitment to collaborating with financial industry partners with the shared goal of providing customers access to their funds. We are dedicated to

addressing any challenges that arise with agility and efficacy, ensuring the integrity and security of all customer funds remain paramount.

For media inquiries please email: media@getevolved.com.

If you're a customer and have questions, call our Customer Care Center, 866.395.2754.

### PERSONAL

Checking
Savings
Debit Cards
Personal Loans
CDs & IRAs
Private Banking
Personal Trusts

### BUSINESS

Business Banking
Business Lending
Small Business Lending
Physicians Capital
Business Trusts

### MORTGAGE

Apply Now
Mortgage Solutions
Find an Advisor
Homebuyer Education
Join Our Team
For Realtors
Pay Your Mortgage

### OPEN BANKING

About
How We Work
Solutions
Get Started

### ABOUT

About Us
News
Investor Relations
Careers

### CUSTOMER CARE

Resource Center
Fraud & Security

### CONTACT

866.395.2754

Disclosures      Privacy Policy

# EXHIBIT "F"

| client_id | client_name | ebt_balance |
|---|---|---|
| Total (ODs not included) | As of May 14 2024 | $150,437,659.89 |
| 5e45b1b1657a4600a21a3813 | Yotta Saving | $111,743,905.77 |
| 5efeb74553a11206b02258a9 | Juno | $26,508,736.54 |
| 60f87539cc80e97d04fab708 | Money App | $2,358,173.61 |
| 59460e2095062958cb0196b3 | Changed Inc | $1,792,001.61 |
| 59460e2095062958cb0196b9 | Curacubby | $1,666,735.02 |
| 5962212d1ac0e70024a465d8 | Gigwage | $1,530,740.68 |
| 59460e0a95062958cb01968a | YieldStreet | $1,329,495.70 |
| 6102c875417c5057cc7c53d0 | BOSS Money | $1,032,992.23 |
| 5ddeb6710f84810b98387c29 | Homebase | $530,890.62 |
| 5c991f3bc16f0a00298b21ab | Snap! Spend. | $407,487.95 |
| 5c19fb6386829dd7bd9edae6 | Namebase | $380,630.78 |
| 59460e2095062958cb0196cb | Clerkie | $363,125.77 |
| 6192c5198dd43d75488c3b58 | Build | $172,139.25 |
| 5ce5c31003f89137928cb396 | SeedFi | $140,596.08 |
| 5ccaaf83f5f9e68257362d22 | Donut | $128,002.80 |
| 5be5ee80fc6aae0025bf67c6 | MicroVentures | $68,298.34 |
| 5f8f53758a889e80a83d25e2 | Mazoola | $48,120.59 |
| 59460e0a95062958cb0196a1 | UNEST | $39,404.06 |
| 59dd9222ff55000028f37eb4 | Alice | $31,623.47 |
| 59460e2095062958cb0196bc | ClassWallet | $30,708.13 |
| 59460e2095062958cb0196c8 | Dave, Inc | $23,776.82 |
| 5956599e1ac0e70024756c2a | Goalsetter | $19,673.75 |
| 628209ecedd5dd40d1da1bc0 | Hyve Inc. | $18,109.12 |
| 59460e2095062958cb0196b5 | EarnUp MORTGAGE | $16,137.86 |
| 64beee49030352bd44d3a3bc | Banpay, LLC | $14,999.96 |
| 5d162ee1f4208ab87e68d6a4 | Fund That Flip | $11,844.93 |
| 612fe27f98be8cda62706c6d | Grabr Inc. | $9,911.45 |
| 6258f7c43465a9e07dec2019 | Abound | $6,552.69 |
| 5e6944b1f2b60000746cbae5 | Copper | $6,081.18 |
| 5b5fed3b6e990e854ba99e86 | Trim | $3,758.03 |
| 624cbbf090176111b97ec6b0 | DishOut | $966.99 |
| 61326d5f0f9c4788281b1449 | GravyStack | $816.87 |
| 5dcc82d1acfa810a3acb4b0a | Truebill | $500.00 |
| 630687f06aef1b21a2f537cf | INX Securities, LLC - 2nd PROD | $500.00 |
| 629a4222709fef1c01029425 | Mooch | $163.93 |
| 5b9aa649589f15ec84105a69 | PayStand | $48.52 |
| 622ba412e345592fe3e83d90 | Wirebee | $7.42 |
| 633e496a8a699ee351a1d2f2 | Extra Financial Inc. | $1.34 |
| 5ffdd4911825713cec200df6 | Gravy | $0.03 |
| 5f0f02a2bdb10ebc52bf6f3c | OneBlinc | $0.00 |
| 620166af05ef7d2a9859fbf3 | DolarApp Inc | $0.00 |
| 62d08b8de0b748d24eb75457 | Latitud Inc | $0.00 |
| 62040deda208c584b9b775ec | BuoyFi | $0.00 |
| 59460e2095062958cb0196be | Gradvisor 529 Plan | $0.00 |
| 5e6a58f3f2b60000746cbae6 | Cadre | $0.00 |
| 6151c89a5f73814d1a9a67a6 | Banco Ourinvest S.A. | $0.00 |
| 59460e1795062958cb0196a8 | Nowsta Inc | $0.00 |
| 617980b9649c0ac9f0b9dd8d | Inter & Co | $0.00 |
| 618454b8def117f201fe9159 | Utoppia Inc. | $0.00 |
| 5bb661d0357c600defc0c938 | MainVest, Inc. | -$45.38 |
| 63d12209a43d3b0469701872 | Coba Chib USA, LLC | -$161.50 |
| 5e4e8230f2b60000c048862d | Sunny Day Fund | -$252.00 |
| 61aa3b41e394f537e01cdfde | Klutch | -$1,250.69 |
| 59460e0a95062958cb01969f | INX | -$5,736.65 |
| 596220af1ac0e70024a46363 | Solo Funds Inc. | -$39,939.63 |
| 614413f4638e9d5550fe9159 | Grid | -$345,785.17 |
| 5d35cad04d33ee0072b9a663 | Nomad | -$1,114,853.08 |
| 5946114c9506295a0d208614 | SynapsePay"Web | -$2,479,284.13 |

# EXHIBIT "G"

## Totals

CASH

(s) **$102,694,725.72**

49 accounts

# EXHIBIT "H"

---------- Forwarded message ---------
From: **Tracey Guerin** <tracey@synapsefi.com>
Date: Fri, May 17, 2024 at 12:04 AM
Subject: Re: Confirmation for Evolve Bank and Trust - Synapse Financial Technologies
To: Stapleton, Caroline <cstapleton@orrick.com>


Caroline -- still no response on this?

On Wed, Mar 20, 2024 at 12:57 PM Tracey Guerin <tracey@synapsefi.com> wrote:
Caroline - Can you let me know what the status of this is?

---------- Forwarded message ---------
From: **Tracey Guerin** <tracey@synapsefi.com>
Date: Tue, Mar 19, 2024 at 1:52 PM
Subject: Fwd: Confirmation for Evolve Bank and Trust - Synapse Financial Technologies
To: Scot Lenoir <slenoir@getevolved.com>, Stapleton, Caroline <cstapleton@orrick.com>


Hi Scot:

Can we please discuss this? Per Chris V, the accounts on the document below are "are all accounts that are under Synapse in our core system." This list includes 113 accounts that are not on the balance file Evolve sends us daily. We are unaware of what these accounts are and see no records or communications from Evolve regarding the opening or use of these accounts. This list also does not include 29 accounts we are aware of, included in Evolve's reporting.

Best,
Tracey

---------- Forwarded message ---------
From: **Aaron Riley** <aaron.riley@synapsefi.com>
Date: Wed, Mar 13, 2024 at 1:57 PM
Subject: Fwd: Confirmation for Evolve Bank and Trust - Synapse Financial Technologies
To: Tracey Guerin <tracey@synapsefi.com>


---------- Forwarded message ---------
From: **Chris Vendetti** <Chris.Vendetti@getevolved.com>

Date: Wed, Mar 13, 2024 at 1:00 PM
Subject: RE: Confirmation for Evolve Bank and Trust - Synapse Financial Technologies
To: Victor Medeiros <victor.medeiros@synapsefi.com>, Goran, Claire
<Claire.Goran@crowe.com>
Cc: aaron.riley@synapsefi.com <aaron.riley@synapsefi.com>, Chris Staab
<Chris.Staab@getevolved.com>, Mulhollen, Molly <Molly.Mulhollen@crowe.com>,
Camp, Robbie <Robbie.Camp@crowe.com>


Victor,


I know a lot of the accounts in that list might be older as they were created in 2019. However,
these are all accounts that are under Synapse in our core system.


**From:** Victor Medeiros <victor.medeiros@synapsefi.com>
**Sent:** Tuesday, March 12, 2024 10:48 AM
**To:** Goran, Claire <Claire.Goran@crowe.com>
**Cc:** aaron.riley@synapsefi.com; Chris Staab <Chris.Staab@getevolved.com>; Chris Vendetti
<Chris.Vendetti@GetEvolved.com>; Mulhollen, Molly <Molly.Mulhollen@crowe.com>; Camp,
Robbie <Robbie.Camp@crowe.com>
**Subject:** Re: Confirmation for Evolve Bank and Trust - Synapse Financial Technologies


Claire,


@Chris Vendetti was going to circle back with you on this. Most of the accounts on this list
are unfamiliar.


On Tue, Mar 12, 2024 at 8:19 AM Goran, Claire <Claire.Goran@crowe.com> wrote:

> Victor and Aaron,
>
>
> Hope you both had a great weekend!
>
>
> I am following up on this email. Please let me know if you have any questions/concerns. Thanks!

Claire Goran, CPA

Crowe LLP

Office: 404.410.2997

Cell: 404.539.1532

claire.goran@crowe.com

www.crowe.com

---

**From:** Goran, Claire
**Sent:** Thursday, March 7, 2024 11:32 AM
**To:** victor.medeiros@synapsefi.com; aaron.riley@synapsefi.com
**Cc:** chris.staab@getevolved.com; Chris Vendetti <chris.vendetti@getevolved.com>;
Mulhollen, Molly <Molly.Mulhollen@crowe.com>
**Subject:** RE: Confirmation for Evolve Bank and Trust - Synapse Financial Technologies

Victor and Aaron,

Following up on this confirmation request. Can you please confirm the accounts and their information
attached in the original email below?

Thanks!

Claire Goran, CPA

Crowe LLP

Office: 404.410.2997

Cell: 404.539.1532

claire.goran@crowe.com

www.crowe.com



---

**From:** Goran, Claire
**Sent:** Tuesday, February 20, 2024 12:02 PM
**To:** victor.medeiros@synapsefi.com; aaron.riley@synapsefi.com
**Cc:** chris.staab@getevolved.com; Chris Vendetti <chris.vendetti@getevolved.com>; Mulhollen, Molly <Molly.Mulhollen@crowe.com>
**Subject:** Confirmation for Evolve Bank and Trust - Synapse Financial Technologies

Hi Victor and Aaron,

I work for Crowe LLP, the financial statement auditors for Evolve Bank and Trust. As a part of our audit, we are seeking to confirm the cash balances that your institution held at Evolve Bank and Trust as of December 31, 2023.

Please see the attached confirmation letter that includes the specific accounts we are looking to confirm. If you could fill it out and send it via email directly to Molly.Mulhollen@crowe.com that would be greatly appreciated.

Please let me or Chris Vendetti know if you have any questions.

Best regards,

Claire Goran, CPA

Crowe LLP

Office: 404.410.2997

Cell: 404.539.1532

claire.goran@crowe.com

www.crowe.com



This email message is from Crowe LLP or one of its subsidiaries and may contain privileged or confidential information or other information exempt from disclosure under applicable law. If you are not the intended recipient, please notify the sender by reply email immediately and delete this message without reading further or forwarding to others. This email is not intended to be a contract or other legally binding obligation, and any tax advice expressed in this email should not be construed as a formal tax opinion unless expressly stated. Visit www.crowe.com/disclosure for more information about Crowe LLP and its subsidiaries.

--

**Victor Medeiros**

Senior Director, Finance & Accounting @ Synapse

--

Aaron Riley

Director, Payment Operations @synapse

*P.S. Please do not send sensitive information over email. No IDs, No SSNs, No Banking Details, No Client Keys. Email is not a secure way of transmitting sensitive information*

--
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

--
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

--
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

--
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

EXHIBIT "I"

| From: | Tracey Guerin |
|---|---|
| To: | David M. Poitras |
| Cc: | Ron Bender; Beth R. Young; Monica Y. Kim; Scot Lenoir; Chris Staab; Hank Word; Scott Stafford; Naimon, Jeffrey; Stapleton, Caroline; Steven T. Gubner; Sankaet Pathak |
| Subject: | Re: Synapse FTL and Card Settlement Reports as of May 15 |
| Date: | Wednesday, May 22, 2024 4:21:56 PM |
| Attachments: | image720719.png |

David:

We are in receipt of Evolve's first response to the trial balance report provided to it last week.

As you recall, Judge Barash ordered Synapse to provide the May 15th report, which Synapse represented it had provided, and which Evolve had a copy of as of the hearing date. No further information is required to be provided to Evolve.

As your client knows, all funds Evolve holds are its DDA customer funds. Therefore, reference to "Non-Brokerage Accounts" (and therefore purportedly Brokerage Accounts) is misplaced and a knowing misrepresentation of Evolve's customers funds.

As you know, Synapse is in final stages of wind down. As we have stated to Evolve since late September and early October 2023, we expect that they would be taking steps to ensure continuity of banking services for their customers once Synapse's systems were not available.

Evolve continues to inappropriately withhold Synapse operating capital, effectively making it impossible for Synapse to continue to support fintechs and end-users in any manner. This egregious action is further harming Evolve's customers. Evolve's requests below for further information regarding the reports it received last week, and statement that that it is "unable to perform many of the basic oversight functions from a settlement and regulatory compliance perspective," made hours after Synapse has notified Evolve that it can no longer support any operations due to Evolve's withholding of its funds necessary to fund, e.g. payroll, is quite simply unconscionable.

In the event we are able to provide any of the information below, Synapse will do so because we are trying all we can do to help depositors obtain access to their funds --- in spite of all your client continues to do to prevent it.

Best,
Tracey


On Thu, May 23, 2024 at 12:26 AM David M. Poitras <dpoitras@bg.law> wrote:

> Ron/Beth/Monica/Tracey –
>
>
> Set forth below is Evolve's comments and analysis concerning the FTL and Card Settlements Reports as of May 15 delivered by Synapse on or about May 17. Therefore, there are no "missing" reports. Your client has access to the dashboard and all all activity needed, as custodian of the accounts, to analyze the reports.

We can make Evolve representatives available to discuss these matters with the Debtor's financial people at your request.

Regards,

David

**To Synapse**

Per the hearing with Judge Barash, Synapse stated that Evolve was provided an FTL for May 15th. Our original request was for daily ledgers for the following days, 5/7, 5/8, 5/9, 5/10, 5/11, 5/12, 5/13, 5/14, 5/15, 5/16 & 5/17.  We also asked for the ledger to be provided for everyday thereafter.  To date we have not received those files.

That being said we have examined the file for the Non-Brokerage platforms dated 5/15 and compared it to the last known file from 5/6.  What we observed was that the overall balance in that file went from $9.7MM to $14.8MM.  However, in the FBO accounts that support the Non-Brokerage accounts the balances went down by $3.3MM.  This is a difference of $8.3MM which is a significant variance given the starting balance of $9.7MM.  We need to understand how this variance came about at the platform and account level.  The delivery of the missing daily FTL files may help in identifying when the variance occurred.

We also requested Card Settlement Reports.  The settlement reports that were provided were incomplete making it impossible to effectively reconcile the data.  Without a complete set of data, we are unable to perform many of the basic oversight functions from a settlement and regulatory compliance perspective.  Information such as:

- All card numbers for each transaction
- All credited and debited transactions for the given settlement date
- Interchange for all transactions
- Corrected transaction and settlement dates
- Include program identifier with each transaction
- A complete Cardholder File including all registered Cardholders regardless of status as of the close of May 6th business day. This file must include all Evolve's field expectations.
- Corrected Transaction or Posting files to include:

- All card numbers for each transaction.
- All credited and debited transactions for the given settlement date.
- Interchange for all transactions.
- Corrected transaction and settlement dates.
- Include program identifier with each transaction.
- And all other Evolve expected fields that are listed in Evolve File Expectations

Lastly, we asked that Synapse fund transaction activity.  That has not been done at this point and the MasterCard Settlement account is overdrawn by $12MM.



21650 Oxnard St., Suite 500
Woodland Hills, CA 91367

[www.bg.law](www.bg.law)

**David M. Poitras**
Partner

(818) 827-9000   Main
(818) 827-9115   Direct / Text / Fax

[dpoitras@bg.law](dpoitras@bg.law)

   David M. Poitras

The preceding e-mail message is subject to BG LAW's e-mail policies, which can be found at: https://www.bg.law/web-disclaimer

--
**Tracey Guerin**
General Counsel @ Synapse

This email may contain confidential and privileged information. Any review, use, distribution, or disclosure by anyone other than the intended recipient(s) is prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2818 La Cienega Avenue, Los Angeles, California 90034

A True And Correct Copy Of The Foregoing Document Entitled (*Specify*): **Status Report Re Evolve Bank &
Trust's Account Freeze And Declarations Of Tracey Guerin, Esq. And Sankaet Pathak** will be
served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**_May 23, 2024_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyg.com**
- **J Scott Bovitz    bovitz@bovitz-spitzer.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **Andrew Michael Cummings    andrew.cummings@hklaw.com,
  philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com**
- **Michael G. Farag    mfarag@gibsondunn.com**
- **Michael I. Gottfried    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com**
- **Steven T Gubner    sgubner@bg.law, ecf@bg.law**
- **Robert T. Honeywell    robert.honeywell@klgates.com**
- **Lance N Jurich    ljurich@loeb.com,
  pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com**
- **Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com**
- **Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com**
- **Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **David M Poitras    dpoitras@bg.law**
- **Brandy A Sargent    brandy.sargent@klgates.com,
  litigation.docketing@klgates.com;janna.leasy@klgates.com**
- **Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **_May 23, 2024_**, I served the following persons and/or entities at the
last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_May 23, 2024_**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 23, 2024 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.