JELENA MCWILLIAMS
1601 K STREET NW
WASHINGTON, D.C. 2006-1682
jmcwilliams@cravath.com
Tel. 1-202-869-7710

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 |
| | **CHAPTER 11 TRUSTEE'S THIRD STATUS REPORT** |
| Debtor. | DATE:    June 21, 2024<br>TIME:    10:00 a.m. PT<br>PLACE:   303<br>21041 Burbank Boulevard<br>Woodland Hills, CA 91367 and<br>Via ZoomGov |

TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

I, Jelena McWilliams (the "Trustee"), the duly appointed, qualified and acting chapter 11 trustee for the estate of Debtor Synapse Financial Technologies, Inc. ("Synapse" or the "Debtor"), hereby submit my third "Chapter 11 Trustee's Status Report" (the "Report"), and represent as follows:

## I.

## **TIMELINE OF EVENTS**

### A.    **Filing of the Chapter 11 Case and Appointment of Chapter 11 Trustee**

On April 22, 2024, the Debtor filed a voluntary chapter 11 petition, schedules and statement of financial affairs. That same day, the Debtor filed an emergency motion for an order approving the sale of all its assets for $9.7 million to TabaPay Holdings LLC and requested that a hearing take place on April 29, 2024. [Dkt. No. 8]. The Debtor represented that it is a technology company and "has proprietary technology and software which essentially allows financial technology platforms called 'fintechs' to provide certain financial products and services to the fintechs' customers (referred to as end users or depositors) through certain banking providers and financial technology providers." Id. The Debtor also filed a motion to approve a settlement reached with Evolve Bank & Trust ("Evolve"), one of its partner financial institutions.

On May 1, 2024, the Court entered an order approving bidding procedures and set a hearing to approve the sale for May 9, 2024. [Dkt. No. 92]. The Debtor reported at the May 9 hearing that the settlement with Evolve had not been consummated due to disputes over Evolve funding a settlement payment. The buyer reported that it was unwilling to proceed with the sale without the Evolve settlement.

On May 13, 2024, Evolve filed a motion for an order restoring access to the "Debtor's Dashboard System" or, alternatively, "Authorizing Evolve to Close all of the Debtor's Demand Deposit Accounts at Evolve Associated with Debtor's Programs". [Dkt. No. 137]. Evolve alleged that it had been denied access to the Debtor's computer systems and had been forced to freeze end user accounts. Id.

On May 13, 2024, the Court conducted a status conference on the sale and a hearing on Evolve's motion. Although extensive arguments were made by counsel and their clients assessing relative blame, it was undisputed that end users had lost access to funds.

On May 14, 2024, the Court conducted another status conference regarding access of end users to their funds and for continued use of cash collateral. The Debtor and secured creditors stated that they had agreed to the use of cash collateral through Friday, May 17.

On May 15, 2024, the United States Trustee for the Central District of California (the "U.S. Trustee") filed a motion on an emergency basis requesting that the Court enter an order converting the Chapter 11 Case to chapter 7 for cause, or, in the alternative, for the appointment of a chapter 11 trustee. [Dkt. No. 146].

On May 24, 2024, following a hearing, the Court entered an order appointing a chapter 11 trustee (the "Appointment Order"), and Jelena McWilliams was appointed by the U.S. Trustee as the Chapter 11 Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196].

As a result of the foregoing, Jelena McWilliams became the duly appointed, qualified and acting Chapter 11 Trustee, and continues to act in this capacity. On June 6, 2024, the Trustee filed the "Chapter 11 Trustee's Initial Status Report" (the "Initial Report"), and, on June 7, 2024, the Trustee presented the Initial Report at a Status Conference before the Court. On June 13, 2024, the Trustee filed the "Chapter 11 Trustee's Second Status Report" (the "Second Report"), and, on June 14, 2024, the Trustee presented the Second Report at a Status Conference before the Court.

**B.** **Debtor's History, Subsidiaries and Partners**

As discussed in the Initial Report, the Trustee was informed that, beginning in 2014, Synapse opened Demand Deposit Accounts ("DDAs") on behalf of approximately 100 financial technology platform partners (collectively, the "Fintech Partners") and their end users at certain banks. Beginning in 2020, Synapse developed its cash management program in connection with its subsidiary, Synapse Brokerage LLC ("Synapse Brokerage"), through which Synapse began opening Cash Management Accounts ("CMA Accounts") on behalf of Fintech Partners and their end users at certain banks. Additionally, Synapse offered secured loan origination services to end users of its Fintech Partners through its subsidiary, Synapse Credit LLC ("Synapse Credit"). Most end user funds are held in

2

omnibus "For Benefit Of" Accounts ("FBO Accounts")[1] and the remaining funds are held in DDAs across four banks. The four banks are: American Bank, AMG National Trust, Evolve Bank and Trust and Lineage Bank (collectively, the "Partner Banks").

Synapse Brokerage is a fully owned subsidiary of Synapse. Based on research, discussions with Synapse Brokerage constituents, and the sworn testimony of Mr. Pathak at the Creditors' Meeting, Synapse Brokerage was founded with the view to establishing programs for Cash Management Accounts and Money Market Accounts. Operationally, Synapse Brokerage has not yet established such programs but has only deployed a sweep network at American Deposit Management Company ("ADMC") for the purpose of increasing the pool of FDIC insurance coverage available to depositors and earning interest on sweep network deposits, which was distributed among Synapse, Fintech Platforms and end users according to respective agreements among Synapse and its customers.

Synapse Credit is a fully owned subsidiary of Synapse. Based on research, discussions with Partner Banks and Fintech Platforms and the sworn testimony of Mr. Pathak at the Creditors' Meeting, Synapse Credit is a state-by-state lending entity that provided one-time or revolving secured loans to individuals and businesses. The loans were secured by one-to-one collateral that was either held in Fintech Platform reserves in the Synapse ecosystem or deposited by end users, depending on the type of loan program under which the loan was issued.

At the time of this Report, neither Synapse Brokerage nor Synapse Credit is debtor in this Case or any other bankruptcy case. As both entities are wholly owned subsidiaries of Synapse, the Trustee has indirect authority over both entities vis-à-vis the Debtor's sole equity ownership of the subsidiaries. However, the Trustee does not have legal authority to directly manage the businesses of or otherwise control Synapse Brokerage and Synapse Credit.

It is possible that certain property of the Synapse estate resides at Synapse Brokerage or Synapse Credit, such as due portions of revenue-sharing agreements or interest owed by a subsidiary to the parent. The Trustee and proposed counsel are working to identify such property of the estate,

---

[1] A "For Benefit Of" or "FBO" account is a type of custodial account. It is a pooled account that allows a company to manage funds on behalf of, or "for the benefit of," one or more of their users without assuming legal ownership of that account.

recovery options and mechanisms by which recovered property can be used to fund reconciliation efforts and other administrative expenses.

### C.    Update on Ledger Reconciliation and Release of End User Funds

Since the Second Report, the Partner Banks have continued to commit extensive resources, upload data to a joint data room, and convene for regular meetings to ensure coordination and make progress on the reconciliation of end user funds. In the absence of business-as-usual operations at Synapse, the Trustee has continued to facilitate workarounds like interbank data sharing and reconciliation against Fintech Partner trial balances. At the time of this Report, these efforts have enabled the partial reconciliation and return of Synapse-related end user accounts and funds, as detailed below. To date, AMG has distributed nearly all of the FBO funds it holds and Evolve and Lineage have both distributed most of the DDA funds they hold.

Additionally, Evolve and Lineage have voluntarily provided their own reports with additional details of their reconciliation efforts to date, which are attached to this Report as Exhibit B and Exhibit C, respectively.

#### 1.    *DDA Reconciliation and Distributions*

As discussed in the Second Report, the Trustee has been informed that all Partner Banks believe that the DDAs they hold have been fully reconciled across all banks and Partner Banks have commenced repayment of DDA funds as follows:

- Since the Trustee's appointment, Evolve has distributed approximately $5.369 million of DDA funds to 3,317 end users across eight Fintech Partner platforms, with approximately $644,000 in funds remaining to be distributed to 12,339 end users across five Fintech Partner platforms. Evolve has stated it plans to complete DDA funds distribution in approximately two weeks from the date of this Report.

- Lineage holds $388,769.25 of the remaining DDA funds to be distributed. Of the total DDA funds held by Lineage, $235,856.30 are held for one Fintech Partner that is Lineage's direct DDA customer, and $152,912.95 are held for another Fintech Partner as part of an Evolve DDA program. Since the Trustee's appointment, Lineage has distributed $198,601 of DDA funds to approximately 1,000 end users associated with

one Fintech Partner and is working to distribute the remaining funds as soon as practicable.

Neither American Bank nor AMG hold any DDAs or funds for Synapse end users. The Trustee is not aware of any reported shortfall between cash held in DDAs at the Partner Banks and the amounts owed to DDA end users as shown on the Synapse trial balances.  The Trustee believes that Partner Banks should be able to successfully repay the remaining DDA funds in the near future.

### 2.    *FBO Account Reconciliation and Distributions*

The Partner Banks have reported the following results of the reconciliation of FBO Accounts:

- As of June 19, 2024, American Bank held $43,339.67 of FBO funds related to a single Fintech Partner. American Bank is in contact with this Fintech Partner to arrange payment instructions and will release these funds as soon as practicable.

- Before the Trustee's appointment, AMG held approximately $110 million in FBO funds. Immediately before the Trustee's appointment, AMG reconciled and paid out approximately $55 million of FBO funds. As of the time of the Second Report, AMG held $57,732,939.67 in FBO funds for: (1) Fintech Partners that have not yet been paid, and (2) to re-issue payments that failed or were returned through May 24, 2024. As of the time of this Report, AMG has released approximately $99 million of total FBO funds to over 31,000 end users across 12 Fintech Partner platforms. AMG has approximately $11 million in FBO funds remaining to be distributed across approximately twenty Fintech Partner platforms and/or to reissue failed payments. AMG is continuing to work with Fintech Partners to obtain payment instructions and release funds as soon as practicable. Approximately $72,000 of the total FBO funds held may be for unidentified Synapse Brokerage FBO customer use. AMG also holds $150,845.19 in unallocated interest associated with Synapse Brokerage sweep network deposits, which was transferred into AMG FBO Accounts on June 7, 2024.

- Evolve holds $46,926,558.83 in FBO funds from net Receiving Depository Financial Institution activity from Synapse Brokerage.

- Lineage holds an aggregate $61,869,727.69 attributed to DDA and FBO Accounts in a single FBO Account. Based on Lineage's reconciliation of $388,769.25 of DDA funds, the remaining $61,480,958.44 in this account are FBO funds.

### 3. *FBO Account Shortfall and Reconciliation Challenges*

As of the time of the Initial Report, reconciliation efforts indicated an estimated shortfall of $85 million between the cash held in FBO Accounts among all Partner Banks and the Synapse trial balance. At the time of the Second Report, the Trustee has been informed by at least one Partner Bank that further reconciliation indicated an approximate shortfall of $65 – $96 million according to reconciliation progress to date. As of the time of this Report, the shortfall estimate continues to be in the range of $65 – $96 million. The range in estimated shortfall is due to there being held at certain Partner Banks approximately $31 million in Synapse-related funds from interest and rebate payments; however, further reconciliation efforts must be completed to determine the extent to which these funds belong to end users.

### D. <u>Further Reconciliation Efforts</u>

To facilitate further reconciliation efforts, the Trustee is working to collect and make available all Synapse ledger records, data, and systems on a confidential and read-only basis to all Partner Banks. The Trustee has been informed that the key Synapse systems that support and store ledger records are MongoDB and Amazon Web Services ("AWS").

As of the date of this Report, the Trustee and proposed counsel have obtained administrative access to MongoDB from Synapse's former officers. Lineage has offered to engage as an independent contractor, at its own expense, a former Synapse engineer familiar with the MongoDB database to access the database, make available all ledger records on a confidential and read-only basis to all Partner Banks and assist in interpreting ledger data to facilitate further reconciliation. The Trustee believes that this may advance reconciliation efforts and is coordinating with Lineage to this end.

At the time of the Second Report, the Trustee had been informed that master credentials to the Synapse AWS environment were known to only two former Synapse engineers, Samip Merha and Chester Mui.  However, the Trustee has now been able to get into contact with Mr. Merha and Mr. Mui who have stated they do not have access to the AWS environment.  To that end, the Trustee has

continued to work with AWS to gain access to the Synapse environment. Once this access is established, the Trustee and proposed counsel plan to facilitate uploading read-only copies of the data contained in AWS to a secure interbank data room for use by the Partner Banks in further reconciliation efforts. The Trustee also intends to facilitate to the extent possible, ongoing interbank communication and data sharing to enable further reconciliation.

To facilitate further reconciliation efforts and particularly to identify the amounts and sources of any shortfall in FBO funds, the Partner Banks have discussed sharing historical interbank transfer records. At least one Partner Bank has reported that their bank transfer records include historical transfers to American Deposit Management Company ("ADMC") in addition to transfers among the Partner Banks. The Trustee was informed that ADMC managed a cash sweep network to which funds in certain Synapse Cash Management Accounts were regularly swept during a period from September 2023 to December 2023. On June 20, 2024, the Trustee met with representatives from the Partner Banks and ADMC to discuss these historical transfers and determine next steps for further reconciliation efforts in partnership with ADMC and other banks in their sweep network as appropriate. The Trustee appreciates Partner Banks' reconciliation efforts to date.

### E. Communications with Regulators

On June 20, 2024, the Trustee sent a letter to the Board of Governors of the Federal Reserve System (the "Federal Reserve") Chair Jerome Powell, the Federal Deposit Insurance Corporation (the "FDIC") Chairman Martin Gruenberg, the Office of the Comptroller of the Currency (the "OCC") Acting Comptroller of the Currency Michael Hsu, the United States Securities and Exchange Commission (the "SEC") Chair Gary Gensler and the Financial Industry Regulatory Authority ("FINRA") President and CEO Robert Cook, attached hereto as Exhibit A.

The Federal Reserve, FDIC and OCC regulate Partner Banks currently holding Synapse-related funds: Evolve Bank & Trust is Federal Reserve-regulated; Lineage Bank is FDIC-regulated; and AMG National Trust and American Bank, N.A. are OCC-regulated. While end user funds were initially deposited through Synapse, which was not directly regulated by the Federal Reserve, FDIC and OCC, the end users' deposits now reside with the Partner Banks that they do regulate. Additionally, the SEC and FINRA both regulate Synapse Brokerage.

The Trustee requested that these agencies make available to the public resources from their respective consumer protection divisions, with the ultimate goal of helping end users and depositors understand which Partner Bank holds their funds and facilitating end users' interaction and communication with relevant Partner Banks, and, in the case of the SEC and FINRA, to help field end user inquiries with Synapse Brokerage.  The Trustee has extended the opportunity to each of these agencies to provide a weekly update to the Court in connection with the trustee's status report every Thursday either as an attachment to the weekly trustee's report or filed separately with the Court.

**F.    Meetings with Parties in Interest**

Since June 14, 2024, the Trustee and proposed counsel have had follow-up meetings and communications with known parties in interest as well as initial meetings and communications with additional constituents.

**1.    *Bank Partners***

The Trustee and proposed counsel continue to have regular meetings and communications with the Partner Banks and their respective counsel, individually and collectively. The purpose of these meetings has been to ensure the progress of and resolve open issues and questions related to ongoing reconciliation efforts. On June 20, 2024, the Trustee met with Partner Banks and ADMC to discuss interbank transfers and ADMC's engagement in ongoing reconciliation efforts.

**2.    *Debtor's Former Officers, Key Employees and Contractors***

The Trustee and proposed counsel continue to be in communication with Mr. Pathak, Ms. Guerin, Pam Wismer, an independent contractor from Ascent CFO Solutions who provided part-time CFO services to the Debtor and Jack Doan, the former chief human resources officer of the Debtor. The purpose of these meetings and communications has been to discuss outstanding questions and issues related to the ongoing reconciliation efforts and to obtain key contacts, systems access and data critical to the reconciliation process.

**3.    *Financial Technology Platform Partners***

The Trustee and proposed counsel have continued to meet and communicate with many of the Fintech Partners of Synapse and their respective counsel, including Changed Inc., Copper, Gig Wage, Grabr, Gravy, IDT, Juno, Latitud, Mercury, Sunny Day Fund, TClub (d/b/a Abound), Yieldstreet and

Yotta. The purpose of these meetings and communications has been to connect Fintech Partners with Partner Banks to facilitate reconciliation efforts against Fintech Partner ledgers and provide key updates on reconciliation efforts.

### 4.    *Financial Advisors*

The Trustee and proposed counsel have received several in-bound communications from individual and institution experts in finance, accounting and forensics.  The Trustee through proposed counsel has met with certain of these firms and is currently discussing terms of engagement with one of them. The Trustee believes that engaging an experienced restructuring financial advisor with restructuring, forensic accounting and asset sale expertise would likely benefit the estate and end users by facilitating protection and retrieval of Synapse data, by potentially enabling the estate to raise funds through asset sales and in many other ways.

### 5.    *End Users*

The Trustee and proposed counsel have had additional meetings and communications with affected end users. The purpose of these meetings and communications has been to further understand the impact to end users and inform end users that the Trustee's top priority continues to be restoring access to end user funds as soon as possible.

### 6.    *Kroll, Inc.*

The Trustee and proposed counsel have continued to meet with and maintain open lines of communication with Kroll, Inc., which was engaged by the Synapse Audit Committee to conduct an audit and reconciliation of the Synapse ledgers in 2023. The purpose of these meetings and communications has been to further discuss the findings of the audit and reconciliation conducted by the Kroll team as regards Synapse systems, transaction history and governance.

### 7.    *Regulatory and Government Bodies*

On June 20, 2024, the Trustee sent a letter to the Federal Reserve, the FDIC, the OCC, FINRA and the SEC. The purpose of this letter and further communications with these agencies has been to request that these agencies make available to the public resources from their respective consumer protection divisions with the goal of helping end users understand which Partner Banks holds their

funds.  The Trustee also offered these agencies an opportunity to provide weekly updates on their efforts either as an attachment to the Trustee's report or as a separate filing with the Court.

### 8.    *Regulatory Counsel*

The Trustee and proposed counsel have continued to be in communication with Lowenstein Sandler LLP, regulatory counsel to the Debtor and Synapse Brokerage. The purpose of these meetings has been to discuss the relationship between the trusteeship of Synapse and the regulatory history of Synapse Brokerage, including recent communications that Lowenstein Sandler LLP has had with FINRA and SEC staff concerning Synapse Brokerage.

### 9.    *Brokerage Subsidiary Constituents*

The Trustee and proposed counsel have continued to communicate with Jeff Stanley, the former president and chief executive officer of Synapse Brokerage. The purpose of these communications has been to discuss Synapse Brokerage's operational funds and accounts and their location and the types and location of accounts holding funds belonging to end users of Synapse brokerage.

### 10.    *Vendors and Suppliers*

The Trustee continues to receive in-bound communications from creditors with unpaid invoices and the like. The Trustee continues to focus and has instructed proposed counsel to focus on restoration of end user access as a priority over these inquiries. For certain "critical vendors" such as AWS and MongoDB, which host or provide database services, the Trustee has through proposed counsel has reached out to discuss continued service and options to obtain credentials and access to AWS.

### 11.    *Potential Asset Purchasers*

The Trustee continues to receive in-bound inquiries from potential purchasers of assets of the Debtor.  Though the Trustee has been focusing primarily on restoring end user access to funds, the Trustee through proposed counsel has been working to engage a financial advisory firm with strong

asset sale capabilities.  Once the Trustee and the financial advisory firm have agreed on terms of engagement, the Trustee expects that this firm will take steps to advance a sale process.

## II.

## SIGNIFICANT ISSUES

### A.    Proceeds from Sales, Cash Collateral and Wind-Down Budget

The Debtor continues to appear to have no available liquidity and has no arrangement with secured lenders to access cash collateral in the event that the estate obtains funding. The Trustee and proposed counsel are working to identify sources of funding for the estate and developing a winddown plan that minimizes expenses. As described above, the Trustee and proposed counsel have had further communications with various parties regarding offers to purchase assets from the estate and related financing. The Trustee has had communications to engage a financial advisor with strong asset sale capabilities to evaluate and potentially conduct an asset sale process while in chapter 11.  The Trustee and proposed counsel are continuing to evaluate the option to convert to chapter 7 in the future, under which a liquidation may take place alternatively.

### B.    Conversion

The Trustee believes this Case should remain in chapter 11 for the time being, and, as of the time of this Report, is not seeking conversion to chapter 7.

## III.

## CONCLUSION AND RECOMMENDATION

The Trustee continues to facilitate the Partner Bank's additional efforts with regard to reconciliation, settlement payments among banks and identifying the sources of any shortfalls. The Partner Banks have continued to review interbank transfers and have commenced communication with ADMC to investigate the sources of potential shortfalls and reconcile accounts across the broader network of Synapse partners. By the end of June, the Trustee and proposed counsel will complete their work to obtain key systems access, support Lineage's engagement of a former Synapse engineer and populate the existing data room with Synapse ledger records, to facilitate further reconciliation. In the meantime, the Trustee has urged certain regulatory agencies to deploy consumer protection resources to assist with end user inquires. The Trustee and proposed counsel will continue to address other estate

administrative matters, including the potential sale of Synapse's assets, with a view to progress reconciliation efforts and further distribution of end user funds.

The Trustee will present the foregoing at the Status Conference scheduled for June 21, 2024, at 10:00 a.m. Pacific Time.

DATED: June 20, 2024

**JELENA MCWILLIAMS**
**CHAPTER 11 TRUSTEE**


By: _/S/ Jelena McWilliams_

Jelena McWilliams
Chapter 11 Trustee


###

# Exhibit A

June 20, 2024

Jerome H. Powell
Chair
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue N.W.
Washington, D.C. 20551

Martin J. Gruenberg
Chairman
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429

Michael J. Hsu
Acting Comptroller of the Currency
Office of the Comptroller of the Currency
400 7th Street S.W.
Washington, D.C. 20219

Gary Gensler
Chair
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549

Robert W. Cook
President and Chief Executive Officer
Financial Industry Regulatory Authority
1700 K Street, N.W.
Washington, D.C. 20006

**RE:    Request for Agency Resources to Assist End-Users Whose Funds Were
Affected by the Synapse Financial Technologies, Inc. Bankruptcy**

Dear Chair Powell, Chairman Gruenberg, Acting Comptroller Hsu, Chair Gensler and Mr. Cook:

On April 22, 2024, Synapse Financial Technologies, Inc. ("Synapse") filed a voluntary
Chapter 11 petition, schedules and statement of financial affairs.  On May 24, 2024, the United

States Trustee appointed me as Chapter 11 Trustee for Synapse pursuant to an order by the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division (the "Court").  Synapse's bankruptcy has left tens of thousands of end-users of financial technology platforms that were customers of Synapse stranded without access to their funds.  In a hearing announcing the trustee's appointment, Judge Martin Barash of the Central District of California noted that the immediate goal of the trustee is to reconcile ledgers and return money to end-users and has instructed the trustee to "continue the process of sharing information and hopefully reaching some agreement with the participating banks that allows funds to be returned to end users, to the rightful owners of those funds, as soon as humanly possible."[1]  To that end, I have been assisting partner banks of Synapse ("Partner Banks") with the reconciliation of their own records with the Synapse ledger and those of the relevant financial technology platforms (collectively, the "Fintech Partners").  For your reference, enclosed as Attachment A and Attachment B, respectively, are the two status reports submitted to the Court to date.

Partner Banks

        It is my understanding that, beginning in 2014, Synapse opened demand deposit accounts ("DDAs") on behalf of approximately 100 Fintech Partners at Partner Banks. Beginning in 2020, Synapse developed a cash management program in connection with its subsidiary, Synapse Brokerage LLC ("Synapse Brokerage").  Synapse Brokerage established custodial accounts for its Fintech Partners and their end-users to manage funds on behalf of, or "for the benefit of," one or more end-users without assuming legal ownership of those accounts ("FBO Accounts").  The Partner Banks have stated that they hold end-users' funds in FBO Accounts held either in the name of Synapse or Synapse Brokerage and were not aware which end-user's funds may comprise any one FBO Account.  Since all Synapse employees were terminated prior to the trustee's appointment on May 24, 2024, and the access to Synapse's database and the underlying data has been difficult to obtain, Partner Banks are engaged in an extensive and elaborate master reconciliation effort to ensure that end-users' deposits are returned promptly.  Partner Banks have informed me that DDAs can be easily reconciled and such end-users repaid, and those efforts are successfully underway.  However, identifying which end-users' funds are held in FBO Accounts is complicated by the structure of those accounts. Moreover, there appears to be a shortfall in the overall FBO Accounts funds in the range of $65 million to $96 million according to reconciliation progress to date.  Not every Partner Bank has reported an estimated shortfall in its deposits on-hand as compared to the Synapse trial balance and Fintech Partners' ledgers.

        While end-user funds were initially transferred to Synapse, those funds are now deposited with the Partner Banks, which are within prudential banking agencies' supervisory purview.  The Federal Reserve, FDIC and OCC regulate at least one of the Partner Banks currently holding Synapse-related funds:  Evolve Bank & Trust is Federal Reserve-regulated; Lineage Bank is FDIC-regulated; and AMG National Trust and American Bank, N.A. are OCC-regulated.

        The Partner Banks have been working diligently to reconcile their ledgers, and regulators should encourage these reconciliation efforts to proceed.  While this process continues, there is a great need for facilitation of communication with affected end-users, some of whom do not know which Partner Bank holds their funds due to the complexity of the account and payment structures.  The Federal Reserve, FDIC and OCC each have consumer protection divisions well

---

[1] United States Bankruptcy Court for the Central District of California, May 24, 2024 hearing.

equipped to address consumer inquiries and otherwise educate and assist consumers with respect to the agencies' regulated institutions. I respectfully ask that the Federal Reserve, FDIC and OCC make consumer protection staff and other resources available to the public to help end-users understand which Partner Bank holds their deposits and facilitate end-users' interaction and communication with relevant Partner Banks.

Synapse Brokerage

Synapse Brokerage is not in bankruptcy and therefore not within the Chapter 11 process, and it is my understanding that I do not have legal authority to directly manage the businesses of Synapse Brokerage as Chapter 11 Trustee for Synapse. I have been told by former Synapse and Synapse Brokerage employees that Synapse Brokerage and Synapse shared employees, functions and systems. All employees of Synapse Brokerage were terminated prior to my appointment on May 24, 2024, further complicating end-users' efforts to regain their funds or communicate with Synapse Brokerage. At this time, Synapse Brokerage does not have any remaining employees who could interpret Synapse or Synapse Brokerage ledgers to assist in the reconciliation efforts or respond to end-users' inquiries.

Synapse Brokerage is SEC-regulated and a FINRA member. The SEC and FINRA also have extensive consumer protection resources, and I respectfully ask that the SEC and FINRA make their consumer protection resources available to the public, with the ultimate goal of helping end-users whose funds are held in FBO accounts in the name of Synapse Brokerage.

As part of their provision of consumer protection resources, I also respectfully ask the Federal Reserve, FDIC, OCC, SEC and FINRA to establish a public-facing webpage, either jointly or in connection with your agencies' existing websites, that will provide contact information at each agency to which affected end-users may direct their inquiries. I also ask that your agencies have personnel on standby, ready to respond to end-users' questions and process end-users' inquiries as promptly as practicable.

Moreover, I would like to extend the opportunity to each of your agencies to provide a weekly update to the Court in connection with the trustee's status report every Thursday, which is due to the Court no later than 9:00 p.m. Eastern Time.[2] You are welcome to provide such report to me by 7 p.m. Eastern Time every Thursday for inclusion as an attachment to the weekly trustee's report or file it separately with the Court.

The impact of Synapse's bankruptcy on end-users has been devastating. I understand that, without these funds, many end-users are unable to pay for basic living expenses and food. I appreciate your prompt attention to this request and respectfully request that your agencies act on it as quickly as possible. Please do not hesitate to contact Will Giles (wgiles@cravath.com; 202-869-7728) or Caroline Shinkle (cshinkle@cravath.com; 212-474-1743) with any questions regarding this request.

---

[2] synapse-financial_trustee_order-to-appoint_20240524.pdf (cravath.com)

3

Respectfully,


Jelena McWilliams


### 

4

# Exhibit B

**Evolve Bank & Trust: Update on Ledger Reconciliation and Release of End User Funds**

Below is an update regarding efforts by Evolve Bank & Trust ("Evolve"), both independently and in collaboration with other banks involved in the Synapse Financial Technologies, Inc. ("Synapse") ecosystem (together, "Synapse Ecosystem Banks"), to perform ledger reconciliation and release end user funds in connection with Synapse programs.

**I.    Evolve DDA Program**

Evolve has made significant progress on distributing funds to Evolve DDA customers.  As of June 20, 2024, over 88 percent of those funds have been distributed to Evolve DDA customers.  Evolve is hopeful that it will be able to finalize distributions in the coming two weeks.

**II.    Synapse Brokerage LLC ("Synapse Brokerage") Cash Management Program**

Evolve continues to work with the Chapter 11 Trustee and Synapse Ecosystem Banks to perform ledger reconciliation activities and discern an appropriate and compliant methodology for distributing Synapse Brokerage end user funds related to Synapse Brokerage's cash management program.  Below is a summary of the substantial obstacles that Evolve and Synapse Ecosystem Banks face in connection with these efforts.

1) <u>Reconciliation is Necessary Across the Synapse Ecosystem.</u>  Evolve was not a Program Bank for purposes of Synapse Brokerage's cash management program and therefore was not holding end user deposits as part of the Cash Management Account program offered by Synapse Brokerage to its customers.  However, Evolve is holding approximately $46MM in accounts that were created so it could continue to perform payment processing activities on behalf of Synapse.  As Evolve has communicated on a number of occasions, it has identified numerous material discrepancies in the Synapse Brokerage program ledgers that were provided by Synapse to Synapse Ecosystem Banks that do not align with actual funds movement into or out of Evolve.

As Synapse Brokerage end users had funds and transaction activity at multiple institutions across the Synapse Ecosystem, Evolve sees significant issues with the ability of any bank to fully reconcile funds and distribute them to End Users without more work being performed to collectively gather and analyze all relevant data.  Now that the Synapse Ecosystem Banks have access to AWS and MongoDB data from Synapse and Synapse Brokerage, this work is being performed and shared amongst the Synapse Ecosystem Banks.  Importantly, any reconciliations have to account for the fact that other Synapse Ecosystem Banks may be Program Banks for purposes of Synapse Brokerage's Cash Management Program while Evolve is not and never has been a Program Bank.  Evolve believes that this has implications for how Synapse and Synapse Brokerage may have calculated their ledgers, as well as other material implications for Synapse Brokerage.

2) <u>Material Irregularities in Synapse's Ledgers Impact All Synapse Ecosystem Banks.</u>
   Evolve has continued to assess ledgers in possession of and shared by other Synapse
   Ecosystem Banks.  This work has only continued to underscore the severity of
   Synapse's ledger irregularities for Synapse Brokerage fintechs and end users, across all
   institutions:

   - For example, Evolve was provided a ledger from Synapse that is dated as
     of April 11, 2024 for American Bank, AMG and six Program Banks via
     American Depository Management (ADM).  In this ledger it states that
     these institutions held total balances in the amount of $109MM for Yotta
     End Users ($4.6MM, $34.5MM and $69.9MM respectively).  In total there
     was $120.8MM in funds at these six Program Banks via ADM of which
     $69.9MM belonged to Yotta, $14.2MM was Yield Street and $21.5MM is
     Juno's according to the Synapse ledger dated April 11, 2024.

   - One month later, the Ledger provided by Synapse for May 17, 2024 shows
     only $1.4MM in Yotta End User funds at AMG, $0 at American Bank and $0
     at the Program Banks via ADM.   Evolve has confirmed that it has not
     received funds from these institutions between April 11 – May 16, 2024.

   - A detailed investigation of what happened to these funds, or alternatively,
     why the Synapse-provided ledger reflected money movement that did not
     actually occur, must be undertaken to determine their actual disposition.
     One of the key questions that this investigation must answer is: How did
     the Synapse ledger amounts for Yotta end users at AMG, American Bank
     and the six Program Banks via ADM, go down but Yotta end users have not
     been paid any funds by any of these entities?  Again, no funds were sent
     to Evolve during this time period.

These irregularities in Synapse's ledgering of Yotta end user funds are <u>just</u> one example
of the many discrepancies that Evolve has  observed, and which give it great pause
regarding any Synapse Ecosystem Bank making any payments to Synapse Brokerage
end users until a full reconciliation by all banks is complete.  Evolve strongly supports,
and hopes to participate in, any effort by the Trustee or other banks in attempting to
better reconcile the actual/correct ledger amounts in the Synapse Brokerage program.

3) <u>Explanation Needed from Synapse Brokerage.</u>  Lastly, given Evolve's role as payment
   processor for RDFI activity, it can only state the funds it has are net payment activity at
   Evolve for the Cash Management Account.  Synapse Brokerage needs to explain the
   discrepancies that Evolve (and other banks) have observed, as Evolve  is unable to do
   so given its limited role in the Synapse Brokerage Cash Management Program.

As previously stated, Evolve remains willing to send the funds it has in the Synapse titled FBO to the appropriate institution that has a more complete view as to the entire customer relationship and the amounts owed to them.  In parallel, Evolve will continue cooperating with the Trustee and working with the Synapse Ecosystem Banks to perform reconciliation and determine the most appropriate path forward for funds held at Evolve.

###

# Exhibit C

**Lineage Bank, Franklin, Tennessee**
**Status Report to Chapter 11 Trustee**
**June 18, 2024**

### 1. Introduction

Lineage operated primarily as a third-party payment processor for Synapse Financial Technologies
("Synapse"). Simply put, Lineage originated ACH and wire transfers based on money movement
instructions from Synapse. Lineage has reconciled the cash that it processed at the direction of
Synapse against Federal Reserve records. Lineage's cash balance of FBO funds reconciles with
Federal Reserve records.

At the time Synapse declared bankruptcy, Lineage had no direct relationships with the fintech
customers linked to Synapse or their end users, with the exception of one DDA program with one
fintech.  Lineage began disbursing funds to the end-users of said DDA program fintech on June 14,
2024.

### 2. Lineage's Reconciliation Efforts and Data

Despite multiple and substantial complications with reconcilement, some of which are outlined
below, Lineage has expended significant efforts to collect and analyze available data.   Lineage's
reconciliation efforts to date include, but are not limited to, the following:

- Compared millions of Synapse-directed ACH transactions processed by Lineage to their
  corresponding Synapse transactions. This process is ongoing.
- Reconciled its direct DDA customer funds based on the fintech's ledger and distributed
  those funds to end-users using a vendor engaged by Lineage.
- Researched and shared concerns with the Trustee and other partner banks regarding
  numerous and ongoing discrepancies in the Synapse-provided trial balance.
- Reviewed and analyzed data shared by the other partner banks.
- Reviewed and analyzed Synapse data shared by the Trustee.
- Provided the Trustee and other partner banks with requests for information needed and
  action items critical to the reconciliation process.
- Met and conferred with multiple Synapse-related fintechs.
- Met and conferred with other partner banks.

### 3. Challenges with Reconciliation

Lineage Bank believes it is in the best interest of transparency and public interest to disclose its
current observations about some of the perceived challenges in the reconciliation process.

- Synapse's business model was dependent on its accessibility to multiple FDIC-insured
  banking institutions. Against the backdrop of a perceived "modern" and "more
  accessible"  banking framework, Synapse spread end user funds across multiple
  banks.  Thus, a single end user could have a $50 balance at Bank A, a $100 balance at Bank
  B and a $50 overdraft at Bank C.

- The Synapse-provided trial balance data available to Lineage is contradictory, does not match the flow of funds, and cannot be verified at the fintech platform level or at the individual end-user level based on information available to Lineage.

- Prior to bankruptcy, Synapse frequently moved lump sums of funds from one bank partner to another within the Synapse ecosystem. These interbank transfers often involved aggregates of hundreds of millions of dollars over extended periods. Based on the information currently available to the parties, these large transfers of end user funds by Synapse were not allocated by Synapse to specific end users or fintechs, which greatly complicates reconciliation.  Stated differently, these large movements of cash by Synapse from one bank to another were not specifically linked to fintechs or end users at the time the transfers occurred.

- The reconciliation process is further complicated by Synapse's assignment, apparently on an arbitrary basis, of millions in missing funds to partner banks in its post-bankruptcy final trial balance. Synapse's final trial balance reflects millions of missing funds in the Synapse ecosystem. Lineage, the partner banks, and the Trustee presently lack a clear understanding of the exact amount or the origin of this cash shortfall and Lineage Bank cannot determine how or why this shortfall in the ecosystem occurred. This uncertainty, along with one partner bank's distribution of over $50 million primarily to one fintech's end users prior to the appointment of the Chapter 11 trustee complicates any attempt to fairly allocate the available funds among the affected parties.

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*): _____
CHAPTER 11 TRUSTEE'S THIRD STATUS REPORT _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 6/20/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian     raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com
Ron Bender     rb@lnbyg.com
J Scott Bovitz     bovitz@bovitz-spitzer.com
Rudy J Cerone     rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz     schenetz@perkinscoie.com,
docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson     russell.clementson@usdoj.gov
Andrew Michael Cummings     andrew.cummings@hklaw.com,
philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag     mfarag@gibsondunn.com
Paul R. Glassman     pglassman@stradlinglaw.com
Nicholas Christian Glenos     cglenos@bradley.com
Michael H Goldstein     mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried     mgottfried@elkinskalt.com,
cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner     sgubner@bg.law, ecf@bg.law
Ralph P Guenther     rguenther@guentherlawgroup.com
Robert T. Honeywell     robert.honeywell@klgates.com
Lance N Jurich     ljurich@loeb.com,
pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim     myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause     jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant     wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis     alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)     jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian     kjm@lnbyg.com
Fred Neufeld     fneufeld@stradlinglaw.com, tingman@sycr.com
David M Poitras     dpoitras@bg.law
Paul M Rosenblatt     prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent     brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Zev Shechtman     Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
Jason D Strabo     jstrabo@mwe.com, jbishopjones@mwe.com
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler     jwisler@connollygallagher.com, dperkins@connollygallagher.com
Claire K Wu     claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young     bry@lnbyg.com, bry@lnbyb.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 6/20/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 6/20/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/20/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**