1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JELENA MCWILLIAMS
1601 K STREET NW
WASHINGTON, D.C. 2006-1682
jmcwilliams@cravath.com
Tel. 1-202-869-7710

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 |
| | **CHAPTER 11 TRUSTEE'S FOURTH STATUS REPORT** |
| Debtor. | DATE:  July 3, 2024<br>TIME:   10:00 a.m. PT<br>PLACE:  303<br>21041 Burbank Boulevard<br>Woodland Hills, CA 91367 and<br>Via ZoomGov |

TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

I, Jelena McWilliams (the "Trustee"), the duly appointed, qualified and acting chapter 11 trustee for the estate of Debtor Synapse Financial Technologies, Inc. ("Synapse" or the "Debtor"), hereby submit my fourth "Chapter 11 Trustee's Status Report" (the "Report"), and represent as follows:

**I.**

**TIMELINE OF EVENTS**

**A.    Filing of the Chapter 11 Case and Appointment of Chapter 11 Trustee**

On April 22, 2024, the Debtor filed a voluntary chapter 11 petition, schedules and statement of financial affairs. That same day, the Debtor filed an emergency motion for an order approving the sale of all its assets for $9.7 million to TabaPay Holdings LLC and requested that a hearing take place on April 29, 2024. [Dkt. No. 8]. The Debtor represented that it is a technology company and "has proprietary technology and software which essentially allows financial technology platforms called 'fintechs' to provide certain financial products and services to the fintechs' customers (referred to as end users or depositors) through certain banking providers and financial technology providers." Id. The Debtor also filed a motion to approve a settlement reached with Evolve Bank & Trust ("Evolve"), one of its partner financial institutions.

On May 1, 2024, the Court entered an order approving bidding procedures and set a hearing to approve the sale for May 9, 2024. [Dkt. No. 92]. The Debtor reported at the May 9 hearing that the settlement with Evolve had not been consummated due to disputes over Evolve funding a settlement payment. The buyer reported that it was unwilling to proceed with the sale without the Evolve settlement.

On May 13, 2024, Evolve filed a motion for an order restoring access to the "Debtor's Dashboard System" or, alternatively, "Authorizing Evolve to Close all of the Debtor's Demand Deposit Accounts at Evolve Associated with Debtor's Programs". [Dkt. No. 137]. Evolve alleged that it had been denied access to the Debtor's computer systems and had been forced to freeze end user accounts. Id.

1

On May 13, 2024, the Court conducted a status conference on the sale and a hearing on Evolve's motion. Although extensive arguments were made by counsel and their clients assessing relative blame, it was undisputed that end users had lost access to funds.

On May 14, 2024, the Court conducted another status conference regarding access of end users to their funds and for continued use of cash collateral. The Debtor and secured creditors stated that they had agreed to the use of cash collateral through Friday, May 17.

On May 15, 2024, the United States Trustee for the Central District of California (the "U.S. Trustee") filed a motion on an emergency basis requesting that the Court enter an order converting the Chapter 11 Case to chapter 7 for cause, or, in the alternative, for the appointment of a chapter 11 trustee. [Dkt. No. 146].

On May 24, 2024, following a hearing, the Court entered an order appointing a chapter 11 trustee (the "Appointment Order"), and Jelena McWilliams was appointed by the U.S. Trustee as the Chapter 11 Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196].

As a result of the foregoing, Jelena McWilliams became the duly appointed, qualified and acting Chapter 11 Trustee, and continues to act in this capacity. On June 6, 2024, the Trustee filed the "Chapter 11 Trustee's Initial Status Report" (the "Initial Report"), and, on June 7, 2024, the Trustee presented the Initial Report at a Status Conference before the Court. On June 13, 2024, the Trustee filed the "Chapter 11 Trustee's Second Status Report" (the "Second Report"), and, on June 14, 2024, the Trustee presented the Second Report at a Status Conference before the Court. On June 20, 2024, the Trustee filed the "Chapter 11 Trustee's Third Status Report" (the "Third Report"), and, on June 21, 2024, the Trustee presented the Third Report at a Status Conference before the Court.

**B.**     **Debtor's History, Subsidiaries and Partners**

As discussed in the Initial Report, the Trustee was informed that, beginning in 2014, Synapse opened Demand Deposit Accounts ("DDAs") on behalf of approximately 100 financial technology platform partners (collectively, the "Fintech Partners") and their end users at certain banks. Beginning in 2020, Synapse developed its cash management program in connection with its subsidiary, Synapse Brokerage LLC ("Synapse Brokerage"), through which Synapse began opening Cash Management Accounts ("CMA Accounts") on behalf of Fintech Partners and their end users at certain banks.

1  Additionally, Synapse offered secured loan origination services to end users of its Fintech Partners

2  through its subsidiary, Synapse Credit LLC ("Synapse Credit"). Most end user funds are held in

3  omnibus "For Benefit Of" Accounts ("FBO Accounts")[1] and the remaining funds are held in DDAs

4  across four banks. The four banks are: American Bank, AMG National Trust, Evolve Bank and Trust

5  and Lineage Bank (collectively, the "Partner Banks").

6      Synapse Brokerage is a fully owned subsidiary of Synapse. Based on research, discussions

7  with Synapse Brokerage constituents, and the sworn testimony of Mr. Pathak at the Creditors'

8  Meeting, Synapse Brokerage was founded with the view to establishing programs for Cash

9  Management Accounts and Money Market Accounts. Operationally, Synapse Brokerage has not yet

10  established such programs but has only deployed a sweep network at American Deposit Management

11  Company ("ADMC") for the purpose of increasing the pool of FDIC insurance coverage available to

12  depositors and earning interest on sweep network deposits, which was distributed among Synapse,

13  Fintech Platforms and end users according to respective agreements among Synapse and its customers.

14      Synapse Credit is a fully owned subsidiary of Synapse. Based on research, discussions with

15  Partner Banks and Fintech Platforms and the sworn testimony of Mr. Pathak at the Creditors' Meeting,

16  Synapse Credit is a state-by-state lending entity that provided one-time or revolving secured loans to

17  individuals and businesses. The loans were secured by one-to-one collateral that was either held in

18  Fintech Platform reserves in the Synapse ecosystem or deposited by end users, depending on the type

19  of loan program under which the loan was issued.

20      At the time of this Report, neither Synapse Brokerage nor Synapse Credit is a debtor in this

21  Case or any other bankruptcy case. As both entities are wholly owned subsidiaries of Synapse, the

22  Trustee has indirect authority over both entities vis-à-vis the Debtor's sole equity ownership of the

23  subsidiaries. The Trustee and her advisors have continued to be in communication with current and

24  former representatives of Synapse Brokerage and former representatives of Synapse Credit. Although

25  the Trustee and her advisors have not yet identified assets of those entities that are immediately

26

27

28

---

[1] A "For Benefit Of" or "FBO" account is a type of custodial account. It is a pooled account that allows a company to manage funds on behalf of, or "for the benefit of," one or more of their users without assuming legal ownership of that account.

distributable to the Debtor, they intend to continue investigating subsidiary operations and evaluating how those entities should best be resolved.

C.    **Update on Ledger Reconciliation and Release of End User Funds**

Since the Third Report, the Partner Banks have continued reconciliation efforts and to make distributions of reconciled funds. At the time of this Report, these efforts have enabled the partial reconciliation and return of Synapse-related end user accounts and funds, as detailed below. Additionally, Lineage has voluntarily provided their own report with additional details of its reconciliation efforts to date, which is attached to this Report as Exhibit A.

1.    ***DDA Reconciliation and Distributions***

As discussed in the Second Report and the Third Report, the Trustee has been informed that all Partner Banks believe that the DDAs they hold have been fully reconciled across all banks and Partner Banks have been repaying DDA funds as follows:

- Since the Trustee's appointment, Evolve has distributed approximately $5.369 million of DDA funds to 3,317 end users across eight Fintech Partner platforms, with approximately $644,000 in funds remaining to be distributed to 12,339 end users across five Fintech Partner platforms. Evolve has stated it has requested from each of the five Fintech Partners additional information to verify balances and is awaiting responses to distribute the remaining DDA funds.

- Lineage holds $388,769.25 of the remaining DDA funds to be distributed. Of the total DDA funds held by Lineage, $235,856.30 are held for one Fintech Partner that is Lineage's direct DDA customer, and $152,912.95 are held for another Fintech Partner as part of an Evolve DDA program. Since the Trustee's appointment, Lineage has distributed $198,601.85 of DDA funds to approximately 1,000 end users associated with the direct customer Fintech Partner and is working to distribute the remaining funds as soon as practicable.

Neither American Bank nor AMG hold any DDAs or funds for Synapse end users. The Trustee is not aware of any reported shortfall between cash held in DDAs at the Partner Banks and the amounts

owed to DDA end users as shown on the Synapse trial balances. The Trustee believes that Partner Banks should be able to successfully repay the remaining DDA funds in the near future.

### 2. *FBO Account Reconciliation and Distributions*

The Partner Banks have reported the following results of the reconciliation of FBO Accounts:

- As of July 1, 2024, American Bank holds $43,339.67 of FBO funds related to a single Fintech Partner for a single end user. American Bank is in contact with this Fintech Partner and end user. The end user has signed a release of funds agreement; after the applicable Fintech Partner signs this agreement, American Bank has stated that it is prepared to release the funds as soon as practicable.

- Before the Trustee's appointment, AMG held approximately $110 million in FBO funds. As of July 1, 2024, AMG has paid out $100,769,819.55 of total FBO funds to 31,694 end users across 14 Fintech Partner platforms. Of these initial payments, there have been returned payments in the amount of $2,719,895.28, which AMG is actively reprocessing. AMG has $9,520,220.55 in FBO funds remaining to be distributed across 18 Fintech Partner platforms, for which AMG is awaiting payment instructions or setting up workarounds, such as direct checks. Approximately $72,000 of the total FBO funds held may be for unidentified Synapse Brokerage FBO customer use. AMG also holds $150,845.19 in unallocated interest associated with Synapse Brokerage sweep network deposits, which was transferred into AMG FBO Accounts on June 7, 2024.

- Evolve holds $46,926,558.83 in FBO funds from net Receiving Depository Financial Institution activity from Synapse Brokerage.

- Lineage holds an aggregate $61,747,816.98 attributed to DDA and FBO Accounts in a single FBO Account.

### 3. *FBO Account Shortfall and Reconciliation Challenges*

As of the time of the Initial Report, reconciliation efforts indicated an estimated shortfall of $85 million between the cash held in FBO Accounts among all Partner Banks and the Synapse trial balance. At the time of the Second Report, the Trustee had been informed by at least one Partner Bank that further reconciliation indicated an approximate shortfall of $65 – $96 million according to

reconciliation progress to date. As of the time of this Report, the shortfall estimate continues to be in the range of $65 – $96 million. The range in estimated shortfall is due to there being held at certain Partner Banks approximately $31 million in Synapse-related funds from interest and rebate payments; however, further reconciliation efforts must be completed to determine the extent to which these funds belong to end users.

**D.    Further Reconciliation Efforts**

To facilitate further reconciliation efforts, the Trustee is working to collect and make available all Synapse ledger records, data, and systems on a confidential and read-only basis to all Partner Banks.

On June 26, 2024, the Trustee retained B. Riley Advisory Services ("B. Riley") as proposed financial advisor. The Trustee plans to file an application to employ B. Riley seeking an order authorizing their employment as financial advisor. Since retaining B. Riley, the Trustee and her advisors have been working diligently to properly preserve and migrate Synapse's information and records, with a focus on information and records that will be important to future reconciliation efforts and potential sale of assets.

The Trustee and her advisors have obtained administrative access to Synapse's key database systems from Synapse's former officers. The Trustee and her advisors have been in contact with key database vendors. She appreciates their cooperation to date and their continued cooperation until all the Debtor's records and information can be properly retained.

At the time of the Third Report, Lineage had engaged as an independent contractor, at its own expense, a former Synapse engineer familiar with the Synapse's database systems to access the database, make available all ledger records on a confidential and read-only basis to all Partner Banks and assist in interpreting ledger data to facilitate further reconciliation. As of the date of this report, Lineage and the Trustee have worked together to enable Lineage to extract read-only copies of all transactions and supporting metadata related to Synapse transactions and money-movements across the core Synapse database and five additional databases maintained. Lineage, in cooperation with the Trustee and her advisors, is also running the Synapse documentation process to generate end user monthly account statements for April and May 2024 for use in reconciliation efforts. Lineage is

continuing to extract data, make copies, and generate snapshots of point-in-time data to support further reconciliation efforts by the Partner Banks.

Since the Third Report, the Trustee and her advisors have obtained access to the Debtor's Amazon Web Services account ("AWS"), Google Workspace / GSuite account, GitHub account, and Atlassian account from former Synapse officers and employees. The Trustee was informed that these systems contain important process documentation, historical records, and metadata related to Synapse systems and transactions which will be helpful to reconciliation efforts. The Trustee and her advisors are actively working to make back-ups of all records and make available read-only copies of relevant records to the Partner Banks.

The Trustee also intends to facilitate, to the extent possible, ongoing interbank communication and data sharing to enable further reconciliation. In particular, the Partner Banks have discussed sharing historical interbank transfer records. Additionally, the Partner Banks have expanded reconciliation efforts to include records from American Deposit Management Company ("ADMC"). ADMC managed a cash sweep network to which funds in certain Synapse Cash Management Accounts were regularly swept during a period from September 2023 to December 2023. On June 21, 2024, ADMC shared account balance and transaction data for Synapse's sweep account with all Partner Banks for use in reconciliation efforts. The Trustee appreciates Partner Banks' reconciliation efforts to date.

**E.**    **Meetings with Parties in Interest**

Since June 21, 2024, the Trustee and her advisors have had follow-up meetings and communications with known parties in interest as well as initial meetings and communications with additional constituents.

**1.**    ***Bank Partners***

The Trustee and her advisors continue to have open lines of communication with the Partner Banks and their respective counsel, individually and collectively. The purpose of these communications has been to ensure the progress of and resolve open issues and questions related to ongoing reconciliation efforts.

The Trustee and her advisors have had several meetings and communications with executives, counsel and technical leads for Lineage regarding the engagement of a former Synapse engineer, access to Synapse systems, and progress on data extraction, data back-ups and statement generation. The Trustee appreciates the substantial effort that Lineage has made to work with the Trustee to retain Synapse records and advance reconciliation efforts and will continue to maintain open lines of communications for approvals, questions, and open issues regarding this effort.

### 2.    *Debtor's Former Officers, Key Employees and Contractors*

The Trustee and her advisors continue to be in communication with Mr. Pathak, Ms. Guerin, Pam Wismer, an independent contractor from Ascent CFO Solutions who provided part-time CFO services to the Debtor. The purpose of these meetings and communications has been to gain access to and understanding of Synapse systems, obtain key contact information for vendors and former employees and discuss outstanding questions and issues related to reconciliation efforts and estate administration.

### 3.    *Regulatory and Government Bodies*

On June 20, 2024, the Trustee sent a letter to the Federal Reserve, the FDIC, the OCC, FINRA and the SEC to request that these agencies make available to affected end users resources from their respective consumer protection divisions. On July 2, 2024, the FDIC and the OCC sent letters of response notifying the Trustee that their agencies are monitoring the situation and continuing to intake end user inquiries. The letter from the FDIC and the letter from OCC are attached to this report as Exhibit B and Exhibit C, respectively. The Trustee and her advisors have also had an additional meeting with SEC staff.

### 4.    *Financial Technology Platform Partners*

The Trustee and her advisors have continued to meet and communicate with many of the Fintech Partners of Synapse and their respective counsel, including Changed Inc., Copper, DolarApp, Gig Wage, Grabr, Gravy, IDT, Inter & Co. Payments, Juno, Latitud, Mercury, Sunny Day Fund, TClub (d/b/a Abound), Yieldstreet and Yotta. The purpose of these meetings and communications has been to connect Fintech Partners with Partner Banks to facilitate reconciliation efforts against Fintech Partner ledgers and provide updates on reconciliation efforts.

### 5.   *End Users*

The Trustee and her advisors have had additional meetings and communications with affected end users. The purpose of these meetings and communications has been to further understand the impact to end users and inform end users that the Trustee's top priority continues to be restoring access to end user funds as soon as possible.

### 6.   *Regulatory Counsel*

The Trustee and her advisors have continued to be in communication with Lowenstein Sandler LLP, regulatory counsel to the Debtor and Synapse Brokerage. The purpose of these meetings has been to discuss the relationship between the trusteeship of Synapse and the regulatory history of Synapse Brokerage, including recent communications that Lowenstein Sandler LLP has had with FINRA and SEC staff concerning Synapse Brokerage.

### 7.   *Vendors and Suppliers*

The Trustee continues to receive in-bound communications from creditors with unpaid invoices. The Trustee's advisors are continuing to communicate with certain key vendors to ensure records preservation and plan efficient data transition. She appreciates their cooperation to date and their continued cooperation until all the Debtor's records and information can be properly retained.

### 8.   *Potential Asset Purchasers*

The Trustee continues to receive in-bound inquiries from potential purchasers of assets of the Debtor. Since her engagement of B. Riley, the Trustee and her advisors have been working diligently to identify, collect and assemble information that will be necessary to conduct a sale process for the Debtor's saleable assets.

## II.

## SIGNIFICANT ISSUES

### A.   Proceeds from Sales, Cash Collateral and Wind-Down Budget

The Debtor continues to have no available liquidity and has no arrangement with secured lenders to access cash collateral in the event that the estate obtains funding. The Trustee and her advisors are working to identify sources of funding for the estate and developing a winddown plan that minimizes expenses. As described above, the Trustee's and her advisors have started collecting

1 and assembling information necessary to sell the Debtor's assets and intend to begin a sale process

2 once this preparation process has been completed.

3       **B.**    **Conversion**

4       The Trustee believes this Case should remain in chapter 11 for the time being, and, as

5 of the time of this Report, is not seeking conversion to chapter 7.

6                     **III.**

7       **CONCLUSION AND RECOMMENDATION**

8       The Trustee continues to facilitate the Partner Bank's additional efforts with regard to

9 reconciliation, settlement payments among banks and identifying the sources of any shortfalls.

10 Lineage Bank has engaged as an independent contractor a former Synapse engineer to preserve and

11 make available Synapse records stored on MongoDB for use in further reconciliation efforts. The

12 Trustee and proposed advisors have obtained access and begun to collect key records across other

13 systems, including AWS, Google Workspace / GSuite GitHub and Atlassian. The Trustee has engaged

14 B. Riley as proposed financial advisor to assist with reconciliation efforts, estate administration and a

15 potential asset sale.

16       The Trustee will present the foregoing at the Status Conference scheduled for July 3, 2024, at

17 10:00 a.m. Pacific Time.

18

19

20   DATED: July 2, 2024                     **JELENA MCWILLIAMS**

21                                     **CHAPTER 11 TRUSTEE**

22

23                         By:  */S/ Jelena McWilliams*

24                                Jelena McWilliams

25                                Chapter 11 Trustee

26                         ###

27

28

# Exhibit A

**Lineage Bank Status Update**

Lineage Bank has invested significant resources and effort to work with the Trustee to obtain access to the Synapse ledger information that is essential to advancing the reconciliation process. To assist the Trustee and Partner Banks in recovering and interpreting this data, Lineage recruited and engaged, at its own expense, a former Synapse engineer familiar with Synapse's systems to access the database, assist in explaining existing Synapse database structures and make available all ledger records on a confidential and read-only basis. Given the unprecedented and urgent nature of this project, Lineage has also borne all costs associated with the added infrastructure necessary to transport and store the Synapse data securely.

Following the former Synapse engineer's official engagement on June 24, 2024, the Lineage Bank team has worked nonstop to make critical data from the Synapse database available to the Trustee and Partner Banks for purposes of reconciliation and returning funds to end-users. After working with the Trustee to gain read-only access to certain Synapse databases, Lineage has made substantial progress in preserving transaction information it believes will be useful in reconciling Synapse's ledger with Partner Bank ledgers, including 420 million transactions, 92 million statement links and 42 million nodes (accounts).   Access to this information has allowed Lineage to make progress in generating 14.7 out of 19.2 million May 2024 Statements since June 29, 2024.

Lineage Bank's efforts to obtain and preserve the necessary information to create a comprehensive global reference for the millions of transactions conducted through the Synapse platform are ongoing. Such activities include, but are not limited to, the following:

- Copying April and May Statement data;

- Downloading April Statements;

- Restoring additional database backups for retention and reconciliation purposes; and

- Reviewing additional data backups that may be necessary to accurately reconcile end user accounts.

Lineage will continue to cooperate with the Trustee and the Partner Banks to attempt to restore the FBO funds at Lineage to their rightful owners as soon as possible.

# Exhibit B



**LEGAL DIVISION**
Federal Deposit Insurance Corporation

By Email                                                                    July 2, 2024

Jelena McWilliams
Chapter 11 Trustee
CRAVATH, SWAINE & MOORE LLP
1601 K Street, NW
Washington, DC 2006-1682
jmcwilliams@cravath.com

Re:      Response to Synapse Financial Technologies, Inc. Bankruptcy Trustee Letter

Dear Trustee McWilliams:

Thank you for your June 20th letter in your capacity as bankruptcy trustee for Synapse
Financial Technologies, Inc. (Synapse), requesting our assistance in responding to consumer
inquiries and otherwise educating and assisting consumers with respect to insured
depository institutions that the FDIC supervises.  The bankruptcy of Synapse, a non-bank
firm, has resulted in severe hardship for consumers, and the stories of consumers affected by
its failure are deeply troubling.

The FDIC and other federal banking agencies are strongly encouraging the banks involved in
this matter to work with you and Synapse's fintech partners to help address the evident
consumer harm arising from Synapse's bankruptcy.  Indeed, as you explain in your letter, one
of the banks is Lineage Bank, which is an FDIC-supervised institution.  As its federal regulator,
the FDIC has been in close contact with Lineage Bank.

As reported through the bankruptcy process, Lineage Bank has returned most of the Synapse-
related demand deposit account funds that it holds.  Unfortunately, a large majority of funds
are in "for the benefit of" (FBO) accounts, where a lack of adequate record keeping and
inconsistencies in records held by Synapse has created challenges in identifying the owners
of these funds. The Synapse bankruptcy highlights the potential consumer risk present when
money is not directly deposited with a federally-insured bank or credit union, and the
bankruptcy process may take some time.



In the meantime, the FDIC is ensuring that agency resources are available to help consumers. The agency has in place the National Center for Consumer and Depositor Assistance (NCDA). This organization is available to answer questions regarding deposit insurance coverage and to help consumers resolve a range of complaints they may have with specific banks.  To date, the NCDA has responded to over 1,000 complaints and inquiries since Synapse-related fintech consumers became unable to access to their funds.  Consumers can find more information on how to contact the FDIC at https://www.fdic.gov/resources/consumers/index.html, or can call 877-ASK-FDIC.

In conclusion, we will continue to work with Lineage Bank, the other federal banking agencies, and you to address consumer harm.


Sincerely,




Harrel M. Pettway
General Counsel

# Exhibit C

**Office of the Comptroller of the Currency**

Washington, DC 20219

***By Email***

July 2, 2024

Jelena McWilliams
CRAVATH, SWAINE & MOORE LLP
Washington, D.C.
jmcwilliams@cravath.com

Re:    Request for Agency Resources to Assist End-Users Whose Funds Were Affected
by the Synapse Financial Technologies, Inc. Bankruptcy

Dear Ms. McWilliams:

Thank you for your June 20, 2024 letter to Acting Comptroller of the Currency Michael J. Hsu
concerning the Chapter 11 bankruptcy of Synapse Financial Technologies, Inc. ("Synapse"). In
your capacity as the bankruptcy trustee for Synapse, you have requested that the Office of the
Comptroller of the Currency ("OCC") and other federal banking and securities regulators assist
consumers whose access to funds has been affected by the bankruptcy. As described in your
letter, Synapse acted as an intermediary between approximately one hundred financial
technology platforms ("Fintechs") and four banks, which were holding funds belonging to the
Fintechs' respective customers at the time of the bankruptcy filing. As a result of the filing, the
Fintech customers lost immediate access to their funds and, as your letter notes, many customers
have yet to regain access to their funds.

The OCC is the primary federal banking regulator for two of the four banks that were providing
services to Synapse, AMG National Trust ("AMG") and American Bank, N.A. ("American
Bank"). As the primary regulator, the OCC is responsible for working to ensure that these banks
operate in a safe and sound manner and comply with applicable laws, including laws protecting
consumers and preventing money laundering and other illicit activity. The OCC expects
supervised entities to take all necessary steps to return customer funds consistent with applicable
law.

The OCC understands that both American Bank and AMG have made significant progress in
providing customers with access to their funds since Synapse's bankruptcy filing. As noted in the
Trustee's Second Status Report submitted to U.S. Bankruptcy Judge Martin R. Barash on June
13, 2024, American Bank holds approximately $43,000 related to a single Fintech. The bank has
separately informed the OCC that these funds belong to a single customer and that the bank is
working to distribute them. As for AMG, the OCC understands that the bank informed the

1

Trustee on June 20 that, as of that date, AMG's reconciliation and disbursement efforts had resulted in over $99 million having been returned to over 31,000 Fintech customers, with about $11 million remaining to be disbursed. As of July 1, the OCC understands that AMG has now disbursed approximately $100.8 million and has approximately $9.5 million left to disburse. As part of its supervisory responsibilities, the OCC is monitoring and will continue to monitor AMG's and American Bank's progress in returning all customer funds affected by the bankruptcy.

To assist customers of OCC-supervised institutions, the OCC operates a Customer Assistance Group. A customer may call the OCC Customer Assistance Group Monday through Friday from 7:00 a.m. to 7:00 p.m. CT at (800) 613-6743. Customers who are deaf, hard of hearing, or who have a speech disability, may dial 7-1-1 to access telecommunications relay services. Customers of OCC-supervised institutions who are experiencing problems accessing their funds can also file a complaint using, among other options, an online complaint form available at https://www.helpwithmybank.gov/file-a-complaint/index-file-a-complaint.html.

To reiterate, the OCC will continue to monitor AMG's and American Bank's progress and encourage swift and accurate action to return all customer funds in a timely manner.

Sincerely,

Theodore J. Dowd II
Acting Senior Deputy Comptroller and Chief Counsel

cc:   Hon. Martin R. Barash, U.S. Bankruptcy Judge
      Caroline Shinkle (cshinkle@cravath.com)
      Will Giles (wgiles@cravath.com)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*): _____
CHAPTER 11 TRUSTEE'S FOURTH STATUS REPORT _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/2/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian    raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com
Ron Bender    rb@lnbyg.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Rudy J Cerone    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz    schenetz@perkinscoie.com,
docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson    russell.clementson@usdoj.gov
Andrew Michael Cummings    andrew.cummings@hklaw.com,
philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag    mfarag@gibsondunn.com
Paul R. Glassman    pglassman@stradlinglaw.com
Nicholas Christian Glenos    cglenos@bradley.com
Michael H Goldstein    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried    mgottfried@elkinskalt.com,
cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner    sgubner@bg.law, ecf@bg.law
Ralph P Guenther    rguenther@guentherlawgroup.com
Robert T. Honeywell    robert.honeywell@klgates.com
Lance N Jurich    ljurich@loeb.com,
pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant    wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)    jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian    kjm@lnbyg.com
Fred Neufeld    fneufeld@stradlinglaw.com, tingman@sycr.com
David M Poitras    dpoitras@bg.law
Paul M Rosenblatt    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com
Claire K Wu    claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young    bry@lnbyg.com, bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 7/2/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 7/2/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/2/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**