1  fJELENA MCWILLIAMS
   1601 K STREET NW
2  WASHINGTON, D.C. 2006-1682
   jmcwilliams@cravath.com
3  Tel. 1-202-869-7710

4

5

6

7

8

9

10              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11              **SAN FERNANDO VALLEY DIVISION**

12  In re                                    | Case No. 1:24-bk-10646-MB

13  SYNAPSE  FINANCIAL  TECHNOLOGIES,         | Chapter 11
    INC.,
14                                            | **SUPPLEMENT TO THE CHAPTER 11**
                                             | **TRUSTEE'S FOURTH STATUS REPORT**
15
            Debtor.                           | DATE:  July 3, 2024
16                                            | TIME:   10:00 a.m. PT
                                             | PLACE:  303
17                                           | 21041 Burbank Boulevard
                                             | Woodland Hills, CA 91367 and
18                                           | Via ZoomGov
19

20

21

22

23

24

25

26

27

28

TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

I, Jelena McWilliams (the "Trustee"), the duly appointed, qualified and acting chapter 11 trustee for the estate of Debtor Synapse Financial Technologies, Inc. ("Synapse" or the "Debtor"), hereby supplement my fourth "Chapter 11 Trustee's Status Report" (the "Report") to inform the Court of an important and extremely time-sensitive development with respect to a dispute with MongoDB, Inc. ("MongoDB") and of a letter I received from the Federal Reserve after the Report was submitted last night, and represent as follows:

A.    **MongoDB Dispute**

On June 18, 2024, counsel for MongoDB, Inc. ("MongoDB") informed the Trustee's counsel by email that, effective June 30, 2024, MongoDB would be terminating services on all pending Synapse subscriptions.  After receiving this notice, the Trustee, her advisors and Lineage Bank began coordinating to take action to back up copies of Synapse data, records and information from MongoDB's servers.  The Trustee's advisors worked directly with Lineage Bank employees and independent contractors to begin preserving data, information and records necessary for the reconciliation process underway with the Debtor's Partner Banks.  By June 26, it became apparent that it would not be feasible to remove all data from MongoDB systems in a way that would ensure that all data, records and information could be preserved properly by June 30.  The Trustee's counsel then contacted MongoDB's counsel to discuss terms pursuant to which access to MongoDB could be extended.  The Trustee's counsel and MongoDB's counsel discussed the framework of an agreement between June 26 and June 28 that would ensure the Trustee's continued access to MongoDB's services until at least July 7, 2024.  However, MongoDB's counsel would not provide assurances that records, data and information would be retained after July 7, 2024 in the event that the Trustee and her advisors were unable to properly migrate all data off of MongoDB by that date.

Recognizing that irreparable harm would be caused to the Debtor's estate, its creditors and end users of the Synapse platform in the event that records, data and information necessary for the reconciliation process were deleted or altered by MongoDB in the event of a termination of services, on July 1, 2024 the Trustee's counsel sent the letter (the "Demand Letter") attached hereto as Exhibit A

1   demanding that MongoDB forbear from removing the Trustee's access to Synapse's MongoDB

2   account and demanding that MongoDB forbear from deleting or altering any information or records

3   until they have been properly preserved.  As stated in the Demand Letter, the Trustee and her counsel

4   believe that it would violate the automatic stay for MongoDB to interfere with the Debtor's property

5   to delete or alter the debtor's records in connection with any termination of service until the Trustee

6   is able to ensure all records, data and information are properly migrated from MongoDB's servers.

7   This migration process is not simple due to the extremely large volume of data in question and the

8   lack of former Debtor employees to advise the Trustee in this process.

9        The Trustee's counsel and financial advisors spoke with Mongo DB's counsel on July 1, 2024

10  to discuss the Demand Letter. During that call, MongoDB's counsel expressed disagreement with the

11  Trustee's position that terminating service and deleting Synapse's records, data and information would

12  violate the automatic stay, and that while MongoDB would not terminate service before July 7, 2024,

13  the Trustee and her advisors should move as quickly as they could to remove anything needed from

14  MongoDB's system.  The Trustee's counsel and advisors stated that they would work quickly to

15  migrate information from MongoDB's system, but they reiterated that it was extremely important to

16  Synapse's estate and end users of Synapse's platform that no data be destroyed until the Trustee's

17  advisors could be certain that all information and records were properly migrated.

18       MongoDB then formally responded to the Demand Letter on July 2, 2024, at approximately

19  5:32 p.m. Pacific Time, in the letter attached hereto as Exhibit B (the "MongoDB Letter").  The

20  MongoDB Letter rejected the Trustee's demand to ensure continued access would be available to

21  MongoDB's Dashboard.  The Trustee and her counsel disagree with numerous factual allegations,

22  characterizations and legal conclusions asserted in the MongoDB Letter.  Contrary to MongoDB's

23  suggestions in their letter, the Trustee, her advisors and third parties, including Lineage Bank, have

24  expended substantial time and effort to develop and implement a plan to migrate data, records and

25  information from MongoDB and began this process immediately after receiving notice that MongoDB

26  intended to terminate service.

27       After receiving the MongoDB Letter, the Trustee's advisors considered available options and

28  paths forward to ensure that access to important Synapse records, data and information are not lost.

During the course of discussions, they decided to file the Fourth Status Report at approximately 6:41 p.m. Pacific Time [Dkt. No. 300], while continuing to evaluate a course of action with respect to this matter.  After further discussions, the Trustee and her advisors decided to inform the court of this matter in a supplement to the Trustee's Fourth Status Report.

Although the Trustee will continue to work with her advisors and third parties (including Lineage Bank) to properly and safely migrate records, data and information from MongoDB's system, it is not certain that they will be successful in migrating all such records, data and information by the end of the day on July 7, 2024.  Therefore, the Trustee determined to file this supplement to her Fourth Status Report and wishes to inform the court that, absent reconsideration by MongoDB of the position taken in the MongoDB Letter in the very near term, the Trustee's counsel intends to file an "Emergency Motion to Enforce the Automatic Stay" to ensure that records, data and information that are of paramount importance to Synapse's reconciliation process with its Partner Banks are not destroyed or altered by MongoDB.

Pending any developments before or during the Status Conference, the Trustee's counsel will coordinate with the Court to determine scheduling for any motion filed on emergency notice

**B.**    **Federal Reserve Letter**

On June 20, 2024, the Trustee sent a letter to the Federal Reserve, the FDIC, the OCC, FINRA and the SEC to request that these agencies make available to affected end users resources from their respective consumer protection divisions. On July 2, 2024, the Federal Reserve sent a letter of response notifying the Trustee that the agency is monitoring the situation and continuing to intake end user inquiries. The letter is attached hereto as Exhibit C.

DATED: July 3, 2024

**JELENA MCWILLIAMS**
**CHAPTER 11 TRUSTEE**

By: _/S/ Jelena McWilliams_
Jelena McWilliams
Chapter 11 Trustee

###

# Exhibit A

# CRAVATH

Alexander Gerten
agerten@cravath.com
T+1-212-474-1861
New York

July 1, 2024

<u>In re Synapse Financial Technologies, Inc., Case No. 1:24-bk-10646 (Bankr. C.D. Cal.)</u>

Dear Mr. Schnitzer:

We write on behalf of Jelena McWilliams (the "<u>Trustee</u>"), the duly appointed chapter 11 trustee for the estate of Synapse Financial Technologies, Inc. (the "<u>Debtor</u>") in the above-referenced bankruptcy proceedings, concerning recent statements you have made about MongoDB's intention to terminate further services on the Debtors' subscriptions as a result of unpaid post-petition services.

MongoDB's systems contain business records and information that are property of the Debtor's estate, including records and information regarding the Debtor's historical transactions with its partner banks. There are records and information on MongoDB's systems not currently found in any other location or medium. Destruction or alteration of these records as a result of any termination of service by MongoDB would cause irreparable harm to the Debtor's estate and its creditors, including by impeding (or even making impossible) reconciliation of the Debtor's ledgers with the ledgers of its partner banks. Completion of this ledger reconciliation process is necessary (i) to enable partner banks to accurately distribute over $100 million they hold for the benefit of end users of the Debtor's products and (ii) to enable the Trustee and partner banks to identify the origin of a $65 - $96 million shortfall in partner bank accounts for the benefit of such end users.

Any entity in possession of property of the Debtor's estate must turn over such property to the Trustee pursuant to Section 542(a) of title 11 of the U.S. Code (the "<u>Bankruptcy Code</u>"). Furthermore, an automatic stay of acts to exercise control over property of the Debtor's estate was entered upon the filing of the Debtor's petition for relief under chapter 11 of the Bankruptcy Code on April 22, 2024 with the United States Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>"). 11 U.S.C. § 362(a)(3). No order lifting or modifying the automatic stay with respect to the Debtor's records and information contained on MongoDB's systems has been entered by the Bankruptcy Court. Destruction, alteration or restriction of the Trustee's access to the Debtor's property would constitute a violation of the automatic stay and Section 542(a) of the Bankruptcy Code. Violations of the automatic stay constitute contempt of the Bankruptcy Court and may result in imposition of damages by the Bankruptcy Court pursuant to Section 105(a) of the Bankruptcy Code.

We request confirmation by 5:00 pm ET on July 2, 2024, that MongoDB will preserve the Trustee's access to the Debtor's MongoDB account and will not destroy or alter any of the

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
CityPoint
One Ropemaker Street
London EC2Y 9HR
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006-1682
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

Debtor's records or information until the Trustee has been able to preserve all such records and information. If we do not receive such confirmation by that time, we intend to seek relief from the Bankruptcy Court to enforce the automatic stay and turnover provisions of the Bankruptcy Code.

Very truly yours,

Alexander Gorten

Edward Schnitzer
Womble Bond Dickinson LLP
950 Third Avenue
Suite 2400
New York, NY 10022
Edward.Schnitzer@wbd-us.com

BY EMAIL

2

# Exhibit B

womblebonddickinson.com

**WOMBLE
BOND
DICKINSON**

**July 2, 2024**

Womble Bond Dickinson (US) LLP

950 Third Avenue
Suite 2400
New York, NY 10022

t:  332.258.8400
f:  332.258.8949

Chapter 11 Trustee, Synapse Financial Technologies, Inc.
c/o Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Attn: Jelena McWilliams, Jed Zobitz, Alexander Gerten, Benjamin
Gruenstein, Grace Mooney, Paul Zumbro
jmcwilliams@cravath.com; jzobitz@cravath.com; agerten@cravath.com;
bgruenstein@cravath.com; gmooney@cravath.com;
pzumbro@cravath.com

Edward Schnitzer
Partner
Direct Dial: 332-258-8495
E-mail: Edward.Schnitzer@wbd-us.com

          Re:  In re Synapse Financial Technologies, Inc., Case NO.
          24-10646

Dear Chapter 11 Trustee's Counsel:

    We write on behalf of MongoDB, Inc. ("**MongoDB**"), a creditor of Synapse Financial
Technologies, Inc. ("**SFT**").  SFT is a self-serve Atlas customer of MongoDB.  We are in receipt
of your July 1, 2024 letter (the "**Demand Letter**").  Despite having numerous weeks to export[1]
the data in the MongoDB account but failing to do so, you demand that MongoDB "preserve the
Trustee's access to the Debtor's MongoDB account … until the Trustee has been able to preserve
all such records and information."  As such open-ended request is unreasonable and not supported
by any provision of the Bankruptcy Code, it is rejected.  Nonetheless, and as was discussed on July
1, 2024, MongoDB agreed to keep access open until July 7th and will honor its agreement,
notwithstanding the Trustee's actions.  As the Demand Letter curiously failed to include the
historical background between the parties, such information will be provided below in order to
provide the complete narrative.

**I.    Background**

    MongoDB has provided Atlas services to SFT since 2019.  MongoDB continued to provide
such services even after SFT filed for bankruptcy on April 22, 2024, and even after SFT stopped
paying for such services.  SFT's last payment was made on May 10, 2024, and it has failed to make
any payment for the last 7 weeks of services.  Due to those non-payments, SFT owes MongoDB
approximately $140,000 for post-petition services that were actual and necessary costs and
expenses of preserving the Debtor's estate.  Despite this sizeable and increasing debt, MongoDB
did not discontinue services when SFT failed to make a required payment on May 15th.  It also did

---

[1] An explanation of how to export the data is contained at mongoexport - MongoDB Database Tools
(www.mongodb.com/docs/database-tools/mongoexport/).  Additionally, an explanation of how to download backup
snapshots is contained at Restore from a Locally-Downloaded Snapshot
(www.mongodb.com/docs/atlas/backup/cloud-backup/restore-from-local-file/) and an explanation of how to export
the data through mongodump is contained at Mongo Dump (https://www.mongodb.com/docs/database-
tools/mongodump/).   The data is about 4.1TB.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law
firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not
responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International)
Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.
WBD (US) 4873-6715-5661v1



Syanpse Financial Technologies, Inc.
Page 2

not discontinue services when SFT failed to make its next required payment the week after May 15th, or the week after that, and so forth, until late June.

### a.  *Trustee Appointment*

After the Chapter 11 Trustee (the "**Trustee**") was appointed on or about May 24, MongoDB's counsel proactively reached out to the Trustee to discuss the services and outstanding sums due.  By email dated May 29, 2024, Trustee's counsel responded:

> We are currently working to obtain funding for the case to allows us to pay these expenses. We are hoping to obtain this funding as quickly as possible and would appreciate if your client could continue service for the time being, as MongoDB's service is essential to allowing us to reconcile accounts and enable locked end-user funds. We would appreciate if you could send your client's invoice to us and make sure copies of future invoices go to Grace (copied) and myself. I am happy to speak if helpful and am available during the 4-5 pm slot tomorrow.

Based on the May 29 email from Trustee's counsel, MongoDB provided its invoices to Trustee's counsel and agreed to continue providing services at the Trustee's request.  Noticeably, the May 29 email did not claim that MongoDB had to provide services or that MongoDB was prohibited by the Bankruptcy Code from discontinuing access.

On May 30, MongoDB sent a copy of the requested unpaid invoice to Trustee's counsel, but no payment was received.  On June 3rd, MongoDB sent a copy of its completed invoice for the month of May to Trustee's counsel, but no payment was received.  In response, Trustee's counsel sent an email on June 5 and requested that MongoDB confirm that it would "continue its services **for the time being.**"  MongoDB responded via email on the same date and confirmed that it would "continue services **for the time being**" and asked for an update about the Trustee's ability to pay. No update was received.

### b.  *June 7 Status Report*

On June 7, the Trustee filed its first status report.  In that report (Dkt No. 254), the Trustee referred to MongoDB as being a critical vendor and that she "implored them to continue to provide services …"  The report had no mention of the automatic stay or the Trustee's alleged belief that MongoDB is captive to the Trustee and cannot shut off service despite being owed significant sums.

In response to the status report, the undersigned emailed Trustee and counsel on June 12, 2024:

> Any update on financing?
>
> We saw the status report and saw the reference to MongoDB as being both cooperative and critical.  While we certainly appreciate the cooperation being

Syanpse Financial Technologies, Inc.
Page 3

noted, MongoDB is uncomfortable continuing to provide services where the risk of being unpaid for those services is quite high.

The undersigned received no response to his June 12 email.

### c. *June 14 Status Conference*

On June 14, the court held a status conference and at that conference, the Trustee reported that the proceedings may need to be converted to Chapter 7 in the near future.

### d. *June 18 Cessation Notice*

Based on the Trustee's statement concerning conversion to Chapter 7 and the increasing sums being owed and no response to the undersigned's email requesting an update on finance and payment, MongoDB, through counsel, informed the Chapter 11 Trustee:

> In light of (a) the non-payment of $87,902.95 representing ~30 days (non-payments starting May 15th through the most recent non-payment of June 16) of unpaid post-petition services provided by MongoDB, Inc. to Synapse Financial Technologies ("SFT") and (b) no reliable indication that such fees are going to be paid, MongoDB intends to cease providing further services on all pending SFT subscriptions effective June 30, 2024. For ease of reference, the unpaid invoices are attached to this email. Furthermore, MongoDB will, at the appropriate time, file an administrative expense claim for those unpaid post-petition services. Please contact me if you would like to discuss the pending cessation or payment of the unpaid invoices.

### e. *June 20 Status Report*

On June 20th, the Trustee filed a status report (Dkt No. 287) which, *inter alia*, noted:

> As of the date of this Report, the Trustee and proposed counsel have obtained administrative access to MongoDB from Synapse's former officers. Lineage has offered to engage as an independent contractor, at its own expense, a former Synapse engineer familiar with the MongoDB database to access the database, make available all ledger records on a confidential and read-only basis to all Partner Banks and assist in interpreting ledger data to facilitate further reconciliation. The Trustee believes that this may advance reconciliation efforts and is coordinating with Lineage to this end.

> For certain "critical vendors" such as AWS and MongoDB, which host or provide database services, the Trustee has through proposed counsel has reached out to discuss continued service and options to obtain credentials and access to AWS.



Syanpse Financial Technologies, Inc.
Page 4

The June 20 status report made no mention of the Trustee's claim that MongoDB was prohibited from discontinuing access to its service. Although the status report explained that the Trustee now had administrative access to the MongoDB data, it provided no explanation for why the Trustee had not exported such data, despite it being able to do so.

### f.  June 21 Status Conference

The bankruptcy court held a status conference on June 21st. At that conference, the Trustee confirmed that MongoDB would be discontinuing access that end of the month. The Trustee also indicated that she would transfer the data and they have employed a former employee familiar with MongoDB who would handle the transfer. At no time at that conference did the Trustee mention her belief that MongoDB was required to indefinitely provide services on a *pro bono* basis.

### g.  One Week Extension Request and Email Agreement

On June 26, Trustee counsel contacted the undersigned to discuss the discontinuation of services that was referenced in the June 18 Email. In that call, Trustee counsel requested that MongoDB keep the services live for another week and stated that Trustee would agree to a stipulation providing for, *inter alia*, an allowed administrative expense claim for the value of the unpaid post-petition services that MongoDB had provided to the Debtor and Trustee. Trustee counsel stated that he understood that MongoDB is not a "charity", but that the Trustee needed another week to make a copy of the data. Trustee's counsel never mentioned their new position that MongoDB has to provide the services indefinitely on a charitable basis. Despite the large sums owed, MongoDB agreed to extend the service for an additional week, at the Trustee's request, in return for a stipulation allowing MongoDB's administrative expense claim.

A draft of the agreement reached between the undersigned and Trustee's counsel was set forth in the undersigned's June 27 email which stated:

- The Chapter 11 Trustee has requested that MongoDB provide a one-week extension of its services so as to continue providing live access through July 7th, with such services being discontinued as of July 8th. MongoDB is willing to grant that extension request subject to the following:

    - The Chapter 11 Trustee agrees that MongoDB's post-petition services were actual and necessary costs and expenses of preserving the Debtor's estate and MongoDB is entitled to an allowed administrative expense claim against the estate in the full amount of all sums due and owing to MongoDB for the provision of post-petition services to the Debtor through July 7th, with no offset or reduction in any kind. Such amount is approximately $100,000.

    - The Chapter 11 Trustee and MongoDB will enter into a stipulation that provides MongoDB with an allowed administrative expense claim against



the estate in the full amount of all sums due and owing to MongoDB for the provision of post-petition services to the Debtor.

- In addition to such stipulation providing the allowance of such claim, the stipulation will provide that:

  - such services and sums due arise from, and were, the actual and necessary costs and expenses of preserving the estate;

  - such allowed administrative expense claim is not subject to offset or reduction of any kind; and

  - such allowed administrative expense claim will be paid on or before the earlier of:

    o a date agreed upon by the Chapter 11 Trustee and MongoDB;

    o the date by which other administrative expense claims are paid under any plan confirmed in this bankruptcy case;

    o the date any other allowed administrative expense claim is paid in this bankruptcy case; or

    o the closing date of a sale of substantially all of the Debtor's assets.

- The Chapter 11 trustee will provide an initial draft of this stipulation no later than June 29, 2024 for MongoDB's review and comment.

- The Chapter 11 Trustee understands and agrees that MongoDB is under no obligation to provide such continued services.

- While the Chapter 11 Trustee and Mongo will work to incorporate this agreement into a stipulation, the Chapter 11 Trustee agrees that this email agreement is enforceable.

On Friday June 28th, Trustee's counsel responded to the agreement with "Ed, thanks for sending this and sorry for not responding until now. I am speaking with some key technical people today and will revert." Noticeably, the email made no reference to the Trustee's new belief that MongoDB was prohibited from discontinuing service until the Trustee said so. On the night of June 28, Trustee counsel called the undersigned to briefly discuss the email agreement terms and to inquire if MongoDB could "store" the data after the services were shut down. During that call,



Syanpse Financial Technologies, Inc.
Page 6

Trustee's counsel once again made no mention of the Trustee's belief that the Bankruptcy Code prevented MongoDB from discontinuing its services.

### h. July 1 Demand Letter

On July 1, the undersigned emailed Trustee and counsel seeking an update on the one week extension agreement. In response, the undersigned received the Demand Letter in which the Trustee asserted the brand-new claim that the automatic stay, coupled with the turnover provision, prevented MongoDB from ever discontinuing service, despite the Trustee and MongoDB having agreed otherwise. Noticeably, the Demand Letter made no mention of the agreement reached between MongoDB and the Trustee for the one-week extension, or the numerous phones calls between the undersigned and Trustee's counsel.

### i. July 1 Telephonic Conference

Following receipt of the unjustified Demand Letter, the undersigned requested a conference call with the Trustee and counsel. In that email request, undersigned also informed Trustee:

> Also, please see the following link mongoexport - MongoDB Database Tools[2] which explains how you can export the data. Please provide this to your "former Synapse engineer" that was referenced in your last status report (or any other employees that the Trustee is employing) in case he/she is unaware of how simple it is for him/her to expert the data.

On the evening of July 1, the undersigned participated in a telephonic conference with Trustee's counsel and Trustee's financial advisors at B.Riley. On that call, undersigned counsel reiterated (a) how easy it is for the Trustee and her professionals to export the data that was the focus of the Demand Letter, (b) how such export should have been done in the 5+ weeks since the Trustee was appointed, (c) how the data could be used on other platforms once exported, and (d) how the data size was not an impediment to exporting in light of the advanced computers and internet speed. Undersigned counsel reiterated that they would maintain the Atlas service through July 7, which was more than ample time for the Trustee and her professionals to export the data.

### II.    Response to the Demand Letter

The Debtor has had unlimited access to its data since the inception of the relationship and that access continues even today. The Trustee has had an unlimited access to its data since her appointment on or about May 24th, with such access still available today. Despite having such access for over 5 weeks, the Trustee has apparently chosen not to export, download or copy the Debtor's data, instead assuming that MongoDB would simply keep the access open and incur $10,000-$12,000/week on a "charity" basis. This failure to download the data continued even after MongoDB gave the Trustee twelve (12) days notice that it would discontinue access on June

---

[2] https://www.mongodb.com/docs/database-tools/mongoexport/

Syanpse Financial Technologies, Inc.
Page 7

30th and even after the Trustee/estate had retained the services of a former employee of the Debtor specifically for this purpose. Instead of acting promptly in accordance with her fiduciary duties, the Trustee is instead trying to place the blame on MongoDB and require MongoDB to provide services for free. The Bankruptcy Code does not support such a request.

The Trustee's citation to section 542 of the Bankruptcy Code fails because the business records and information have already been turned over to the Trustee. The Trustee has access to such data and should have exported it upon her appointment, within the numerous weeks since her appointment, or after the Trustee (or a bank at your direction) retained an employee for specifically this purpose. Nowhere does section 542 of the Bankruptcy Code (or section 362) require a third party to house, at their expense, business records when the Trustee could easily take possession of such records. The Trustee's citation to section 362 of the Bankruptcy Code fares no better as the Trustee has access to such property but is refusing, for no justifiable reason, to export the data (a simple task) and store it herself. In fact, by failing to export, download or copy such data, the Trustee is needlessly increasing the administrative costs to the estate.

In sum, the demand is rejected. Nonetheless, MongoDB agreed to keep access open until July 7th and will honor its agreement, notwithstanding the Trustee's actions.

Very truly yours,

Edward Schnitzer

# Exhibit C



### BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
#### WASHINGTON, D. C. 20551

MARK E. VAN DER WEIDE
GENERAL COUNSEL

July 2, 2024

Jelena McWilliams
Synapse Trustee
Cravath, Swaine & Moore LLP
1601 K Street NW
Washington, D.C.  20006

Dear Trustee McWilliams:

Thank you for your letter of June 20, 2024, to Chair Powell, requesting, in your capacity as the Chapter 11 bankruptcy trustee for Synapse Financial Technologies, Inc. (Synapse), that the Federal Reserve Board and other banking and securities regulators assist consumers whose access to funds has been affected by the Synapse bankruptcy.

The Federal Reserve would like to express sincere concern for the consumers harmed by the Synapse bankruptcy.  We strongly encourage all relevant parties involved to take the actions necessary to return money to consumers as soon as possible.

As noted in your letter, Synapse-related funds are held in accounts at multiple banks that partnered with Synapse, often in accounts held for the benefit of multiple users.  As a result, identifying exact user balances is a complex process, which involves multiple parties.  The Federal Reserve is the primary federal regulator for Evolve Bank & Trust (Evolve), West Memphis, Arkansas, which is one of the banks that partnered with Synapse.  In that role, we are responsible for working to ensure that the bank operates in a safe and sound manner and complies with applicable laws, including laws protecting consumers and preventing money laundering and other illicit activity.  The Federal Reserve expects supervised entities to take all necessary steps to return customer funds consistent with applicable law.  As part of its supervisory responsibilities, the Federal Reserve will continue to monitor Evolve's progress in returning all customer funds affected by Synapse's bankruptcy.

The Federal Reserve has dedicated resources for assisting consumers who are experiencing problems with a Federal Reserve supervised institution.  Specifically, we operate Federal Reserve Consumer Help (FRCH).  The FRCH website (www.federalreserveconsumerhelp.gov) specifically encourages consumers who are experiencing issues with accessing funds to file a complaint.  Consumers can file complaints

through the FRCH website by utilizing the online form; by fax (1-877-888-2520); or by mail (P.O. Box 1200, Minneapolis, MN  55480).  A consumer may also contact FRCH directly at 1-888-851-1920 if they need assistance or have questions about filing a complaint.  Federal Reserve staff carefully review the consumer complaints and may contact a consumer to request information to complete its investigation of the complaint.

We reiterate our strong encouragement for all of the financial institutions and other parties involved to coordinate where needed and take the actions necessary to ensure consumers receive their money as soon as possible.

Sincerely,

Mark E. Van Der Weide

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*): _____
SUPPLEMENT TO CHAPTER 11 TRUSTEE'S FOURTH STATUS REPORT _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/3/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian    raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com
Ron Bender    rb@lnbyg.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Rudy J Cerone    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz    schenetz@perkinscoie.com,
docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-
8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson    russell.clementson@usdoj.gov
Andrew Michael Cummings    andrew.cummings@hklaw.com,
philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag    mfarag@gibsondunn.com
Paul R. Glassman    pglassman@stradlinglaw.com
Nicholas Christian Glenos    cglenos@bradley.com
Michael H Goldstein    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried    mgottfried@elkinskalt.com,
cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner    sgubner@bg.law, ecf@bg.law
Ralph P Guenther    rguenther@guentherlawgroup.com
Robert T. Honeywell    robert.honeywell@klgates.com
Lance N Jurich    ljurich@loeb.com,
pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant    wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)    jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian    kjm@lnbyg.com
Fred Neufeld    fneufeld@stradlinglaw.com, tingman@sycr.com
David M Poitras    dpoitras@bg.law
Paul M Rosenblatt    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com
Claire K Wu    claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young    bry@lnbyg.com, bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 7/3/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 7/3/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/3/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
|----------|----------------------|----------------------------|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**