JELENA MCWILLIAMS
1601 K STREET NW
WASHINGTON, D.C. 2006-1682
jmcwilliams@cravath.com
Tel. 1-202-869-7710

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>　　Debtor. | Case No. 1:24-bk-10646-MB<br><br>Chapter 11<br><br>**CHAPTER 11 TRUSTEE'S FIFTH STATUS REPORT**<br><br>DATE:  July 17, 2024<br>TIME:   10:00 a.m. PT<br>PLACE:  303<br>21041 Burbank Boulevard<br>Woodland Hills, CA 91367 and<br>Via ZoomGov |

TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

I, Jelena McWilliams (the "Trustee"), the duly appointed, qualified and acting chapter 11 trustee for the estate of Debtor Synapse Financial Technologies, Inc. ("Synapse" or the "Debtor"), hereby submit my fourth "Chapter 11 Trustee's Status Report" (the "Report"), and represent as follows:

## I.

## **TIMELINE OF EVENTS**

### A. **Filing of the Chapter 11 Case and Appointment of Chapter 11 Trustee**

On April 22, 2024, the Debtor filed a voluntary chapter 11 petition, schedules and statement of financial affairs.

On May 24, 2024, following a hearing, the Court entered an order appointing a chapter 11 trustee (the "Appointment Order"), and Jelena McWilliams was appointed by the U.S. Trustee as the Chapter 11 Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196].

On June 6, 2024, the Trustee filed the "Chapter 11 Trustee's Initial Status Report" (the "Initial Report"), and, on June 7, 2024, the Trustee presented the Initial Report at a Status Conference before the Court. On June 13, 2024, the Trustee filed the "Chapter 11 Trustee's Second Status Report" (the "Second Report"), and, on June 14, 2024, the Trustee presented the Second Report at a Status Conference before the Court. On June 20, 2024, the Trustee filed the "Chapter 11 Trustee's Third Status Report" (the "Third Report"), and, on June 21, 2024, the Trustee presented the Third Report at a Status Conference before the Court. On July 2, 2024, the Trustee filed the "Chapter 11 Trustee's Fourth Status Report" (the "Fourth Report"), and, on July 3, 2024, the Trustee presented the Fourth Report at a Status Conference before the Court. Additional information about the timeline of events in this Case and the Debtor's historical business operations can be found in these previous reports.

### B. **Update on Ledger Reconciliation and Release of End User Funds**

Since the Fourth Report, the Partner Banks have continued reconciliation efforts and to make distributions of reconciled funds. At the time of this Report, these efforts have enabled the partial reconciliation and return of Synapse-related end user accounts and funds, as detailed below.

Additionally, Evolve and Lineage have voluntarily provided their own reports with additional details of their reconciliation efforts and distributions to date, which are attached to this Report as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively.[1]

### 1.   *DDA Reconciliation and Distributions*

Since the Fourth Report, no additional DDA funds have been distributed, as detailed below.

| **DDA Funds Summary**[2] | | | |
|---|---|---|---|
| **Partner Bank** | **Funds Held on May 24, 2024** | **Funds Distributed since May 24, 2024** | **Funds Remaining to be Distributed on July 16, 2024** |
| **American Bank** | N/A | N/A | N/A |
| **AMG National Trust** | N/A | N/A | N/A |
| **Evolve Bank and Trust** | $6,013,000 | $5,369,000 | $644,000 |
| **Lineage Bank** | $388,769.25 | $198,601.85 | $190,167.40 |

Partner Banks have reported the status and issues related to distributions of DDA funds as detailed below.

- Evolve reports that it has not distributed additional DDA funds since the Fourth Report because it has requested additional information to verify balances from each of these 5 Fintech Partners and has not received responses at the time of this Report.

- Lineage has not distributed additional DDA funds, but reports that it is working to distribute approximately $30,000 in additional funds to end users of this Fintech Partner. Additionally, Lineage holds approximately $160,000 DDA funds through as part of a DDA loan program and has determined to validate these funds against the Synapse ledger before making distributions.

- Neither American Bank nor AMG hold any DDA funds for Synapse end users.

The Trustee is not aware of any reported shortfall between cash held in DDAs at the Partner Banks and the amounts owed to DDA end users as shown on the Synapse trial balances. The Trustee believes that Partner Banks should be able to successfully repay the remaining DDA funds in the near future.

---

[1] Note to draft: update per reports received by Banks
[2] Partner Banks have reported certain numbers in approximations to the Trustee.

2. *FBO Account Reconciliation and Distributions*

Since the Fourth Report, an additional $3,355,546.55 in FBO funds has been distributed by AMG; no other FBO funds have been distributed by other Partner Banks, as detailed below.

| **FBO Funds Summary[3]** | | | |
|---|---|---|---|
| **Partner Bank** | **Funds Held on May 24, 2024** | **Funds Distributed since May 24, 2024** | **Funds Remaining to be Distributed on July 16, 2024** |
| **American Bank** | $43,339.67 | $0 | $43,339.67 |
| **AMG National Trust** | $110,290,040.00 | $104,025,366.09 | $6,264,674.00 |
| **Evolve Bank and Trust** | $46,926,558.83 | $0 | $46,926,558.83 |
| **Lineage Bank** | $61,789,889.91 | $0 | $61,789,889.91 |

Partner Banks have reported the status and issues related to distributions of DDA funds as detailed below.

- As of July 16, 2024, American Bank continues to hold FBO funds related to a single Fintech Partner for a single end user. American Bank is in contact with the Fintech Partner and the end user. American Bank is verifying a balance discrepancy between the Fintech and end user's records and anticipates distributing all FBO funds within the next 10 business days.

- As of July 16, 2024, AMG has paid out $104,025,366.09 **(94% of total FBO funds)** for the benefit of over 88,000 end users, either paid directly to end users or to custodial banks for user check payments or operating Fintech Partners' credit to end users. Of the total payments, AMG has paid out 100% of balances (~$10 million) for 6 Fintech Partners and their 70,620 users and has made partial payments (~$94 million) for an additional 9 Fintech Partners and their 17,675 users. AMG has $6,264,674 in FBO funds left to distribute on behalf of 16 Fintech Partners and their 10,320 users (includes Fintech Partners where only partial payments were made and where issues with distributions exist.) For the remaining funds, AMG is awaiting payment instructions to distribute $2,256,972 across 10 fintech platforms to 5,391 users. Four Fintech Partners

---

[3] Partner Banks have reported certain numbers in approximations to the Trustee.

3

have not responded to AMG's recent outreach regarding $46,345 in funds for 267 users. Two Fintech Partners are in communication with AMG, but have not yet provided confirmation of user balances or direction to pay approximately $3.961 million for 4,662 end users. AMG also is working on reprocessing return payments totaling $1,784,700 for 821 end users. AMG also holds approximately $72,000 for unidentified Synapse Brokerage FBO customers and $150,845.19 in unallocated interest associated with Synapse Brokerage sweep network deposits, which was transferred into AMG FBO Accounts on June 7, 2024.

- Evolve and Lineage have both reported that they need to complete additional reconciliation efforts to make distributions of FBO funds.

### 3. *FBO Account Shortfall and Reconciliation Challenges*

As of the time of the Initial Report, reconciliation efforts indicated an estimated shortfall of $85 million between the cash held in FBO Accounts among all Partner Banks and the Synapse trial balance. At the time of the Second Report, the Trustee had been informed by at least one Partner Bank that further reconciliation indicated an approximate shortfall of $65 – $96 million according to reconciliation progress to date. As of the time of this Report, the shortfall estimate continues to be in the range of $65 – $96 million. The range in estimated shortfall is due to there being held at certain Partner Banks approximately $31 million in Synapse-related funds from interest and rebate payments; however, further reconciliation efforts must be completed to determine the extent to which these funds belong to end users.

### C. **Further Reconciliation Efforts**

The Trustee believes two ongoing, parallel efforts are key to facilitate further reconciliation. First, the Trustee and her advisors are working to collect and make available all Synapse ledger records, data, and systems on a confidential and read-only basis to all Partner Banks. As discussed further below, some progress on this front has been made, but there is substantial work to go. Second, the Trustee has encouraged Partner Banks to communicate and engage with Fintech Partners to reconcile individual end user accounts, obtain payment instructions and establish workarounds for other reconciliation and distribution tasks. In the absence of business as usual operations at Synapse,

the Trustee believes that communication and collaboration among all parties in the Synapse ecosystem is the best workaround to progress reconciliation and distribution of end user funds.

On June 26, 2024, the Trustee retained B. Riley Advisory Services ("B. Riley") as proposed financial advisor. Since retaining B. Riley, the Trustee and her advisors have been working diligently to properly preserve and migrate Synapse's information and records, with a focus on information and records that will be important to future reconciliation efforts and potential sale of assets. The Trustee has also engaged technology consulting services of Klouddata, a database technology firm that has worked with B. Riley in the past, to assist in evaluating and implementing the data-related procedures.

At the time of the Third Report, Lineage had engaged as an independent contractor, at its own expense, a former Synapse engineer familiar with the Synapse's database systems to access the database, make available all ledger records on a confidential and read-only basis to all Partner Banks and assist in interpreting ledger data to facilitate further reconciliation. As of the date of this Report, Lineage and the Trustee have worked together to enable Lineage to backup the core Synapse database and restore and validate this copy on an independent MongoDB instance. Lineage has extended read-only access credentials to all Partner Banks so they can view the transaction and money-movement records for additional reconciliation. Lineage, in cooperation with the Trustee and her advisors, has completed the Synapse documentation process to generate nearly 40 million end user monthly account statements for April and May 2024 for use in reconciliation efforts. Lineage is continuing to extract data, make copies, and generate snapshots of point-in-time data to support further reconciliation efforts by the Partner Banks.

The Trustee's advisors are coordinating with Lineage, Evolve, and key vendors to develop an ongoing data retention strategy with a focus on enabling the Partner Bank's further reconciliation. This strategy includes maintaining logs of historical and current activity, extracting and validating key data, arranging for the maintenance of data copies on independent databases and reducing non-core services with existing database providers to reduce costs to the estate.

Since the Third Report, the Trustee and her advisors made significant progress in obtaining critical access to the Debtor's various on-line services, including access to the Debtor's Amazon Web Services account ("AWS"), Slack, Google Workspace/GSuite account, GitHub account, and Atlassian

account from former Synapse officers and employees. The Trustee was informed that these systems contain important process documentation, historical records, and metadata related to Synapse systems and transactions which will be helpful to reconciliation efforts. Trustee and her advisors are actively working to make back-ups of all data records. B. Riley and Klouddata, a Fremont, California based database technology firm assisting the Trustee as a consultant, are managing the process of preserving Synapse data and working with Lineage and Evolve to securely and efficiently obtain the data they are requesting.

The Trustee is continuing to facilitate communication among the Partner Banks and Fintech Partners and other parties in interest to share data, status updates, and resolve questions. The focus areas for ongoing reconciliation efforts are as follows:

- Continue reconciliation of FBO funds held at Evolve and Lineage, with the goal of enabling these banks to make full or partial distributions to end users.
- Continue to facilitate communication among Partner Banks, Fintech Partners and end users to enable to Partner Banks to make distributions and/or reissue failed payments where workarounds are required.
- Reconcile funds from interest payments and reserve accounts to enable Partner Banks to distribute these funds across the estate, Fintech Partners and end users.
- Reconcile unsettled credit and debit card transactions across Partner Banks.
- Reconcile Fintech Partner overdrafts and negative balances to determine funds owned to Partner Banks and/or Synapse estate.

D. **Evolve Data Breach**

As discussed at the Status Conference on July 3, 2024, the Trustee is aware of a recent data breach at Evolve in May 2024. The Trustee continues to be in communication with Evolve, but at this time the bank has not provided information about the impact of the data breach to Synapse end users or Synapse company information beyond their publicly available statements. The Trustee and her advisors are taking additional cybersecurity precautions when sharing records and data with Evolve to balance interests in efficient reconciliation and data security. The Trustee will continue to monitor the situation for new information from Evolve and will take further action as appropriate. In the meantime,

the Trustee urges Fintech Partners and end users of Evolve to take all reasonable data security precautions, especially by following instructions in any direct communications that these parties may have received from Evolve.

### E. Meetings with Parties in Interest

Since July 3, 2024, the Trustee and her advisors have had follow-up meetings and communications with known parties in interest as well as initial meetings and communications with additional constituents.

#### 1. *Bank Partners*

The Trustee and her advisors continue to have open lines of communication with the Partner Banks and their respective counsel, individually and collectively. The purpose of these communications has been to ensure the progress of and resolve open issues and questions related to ongoing reconciliation efforts.

The Trustee and her advisors have had several meetings and communications with executives, counsel and technical leads for Lineage regarding the engagement of a former Synapse engineer, access to Synapse systems, and progress on data extraction, data back-ups and statement generation. The Trustee appreciates the substantial work that Lineage has accomplished to retain Synapse records, make available read-only copies of these records to Partner Banks and advance reconciliation efforts. The Trustee will continue to maintain open lines of communications for approvals, questions, and open issues regarding this effort.

The Trustee and her advisors have had several meetings and communications with executives, counsel and technical leads for Evolve regarding a similar effort to engage former Synapse engineers and extract data. The Trustee's advisors and Evolve are developing a strategy to efficiently extract and securely store necessary data without duplicating costs or efforts.

#### 2. *Debtor's Former Officers, Key Employees and Contractors*

The Trustee and her advisors continue to be in communication with Mr. Pathak, Ms. Guerin, Pam Wismer, an independent contractor from Ascent CFO Solutions who provided part-time CFO services to the Debtor. The purpose of these meetings and communications has been to gain access to and understanding of Synapse systems, obtain key contact information for vendors and former

employees and discuss outstanding questions and issues related to reconciliation efforts and estate administration.

### 3. *Financial Technology Platform Partners*

The Trustee and her advisors have continued to meet and communicate with many of the Fintech Partners of Synapse and their respective counsel, including Changed Inc., Copper, DolarApp, Gig Wage, Grabr, Gravy, IDT, Inter & Co. Payments, Juno, Landa, Latitud, Mercury, Sunny Day Fund, TClub (d/b/a Abound), Yieldstreet and Yotta. The purpose of these meetings and communications has been to connect Fintech Partners with Partner Banks to facilitate reconciliation efforts against Fintech Partner ledgers and provide updates on reconciliation efforts.

### 4. *End Users*

The Trustee and her advisors have had additional meetings and communications with affected end users. The purpose of these meetings and communications has been to further understand the impact to end users, inform end users that the Trustee's top priority continues to be restoring access to end user funds and provide updates on the reconciliation process.

### 5. *Vendors and Suppliers*

The Trustee continues to receive and catalogue in-bound communications from creditors with unpaid invoices. The Trustee's advisors are continuing to communicate with certain key vendors to ensure records preservation and plan efficient data transition. She appreciates their cooperation to date and their continued cooperation until all the Debtor's records and information can be properly retained.

With regard to MongoDB, the data connected to MongoDB Atlas and related administrative expenses, since the date of the last status hearing the Trustee's advisors, B. Riley and database technology consultant Klouddata have had multiple meetings and direct communications with MongoDB's Lead Cloud Technical Account Manager with the objective of safely and significantly reducing the ongoing administrative expense while maintaining the Synapse system and data intact. The Trustee expects to implement the cost reductions as soon as practicable, taking into consideration the requirements and timing of the Partner Banks that have requested access to the data, that are expected to reduce the monthly charges by approximately 75%.

In addition, the Trustee's advisors have identified and implemented other administrative expense reductions.

### 6. *Potential Asset Purchasers and Sale Process*

Since her engagement of B. Riley, the Trustee and her advisors have been working diligently to identify, collect and assemble information that will be necessary to conduct a sale process for the Debtor's saleable assets. The Trustee continues to receive and catalogue in-bound inquiries from potential purchasers of assets of the Debtor. B. Riley is assisting the Trustee and her counsel in preparing an expedited sale procedure motion expected to be filed with the court within the next ten days.

### F. Retention of Professionals

#### 1. *Counsel to the Trustee*

The Trustee intends to file the "Chapter 11 Trustee's Application for Order Authorizing Employment of Cravath, Swaine & Moore LLP as Counsel" which will seek an order of this Court authorizing the employment of Cravath, Swaine & Moore LLP, the firm at which the Trustee is a partner, to act as the Trustee's counsel, effective as of May 24, 2024, the date of appointment. The Trustee will file this Application either before the Status Conference on July 17, 2024, or shortly thereafter.

#### 2. *Local Counsel to the Trustee*

The Trustee intends to file the "Chapter 11 Trustee's Application for Order Authorizing Employment of Keller Benvenutti Kim LLP as Local Counsel" which will seek an order of this Court authorizing the employment of Keller Benvenutti Kim LLP, a California firm, to act as the Trustee's local counsel, effective as of May 24, 2024, the date of appointment. The Trustee will file this Application either before the Status Conference on July 17, 2024, or shortly thereafter.

#### 3. *Financial Advisor to the Trustee*

The Trustee intends to file the "Chapter 11 Trustee's Application for Order Authorizing Employment of B. Riley Advisory Services" which will seek an order of this Court authorizing the employment of B. Riley Advisory Services to act as the Trustee's financial advisor, effective as of

9

June 25, 2024, the first day B. Riley provided services to the Trustee. The Trustee will file this Application either before the Status Conference on July 17, 2024, or shortly thereafter.

## II.

## SIGNIFICANT ISSUES

### A.  Proceeds from Sales, Cash Collateral and Wind-Down Budget

The Debtor continues to have very limited available liquidity and has no current arrangement with secured lenders to access cash collateral in the event that the estate obtains funding. In anticipation of conducting a sale process and developing an plan to fund the estate, the Trustee's advisors have been in discussion with advisors for the secured creditors.

The Trustee and her advisors have set up a fiduciary bank account at an approved depository institution to begin the process of collecting or transferring any cash that can be collected for the estate to an account under the sole control of the Trustee. The Trustee and her advisors are taking steps to minimize estate expenses, such as cancelling non-essential vendor services and transferring assets to more cost-effective accounts. B. Riley is assisting the Trustee and counsel in developing a minimum operating budget based upon the expense reductions and other actions described in this report.

The Trustee and her advisors are working to identify additional sources of funding, in particular the Trustee's and her advisors have started collecting and assembling information necessary to sell the Debtor's assets and intend to begin a sale process once this preparation process has been completed. The Trustee anticipates that a sale of core assets could be completed in the next six weeks.

The Trustee and her advisors have also been investigating prepetition and postpetition transfers of cash by the Debtor to identify funds that may be property of the estate and transfers subject to avoidance.

### B.  Non-Debtor Affiliates

The Trustee and her advisors are investigating and evaluating the Debtor's wholly owned subsidiaries, Synapse Brokerage and Synapse Credit to identify and preserve value for the estate and the best course of action relative to the disposition or wind-down of these regulated entities.

10

**C.  Conversion**

The Trustee believes this Case should remain in chapter 11 for the time being, and, as of the time of this Report, is not seeking conversion to chapter 7.

## III.

## CONCLUSION AND RECOMMENDATION

The Trustee continues to facilitate the Partner Bank's additional efforts with regard to reconciliation, settlement payments among banks and identifying the sources of any shortfalls. The Trustee and her advisors are working with Partner Banks and key vendors to collect Synapse records across platforms used by Synapse. These efforts will facilitate further reconciliation. B. Riley is continuing to develop a strategy and materials to facilitate a potential asset sale.

The Trustee will present the foregoing at the Status Conference scheduled for July 17, 2024, at 10:00 a.m. Pacific Time.

DATED: July 16, 2024

JELENA MCWILLIAMS
CHAPTER 11 TRUSTEE

By: */S/ Jelena McWilliams*
Jelena McWilliams
Chapter 11 Trustee

###

# Exhibit A

**Evolve Bank & Trust: Update on Ledger Reconciliation and Release of End User Funds**

Evolve Bank & Trust ("Evolve" or "Bank") has made significant progress since the Bank's June 20th update with respect to developing and implementing a plan to reconcile Synapse Brokerage LLC ("Synapse Brokerage") end user accounts. This update summarizes the Bank's recent efforts in this regard, as well as next steps that the Bank plans to take to facilitate the distribution of Synapse Brokerage end user funds at Evolve.

I. **Synapse Brokerage Account Reconciliation Plan**

As Evolve has previously explained to the Court, the Bank was not a program bank of Synapse Brokerage. Evolve is holding approximately $46 million in accounts created so that the Bank could continue to perform payment processing activities for Synapse Brokerage end users following their fintech platforms' migration from Evolve to Synapse Brokerage in Fall 2023.

Evolve believes these funds belong to Synapse Brokerage end users, and accordingly seeks to facilitate an accurate and appropriate distribution of these funds to the appropriate recipient(s). As Evolve still has not received an instruction to transfer these funds to Synapse Financial Technologies, Inc. ("Synapse") or Synapse Brokerage, and as Evolve has identified numerous unexplained inaccuracies in the Synapse-generated ledger, Evolve is proceeding with a plan to calculate the actual current balance for Synapse Brokerage end users across the Synapse ecosystem, independent of the ledger generated by Synapse ("Reconciliation Plan").

The Reconciliation Plan will be performed using data obtained from the bankrupt entity, Synapse, with the assistance and oversight of the Trustee. The first step of the plan – which the Bank is currently executing – is to collect all necessary data and process it for analysis ("Data Collection"). Once the Data Collection is complete, the Bank will use the Synapse data as well as transaction data already in the Bank's possession to calculate each Synapse Brokerage end user's true balance.

II. **Current Status of Data Collection**

The Trustee noted in the prior hearing that ensuring Synapse's data is maintained and available for analysis is a high priority. Evolve is in the process of obtaining a copy of the Synapse data for each of the Trustee and Evolve, and will be ensuring the integrity and safety, security and documented chain of custody of the data. Evolve has also retained engineers with specialized expertise to assist in the reconciliation process. Based on whether the process requires such outreach, Evolve may be reaching out to the other Synapse ecosystem banks as well as certain platforms for their transactional data in order to complete the data set.

III. **Next Steps**

The Bank is expediting the implementation and completion of the Reconciliation Plan. However, in light of the project's scope and complexity given the millions of transactions that need to be

included, the Bank expects that completion will take approximately [two months] once the data has been collected, presuming the data is complete.

The Bank is committed to providing periodic updates on Evolve's website to Synapse Brokerage end users and the public on its progress with respect to the Reconciliation Plan. The most recent update, posted on July 12th, can be found at https://www.getevolved.com/about/news/evolve-bank-trust-statement-on-synapse-bankruptcy/.

# Exhibit B

**Lineage Bank, Franklin, Tennessee**
**Status Report to the Trustee**
**July 16, 2024**

The FBO funds held at Lineage Bank ("Lineage") are the subject of Lineage's ongoing reconciliation efforts with the Trustee and other banks. Many end users that were associated with the Synapse platform are still unable to access their funds, and Lineage acknowledges the frustration and hardship this situation has created for many. Lineage is committed to resolving these issues as swiftly and accurately as possible and appreciates this opportunity to update all parties on its data preservation and reconciliation efforts.

### Lineage's Reconciliation Efforts

Despite multiple and substantial complications with reconciliation, Lineage has made significant progress in collecting and preserving Synapse data critical to the reconciliation process. Lineage has collaborated directly with the Trustee and her advisors to recover and preserve the Synapse data, information and records necessary for the reconciliation process. Lineage Bank's efforts to obtain and preserve the necessary information to create a comprehensive global reference for the hundreds of millions of transactions conducted through the Synapse platform are ongoing. As noted in the prior status report, Lineage Bank has preserved transaction information Lineage believes will be useful in reconciling Synapse's ledger with partner bank ledgers, including **420 million** transactions, **92 million** statement links and **42 million** nodes (accounts).

A sampling of Lineage's more recent reconciliation efforts include, but are not limited to, the following:

- Worked with the Trustee and her advisors (including the forensic accounting group B. Riley) on the Synapse data preservation methodology and retention plan.
- Generated **18,374,513** out of **19,882,690** total April Statements, and **15,230,629** out of **19,538,062** total May Statements. Lineage's efforts to generate the remaining April and May statements are ongoing.

- Copied Synapse's MongoDB databases to an independent server and provided Read Only access thereto to the Partner Banks and the Trustee's financial advisors on July 12, 2024.

## Conclusion

Lineage will continue to collaborate with the Trustee and the other Partner Banks to restore the FBO funds at Lineage to their rightful owners as soon as possible.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*): _____
CHAPTER 11 TRUSTEE'S FIFTH STATUS REPORT_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 7/16/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian    raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com;moroberts@ktslaw.com
Ron Bender    rb@lnbyg.com
David A Berkley    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Rudy J Cerone    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz    schenetz@perkinscoie.com, docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson    russell.clementson@usdoj.gov
Andrew Michael Cummings    andrew.cummings@hklaw.com, philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag    mfarag@gibsondunn.com
Paul R. Glassman    pglassman@stradlinglaw.com
Nicholas Christian Glenos    cglenos@bradley.com
Michael H Goldstein    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried    mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner    sgubner@bg.law, ecf@bg.law
Ralph P Guenther    rguenther@guentherlawgroup.com
Robert T. Honeywell    robert.honeywell@klgates.com
Lance N Jurich    ljurich@loeb.com, pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant    wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)    jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian    kjm@lnbyg.com
Fred Neufeld    fneufeld@stradlinglaw.com, tingman@sycr.com
Valerie Bantner Peo    vbantnerpeo@buchalter.com
David M Poitras    dpoitras@bg.law
Paul M Rosenblatt    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com
Claire K Wu    claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young    bry@lnbyg.com, bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 7/16/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 7/16/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/16/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**