JELENA MCWILLIAMS
1601 K STREET NW
WASHINGTON, D.C. 2006-1682
jmcwilliams@cravath.com
Tel. 1-202-869-7710

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re | Case No. 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 |
| | **CHAPTER 11 TRUSTEE'S SEVENTH STATUS REPORT** |
| Debtor. | DATE:  August 15, 2024<br>TIME:   10:00 a.m. PT<br>PLACE:  303<br>21041 Burbank Boulevard<br>Woodland Hills, CA 91367 and<br>Via ZoomGov |

1  TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE,

2  THE OFFICE OF THE UNITED STATES TRUSTEE AND INTERESTED PARTIES:

3  I, Jelena McWilliams (the "Trustee"), the duly appointed, qualified and acting chapter 11

4  trustee for the estate of Debtor Synapse Financial Technologies, Inc. ("Synapse" or the "Debtor"),

5  hereby submit my fourth "Chapter 11 Trustee's Status Report" (the "Report"), and represent as

6  follows:

7  **I.**

8  **TIMELINE OF EVENTS**

9  **A.**    **Filing of the Chapter 11 Case and Appointment of Chapter 11 Trustee**

10  On April 22, 2024, the Debtor filed a voluntary chapter 11 petition, schedules and statement

11  of financial affairs.

12  On May 24, 2024, following a hearing, the Court entered an order appointing a chapter 11

13  trustee (the "Appointment Order"), and Jelena McWilliams was appointed by the U.S. Trustee as the

14  Chapter 11 Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196].

15  On June 6, 2024, the Trustee filed the "Chapter 11 Trustee's Initial Status Report" (the "Initial

16  Report"), and, on June 7, 2024, the Trustee presented the Initial Report at a Status Conference before

17  the Court. On June 13, 2024, the Trustee filed the "Chapter 11 Trustee's Second Status Report" (the

18  "Second Report"), and, on June 14, 2024, the Trustee presented the Second Report at a Status

19  Conference before the Court. On June 20, 2024, the Trustee filed the "Chapter 11 Trustee's Third

20  Status Report" (the "Third Report"), and, on June 21, 2024, the Trustee presented the Third Report at

21  a Status Conference before the Court. On July 2, 2024, the Trustee filed the "Chapter 11 Trustee's

22  Fourth Status Report" (the "Fourth Report"), and, on July 3, 2024, the Trustee presented the Fourth

23  Report at a Status Conference before the Court. On July 16, 2024, the Trustee filed the "Chapter 11

24  Trustee's Fifth Status Report" (the "Fifth Report"), and, on July 17, 2024, the Trustee presented the

25  Fifth Report at a Status Conference before the Court. On July 31, 2024, the Trustee filed the "Chapter

26  11 Trustee's Sixth Status Report" (the "Sixth Report"), and, on August 1, 2024, the Trustee presented

27  the Sixth Report at a Status Conference before the Court. Additional information about the timeline

28

of events in this Case and the Debtor's historical business operations can be found in these previous reports.

**B.    Update on Ledger Reconciliation and Release of End User Funds**

The schedules below summarize the partial distributions made by Partner Banks to Synapse-related end users since May 24, 2024. Since the Sixth Report, dated July 31, 2024, only AMG has made new distributions. At the time of this report, Partner Banks are continuing reconciliation efforts and information outreach with the objective of making additional distributions of reconciled funds to end-users as soon as possible. Additionally, Evolve and Lineage have voluntarily provided their own reports with additional details of their reconciliation efforts and distributions to date, which are attached to this Report as **Exhibit A** and **Exhibit B**, respectively.

**1.    *DDA Reconciliation and Distributions***

Since the Sixth Report, no additional DDA funds have been distributed, as detailed below.

| **DDA Funds Summary**[1] | | | | | |
|---|---|---|---|---|---|
| | **American Bank** | **AMG National Trust** | **Evolve Bank and Trust** | **Lineage Bank** | **Total Funds** |
| **Funds Held on May 24, 2024** | N/A | N/A | $6,013,000 | $388,769 | $6,401,769 |
| **Funds Distributed as of May 24, 2024** | N/A | N/A | $5,369,000 | $198,601 | $5,567,601 |
| **Funds Distributed as of July 16, 2024** | N/A | N/A | $5,369,000 | $198,601 | $5,567,601 |
| **Funds Distributed as of August 14, 2024** | N/A | N/A | $5,369,000 | $198,601 | $5,567,601 |
| **Remaining Funds on August 14, 2024** | N/A | N/A | $644,000 | $190,167 | $834,167 |

Partner Banks have reported the status and issues related to distributions of DDA funds as detailed below.

---

[1] Partner Banks have reported certain numbers in approximations to the Trustee.

- Evolve reports that it has not distributed additional DDA funds since the Sixth Report because the remaining 5 Fintech Partners have not responded to outreach for balance verification and payment instructions: Donut (believed to be out of business), Namebase, Trim, Unest, SeedFi. Evolve is also in awaiting payment instructions to reprocess approximately $800 in returned payments.

- Lineage has not distributed additional DDA funds but reports that it is working to distribute approximately $30,000 in additional funds to end users of one Fintech Partner. Additionally, Lineage holds approximately $160,000 DDA funds as part of a DDA loan program and has determined to validate these funds against the Synapse ledger before making distributions.

- Neither American Bank nor AMG hold any DDA funds for Synapse end users.

The Trustee is not aware of any reported shortfall between cash held in DDAs at the Partner Banks and the amounts owed to DDA end users as shown on the Synapse trial balances. The Trustee believes that Partner Banks should be able to successfully repay the remaining DDA funds in the near future.

### 2. *FBO Account Reconciliation and Distributions*

Since the Sixth Report, an additional $1,044,375 in FBO funds has been distributed by AMG; no other FBO funds have been distributed by other Partner Banks, as detailed below.

| **FBO Funds Summary**[2] | | | | | |
|---|---|---|---|---|---|
| | **American Bank** | **AMG National Trust** | **Evolve Bank and Trust** | **Lineage Bank** | **Total Funds** |
| **Funds Held on May 24, 2024** | $43,339 | $110,290,040 | $46,926,558 | $61,789,889 | $219,049,826 |
| **Funds Distributed since May 24, 2024** | $0 | $104,025,366 | $0 | $0 | $104,025,366 |

---

[2] Partner Banks have reported certain numbers in approximations to the Trustee.

| | | | | | |
|---|---|---|---|---|---|
| **Funds Distributed as of July 16, 2024** | $0 | $105,026,528 | $0 | $0 | $105,026,528 |
| **Funds Distributed since July 31, 2024** | $0 | $106,070,956 | $0 | $0 | $106,070,956 |
| **Remaining Funds on August 14, 2024** | $43,339 | $4,219,083 | $46,926,558 | $61,789,889 | $112,978,869 |

Partner Banks have reported the status and issues related to distributions of DDA funds as detailed below.

- As of August 14, 2024, American Bank holds no more than $42,339.67 of potential commercial end-user funds. American Bank has informed the Trustee that it is investigating the status of these funds and hopes to work with Partner Banks to verify the funds in the near future.

- As of August 14, 2024, AMG has paid out $106,070,956 (96% of total FBO funds) for the benefit of over 89,000 end users, either paid directly to end users or to custodial banks for user check payments or operating Fintech Partners' credit to end users. Of the total payments, AMG has paid out 100% of balances (~$74.4 million) for 10 Fintech Partners and their over 85,000 users and has made partial payments (~$31.6 million) for an additional 11 Fintech Partners and their over 4,000 users. AMG has $4,291,083 in FBO funds left to distribute on behalf of 12 Fintech Partners and their 11,156 users (includes Fintech Partners where only partial payments were made and where issues with distributions exist). For the remaining funds, AMG is awaiting payment instructions to distribute the remaining funds and understands that most Fintech Platforms are actively trying to obtain updated end user payment information, but this has taken longer than expected, especially for end users with small balances. AMG also is working on reprocessing return payments approximating $35,000. AMG also holds

4

approximately $72,000 for unidentified Synapse Brokerage FBO customers and $150,845.19 in unallocated interest associated with Synapse Brokerage sweep network deposits, which was transferred into AMG FBO Accounts on June 7, 2024.

- Evolve and Lineage have both reported that they need additional time to complete their reconciliation efforts to make distributions of FBO funds.

- The aggregate $65-95 million estimated shortfall has not changed since the Sixth Status Report.

C.    **Further Reconciliation Efforts**

1.    *Access and Analysis of Synapse Data*

As discussed below, the Trustee and her advisors have collected and made available all Synapse ledger records, data and systems on a confidential and read-only basis to facilitate reconciliation to the Partner Banks that have requested the Trustee do so.

As discussed in earlier Reports, Lineage and the Trustee and her advisors have closely worked together to provide Lineage requested data from the MongoDB database that has enabled Lineage to process and use the data to generate nearly 40 million end user monthly account statements for April and May 2024 and to reconcile balances. At the time of this Report, the Trustee has coordinated among Lineage to provide Evolve with copies of the data Lineage has been using. Lineage has now extended read-only access credentials to all Partner Banks, who are using these records in ongoing reconciliation efforts. Lineage has informed the Trustee that it is progressing with its reconciliation for the bulk of end-user funds and transactions (approximately $56 million of the total $61 million and approximately 420 million transactions).  Less than 1% of the transactions did not process properly and Lineage intends to investigate and generate all remaining end user statements for use in reconciliation.

As discussed in the Fifth Report, the Trustee and Evolve agreed to an ongoing data transfer procedure that has already started to (i) provide a comprehensive set of Synapse MongoDB data that Evolve requested to assist with its investigation of transaction data and reconciliation efforts and (ii) provide the estate with approximately $100,000 for the purpose of covering direct estate expenses arising in connection with this data transfer process. Due to the large size of the complete MongoDB

data comprised of over 20 clusters, the transfer process is complex and requires literally days of data transfer time over the Internet to Evolve's AWS destination, the Trustee and her Advisors have been consulting together and monitoring the transfer, including continuously throughout the most recent weekend with MongoDB, Evolve and Ankura, that is now assisting Evolve, to deliver a properly compressed and tested standalone copy of the Synapse core database to Evolve and Ankura to use in their reconciliation procedure.

B. Riley is actively reviewing available Synapse system information, documentation and other materials, such as system production and code documentation in Synapse's other repositories which may be helpful in analyzing the Synapse database and expediting reconciliation efforts and for use in understanding the source of purported end used discrepancies and ultimately the reported apparent shortfalls. As soon as relevant documents are identified and reviewed, the Trustee intends to make these available to requesting Partner Banks on a confidential basis for the limited purpose of expediting the reconciliation process to enable the Partner Banks, particularly Lineage and Evolve to approve disbursing funds to end users more quickly.

During the recent period, the Trustee has been advised that due to the bulk nature of FBO transfers between the banks and the difficulty of determining which bank owes which end user ultimately, implementing the disbursement process will require a Partner Bank ecosystem-wide reconciliation of money movements across all Synapse Partner Banks and other financial institutions, including payment processors and the ADMC sweep network. One possible solution to this problem is to facilitate the multi-bank pooling of cash reconciled from all Partner Banks from which the Trustee would supervise the disbursement of verified amounts due to end users would be distributed.

### 2.    *Communications with ADMC*

The Trustee was informed that, sometime in fall 2023, Synapse Brokerage had deployed a sweep network at American Deposit Management Company ("ADMC") for the purpose of increasing the amount of end-user funds available for FDIC deposit insurance and earning interest on such sweep network deposits. Based on conversations with ADMC, the Trustee learned that approximately 19 banks participated in this sweep network ("ADMC Sweep Network Banks") and may have held Synapse-related end-user funds at given times between August 2023 and May 2024. At the Status

Conference on August 1, 2024 and in related communications with the Trustee, an impacted end user explained that Evolve had provided the end user with monthly statements from October and November 2023 and these statements listed other banks as holding their funds; the Trustee knew these banks to be ADMC Sweep Network Banks.

In subsequent discussions with ADMC, the Trustee learned that the ADMC Sweep Network Banks held funds in pooled accounts only titled to ADMC itself. The Trustee understands that the ADMC Sweep Network Banks were aware that they held money for ADMC's clients, such as Synapse, but that these banks did not know who those clients were and did not maintain records relevant to the specific clients or clients' end users. ADMC provided additional monthly records to show the flow of Synapse-related funds within the sweep network from August 2023 to June 2024. These records show that all remaining funds held by the ADMC Sweep Network Banks related to Synapse were withdrawn from such banks by May 14, 2024. In May 2024, the last month in which the ADMC Sweep Network Banks held any Synapse-related funds, the Synapse Brokerage program earned approximately $150,000 in interest from the sweep network, which was distributed to AMG on June 7, 2024. Based on communications with ADMC, the Trustee understands that this interest was to be distributed among Synapse Brokerage, certain Fintech Partners and certain end-users in accordance with agreements among these entities.

Therefore, based on the information to date, the Trustee understands that no Synapse-related funds are held at ADMC or at any of the ADMC Sweep Network Banks and that the ADMC program banks, including those listed on certain end user statements, do not have records specific to Synapse-related funds that would assist with the reconciliation process. The Trustee continues to be in communication with ADMC and will request additional information or assistance as needed to support reconciliation efforts and the return of end user funds.

**3.** *Communications among Partner Banks and with End Users and Fintech Platforms*

The Trustee is continuing to facilitate communication among the Partner Banks and Fintech Partners and other parties in interest to reconcile individual end user accounts, obtain payment instructions, establish workarounds and resolve other reconciliation and distribution questions. Since

the Sixth Report, the Trustee has coordinated data sharing and discussions regarding reconciliation methodologies and findings among Lineage, Evolve, and AMG for the purposes of comparing results, responding to and resolving various procedural and data requests to expedite the reconciliation process.

The Trustee is aware that Partner Banks have had ongoing difficulties obtaining information from several Fintech Partners, which has delayed distributions to certain end users in some instances. The Trustee urges the handful of Fintech Partners that have been unresponsive to outreach from the Partner Banks or that have not provided information to verify end user balances and direct payments to cooperate fully and quickly with the Partner Banks to enable the release of their end users' funds. Additionally, the Trustee has been informed that some end users do not have up-to-date payment information on file with their respective Fintech Partners, which has delayed distributions to these end users.  The Trustee urges all end users to check their information in their Fintech's app or website and provide current bank routing and account numbers to receive payments, or in the alternative, current mailing addresses to receive paper checks.

**D.    Estate Expenses**

At the time of this Report, the Trustee's Advisors, working with MongoDB, have successfully reduced the previous MongoDB monthly running costs of approximately $74,000 by approximately $57,000 or 77%. The Trustee and her advisors are continuing to identify and implement Administrative operating cost reductions.

**E.    Estate Funding**

Since the Sixth Report, the Trustee and her advisors have continued to identify estate receivables and prepayments that could be collected to pay necessary expenses for the reconciliation process and sale efforts.  Since the Sixth Report, the Trustee has collected an additional $5,157 for a total of $82,014 in cash for the estate, consisting of returns of unused portions of retainers and prepayments for services not rendered.  Together with funding received from Evolve to cover certain expenses of the Estate, the Estate has now obtained approximately $182,000 in cash.  The Trustee and her advisors have identified other potential cash assets of the estate and estate receivables and have been in contact with persons holding these funds. The Trustee and her advisors have been in discussion

with the Debtor's secured creditors as to use of this cash collateral to support reconciliation work and cover necessary expenses associated with a sale process. Although the amounts collected to date are not material when compared to the substantial amounts owed to Synapse end users, it is the hope of the Trustee that these funds can be used to facilitate progress in this Case.

**F.    Sale Process**

The Trustee and her advisors have continued to field inbounds from potential purchasers of estate assets and compile materials to facilitate a sale process. The Trustee and her advisors intend to file a bidding procedures motion and formally kick off a sale process for estate assets upon reaching agreement with the Debtor's secured creditors on use of cash collateral that will permit the Trustee to use the Debtor's cash recovered to date to fund expenses it will be necessary to incur for a value-maximizing sale process.

**G.    Meetings with Parties in Interest**

Since July 31, 2024, the Trustee and her advisors have had follow-up meetings and communications with known parties in interest as well as initial meetings and communications with additional constituents.

**1.    *Bank Partners***

The Trustee and her advisors continue to have open lines of communication with the Partner Banks and their respective counsel, individually and collectively. The purpose of these communications has been to ensure the progress of and resolve open issues and questions related to ongoing reconciliation efforts. In particular, the Trustee and her advisors are working closely with executives, counsel and technical leads for Lineage and Evolve regarding data extraction efforts.

**2.    *Debtor's Former Officers, Key Employees and Contractors***

The Trustee has also continued to work with certain former Synapse officers regarding systems and information access, stakeholder contacts and explanations and walkthroughs of operations that the Trustee believes will be helpful to reconciliation and preparing for a sale of Synapse assets.

**3.    *Financial Technology Platform Partners***

The Trustee and her advisors have continued to meet and communicate with many of the Fintech Partners of Synapse and their respective counsel, with a focus on connecting Fintech Partners

with Partner Banks to facilitate reconciliation efforts against Fintech Partner ledgers, review data and documentation supplied by Fintech Partners, and provide updates on reconciliation efforts.

### 4.    *End Users*

The Trustee and her advisors have had additional meetings and communications with affected end users. The purpose of these meetings and communications has been to further understand the impact to end users, inform end users that the Trustee's top priority continues to be restoring access to end user funds and provide updates on the reconciliation process.

### 5.    *Vendors and Suppliers*

The Trustee continues to receive and catalogue in-bound communications from creditors with unpaid invoices. The Trustee's advisors are continuing to communicate with certain key vendors to ensure records preservation and plan efficient data transition. She appreciates their cooperation to date and their continued cooperation until all the Debtor's records and information can be properly retained.

### H.    **Retention of Professionals**

On August 13, 2024, the Trustee filed the "Supplemental Declaration of Jelena McWilliams in Support of Chapter 11 Trustee's Application for Order Authorizing Employment of Cravath, Swaine & Moore LLP as Bankruptcy Counsel." Also on August 13, 2024, Keller Benvenutti Kim LLP ("KBK") filed the "Supplemental Declaration of Jane Kim in Support of Chapter 11 Trustee's Application for Order Authorizing Employment of Keller Benvenutti Kim LLP as Local and Conflicts Counsel." These supplemental declarations set forth the professionals that have worked on this Case and their estimated fees from May 24, 2024 through July 31, 2024. Cravath estimates $1,385,137.00 in professional fees and KBK estimates $17,620.00. The information in the supplemental declarations is provided solely for informational purposes to comply with an informal information request from the United States Trustee and is not an application for interim or final compensation.

After consultation with the UST, the Trustee plans to file in short order a "Notice of No Request for Hearing Regarding the Chapter 11 Trustee's Application for Order Authorizing Employment of GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services as Financial Advisor" alongside a revised order relating to this Application.

The Trustee, Cravath, KBK and B. Riley have agreed with the United States Trustee to extend the objection deadlines for the retention applications for the Trustee's proposed advisors while they continue to provide requested supplemental information.

**I.** **Conversion**

The Trustee believes this Case should remain in chapter 11 for the time being and, as of the time of this Report, is not seeking conversion to chapter 7.

**II.**

**CONCLUSION AND RECOMMENDATION**

The Trustee continues to facilitate the Partner Bank's additional efforts with regard to reconciliation, settlement payments among banks and identifying the sources of any shortfalls. The Trustee and her advisors are working with Partner Banks and key vendors to collect and preserve Synapse records across platforms used by Synapse. These efforts will facilitate further reconciliation. B. Riley is continuing to develop a strategy and materials to facilitate a potential asset sale.

The Trustee will present the foregoing at the Status Conference scheduled for August 15, 2024, at 10:00 a.m. Pacific Time.

DATED: August 14, 2024

**JELENA MCWILLIAMS
CHAPTER 11 TRUSTEE**

By: _/S/ Jelena McWilliams_

Jelena McWilliams
Chapter 11 Trustee

###

11

# Exhibit A

## Evolve Bank & Trust: Update on Ledger Reconciliation and Release of End User Funds

Evolve Bank & Trust ("Evolve" or "Bank") is providing this update to document the Bank's recent progress in performing a reconciliation that, once completed, will enable Evolve to distribute end user funds in its possession, in compliance with applicable law.

### I.    Evolve's Priority is the Accurate Distribution of End User Funds

Every day, Evolve hears from Synapse Brokerage LLC ("Synapse Brokerage") end users seeking access to their funds.  Their stories – shared with the Bank's customer service representatives, social media, government agencies, and the Court – speak to end users' significant distress and frustration with the situation that has unfolded since Synapse Financial Technologies, Inc. ("Synapse") filed for Chapter 11 bankruptcy on April 22nd.  Evolve understands the urgency to distribute end user funds held by the Bank, and is working as quickly as possible, using internal and third-party resources and expertise, to calculate accurate balances and distribute the funds it holds to the correct end users.

### II.    Reconciliation Progress

As explained in our July 31st update, a reconciliation is necessary because Synapse – the technology provider at the center of the Synapse ecosystem – provided inaccurate ledgers that reflected end user balances at Evolve that do not align with the actual flow of funds into and out of the Bank.  Without an accurate ledger, Evolve does not have the two essential pieces of information it needs to distribute funds:

1. Which Synapse Brokerage end users have funds at Evolve?

2. For those Synapse Brokerage end users with funds at Evolve, how much does the Bank owe to each end user?

On May 24th, former FDIC Chairman Jelena McWilliams was appointed as Trustee of Synapse, replacing the Synapse management team responsible for the inaccurate ledgers provided to the Bank.  The appointment of a Trustee has allowed Evolve and other Synapse ecosystem banks access to crucial Synapse information that previously had either been cut off (*e.g.*, statements available from the Synapse Dashboard) or entirely unavailable (*e.g.*, the Synapse MongoDB database), enabling Evolve to move forward with our reconciliation and resolution efforts.

As previously disclosed, Evolve has engaged Ankura Consulting Group, a third-party firm with strong expertise in complex accounting and reconciliation matters, to lead this reconciliation.  An update from Ankura is provided below.  As noted in Ankura's report, data

collection, which has been a monumental undertaking given the size of Synapse's MongoDB database, is nearing completion, and analysis of the data already collected is underway.

For example, since Evolve's last update, the Bank has collected, identified, and begun analyzing the Synapse database showing the migration of approximately $650 million in Synapse Brokerage end users' funds from Evolve to the Synapse Brokerage cash management program in Fall 2023.[1]  This information is critical to tracking the flow of end user funds across the Synapse ecosystem, and to calculating the end user-specific balances at Evolve as a result of the Bank's payment processing activities following migration.[2]  Note that following the migration, Synapse Brokerage end users' accounts at Evolve had a balance of $0, as their funds were transferred to AMG National Trust, a banking services provider to Synapse Brokerage, at Synapse's instruction on end users' behalf.

Evolve is committed to provide updates to the Court and the public as the reconciliation progresses.  The update from Ankura below provides additional information about the current status of this important work.

*     *     *

**<u>Ankura Consulting Group Status Report for Synapse Trustee</u>**
**August 14, 2024**

Ankura was retained on July 29th to assist the Bank with its Data Collection and Reconciliation Plan and initiated its work on July 30th.

As detailed in the Bank's most recent update, the Reconciliation Plan will take account of Synapse Brokerage end-user transactions in and out of Evolve and allow the Bank to determine (1) which Synapse Brokerage end users have funds at Evolve, and (2) the amount of their funds at Evolve.

Per the Bank's prior update, the essential components of this Reconciliation Plan are:

- Collection of Synapse's account and transaction data;

---

[1] Evolve had no role in decisions made by Synapse's fintech platforms to migrate from the Evolve program to the Synapse Brokerage cash management program.

[2] As noted in prior updates, Evolve was not a program bank of Synapse Brokerage, and is holding funds as a result of payment processing activities that the Bank continued to perform for Synapse Brokerage end users following their migration to the Synapse Brokerage cash management program.

- Analysis of this data, along with Evolve's own data, to track the flow of funds into and out of Synapse Brokerage end users' accounts; and

- Calculation of the end-users' actual balances at Evolve.

Per the Bank's most recent update, this Reconciliation Plan is necessary because the ledgers that Synapse provided to Evolve are incorrect.

Ankura has made rapid progress to date.  In the two weeks since being retained, Ankura's work has included but not been limited to:

- Gathering information from Evolve and its personnel about its relationship with Synapse and transactions in support of that relationship;

- Identifying the dozens of Evolve accounts through which Synapse-related transactions were conducted (distinct from end-user accounts that were maintained by Synapse);

- Obtaining access to and analyzing millions of Evolve's transactional records relating to activity in these accounts for the time period at issue (ongoing);

- Developing analytical models to support the Reconciliation Plan (ongoing); and

- Working extensively with a service provider of the Trustee to gain access to dozens of databases maintained by Synapse (ongoing).

As noted in the Bank's prior updates, the Reconciliation Plan involves substantial complexities.  As one example:

- Ankura has been working closely with a service provider of the Trustee, as noted above, to gain access to dozens of databases managed by Synapse, which include the ledger activity and transactional records relating to end-users' accounts (distinct from the Synapse-related omnibus accounts maintained by Evolve).

- Pursuant to a negotiated agreement between Evolve and the Trustee, Ankura began working with the Trustee's service provider on the evening of August 6th to plan and execute the transfer to Ankura of copies of these databases, which represent one component of the Reconciliation Plan and taken together comprise approximately 10 terabytes of Synapse data.

3

- Moreover, Ankura understands no pre-existing Synapse system documentation or "data dictionaries" are available for these databases, which is somewhat akin to not having a table of contents for a set of encyclopedias;

- Ankura and the Trustee's servicer provider have been copying these dozens of databases on a virtually continuous basis since August 7 and as of noon Eastern on August 14, they have successfully copied and transferred 22 of 24 "clusters" of data.

Notwithstanding the complexities involved, Ankura is fully committed to assisting Evolve in expediting the correct disbursement of funds held by Evolve to end users, and will make every effort to do so.  As communicated earlier, the anticipated timeline based on the collection of the necessary data is approximately eight weeks, and Evolve will update that as appropriate.

# Exhibit B

**Lineage Bank**
**Status Update**
**August 14, 2024**

The Synapse-linked FBO funds held at Lineage Bank ("Lineage") are the subject of Lineage's ongoing reconciliation efforts with the Trustee and other Partner Banks. Many end users who were associated with the Synapse Financial Technologies ("Synapse") platform are still unable to access their funds due to the sudden financial collapse of Synapse, and Lineage acknowledges the frustration and hardship this situation has created for many. Lineage remains committed to resolving these issues as swiftly and accurately as possible and submits this Status Report to update all parties on its Synapse-related data preservation and reconciliation efforts.

## Background

Lineage terminated its contract with Synapse in March of 2024, and was winding down its relationship when Synapse filed bankruptcy. Lineage operated primarily as a third-party payment processor for Synapse. Simply put, Lineage originated ACH and wire transfers based on money movement instructions it received from Synapse. Lineage has reconciled the cash that it processed at the direction of Synapse against the Federal Reserve's records. Lineage's cash balance of FBO funds reconciles with the Federal Reserve's records. However, Synapse's final trial balance attributes a materially-different purported FBO account balance to Lineage than the actual cash balance at Lineage that has been verified against the Federal Reserve's records.

The FBO funds at Lineage relate to Synapse's brokerage program and are the subject of Lineage's ongoing reconciliation efforts with the Trustee and other Partner Banks. Due to the issues with Synapse's final trial balance, Lineage has been forced to undertake to reconcile end user accounts and calculate end user balances based on the information that has been made available to it by the Trustee through the bankruptcy process. Lineage engaged, at its own expense, a former Synapse engineer familiar with Synapse's systems to access the Synapse

accounting databases to assist with recovering, preserving and analyzing the Synapse data. Since Lineage first obtained access to Synapse's critical accounting databases, it has worked with great effort to collect and preserve Synapse's available data for the benefit of all affected parties. Unfortunately, this process has been complicated and time-consuming given the significant attention to detail required in these unprecedented circumstances.

## Update on Lineage's Reconciliation Efforts

Despite multiple and substantial complications, some of which have been outlined in previous filings, Lineage continues to make material progress in its reconciliation efforts. Given the magnitude and complexity of the tedious task of analyzing the millions of transactions required for the reconciliation project, there remains substantial work to be done. However, Lineage personnel continue to work tirelessly and remain optimistic they will be able to achieve Lineage's self-imposed goal to begin making distributions of Synapse FBO funds before the end of the month. Lineage will continue to cooperate with the Trustee, the fintech platforms and the other Partner Banks to restore the FBO funds held at Lineage to their rightful owners as soon as possible.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*): _____
CHAPTER 11 TRUSTEE'S SEVENTH STATUS REPORT _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 8/14/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian    raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com;moroberts@ktslaw.com
Ron Bender    rb@lnbyg.com
David A Berkley    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Rudy J Cerone    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz    schenetz@perkinscoie.com,
docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-
8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson    russell.clementson@usdoj.gov
Andrew Michael Cummings    andrew.cummings@hklaw.com,
philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag    mfarag@gibsondunn.com
Paul R. Glassman    pglassman@stradlinglaw.com
Nicholas Christian Glenos    cglenos@bradley.com
Michael H Goldstein    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried    mgottfried@elkinskalt.com,
cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner    sgubner@bg.law, ecf@bg.law
Ralph P Guenther    rguenther@guentherlawgroup.com
Robert T. Honeywell    robert.honeywell@klgates.com
Lance N Jurich    ljurich@loeb.com,
pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant    wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)    jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian    kjm@lnbyg.com
Fred Neufeld    fneufeld@stradlinglaw.com, tingman@sycr.com
Valerie Bantner Peo    vbantnerpeo@buchalter.com
David M Poitras    dpoitras@bg.law
Paul M Rosenblatt    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Callan C Searcy    bk-csearcy@texasattorneygeneral.gov
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Claire K Wu    claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young    bry@lnbyg.com, bry@lnbyb.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 8/14/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 8/14/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/14/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**