1  CRAVATH, SWAINE & MOORE LLP
   GEORGE H. ZOBITZ (*pro hac vice*)
2  jzobitz@cravath.com
   ALEXANDER GERTEN (*pro hac vice*)
3  agerten@cravath.com
   Two Manhattan West
4  375 9th Avenue
   New York, NY 10001
5  Telephone:  (212) 474-1000
   Facsimile:  (212) 474-3700
6
7  KELLER BENVENUTTI KIM LLP
   JANE KIM (Cal. Bar No. 298192)
8  (jkim@kbkllp.com)
   JEREMY V. RICHARDS (Cal. Bar No. 102300)
9  (jrichards@kbkllp.com)
   THOMAS B. RUPP (Cal. Bar. No. 278041)
10 (trupp@kbkllp.com)
   425 Market Street, 26th Floor
11 San Francisco, CA 94105
   Telephone:  (415) 496-6723
12 Facsimile:  (650) 636-9251

13 *Counsel for Jelena McWilliams,*
   *in her capacity as Chapter 11 Trustee for*
14 *Synapse Financial Technologies, Inc.*

15

16           **UNITED STATES BANKRUPTCY COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
17            **SAN FERNANDO VALLEY DIVISION**

18
   In re:                                    Case No.:  1:24-bk-10646-MB
19
   SYNAPSE  FINANCIAL  TECHNOLOGIES,         Chapter 11 Case
20 INC.,
                                             **CHAPTER 11 TRUSTEE'S MOTION**
21          Debtor.                          **FOR AN ORDER (A) APPROVING**
                                             **BIDDING PROCEDURES WITH**
22                                           **RESPECT TO THE TRANSFER AND**
                                             **SALE OF SUBSTANTIALLY ALL OF**
23                                           **THE DEBTOR'S ASSETS,**
                                             **(B) APPROVING PROCEDURES**
24                                           **RELATED TO THE ASSUMPTION AND**
                                             **ASSIGNMENT OF CERTAIN**
25                                           **EXECUTORY CONTRACTS AND**
                                             **UNEXPIRED LEASES, (C) APPROVING**
26                                           **THE FORM AND MANNER OF**
                                             **NOTICES RELATED TO THE**
27                                           **AUCTION AND SALE,**

28

**(D) SCHEDULING THE SALE HEARING AND (E) GRANTING RELATED RELIEF**

Date:  TBD
Time:  TBD
Place: Courtroom 303
      21041 Burbank Blvd.
      Woodland Hills, CA 91367

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.      STATEMENT OF JURISDICTION AND VENUE ..................................................... 9

II.     STATEMENT OF FACTS ............................................................................................ 9

        A.      The Debtor's Background and Chapter 11 Filing. .................................... 9

        B.      The Asset Sale Process. .......................................................................... 10

III.    THE PROPOSED BIDDING PROCEDURES ..................................................... 11

IV.     THE PROPOSED SALE NOTICE AND ASSIGNMENT NOTICE .............................. 19

        A.      The Proposed Sale Notice. ..................................................................... 19

        B.      The Proposed Assignment Notice. .......................................................... 19

V.      DISCUSSION .......................................................................................................... 21

        A.      The Court Should Approve the Bidding Procedures. ............................. 21

        B.      The Notices in Connection with the Auction Sale and Hearing, and
                Assignment of Contracts Are Reasonable and Should Be Approved. .................. 23

VI.     CONCLUSION .......................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atlanta Packaging Prods., Inc.,*
99 B.R. 124 (Bankr. N.D. Ga. 1988) ............................................................................21

*In re Fin. News Network, Inc.,*
126 B.R. 152 (Bankr. S.D.N.Y. 1991) ..........................................................................21

**Statutes & Rules**

11 U.S.C. §
101(31) .........................................................................................................................12
11 U.S.C. §§
101 *et seq.* ............................................................................................................. passim

105(a) ....................................................................................................................1, 8, 21
363 ......................................................................................................................... 1, 21
363(b) ............................................................................................................................8
363(b)(1) ......................................................................................................................21
363(f) ............................................................................................................................8
363(m) ..........................................................................................................................8
365 ........................................................................................................................ 1, 19
365(b) ..................................................................................................................... 8, 19
365 (f) ..........................................................................................................................19
503 ..............................................................................................................................13

28 U.S.C. §
157 ................................................................................................................................8
157(b)(2)(A) ..................................................................................................................8
157(b)(2)(M) .................................................................................................................8
157(b)(2)(O) ..................................................................................................................8
1334 ..............................................................................................................................8
1408 ..............................................................................................................................8
1409 ..............................................................................................................................8

Fed. R. Bankr. P. 2002 ....................................................................................... 1, 18, 21

Fed. R. Bankr. P. 2002(a)(2) .....................................................................................8

Fed. R. Bankr. P. 6004 .........................................................................................1, 21

Fed. R. Bankr. P. 6004-1(b) .....................................................................................21

Fed. R. Bankr. P. 6004(a) ...........................................................................................8

Fed. R. Bankr. P. 6004(b) ...........................................................................................8

Fed. R. Bankr. P. 6004(c) ................................................................................8

Fed. R. Bankr. P. 6004(e) ................................................................................8

Fed. R. Bankr. P. 6004(f) ............................................................................8, 21

Fed. R. Bankr. P. 6004(h) ...........................................................................8, 14

Fed. R. Bankr. P. 6006 ...................................................................................1

Fed. R. Bankr. P. 6006(a) ................................................................................8

Fed. R. Bankr. P. 6006(c) ................................................................................8

Fed. R. Bankr. P. 6006(d) ..............................................................................14

Local Bankruptcy Rule 6004-1 .....................................................................8, 20

Local Bankruptcy Rule 6004-1(b)(2) ...............................................................21

Local Bankruptcy Rules 6004-1(b) ...................................................................1

Local Bankruptcy Rules 9013-1 ...................................................................1, 8

TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Federal Bankruptcy Rules"), Local Bankruptcy Rules 6004-1 (b) and 9013-1 (together with the Federal Bankruptcy Rules, the "Bankruptcy Rules"), and other applicable sections of the Bankruptcy Code and Bankruptcy Rules, Jelena McWilliams, the duly appointed, qualified and acting chapter 11 trustee (the "Trustee") for the estate of Synapse Financial Technologies, Inc., chapter 11 debtor in the above-captioned chapter 11 bankruptcy case (the "Debtor"), hereby moves, by way of this Motion (the "Motion") for entry of the Order (the "Bidding Procedures Order"), in substantially the form attached hereto as **Exhibit A**, which, among other things, provides for:

1.    Approval of the auction sale format and Bidding Procedures in the form attached to the Bidding Procedures Order;

2.    Approval of the Trustee's proposed form of auction and sale hearing notice to be provided to creditors of the Debtor and its non-debtor subsidiaries and other parties-in-interest in the form attached hereto as **Exhibit B**;

3.    Approval of the Trustee's proposed form of notice and procedures regarding the assumption and assignment of executory contracts and unexpired leases, establishment of cure amounts, and objections to be provided to all non-debtor parties (including non-debtor subsidiaries if applicable) to such contracts and leases in the form attached hereto as **Exhibit C**;

6.    The scheduling of a Court hearing to consider approval of the sale of substantially all of the Debtor's assets (or a subset thereof) (the "Purchased Assets") to the Winning Bidder (defined below) or the Winning Back-Up Bidder (defined below), pursuant to the terms and conditions of the asset purchase agreement with the Winning Bidder (the "Asset Purchase Agreement") and a copy of the Asset Purchase Agreement with the Winning Back-Up Bidder, as the case may be, and the Bidding Procedures.

**Background Information**

On April 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under

chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), schedules and statement of financial affairs. That same day, the Debtor filed an emergency motion for an order approving the sale of all its assets for $9.7 million to TabaPay Holdings LLC .and requested that a hearing take place on April 29, 2024. [Dkt. No. 8.] The Debtor has proprietary technology and software that essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers ("Partner Financial Institutions"). *Id.* The Debtor also filed a motion to approve a settlement reached with Evolve Bank & Trust ("Evolve"), one of its Partner Financial Institutions.

On May 1, 2024, the Court entered an order approving bidding procedures and set a hearing to approve the sale for May 9, 2024. [Dkt. No. 92.] The Debtor reported at the May 9 hearing that the settlement with Evolve had not been consummated due to disputes over Evolve funding a settlement payment and that TabaPay Holdings LLC was unwilling to proceed with the sale without the Evolve settlement.

On May 13, 2024, Evolve filed a motion for an order restoring access to the "Debtor's Dashboard System" or, alternatively, "Authorizing Evolve to Close all of the Debtor's Demand Deposit Accounts at Evolve Associated with Debtor's Programs". [Dkt. No. 137.] Evolve alleged that it had been denied access to the Debtor's computer systems and had been forced to freeze end user accounts. *Id.*

On May 13, 2024, the Court conducted a status conference on the sale and a hearing on Evolve's motion. Although extensive arguments were made by counsel and their clients assessing relative blame, it was undisputed that end users had lost access to funds.

On May 15, 2024, the United States Trustee for the Central District of California (the "U.S. Trustee") filed a motion on an emergency basis requesting that the Court enter an order converting the Chapter 11 Case to chapter 7 for cause, or, in the alternative, for the appointment of a chapter 11 trustee. [Dkt. No. 146.]

On May 24, 2024 (the "Appointment Date"), following a hearing, the Court entered an order appointing a chapter 11 trustee, and Jelena McWilliams was appointed by the U.S. Trustee

2

as the Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196.]

Since the Appointment Date, the Trustee and her advisors have focused their efforts on facilitating data sharing with Debtor's Partner Financial Institutions to enable them to reconcile ledgers and distribute funds to end users of Debtor's platform. The Trustee has received inbound inquiries to purchase assets of the Debtor's estate. However, the Trustee and her advisors determined that it would be unduly burdensome and risky to effectuate a sale and transfer control of key Synapse systems while reconciliation efforts were ongoing. In addition, the Trustee and her advisors, after many weeks of concerted effort and communications with representatives of major platform vendors required to gain access to secure, key Synapse system components, are now able to provide access to system components to facilitate Potential Bidders' due diligence of the Synapse platform. With an end to the reconciliation process in sight and access to the key Synapse system components, the Trustee is seeking to formalize a sale process to receive the highest and best bid for some, all or substantially all assets of the Debtor's estate.

Notwithstanding the near-term completion of reconciliation work by Partner Financial Institutions, due to the likely need for Synapse's Partner Financial Institutions, in order for fintech customers and end users to continue to access information and systems currently owned by Synapse, and the substantial administrative claims of trade vendors key to that process, the Trustee believes it is in the best interest of the estate and its stakeholders to place value on bids submitted in connection with the process that commits to assuming claims of vendors who are essential to keeping Synapse's dashboard access alive, commits to providing information to Synapse's Partner Financial Institutions and fintech customers for a reasonable period after closing of a sale to facilitate distributions to end users and fintech customers by Partner Financial Institutions and completes remaining reconciliation work, in accordance with applicable law.

The Debtor's assets are subject to substantial secured debt, and it is unclear at this time if bids will be received in excess of the value of such liens. To that end, the Trustee expects that any sale of the Debtor's assets will be subject to the consent of the Debtor's secured creditors and agreement by the secured creditors to an appropriate carve out from their collateral or proceeds of that collateral so that the Debtor's estate may benefit from a sale process.

After extensive consultation with the Trustee's financial advisor GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley"), and after taking into account the Debtor's financial situation and need for an expedited but fulsome sale process, the Trustee established, subject to the approval of the Bankruptcy Court and the consent of the Debtor's secured creditors, the following proposed timetable in order to achieve the highest and best price for the Debtor's Purchased Assets:

**October 11, 2024 at 4:00 p.m. (prevailing Pacific time) – Bidding Procedures and Sale Objection Deadline** – This is the proposed deadline for parties in interest to file any objections to this Motion and the Bidding Procedures Motion.

**October 15, 2024 at 1:30 p.m. (prevailing Pacific time) – Bidding Procedures Hearing** – This is the proposed date of the hearing at which the Court will hear any objections to the Trustee's Bidding Procedure's Motion and the Trustee will seek entry of an order approving the Bidding Procedures.

**October 16, 2024 at 4:00 p.m. (prevailing Pacific time) – File and Serve Notice of Bidding Procedures and Sale Deadline** – One business day after entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter, the Trustee will file, serve on all creditors, equity interest holders and contract counterparties and publish that certain *Notice of Court-Approved Bidding Procedures, Opportunity To Bid On Assets and Auction Schedule*.

**October 25, 2024 at 4:00 p.m. (prevailing Pacific time) – Initial Indication of Interest Deadline** – This is the deadline for all parties who wish to be eligible to participate in the Auction to provide a non-binding expression of interest by delivering to the Trustee all of the following documents:   (1) an executed non-disclosure agreement with the form to be obtained from the Trustee and (2) a non-binding written expression of interest in which the Potential Bidder identifies (a) which of the Debtor's assets the Potential Bidder is interested in acquiring; (b) evidence satisfactory to the Trustee of available funds or financing sufficient to consummate the proposed sale with appropriate contact information for verifying such financing sources; (c) a preliminary expected purchase price or range; (d) the expected business structure of the prospective buyer and the identities of all participants in the Potential Bidder; (e) a specific description of remaining due

diligence with outstanding questions and requests for information; (f) the identity of any retained counsel and/or financial advisor; and (g) what formal approvals (such as shareholder, board of director, etc.) are still needed for the Potential Bidder to be able to submit a binding bid and consummate a sale transaction.

**November 1, 2024 at 4:00 p.m. (prevailing Pacific time) – Initial Bid Deadline** – This is the deadline by when initial bids must be submitted by parties who wish to participate in the Auction. In order to be deemed a Qualified Bidder eligible to participate in the Auction, all Potential Bidders must comply with the bid requirements set forth in paragraph 9 of the Bidding Procedures and do all of the following:

1. Submit definitive documentation to acquire all or a part of the Purchased Assets;

2. Submit all documents to enable B. Riley to determine whether the Potential Bidder is financially qualified to participate in the Auction; and

3. Submit a deposit equal to 10% of the purchase price, which shall be non-refundable if the bidder is deemed to be the Winning Bidder at the Auction and the Trustee's proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court. Bidders will have the right to withdraw their bid at any time up until Noon (prevailing Pacific time) on November 14, 2024, in which case they will receive a return of their deposit and no longer be eligible to participate in the Auction.

**November 5, 2024 at 4:00 p.m. (prevailing Pacific time) – File and Serve Cure Notice Deadline** – This is the deadline for the Trustee to file with the Court and serve on relevant contract counterparties the Assumption/Assignment Notice setting forth the schedule of contracts and leases proposed to be assumed and assigned by the Qualified Bidders, along with Cure Amounts. As substantially all executory contracts were rejected by the Debtor on May 9, 2024 [Dkt. No. 195], the Trustee does not currently anticipate filing an Assumption/Assignment Notice but reserves the right to do so if appropriate.

**November 15, 2024 commencing at 10:00 a.m. (prevailing Pacific time) – Auction** – Auction to be held via videoconference with all Qualified Bidders to be provided with particulars in advance of the Auction. In the event that bids received by the Trustee indicate that distinct assets of the Debtor's estate should be sold pursuant to separate Auctions, more than one Auction may

be held for those distinct assets.

**November 18, 2024 at 4:00 p.m. (prevailing Pacific time) – Cure Notice Objection Deadline** – This is the deadline for parties-in-interest to file any objections to the Trustee's Assumption/Assignment Notice setting forth the Contracts and Leases Schedule, along with the Cure Amount.

**November 20, 2024 at 10 a.m. (prevailing Pacific time)** – **Sale Hearing** – This is the hearing for the Court to consider approval of the Trustee's proposed sale of the Purchased Assets to the Winning Bidder or Bidders at the Auction and at which the Trustee will seek entry of an order approving this Motion.

**November 27, 2024 – Sale Closing Deadline –** This is the outside date by when the Winning Bidder at the Auction is required to close its purchase of the Purchased Assets unless the Winning Bidder and the Trustee jointly agree to extend the outside closing date.

The Bidding Procedures are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets. This is being done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.

For all of the reasons set forth herein and in the accompanying Memorandum of Points and Authorities and concurrently filed Declaration of Jelena McWilliams, the Trustee has concluded that consummating a sale of the Purchased Assets for the highest and best price possible is in the best interests of the Debtor's estate.

The Debtor's primary assets the Trustee is seeking to sell are the Synapse technology platform and related proprietary technology. In the event that bids are received for other assets of the Debtor's estate, such as the equity interests of subsidiaries, and other intellectual property assets, such assets may be sold pursuant to these bidding procedures as well.

Since her appointment, the Trustee has received inbound interest for the Debtor's assets. The Trustee has responded to this inbound interest, but has not sought to effectuate a sale until this point to avoid interrupting the reconciliation process underway with the Partner Financial Institutions. With the completion of the reconciliation process in sight, the Trustee now seeks

approval to sell select assets of the Debtor's estate in accordance with the process set forth in the Bidding Procedures Order. **<u>Accordingly, the Trustee respectfully requests that the Court hold a hearing on this Motion on October 15, 2024 or as soon as reasonably possible.</u>**

**WHEREFORE**, the Trustee respectfully requests that this Court:

1.      Enter an order substantially in the form of the Bidding Procedures Order attached hereto as **<u>Exhibit A</u>**:

       a.    Approving the auction sale format and Bidding Procedures in the form attached to the Proposed Bidding Procedures Order;

       b.    Approving the Trustee's proposed form of auction and sale hearing notice to be provided to creditors, Potential Bidders and other parties-in-interest in the form attached hereto as **<u>Exhibit B</u>**; and

       c.    Approving the Trustee's proposed form of notice and procedures regarding the assumption and assignment of executory contracts and unexpired leases, establishment of cure amounts, and objections in the form attached hereto as **<u>Exhibit C</u>**;

2.      Schedule a Court hearing to consider approval of the sale of the Purchased Assets to the Winning Bidder or Winning Back-Up Bidder pursuant to the terms and conditions of the Asset Purchase Agreement with the Winning Bidder or the Asset Purchase Agreement with the Winning Back-Up Bidder, as the case may be, and the Bidding Procedures; and

3.      Grant such other and further relief as the Court deems just and proper.

Dated:  October 7, 2024

CRAVATH, SWAINE & MOORE LLP

By:

GEORGE H. ZOBITZ (*pro hac vice*)
ALEXANDER GERTEN (*pro hac vice*)
Two Manhattan West
375 9th Avenue
New York, NY 10001

KELLER BENVENUTTI KIM LLP

By:    */s/ Thomas B. Rupp*

JANE KIM
JEREMY V. RICHARDS
THOMAS B. RUPP
425 Market Street, 26th Floor
San Francisco, CA 94105

Counsel for Jelena McWilliams,
in her capacity as Chapter 11 Trustee for
Synapse Financial Technologies, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Bidding Procedures Motion are (i) Sections 105(a), 363(b), (f) and (m), 365(b) and (f) of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002(a)(2), 6004 (a), (b), (c), (e), (f) and (h), and 6006(a) and (c) of the Federal Rules of Bankruptcy Procedure and (iii) Local Bankruptcy Rules 6004-1 and 9013-1

## II.    STATEMENT OF FACTS[1]

### A.    The Debtor's Background and Chapter 11 Filing.

The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers.

The Debtor wholly owns two (2) subsidiaries:  (i) Synapse Credit LLC ("S Credit") and (ii) Synapse Brokerage LLC ("S Brokerage"). S Brokerage is a registered broker-dealer and a member of FINRA (Financial Industry Regulatory Authority) and SIPC (Securities Investor Protection Corporation).

The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on April 22, 2024 (the "Petition Date") with the goal of selling substantially all of its assets (the "Purchased Assets") to the highest and best bidder. That same day, the Debtor filed an emergency motion for an order approving the sale of all its assets for $9.7 million to TabaPay Holdings LLC. On May 9, 2024, the Debtor reported that it failed to reach a settlement

---

[1] To avoid repetition, the Trustee incorporates herein by this reference the *Declaration of Sankaet Pathak In Support Of Debtor's First Day Motions* [Dkt. No. 12] and the *Declaration of Jelena McWilliams in Support of the Chapter 11 Trustee's Sale Motion* in support of the facts set forth herein.

with its current banking partner, known as Evolve Bank & Trust ("Evolve"). The buyer reported that it was unwilling to proceed with the sale without the Evolve settlement and the bidding procedures and sale process was halted.

On May 24, 2024, following a hearing, the Court entered an order appointing a chapter 11 trustee (the "Appointment Order"), and Jelena McWilliams was appointed by the U.S. Trustee as the Chapter 11 Trustee in this Chapter 11 Case (the "Case").

The Debtor's primary assets that the Trustee is seeking to sell are its proprietary technology platform and equity interests in its subsidiaries. To date, different prospective purchasers who have discussed a potential transaction with the Trustee and her advisors have indicated that they are interested in acquiring a subset of the Debtor's assets rather than substantially all its assets. To that end, the Trustee may seek to sell distinct Synapse assets to separate bidders if she concludes that that will provide the highest value to the Estate.

**B.      The Asset Sale Process.**

Since the Appointment Date, the Trustee and her advisors have focused their efforts on facilitating data sharing with its Partner Financial Institutions to enable them to reconcile ledgers and distribute funds to end users of Synapse's platform. The Trustee has received inbound inquiries to purchase assets of the Debtor's estate. However, the Trustee and her advisors determined that it would be unduly burdensome and risky to effectuate a sale and transfer control of key Synapse systems while reconciliation efforts were ongoing. With an end to the reconciliation process in sight, the Trustee is seeking to formalize a sale process to receive the highest and best bid for some or all assets of the Debtor's estate.

Notwithstanding the near-term completion of reconciliation work by Partner Financial Institutions, due to the likely need for Synapse's Partner Financial Institutions, in order for fintech customers and end users to continue to access information and systems currently owned by Synapse, and the substantial administrative claims of trade vendors key to that process, the Trustee believes it may be in the best interest of the estate and its stakeholders to place value on bids submitted in connection with the process to those who will commit to assuming claims of vendors that are essential to keeping Synapse's dashboard access alive, commit to providing information

to Synapse's Partner Financial Institutions and fintech customers for a reasonable period to facilitate distributions to end users and fintech customers by Partner Financial Institutions, and complete remaining reconciliation work, in accordance with applicable law.

After extensive consultation with B. Riley, and after taking into account the Debtor's financial situation, the Trustee established, subject to the approval of the Bankruptcy Court and the consent of the Debtor's secured creditors, the following procedures and timetable in order to achieve the highest and best price for the Debtor's Purchased Assets.

### III.    THE PROPOSED BIDDING PROCEDURES

The proposed Bidding Procedures that the Trustee is requesting the Court to approve are as follows:

### Due Diligence Access/Participation Requirements

To participate in the Auction process as a bidder, a person or entity interested in purchasing the Purchased Assets (a "Potential Bidder") must deliver to the Trustee all of the following documents (the "Participation Requirements"):  (1) an executed non-disclosure agreement with the form to be obtained from the Trustee and (2) a non-binding written expression of interest in which the Potential Bidder identifies (a) which of the Debtor's assets the Potential Bidder is interested in acquiring; (b) evidence satisfactory to the Trustee of available funds or financing sufficient to consummate the proposed sale with appropriate contact information for such financing sources; (c) a preliminary expected purchase price or range; (d) the expected business structure of the prospective buyer and the identities of all participants in the Potential Bidder; (e) a specific description of remaining due diligence with outstanding questions and requests for information; (f) the identity of any retained counsel and/or financial advisor; and (g) what formal approvals (such as shareholder, board of director, etc.) are still needed for the Potential Bidder to be able to submit a binding bid and consummate a sale transaction.

Any Potential Bidder who has satisfied the foregoing Participation Requirements will be afforded, subject to the other provisions of these Bidding Procedures, due diligence access and additional information through the Trustee and her advisors. Potential Bidders may submit questions in writing during the due diligence process to the Trustee. Additionally, upon reasonable

advance notice, a Potential Bidder may have such direct communication with the Trustee and her advisors as the Potential Bidder desires and the Trustee determines to be appropriate under the circumstances.

### Bid Deadline for Prospective Bidders

The deadline for all Potential Bidders to submit their initial bid for the Purchased Assets is proposed to be **November 1, 2024, at 4:00 p.m. (prevailing Pacific time)** (the "Initial Bid Deadline"). A bid received after the Initial Bid Deadline shall not be considered unless the Trustee, in her business judgment, consents. The Trustee shall have the right to extend the Initial Bid Deadline if she determines in her business judgment that an extension would be in the best interests of the Debtor's estate.

### Bid Requirements

The Trustee proposes that to be eligible to participate in the Auction, each bid and each Potential Bidder submitting a bid (each, a "Bidder") must be determined by the Trustee to have satisfied a number of conditions as specifically set forth in the Bidding Procedures, including, without limitation, all of the conditions listed below (collectively, the "Bid Requirements"):

*Terms*. A bid must be accompanied by an executed asset purchase agreement ("Asset Purchase Agreement"), including binding, executed transaction documents and signed by an authorized representative of the Bidder.

*Irrevocable*. A bid must state that such offer is binding and irrevocable until the conclusion of the Sale Hearing (defined below) and such bid must continue to remain binding and irrevocable through the sale closing if the bid or any other higher bid submitted at the Auction is accepted by the Trustee at the Auction as the Winning Bid (defined below) or the Winning Back-Up Bid (defined below), and approved by the Bankruptcy Court at the Sale Hearing.

*Identity of Bidder*. A bid must fully disclose the following information (collectively, "Identifying Information"): (A) each entity or person that will be bidding for or purchasing the Purchased Assets; (B) all material equity holders (i.e., parties that own at least 10% of the equity of the Bidder) in the case of a Bidder that is an entity; (C) any entity that will be

financing or otherwise participating in connection with such bid and the complete terms of any such financing or participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed bid; (D) any connection with or participation by any "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtor or any relative or any affiliate of any "insider" of the Debtor; and (E) any connection with or participation by any current creditor or equity holder of the Debtor. A bid must also fully disclose any provisions in such bid for any internal, regulatory or other third-party approvals that may be required for a change in control of such subsidiary or subsidiaries (collectively, "Third-Party Approvals").

*Contact Information*. A bid must include the names and contact information (including phone numbers and email addresses) of all authorized representatives of the Bidder who will be available to answer questions regarding the bid, including advisors and related parties.

*Deposit*. A bid must include a good faith deposit by bank wire equal to 10% of the purchase price (the "Deposit"). If a Bidder elects to increase the amount of its bid at the Auction, the Bidder will not be required to increase the amount of its Deposit. If a bid is determined to be the Winning Bid at the Auction and the Bidder who submitted such bid fails to timely close the sale after approval by the Bankruptcy Court at the Sale Hearing, the Deposit shall become non-refundable and be forfeited to the Debtor's estate. All Deposits of all Qualified Bidders shall be held in an account maintained by Cravath and shall be returned (other than with respect to the Winning Bidder and the Winning Back-Up Bidder) promptly after the conclusion of the Auction, subject to the return conditions set forth in the applicable Asset Purchase Agreements submitted with such bids.

*Financing Sources*. A bid must contain written evidence of available funds or a firm irrevocable commitment for financing sufficient to consummate the proposed sale with appropriate contact information for such financing sources, with the Trustee to determine whether such evidence of financing satisfies these Bidding Procedures and enables the

Bidder to participate in the Auction, with such determination to be in the Trustee's sole and absolute discretion.

***Designation of Assigned Contracts and Leases***. Subject to the ability of the Trustee to obtain an order of the Bankruptcy Court approving the Trustee's assumption and assignment of any executory contract or unexpired lease to the Winning Bidder, a bid must include an initial list of all of the Debtor's executory contracts and unexpired leases with respect to which the Bidder seeks assumption and assignment from the Debtor (including without limitation any of the Debtor's contracts or leases to which the Debtor's non-debtor subsidiaries are also parties). As substantially all executory contracts of the Debtor have been rejected, the Trustee anticipates that any assignment of non-terminated contracts may require consent of the applicable contract counter-party.

***Designation of Assumed Liabilities***. A bid must identify all liabilities that the Bidder proposes to assume.

***No Breakup Fee***. A bid must not request or entitle the Bidder to receive any termination fee, transaction or breakup fee, expense reimbursement or similar fee or payment. For the avoidance of doubt, by submitting a bid, the Bidder agrees that it shall not be entitled to any such fee and waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or its participation in the Auction.

### Qualified Bidders and Bids

The Trustee proposes that Potential Bidders who have satisfied the Participation Requirements and Bid Requirements will be deemed "Qualified Bidders", and bids that meet all of the Bid Requirements described above will be deemed "Qualified Bids", in each case, only if the Trustee concludes in the exercise of her business judgment, that such bid would be consummated if selected as the Winning Bid; provided, however, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Trustee to her satisfaction, the Trustee shall have the right, in her sole and absolute discretion, to disqualify any Qualified Bidder and Qualified Bid, and such Bidder shall not be entitled to attend or otherwise participate in the Auction.

### Notice of Qualified Bids

As soon as practicable following the Bid Deadline, the Trustee shall identify to all Qualified Bidders:  (a) each and every bid that the Trustee considers to be a Qualified Bid and (b) if more than one Qualified Bid has been timely received, the Qualified Bid that will constitute the "Initial Bid" at the Auction, and the bidding order in which the Auction will be conducted.

### No Auction if Only One Qualified Bid

If, by the Bid Deadline, only one timely Qualified Bid is received by the Trustee, the Trustee shall not conduct an Auction and the sole Qualified Bidder will be deemed the "Winning Bidder" and its bid the "Winning Bid". If this occurs, the Trustee shall proceed to request at the Sale Hearing that the Court approve the transfer and sale of the Purchased Assets to the Winning Bidder in accordance with the Winning Bidder's Asset Purchase Agreement and request that the Sale Order be entered by the Court and that the Sale Order shall be made immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) and 6006(d) of the Federal Bankruptcy Rules.

### Auction

If by the Bid Deadline, more than one Qualified Bid has been received by the Trustee, the Trustee will conduct the Auction with all Qualified Bidders. If Qualified Bids have been received for multiple non-overlapping sets of the Debtor's assets, Auctions for each set of Purchased Assets may be conducted.

### Consent to Jurisdiction, No Collusion and Good Faith Bona Fide Offer

All Qualified Bidders shall be deemed to have consented to the exclusive and core jurisdiction of the Court and to have waived any right to jury trial in connection with any disputes relating to the bidding process, the Auction, the transfer and sale of the Purchased Assets and any other matter relating to, or contemplated by, the Winning Bidder's Asset Purchase Agreement. Any and all disputes related to the Auction shall be determined solely by the Bankruptcy Court. Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding or with any other bidder or Potential Bidder; (ii) its bid is a good faith *bona fide* offer; (iii) it intends to consummate

the proposed transaction if selected as the Winning Bidder; and (iv) it acknowledges that, if chosen, it will serve as the "Winning Back-Up Bidder".

## Initial Bid at the Auction

The bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted by the Bid Deadline, as determined by the Trustee. Each subsequent bid shall be in increments of no less than $10,000 and by figures which are wholly divisible by $10,000. Bid increments may be increased to a value not to exceed 5% of the Purchase Price set forth in the Initial Bid in the sole discretion of the Trustee. The Trustee will notify all Qualified Bidders in advance of the Auction which bid has been accepted as the Initial Bid at the Auction and the order in which the bidding at the Auction will proceed.

## Conducting the Auction

The Trustee, Cravath and B. Riley will direct and preside over the Auction. At the start of the Auction, and after each Qualified Bidder acknowledges on the record (i) that it has not engaged in any collusion with respect to the bidding, (ii) that its bid is a good faith bona fide offer and (iii) that it intends to consummate the proposed transaction if selected as the Winning Bidder or the Winning Back-Up Bidder, the Trustee will identify, confirm and describe the Initial Bid. The bidding will then ensue in the bidding order provided by the Trustee to all Qualified Bidders in advance of the Auction. All bidding after the Initial Bid shall continue in bidding increments of at least $10,000 and by figures that are wholly divisible by $10,000. Bid increments may be increased to a value not to exceed 5% of the Purchase Price set forth in the Initial Bid in the sole discretion of the Trustee. All bids will be made and received via Zoom, Webex or similar virtual means of all parties, on an open basis, and all Qualified Bidders will be entitled to be present for all bidding with the understanding that the Identifying Information of each bidder and the material terms of each Qualified Bid (including any Third-Party Approvals) will be fully disclosed to all Qualified Bidders before the Auction, and all successive bids made at the Auction will be fully disclosed to all Qualified Bidders. All Qualified Bidders will be permitted to bid at the Auction based on what the Trustee, subject to the Court's approval at the Sale Hearing, determines to be an appropriate amount of time to respond to each prior submitted bid.

Prior to the Auction, the Trustee will randomly assign to each Qualified Bidder a bidder number, except that the bidder whose bid was accepted as the Initial Bid will be assigned bidder number 1. Once the Initial Bid has been described by the Trustee, the bidding will then pass to bidder number 2. Bidder number 2 will have the option of submitting an overbid to the Initial Bid of at least the sum of (A) the Initial Bid plus (B) $10,000, or dropping out of the Auction. Once a bidder drops out of the Auction, such bidder will no longer be permitted to participate in the Auction. After bidder number 2 either submits a qualifying overbid or drops out of the Auction, the bidding will then pass to bidder number 3. This process will continue until only two Qualified Bidders are left, in which case the Qualified Bidder who submits the highest and best Qualified Bid will be deemed the Winning Bidder at the Auction, and the Qualified Bidder who submits the second highest and best Qualified Bid will be deemed the Winning Back-Up Bidder at the Auction.

Except as expressly provided in the Bidding Procedures Order or the provisions of these Bidding Procedures, the Trustee shall have the right to conduct the Auction in the manner she reasonably determines, in the exercise of her business judgment, to be in the best interests of the Debtor's bankruptcy estate. The Trustee shall also have the right to deviate from these Bidding Procedures or announce and employ at the Auction other procedural rules without the need for any further order of the Bankruptcy Court if the Trustee reasonably determines, in the exercise of her business judgment, that doing so would be in the best interests of the Debtor's bankruptcy estate and is not inconsistent with any of the provisions of the Bankruptcy Code or any previously entered order of the Bankruptcy Court including the Bidding Procedures Order.

The Trustee may (1) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer in terms of both amount and execution risk and (2) reject at any time any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or these Bidding Procedures or (iii) contrary to the best interests of the Debtor or its bankruptcy estate; provided that, the highest, best and otherwise financially superior offer shall be the Qualified Bid at the Auction reasonably expected to result (including after taking into account execution risk) in the highest amount of money being paid to the Debtor's estate for the purchase of the Purchased Assets.

**<u>Selection of the Winning Bid and Winning Back-Up Bid</u>**

The Auction shall continue until there is one Qualified Bid that the Trustee determines, subject to Bankruptcy Court approval, to be the highest and best bid (the "<u>Winning Bid</u>"), and another Qualified Bid to be the second highest and best bid (the "<u>Winning Back-Up Bid</u>"), at which point the Auction will be deemed concluded. The Trustee will not consider any bids submitted after the conclusion of the Auction.

Subject to the Bankruptcy Court approving the Winning Bid and entering an order approving of the Trustee's free and clear sale of the Purchased Assets to the Winning Bidder in accordance with the Winning Bidder's Asset Purchase Agreement, submitted by the Winning Bidder (the "<u>Sale Order</u>"), the Winning Bidder shall be required to close the sale within seven (7) days (unless the Trustee and the Winning Bidder jointly agree to an extension of this outside Sale closing date which will be in their sole and absolute discretion), or the Winning Bidder will be deemed to have forfeited its Deposit to the Debtor subject to the terms and conditions for such forfeiture set forth in such Asset Purchase Agreement, as applicable. Promptly following the closing of the sale to the Winning Bidder, the Trustee shall return the Deposit of the Winning Back-Up Bidder to the Winning Back-Up Bidder.

If the Winning Bidder fails to close the sale of all of the Purchased Assets by the outside closing date for such initial closing (as set forth in the Winning Bidder's Asset Purchase Agreement, as applicable), unless the Trustee and the Winning Bidder mutually agree in their sole and absolute discretion to extend such closing date, the Trustee shall so notify the Winning Back-Up Bidder. The Winning Back-Up Bidder will then have seven (7) days following the date of having been notified by the Trustee to close the purchase of such assets. If the Winning Back-Up Bidder fails to close the sale within this time period, unless the Trustee and the Winning Back-Up Bidder mutually agree in their sole and absolute discretion to extend such initial closing date, the Winning Back-Up Bidder will be deemed to have forfeited its Deposit to the Debtor subject to any conditions for such forfeiture in the applicable Asset Purchase Agreement.

**<u>Sale Hearing</u>**

The Trustee proposes that the hearing for the Bankruptcy Court to approve the outcome of

the Auction and the Trustee's sale of the Purchased Assets to the Winning Bidder and to the Winning Back-Up Bidder if the Winning Bidder fails to close (the "Sale Hearing") be held on November 20, 2024, or at such other date and time set by the Bankruptcy Court.

### IV.    THE PROPOSED SALE NOTICE AND ASSIGNMENT NOTICE

Attached hereto as **Exhibit B** is the Trustee's proposed form of notice to creditors of the Debtor and its non-debtor subsidiaries and other parties-in-interest ("Proposed Sale Notice"), and attached hereto as **Exhibit C** is the Trustee's proposed form of notice to non-debtor counterparties (including non-debtor subsidiaries if applicable) under executory contracts and unexpired leases regarding the possible assumption and assignment thereof ("Proposed Assignment Notice").

**A.    *The Proposed Sale Notice*.**

Within one (1) business day after the Court's entry of the Bidding Procedures Order, the Trustee will make every effort to file with the Court and serve the Proposed Sale Notice upon all known creditors and equity holders of the Debtor and its non-debtor subsidiaries and upon all Potential Bidders following Court approval of the Bidding Procedures.

The Trustee submits that the notice, and service thereof, will satisfy the requirements of Rule 2002 of the Federal Rules of Bankruptcy Procedure, and that such notice will constitute proper, timely, adequate and sufficient notice of the Sale, the Bidding Procedures (including any Bid Deadline), the Auction, the Sale Hearing, and the deadline to object to any sale. Accordingly, the Trustee requests that the Proposed Sale Notice, substantially in the form attached hereto as **Exhibit B** be approved by the Court.

**B.    *The Proposed Assignment Notice*.**

If deemed appropriate, within one (1) business days after the Selection of the Winning Bidder, the Trustee will make every effort to file with the Court and serve the Proposed Assumption/Assignment Notice attached as hereto as **Exhibit C** on each counterparty (including non-debtor subsidiaries if applicable) to an executory contract or unexpired lease (a "Counterparty") intended to be assumed and assigned to the Winning bidder and/or the Winning Back-Up Bidder, which notice shall:  (i) state the cure amounts, if any, that the Trustee believes are necessary to assume such contracts or leases pursuant to Bankruptcy Code section 365 (the

"Cure Amount"); (ii) notify the non-debtor Counterparty or Counterparties that such party's or parties' contract or lease may be assumed and assigned to the Winning Bidder; (iii) state the date of the Sale Hearing and that objections to any Cure Amount or to assumption and assignment will be heard at the Sale Hearing, or at a later hearing, as determined by the Court; and (iv) state the deadline by which any non-debtor Counterparty shall file an objection to the Cure Amount(s) or to the assumption and assignment of the applicable contract(s) and/or lease(s).

The Debtor rejected substantially all contracts it was party to pursuant to the *Order Granting Debtor's First Omnibus Motion for Entry of an Order Authorizing Rejection of Executory Contracts and Unexpired Leases* dated May 9, 2024. [Dkt. No. 195.] In the event any contracts that have been rejected, but not terminated, are to be assigned to the Purchaser in connection with a Sale, the Trustee shall obtain the consent of applicable contract or otherwise comply with applicable bankruptcy and non-bankruptcy law to effectuate the assignment of the contract to the Purchaser. As substantially all executory contracts of the Debtor have been rejected, the Trustee does not anticipate filing an Assumption/Assignment Notice but seeks approval to file such notice out of an abundance of caution.

The Trustee proposes that objections to any matter pertaining to the assumption and assignment of executory contracts or unexpired leases by the Winning Bidder, including without limitation as to adequate assurance of future performance or payment of applicable Cure Amounts, be filed with the Court up until the Sale Hearing (the "Objection Deadline"). Any such objections must be served so as to be actually received no later than Objection Deadline.

The Trustee proposes that to the extent that any Counterparty or other party in interest does not timely serve an objection to the Assumption/Assignment Notice as set forth above, such party shall be deemed to have (i) consented to the assumption and assignment of the applicable contracts or leases to the Winning Bidder; (ii) agreed that the Winning Bidder has provided adequate assurance of future performance within the meaning of sections 365(b) and (f) of the Bankruptcy Code; (iii) consented to the applicable Cure Amount; (iv) agreed to the terms of the Sale Order; and (v) waived any and all objections in connection with items (i) through (iv) hereof.

Upon the filing of an objection by a Counterparty or other party-in-interest to the

Assumption/Assignment Notice, the Trustee will contact the objecting party and the Winning Bidder to attempt to consensually resolve any timely filed objection. The Trustee will work with the Winning Bidder in good faith in this regard, and the Winning Bidder must consent to any increase in the proposed Cure Amount for the applicable contract or lease. If the Trustee and Winning Bidder are unable to resolve such an objection, such objection will be heard at the Sale Hearing (as may be adjourned by the Court without such objecting party's consent); provided, further, that in the event an objection relates solely to a Cure Amount (a "Cure Objection"), then such objecting party will be deemed to consent to the assumption and assignment of its contract or lease, notwithstanding such objection. In the event the Trustee and the Winning Bidder are unable to resolve a Cure Objection prior to the Sale Hearing, the Winning Bidder may elect not to include the applicable contract or lease in its purchase of the Purchased Assets, subject to any conditions set forth in the Winning Bidder's Asset Purchase Agreement.

**V.    DISCUSSION**

**A.    The Court Should Approve the Bidding Procedures.**

Local Bankruptcy Rule 6004-1 provides, in pertinent part, as follows:

> **(b) Motion for Order Establishing Procedures for the Sale of Estate Property.**
> ...
>
> (2)    Contents of Notice [of a Sale Procedure Motion]. The notice must describe the proposed bidding procedures and include a copy of the proposed purchase agreement. If the purchase agreement is not available, the moving party must describe the terms of the sale proposed, when a copy of the actual agreement will be filed with the court, and from whom it may be obtained. The notice must describe the marketing efforts undertaken and the anticipated marketing plan, or explain why no marketing is required. …
>
> (3)    Service of the Notice and Motion. The moving party must serve the motion and notice of the motion and hearing by personal delivery, messenger, telephone, fax, or email to the parties to whom notice of the motion is required to be given by the FRBP or by these rules, any other party that is likely to be adversely affected by the granting of the motion, and the United States trustee. The notice of hearing must state that any response in opposition to the motion must be filed and served at least 1 day prior to the hearing, unless otherwise ordered by the court.
> ...

Loc. Bankr. R. 6004-1(b).

The Trustee respectfully submits that all of the information required under Local Bankruptcy Rule 6004-1(b)(2) to be provided in a notice of a bidding procedures motion will be included in the Notice of Motion once the Trustee obtains a hearing date from the Court.

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105 (a). Bankruptcy Rules 2002 and 6004 govern the scope of the notice to be provided in the event a debtor elects to sell property of the estate under Section 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course of a debtor's business, Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the debtor provide an itemized list of the property sold together with the prices received upon consummation of the sale. Bankr. R. 6004(f).

Neither the Bankruptcy Code nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be employed by a debtor in conducting a public or private sale. Nonetheless, as one Court has stated, "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Preapproval of bid procedures and terms facilitates bidding by providing a fair and efficient process, ensuring fair comparability between competing bids, and protecting other bidders who have limited their bids to the announced terms. *See In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991).

A corollary to these principles is that a bankruptcy court will evaluate a proposed sale transaction in its totality and will approve the sale if the agreement as a whole is supported by an articulated business judgment.

The Trustee has concluded that the auction and bidding procedures outlined above are

designed to enable the Debtor's estate to obtain the highest price possible for the Purchased Assets (including after taking into account execution risk) and provide the greatest possible recovery for the Debtor's creditors. The Trustee believes that the sale process will be thorough and adequate to obtain the highest and best offer for the Purchased Assets, subject to the opportunity for others to participate in accord with the proposed Bidding Procedures.

The Bidding Procedures serve numerous legitimate purposes. The Bidding Procedures (i) foster competitive bidding among any serious potential purchasers; (ii) eliminate from consideration purchasers who would waste the estate's time because they would not have the financial ability or certainty of execution to consummate the transaction; (iii) ensure that the highest possible price is obtained for the Purchased Assets; and (iv) afford the broadest notice of the proposed sale as possible under the circumstances.

**B.    The Notices in Connection with the Auction Sale and Hearing, and Assignment of Contracts Are Reasonable and Should Be Approved.**

The Bidding Procedures Order also calls for the approval of the form of (i) the Proposed Sale Notice and (ii) the form of the Proposed Assignment Notice. The Proposed Sale Notice is reasonably designed to alert parties to the Auction, the Bidding Procedures, the Sale Hearing and time for objections. The Proposed Assignment Notice and procedure is reasonably designed to facilitate the sale process by advising parties to contracts which may be assumed and assigned of the terms of assignment, including any cure amount, and to allow for objections to the assignment to the Winning Bidder for objections to the revised proposed assignment and proposed cure amount. In the event no objection is timely made, the non-debtor parties to assumed and assigned contracts will be deemed to have consented to and waived objections to (i) the assumption and assignment; (ii) adequate assurance of future performance; (iii) the proposed cure amount; and (iv) the terms of the Sale Order.

These notices and attendant procedures will provide interested creditors and other parties-in-interest (including creditors of the Debtor's subsidiaries who might be affected by the proposed Sale) and contract counterparties adequate notice and opportunity to object, as well as notifying parties who may wish to bid.

## VI.    CONCLUSION

The Trustee respectfully requests that this Court:

1.    Enter an order substantially in the form of the Bidding Procedures Order attached hereto as **Exhibit A**:

    a.    Approving the auction sale format and Bidding Procedures as provided above;

    b.    Approving the Trustee's proposed form of auction and sale hearing notice to be provided to creditors of the Debtor and its non-debtor subsidiaries and other parties-in-interest in the form attached hereto as **Exhibit B**; and

    c.    Approving the Trustee's proposed form of notice and procedures regarding the assumption and assignment of executory contracts and unexpired leases, establishment of cure amounts, and objections in the form attached hereto as **Exhibit C**;

2.    Schedule a Court hearing to consider approval of the sale of the Purchased Assets to the Winning Bidder or the Winning Back-Up Bidder, pursuant to the terms and conditions of the Asset Purchase Agreement with the Winning Bidder or the Asset Purchase Agreement with the Winning Back-Up Bidder, as the case may be, and the Bidding Procedures; and

3.    Grant such other and further relief as the Court deems just and proper.

Dated:  October 7, 2024

CRAVATH, SWAINE & MOORE LLP

By:

GEORGE H. ZOBITZ (*pro hac vice*)
ALEXANDER GERTEN (*pro hac vice*)
Two Manhattan West
375 9th Avenue
New York, NY 10001

KELLER BENVENUTTI KIM LLP

By:    */s/ Thomas B. Rupp*

JANE KIM
JEREMY V. RICHARDS
THOMAS B. RUPP
425 Market Street, 26th Floor
San Francisco, CA 94105

Counsel for Jelena McWilliams,
in her capacity as Chapter 11 Trustee for
Synapse Financial Technologies, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*):  CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING BIDDING PROCEDURES WITH RESPECT TO THE TRANSFER AND SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING THE FORM AND MANNER OF NOTICES RELATED TO THE AUCTION AND SALE, (D) SCHEDULING THE SALE HEARING, AND (E) GRANTING RELATED RELIEF
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/7/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian    raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com;moroberts@ktslaw.com
Ron Bender    rb@lnbyg.com
David A Berkley    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Rudy J Cerone    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz    schenetz@perkinscoie.com,
docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson    russell.clementson@usdoj.gov
Andrew Michael Cummings    andrew.cummings@hklaw.com,
philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag    mfarag@gibsondunn.com
Paul R. Glassman    pglassman@stradlinglaw.com
Nicholas Christian Glenos    cglenos@bradley.com
Michael H Goldstein    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried    mgottfried@elkinskalt.com,
cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner    sgubner@bg.law, ecf@bg.law
Ralph P Guenther    rguenther@guentherlawgroup.com
Robert T. Honeywell    robert.honeywell@klgates.com
Lance N Jurich    ljurich@loeb.com,
pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant    wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)    jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian    kjm@lnbyg.com
Fred Neufeld    fneufeld@stradlinglaw.com, tingman@sycr.com
Valerie Bantner Peo    vbantnerpeo@buchalter.com
David M Poitras    dpoitras@bg.law
Holly Roark    holly@roarklawoffices.com, courtnotices@roarklawoffices.com
Paul M Rosenblatt    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Callan C Searcy    bk-csearcy@texasattorneygeneral.gov
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com
United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com
Claire K Wu    claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young    bry@lnbyg.com, bry@lnbyb.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/7/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Darren Azman
One Vanderbilt Avenue
New York, NY 10017-3852

Jake Jumbeck
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street, Suite 4000
Chicago, IL 60606-0029

Robert J Labate
400 South Hope Street, 8th Floor
Los Angeles, CA 90071

Neda Shapourian
Unit21, Inc.
49 Geary St. Ste 200
San Francisco, CA 94108

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/7/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/7/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**