CRAVATH, SWAINE & MOORE LLP
GEORGE H. ZOBITZ (*pro hac vice*)
jzobitz@cravath.com
ALEXANDER GERTEN (*pro hac vice*)
agerten@cravath.com
Two Manhattan West
375 9th Avenue
New York, NY 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

KELLER BENVENUTTI KIM LLP
JANE KIM (Cal. Bar No. 298192)
(jkim@kbkllp.com)
JEREMY V. RICHARDS (Cal. Bar No. 102300)
(jrichards@kbkllp.com)
THOMAS B. RUPP (Cal. Bar. No. 278041)
(trupp@kbkllp.com)
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel for Jelena McWilliams,*
*in her capacity as Chapter 11 Trustee for*
*Synapse Financial Technologies, Inc.*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>Debtor. | Case No.: 1:24-bk-10646-MB<br><br>Chapter 11<br><br>**CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; (C) WAIVING THE 14-DAY STAY PERIODS OF BANKRUPTCY RULES 6004(h) AND 6006(d); AND (D) GRANTING RELATED RELIEF**<br><br>Date: TBD<br>Time: TBD |

Place:   Courtroom 303
         21041 Burbank Blvd.
         Woodland Hills, CA 91367

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...........................................................**Error! Bookmark not defined.**

MEMORANDUM OF POINTS AND AUTHORITIES.........................................................11

I.    STATEMENT OF JURISDICTION AND VENUE ...............................................................11

II.   STATEMENT OF FACTS ...............................................................................................11

    A.    The Debtor's Background and Chapter 11 Filing. ...........................................11

    B.    The Debtor's Primary Assets and Secured Loans. ..........................................12

    C.    Cash Collateral Order..........................................................................................13

    D.    Assets to be Sold.................................................................................................14

    E.    The Bidding Procedures......................................................................................16

III.  DISCUSSION .................................................................................................................17

    A.    The Bankruptcy Court Should Authorize the Trustee To Sell Substantially All
           the Debtor's Assets. .............................................................................................17

          1.    Sound Business Purpose. ............................................................................18

          2.    Accurate and Reasonable Notice. ...............................................................19

          3.    Fair and Reasonable Price.............................................................................20

          4.    Good Faith. ....................................................................................................21

    B.    Section 363(f) of the Bankruptcy Code Permits the Trustee's Sale of the
           Purchased Assets To Be Free and Clear of Any and All Liens, Claims,
           Encumbrances and Interests................................................................................22

          1.    The Trustee's Proposed Sale Is Permissible Pursuant to Section
              363(f)(1).......................................................................................................23

          2.    The Trustee's Proposed Sale Is Permissible Pursuant to 11 U.S.C.
              Section 363(f)(2).........................................................................................24

           3.    The Trustee's Proposed Sale Is Projected To Be Permissible Pursuant
              to 11 U.S.C. Section 363(f)(3). ...................................................................24

          4.    The Trustee's Proposed Sale Is Permissible Pursuant to 11 U.S.C.
              Section 363(f)(4)..........................................................................................25

i

5.      The Trustee's Proposed Sale Is Permissible Pursuant to 11 U.S.C.
        Section 363(f)(5)..............................................................................................25

C.      The Bankruptcy Court Should Authorize the Trustee To Assume and Assign to
        The Winning Bidder or the Winning Back-Up Bidder All of the Assigned
        Contracts That the Winning Bidder or the Winning Back-Up Bidder, as the
        Case May Be, Desires. ......................................................................................27

D.      The Trustee Requests the Court to Waive the Fourteen-Day Waiting Periods
        Set ....................................................................................................................30

IV.    CONCLUSION..............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*,
   391 B.R. 25 (9ᵗʰ Cir. B.A.P. 2008)......................................................................................25, 26

*Coastal Indus., Inc. v. U.S. Internal Revenue Serv. (In re Coastal Indus., Inc.)*,
   63 B.R. 361 (Bankr. N.D. Ohio 1986) ........................................................................................20

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,
   209 F.3d 252 (3d Cir. 2000)........................................................................................................23

*In re Abbotts Dairies of Pennsylvania, Inc.*,
   788 F.2d 143 (3d Cir. 1986)..................................................................................................17, 21

*In re AEG Acquisition Corp.*,
   127 B.R. 34 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P. 1993) .........................28

*In re Alpha Indus., Inc.*,
   84 B.R. 703 (Bankr. D. Mont. 1988) ..........................................................................................21

*In re Apex Oil Co.*,
   92 B.R. 847 (Bankr. E.D. Mo. 1988)...........................................................................................21

*In re Atlanta Packaging Prods, Inc.*,
   99 B.R. 124 (Bankr. N.D. Ga. 1988) ...........................................................................................20

*In re Bowman*,
   194 B.R. 227 (Bankr. D. Ariz. 1995)...........................................................................................28

*In re Central Fla. Metal Fabrication, Inc.*,
   190 B.R. 119 (Bankr. N.D. Fla. 1995) .........................................................................................27

*In re Continental Airlines, Inc.*,
   780 F.2d 1223 (5th Cir. 1986) ...............................................................................................18, 19

*In re Continental Country Club, Inc.*,
   114 B.R. 763 (Bankr. M.D. Fla. 1990) ........................................................................................27

*In re Delaware and Hudson Ry. Co.*,
   124 B.R. 169 (D. Del. 1991)..................................................................................................17, 19

*In re Elliot*,
   94 B.R. 343 (E.D. Pa. 1988) ........................................................................................................24

*In re Embers 86th Street. Inc.*,
   184 B.R. 892 (Bankr. S.D.N.Y. 1995) .........................................................................................28

*In re Exennium, Inc.*,
   715 F.2d 1401 (9th Cir. 1983) ............................................................................21

*In re Filtercorp, Inc.*,
   163 F.3d 570 (9th Cir. 1998) ..............................................................................22

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
   567 B.R. 820 (Bankr. C.D. Cal. 2017)...............................................................23

*In re Gucci*,
   193 B.R. 411 (S.D.N.Y. 1996)............................................................................27

*In re Huntington, Ltd.*,
   654 F.2d 578 (9th Cir. 1981) ..............................................................................17

*In re Indus. Valley Refrig. and Air Cond. Supplies, Inc.*,
   77 B.R. 15 (Bankr. E.D. Pa. 1987) .....................................................................21

*In re Integrated Res., Inc.*,
   135 B.R. 746 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992) ..............................20

*In re Jolan, Inc.*,
   403 B.R. 866 (Bankr. W.D. Wash. 2009) ...........................................................26

*In re Karpe*,
   84 B.R. 926 (Bankr. M.D. Pa. 1988) ..................................................................20

*In re Klein Sleep Prods., Inc.*,
   78 F.3d 18 (2d. Cir. 1996).................................................................................27

*In re Lionel Corp. (Comm. of Equity SEC Holders v. Lionel Corp.)*,
   722 F.2d 1063 (2d Cir. 1983).....................................................................17, 18

*In re M Capital Corp.*,
   290 B.R. 743 (B.A.P. 9th Cir. 2003)...................................................................21

*In re Martin (Myers v. Martin)*,
   91 F.3d 389 (3d Cir. 1996).................................................................................17

*In re Prime Motors Inns*,
   124 B.R. 378 (Bankr. S.D. Fla. 1991).................................................................27

*In re Qintex Ent., Inc.*,
   950 F.2d 1492 (9th Cir. 1991) ............................................................................17

*In re Rock Indus. Mach. Corp.*,
   572 F.2d 1195 (7th Cir. 1978) ............................................................................21

*In re Schipper (Fulton State Bank v. Schipper)*,
   933 F.2d 513 (7th Cir. 1991) ..............................................................................17

*In re Titusville Country Club (Titusville Country Club v. Pennbank)*,
 128 B.R. 396 (Bankr. W.D. Pa. 1991) ........................................................................18

*In re Walter*,
 83 B.R. 14 (9th Cir. B.A.P. 1988).................................................................17, 18, 19

*In re Wilde Horse Enterprises*,
 136 B.R. 830 (Bankr. C.D. Cal. 1991)................................................................20, 21

*In the Matter of Spanish Peaks Holdings II, LLC*, 872
 F.3d 892 (9th Cir. 2017) ............................................................................................23

*Lubrizol Enterprises v. Richmond Metal Finishers*,
 756 F.2d 1043 (4th Cir. 1985) ...................................................................................27

**Statutes & Rules**

11 U.S.C. §
 101 *et seq.* ........................................................................................................... passim
 105(a) ...........................................................................................................................9
 361.............................................................................................................................13
 363............................................................................................................14, 17, 19, 26
 363(b)........................................................................................................................19
 363(b)(1)..............................................................................................................17, 21
 363(f).....................................................................................................................22, 23
 363(f)(1)-(5)................................................................................................................8
 363(f)(2).....................................................................................................................24
 363(f)(3).....................................................................................................................24
 363(f)(4).....................................................................................................................25
 363(f)(5).....................................................................................................................25
 363(m)..........................................................................................................................8
 365.........................................................................................................................9, 11
 365(b)...........................................................................................................................2
 365(b)(1)................................................................................................................27, 28
 365(b)(1)(A).............................................................................................................9, 29
 365(b)(1)(B).............................................................................................................9, 29
 365(f)............................................................................................................................2
 365(f)(1).....................................................................................................................28
 365(f)(2)................................................................................................................27, 28

28 U.S.C. §
    157 ...................................................................................................................11
    157(b) (2) (A)...................................................................................................11
    157(b) (2) (M)..................................................................................................11
    157(b) (2) (N)...................................................................................................11
    157(b) (2) (O)...................................................................................................11
    1334 .................................................................................................................11
    1408 .................................................................................................................11
    1409 .................................................................................................................11

11 USC §
    105(a) ..............................................................................................................11
    363(b) ..............................................................................................................11
    363(b) ..............................................................................................................20
    363(f) ...............................................................................................................11
    363(f) ...............................................................................................................22
    363(f) ...............................................................................................................23
    363(f) ...............................................................................................................23
    363(f)(1) ..........................................................................................................22
    363(f)(1) ...................................................................................................23, 26
    363(f)(2) ..........................................................................................................22
    363(f)(2) ..........................................................................................................24
    363(f)(2) ..........................................................................................................24
    363(f)(3) ..........................................................................................................22
    363(f)(3) ..........................................................................................................24
    363(f)(4) ..........................................................................................................22
    363(f)(5) ..........................................................................................................22
    363(f)(5) ..........................................................................................................25
    363(k) ..............................................................................................................11
    363(l) ...............................................................................................................11
    363(m) .............................................................................................................11
    363(m) .............................................................................................................22
    363(m) .............................................................................................................22
    365(a) ..............................................................................................................27
    1107(a) ............................................................................................................27
    1129 ...........................................................................................................21, 26

Fed. R. Bankr. P. 2002(i) ...............................................................................20

Fed. R. Bankr. P. 2002(a)(2) ....................................................................11, 20

Fed. R. Bankr. P. 2002(c)(1) ....................................................................11, 20

Fed. R. Bankr. P. 2002(d) ...............................................................................11

Fed. R. Bankr. P. 2002(k) ...............................................................................20

Fed. R. Bankr. P. 6004 (a) ..............................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fed. R. Bankr. P. 6004(a) ...................................................................................................20

Fed. R. Bankr. P. 6004(a)(c) ...............................................................................................20

Fed. R. Bankr. P. 6004 (b) ..................................................................................................11

Fed. R. Bankr. P. 6004 (c) ...................................................................................................11

Fed. R. Bankr. P. 6004(c) ....................................................................................................20

Fed. R. Bankr. P. 6004 (e) ...................................................................................................11

Fed. R. Bankr. P. 6004 (f) ...................................................................................................11

Fed. R. Bankr. P. 6004 (h) ...........................................................................................9, 11, 30

Fed. R. Bankr. P. 6006(a) ...................................................................................................11

Fed. R. Bankr. P. 6006(c) ...................................................................................................11

Fed. R. Bankr. P. 6006(d) .............................................................................................9, 11, 30

Fed. R. Bankr. P. 9006 .......................................................................................................11

Fed. R. Bankr. P. 9007 .......................................................................................................11

Fed. R. Bankr. P. 9014 ...................................................................................................11, 20

Local Bankruptcy Rule 6004-1 ...........................................................................................11

Local Bankruptcy Rule 9013-1 ...........................................................................................11

UCC ...............................................................................................................................12, 13

UCC, RCW 62A.9A ...........................................................................................................26

UCC §
    9-320 .......................................................................................................................26
    9617 .........................................................................................................................24
    9617 .........................................................................................................................24

TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND INTERESTED PARTIES:

Jelena McWilliams, the duly appointed, qualified and acting chapter 11 trustee (the "Trustee") for the estate of Synapse Financial Technologies, Inc., chapter 11 debtor in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), hereby moves, by way of this Motion (the "Motion") for entry of an Order (the "Sale Order"), approving, among other things, the Trustee's sale of substantially all of the Debtor's assets (or a subset thereof) free and clear of all liens, claims, encumbrances and other interests (except for assumed obligations) to the winning bidder or bidders (the "Winning Bidder") and the winning back-up bidder or bidders (the "Winning Back-Up Bidder") at the Auction to be held on November 15, 2024, in accordance with the terms of the Asset Purchase Agreement ("APA") between the Trustee and the Winning Bidder, and the Trustee and the Winning Back-Up Bidder. As discussions with prospective purchasers to date have indicated that many prospective purchasers have interest in a subset of the Debtor's assets, the Trustee seeks approval to sell select parts of the Debtor's assets to one or more Winning Bidders if expected to maximize value to the Estate.

The Trustee will make every effort to file with the Court prior to the hearing on November 20, 2024, and after the Auction on November 15, 2024, a supplement to this Motion describing the outcome of the Auction, and filing a copy of the APA with the Winning Bidder, a copy of the APA with the Winning Back-Up Bidder and a proposed Sale Order. The Trustee has requested in her motion for entry of the Bidding Procedures Order ("Bidding Procedures Motion") filed concurrently herewith that the Court set a hearing date on this Sale Motion on November 20, 2024 (so that the Trustee may close a sale of Debtor's assets by November 27, 2024). This Motion will not be heard at the hearing on the Bidding Procedures Motion, proposed to be held on October 15, 2024.

By way of this Motion, the Trustee is also seeking the Court's approval of the Debtor's assumption and assignment to the Winning Bidder and the Winning Back-Up Bidder of those unexpired leases and executory contracts, respectively, that the buyer wishes to assume. If applicable, the Trustee will file and serve on contracting counterparties in accordance with the Bidding Procedures

Order that certain *Notice Of: (1) Assumption And Assignment Of Executory Contracts And Unexpired Leases; (2) Establishment Of Cure Amounts In Connection Therewith; (3) Procedures And Deadlines Regarding Oppositions To Assumption And Assignment And Cure Amounts; And (4) Hearing Thereon* (the "Assumption/Assignment Notice") setting forth a schedule of all of the Debtor's known executory contracts and unexpired leases (the "Contracts and Leases Schedule"), along with the Trustee's belief as to all outstanding cure amounts owed by the Debtor to the other parties to those executory contracts and unexpired leases (the "Cure Amount").

By way of this Motion, the Trustee is seeking the Court's authority to assume and assign to the Winning Bidder/Winning Back-Up Bidder all of the Debtor's executory contracts and unexpired leases that the Winning Bidder/Winning Back-Up Bidder wants to have assigned to it and to fix the required Cure Amounts that would need to be paid to the other parties to the executory contracts and unexpired leases to enable compliance with the provisions of Section 365(b) and (f) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule unless the other parties to the executory contracts and unexpired leases file a timely objection to the Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule. By way of this Motion, the Trustee is also seeking a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtor so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b) and (f) of the Bankruptcy Code.

The Debtor rejected substantially all contracts it was party to, pursuant to the Court's *Order Granting Debtor's First Omnibus Motion for Entry of an Order Authorizing Rejection of Executory Contracts and Unexpired Leases* dated May 24, 2024. In the event any contracts that have been rejected, but not terminated, are to be assigned to the Purchaser in connection with a Sale, the Trustee shall obtain the consent of applicable contract or otherwise comply with applicable bankruptcy and non-bankruptcy law to effectuate the assignment of the contract to the purchaser. As substantially all

executory contracts of the Debtor have been rejected, the Trustee does not anticipate filing an Assumption/Assignment Notice but seeks approval to file such notice out of an abundance of caution.

### Background Information and Need for Relief

On April 22, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), schedules and statement of financial affairs. That same day, the Debtor filed an emergency motion for an order approving the sale of all its assets for $9.7 million to TabaPay Holdings LLC and requested that a hearing take place on April 29, 2024. [Dkt. No. 8.] The Debtor has proprietary technology and software that essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' customers (referred to as end users) through certain banking and financial service providers ("Partner Financial Institutions"). *Id.* at 3. The Debtor also filed a motion to approve a settlement reached with Evolve Bank & Trust ("Evolve"), one of its Partner Financial Institutions.

On May 1, 2024, the Court entered an order approving bidding procedures and set a hearing to approve the sale for May 9, 2024. [Dkt. No. 92.] The Debtor reported at the May 9 hearing that the settlement with Evolve had not been consummated due to disputes over Evolve funding a settlement payment. The buyer reported that it was unwilling to proceed with the sale without the Evolve settlement.

On May 13, 2024, Evolve filed a motion for an order restoring access to the "Debtor's Dashboard System" or, alternatively, "Authorizing Evolve to Close all of the Debtor's Demand Deposit Accounts at Evolve Associated with Debtor's Programs." [Dkt. No. 137.] Evolve alleged that it had been denied access to the Debtor's computer systems and had been forced to freeze end user accounts. *Id.* at 2.

On May 13, 2024, the Court conducted a status conference on the sale and a hearing on Evolve's motion. Although extensive arguments were made by counsel and their clients assessing relative blame, it was undisputed that end users had lost access to funds.

On May 15, 2024, the United States Trustee for the Central District of California (the "U.S. Trustee") filed a motion on an emergency basis requesting that the Court enter an order converting the

Chapter 11 Case to chapter 7 for cause, or, in the alternative, for the appointment of a chapter 11 trustee. [Dkt. No. 146.]

On May 24, 2024 (the "Appointment Date"), following a hearing, the Court entered an order appointing a chapter 11 trustee, and Jelena McWilliams was appointed by the U.S. Trustee as the Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196.]

Since the Appointment Date, the Trustee and her advisors have focused their efforts on facilitating data sharing with the Debtor's Partner Financial Institutions to enable them to reconcile ledgers and distribute funds to end users of Synapse's platform. The Trustee has received inbound inquiries to purchase assets of the Debtor's estate. However, the Trustee and her advisors determined that it would be unduly burdensome and risky to effectuate a sale and transfer control of key Synapse systems while reconciliation efforts were ongoing. With an end to the Trustee's facilitation of the reconciliation process in sight, the Trustee is seeking to formalize a sale process to receive the highest and best bid for some or all assets of the Debtor's estate.

Notwithstanding the near-term completion of reconciliation work by Partner Financial Institutions, due to the likely need for Synapse's Partner Financial Institutions, in order for fintech customers and end users to continue to access information and systems currently owned by Synapse, and the substantial administrative claims of trade vendors key to that process, the Trustee believes it may be in the best interest of the Estate and its stakeholders to place value on bids submitted in connection with the process that will commit to assume claims of vendors who are essential to keeping Synapse dashboard access alive, commit to providing information to Synapse's Partner Financial Institutions and fintech customers for a reasonable period to facilitate distributions to end-users and fintech customers by Partner Financial Institutions, and complete remaining reconciliation work, in accordance with applicable law.

After extensive consultation with the Trustee's financial advisor GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley"), and after taking into account the Debtors' financial situation, the Trustee established, subject to the approval of the Bankruptcy Court

4

and the consent of the Debtor's secured creditors, the following timetable in order to achieve the highest and best price for the Debtor's Purchased Assets:

**October 11, 2024 at 4:00 p.m. (prevailing Pacific time) – Bidding Procedures and Sale Objection Deadline** – This is the proposed deadline for parties-in-interest to file any objections to this Motion and the Bidding Procedures Motion.

**October 15, 2024 at 1:30 p.m. (prevailing Pacific time) – Bidding Procedures Hearing** – This is the proposed date of the hearing at which the Court will hear any objections to the Trustee's Bidding Procedure's Motion and the Trustee will seek entry of an order approving the Bidding Procedures.

**October 16, 2024 at 4:00 p.m. (prevailing Pacific time) – File and Serve Notice of Bidding Procedures and Sale Deadline** – One business day after entry of the Bidding Procedures Order or as soon as reasonably practicable thereafter, the Trustee will file, serve on all creditors, equity interest holders and contract counterparties and publish that certain *Notice of Court-Approved Bidding Procedures, Opportunity To Bid on Assets and Auction Schedule*.

**October 25, 2024 at 4:00 p.m. (prevailing Pacific time) – Initial Indication of Interest Deadline** – This is the deadline for all parties who wish to be eligible to participate in the Auction to provide a non-binding expression of interest by delivering to the Trustee all of the following documents: (1) an executed non-disclosure agreement with the form to be obtained from the Trustee and (2) a non-binding written expression of interest in which the Potential Bidder identifies (a) which of the Debtor's assets the Potential Bidder is interested in acquiring; (b) evidence satisfactory to the Trustee of available funds or financing sufficient to consummate the proposed sale with appropriate contact information for such financing sources; (c) a preliminary expected purchase price or range; (d) the expected business structure of the prospective buyer and the identities of all participants in the Potential Bidder; (e) a specific description of remaining due diligence with outstanding questions and requests for information; (f) the identity of any retained counsel and/or financial advisor; and (g) what formal approvals (such as shareholder, board of director, etc.) are still needed for the Potential Bidder to be able to submit a binding bid and consummate a sale transaction.

**November 1, 2024 at 4:00 p.m. (prevailing Pacific time)** – **Initial Bid Deadline** – This is the deadline by when initial bids must be submitted by parties who wish to participate in the Auction. In order to participate in the Auction, all Potential Bidders must comply with the bid requirements set forth in paragraph 9 of the Bidding Procedures and do all of the following:

1. Submit definitive documentation to acquire all or a part of the Purchased Assets;

2. Submit all documents to enable B. Riley to determine whether the Potential Bidder is financially qualified to participate in the Auction; and

3. Submit a deposit equal to 10% of the purchase price, which deposit would be deemed non-refundable if the bidder is deemed to be the Winning Bidder at the Auction and then the Trustee's proposed free and clear sale of the Purchased Assets to the bidder is approved by the Bankruptcy Court. Bidders will have the right to withdraw their bid at any time up until noon (prevailing Pacific time) on November 14, 2024, in which case they will receive a return of their deposit and no longer be eligible to participate in the Auction.

**November 5, 2024 at 4:00 p.m. (prevailing Pacific time)** – **File and Serve Cure Notice Deadline** – This is the deadline for the Trustee to file with the Court and serve on relevant contract counterparties the Assumption/Assignment Notice setting forth the schedule of contracts and leases proposed to be assumed and assigned by the Qualified Bidders, along with Cure Amounts. As substantially all executory contracts were rejected by the Debtor on May 9, 2024 [Dkt. No. 195], the Trustee does not currently anticipate filing an Assumption/Assignment Notice but reserves the right to do so if appropriate.

**November 15, 2024 commencing at 10:00 a.m. (prevailing Pacific time)** – **Auction** – Auction to be held via videoconference with all Qualified Bidders to be provided with particulars in advance of the Auction. In the event that bids received by the Trustee indicate that distinct assets of the Debtor's estate should be sold pursuant to separate Auctions, more than one Auction may be held for those distinct assets.

**November 18, 2024 at 4:00 p.m. (prevailing Pacific time)** – **Cure Notice Objection Deadline** – This is the deadline for parties in interest to file any objections to the Trustee's Assumption/Assignment Notice setting forth the Contracts and Leases Schedule, along with Cure Amount.

**November 20, 2024 at 10 a.m. (prevailing Pacific time)** – **Sale Hearing** – This is the hearing for the Court to consider approval of the Trustee's proposed sale of the Purchased Assets to the Winning Bidder or Bidders at the Auction and at which the Trustee will seek entry of an order approving this Motion.

**November 27, 2024 – Sale Closing Deadline –** This is the outside date by when the Winning Bidder at the Auction is required to close its purchase of the Purchased Assets unless the Winning Bidder and the Trustee jointly agree to extend the outside closing date.

The Bidding Procedures are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets. This is done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder.

For all of the reasons set forth herein and in the accompanying Memorandum of Points and Authorities and concurrently filed Declaration of Jelena McWilliams, the Trustee has concluded that consummating a sale of the Purchased Assets for the most money possible is in the best interests of the Debtor's estate.

The Trustee urges all parties-in-interest and prospective bidders to read the entire Bidding Procedures document to understand the details of the Auction and sale process.

The Trustee respectfully requests that the Bankruptcy Court:

1.      Grant this Motion;

2.      Immediately enter an order granting this Motion;

3.      Find that notice of this Motion, the relief requested therein, and the assumption and assignment of and establishment of Cure Amounts for, the executory contracts and unexpired leases to be assumed and assigned, was proper, timely, adequate, appropriate and sufficient and that no other or further notice of this Motion, the hearing on this Motion, or the assumption and assignment of such executory contracts and unexpired leases is or shall be required;

4.      Find good, sufficient, and sound business purposes and justification and compelling circumstances for the Trustee's sale of the Purchased Assets and assumption and assignment of the

contracts/leases to the Winning Bidder and the Winning Back-Up Bidder prior to, and outside of, a plan of reorganization;

5.    Find that the APA with the Winning Bidder (or bidders) and the APA with the Winning Back-Up bidder[1] (or bidders) was negotiated, proposed and entered into without collusion, in good faith, and from arm's-length bargaining positions and that the Winning Bidder and the winning back-up bidder is acting as a good faith purchaser and is, accordingly, entitled to the protections set forth in section 363(m) of the Bankruptcy Code;

6.    Find the consideration provided by each of the respective Winning Bidder (or bidders) and the Winning Back-Up Bidder (or bidders) for the Purchased Assets: (i) to be fair and reasonable, (ii) to be the highest or otherwise best offer for the Purchased Assets that was received by the Trustee in accordance with the Bidding Procedures Order, (iii) provides a greater recovery for the Debtor's estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the circumstances of these cases, and find that prospective bidders were provided an adequate opportunity to participate in the Auction;

7.    Find that one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied for selling the Purchased Assets free and clear of all lien, claims encumbrances and other interests;

8.    Find that approval of the APA and the consummation of the Trustee's sale of the Purchased Assets and the Trustee's assumption and assignment of the contracts and leases to the Winning Bidder or the winning back-up bidder are in the best interests of the Debtor's estate;

9.    Authorize the Trustee to sell the Purchased Assets to the Winning Bidder (or bidders) and the Winning Back-Up Bidder (or bidders) free and clear of all liens, claims encumbrances and other interests with all liens existing against the Purchased Assets at the time of the closing to attach to the net sale proceeds in the same order of priority, and with the same validity, force and effect, as such liens had against the Purchased Assets immediately before the closing, subject to any rights, claims and defenses of the Trustee and the bankruptcy estates;

---

[1] References herein to "APA" shall in each case include the Winning Bidder's and the Winning Back-Up bidder's form of asset purchase agreement.

8

10.     Determine that (i) with the payment of the Cure Amounts, the Trustee and the Winning Bidder (or bidders) or the Winning Back-Up Bidder (or bidders), as applicable, have cured, or have provided adequate assurance of cure, of any default existing or occurring prior to the closing under any of the assumed and assigned contracts and leases, and the Winning Bidder (or bidders) or Winning Back-Up Bidder (or bidders), as the case may be, has provided adequate assurance of its future performance of and under the assumed and assigned contracts and leases, (ii) the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule have been satisfied unless the other parties to the executory contracts and unexpired leases file a timely objection to this Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule, and (iii) none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtor so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.

11.     Determine that the Trustee's assumption and assignment to the Winning Bidder (or bidders) or the Winning Back-Up Bidder (or bidders) as the case may be, is approved, and the requirements for assumption and assignment are deemed satisfied and that the Trustee is authorized in accordance with 11 U.S.C. §§ 105(a) and 365;

12.     Waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

13.     Grant such other and further relief as the Court deems just and proper under the circumstances of these cases.

Dated:  October 7, 2024

CRAVATH, SWAINE & MOORE LLP


By: _____
GEORGE H. ZOBITZ (*pro hac vice*)
ALEXANDER GERTEN (*pro hac vice*)
Two Manhattan West
375 9th Avenue
New York, NY 10001


KELLER BENVENUTTI KIM LLP


By: _/s/ Thomas B. Rupp_____
JANE KIM
JEREMY V. RICHARDS
THOMAS B. RUPP
425 Market Street, 26th Floor
San Francisco, CA 94105

Counsel for Jelena McWilliams,
in her capacity as Chapter 11 Trustee for
Synapse Financial Technologies, Inc.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A), (M), (N) and (O). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are (i) Sections 105(a), 363(b), (f), (k), (l) and (m), and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002(a)(2), 2002(c)(1) and (d), 6004 (a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure, and (iii) Local Bankruptcy Rules 6004-1 and 9013-1.

### II.    STATEMENT OF FACTS[2]

**A.    The Debtor's Background and Chapter 11 Filing.**

1.    The Debtor has proprietary technology and software which essentially allows financial technology platforms called "fintechs" to provide certain financial products and services to the fintechs' end users through certain banking and financial service providers.

2.    The Debtor wholly owns two (2) subsidiaries:  (i) Synapse Credit LLC ("S Credit"), and (ii) Synapse Brokerage LLC ("S Brokerage"). S Brokerage is a registered broker-dealer and a member of FINRA (Financial Industry Regulatory Authority) and SIPC (Securities Investor Protection Corporation).

3.    The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on April 22, 2024 (the "Petition Date") with the goal of selling substantially all of its assets (the "Purchased Assets") to the highest and best bidder. [Dkt. No. 1.] That same day, the Debtor filed an emergency motion for an order approving the sale of all its assets for $9.7 million to TabaPay Holdings LLC. [Dkt. No. 8.] On May 9, 2024, the Debtor reported that it failed to reach a settlement with its current banking partner, known as Evolve Bank & Trust ("Evolve"). The buyer

---

[2] To avoid repetition, the Trustee incorporates herein by this reference the *Declaration of Sankaet Pathak In Support Of Debtor's First Day Motions* [Dkt. No. 12] and the concurrently filed *Declaration of Jelena McWilliams in Support of the Chapter 11 Trustee's Sale Motion* in support of the facts set forth herein.

reported that it was unwilling to proceed with the sale without the Evolve settlement and the bidding procedures and sale process was halted.

4.      On May 24, 2024, following a hearing, the Court entered an order appointing a chapter 11 trustee (the "Appointment Order") and Jelena McWilliams was appointed by the U.S. Trustee as the Chapter 11 Trustee in this Chapter 11 Case (the "Case"). [Dkt. No. 196.]

**B.      The Debtor's Primary Assets and Secured Loans.**

5.      The Debtor's primary assets that it is seeking to sell are its proprietary technology platform and equity interests in its subsidiaries. In addition, the Debtor may hold valuable causes of action against third parties from which the Trustee may be able to recover substantial value. To date, different prospective purchasers who have discussed a potential transaction with the Trustee and advisors have indicated that they are interested in acquiring a subset of the Debtor's assets rather than substantially all its assets. To that end, the Trustee may seek to sell distinct Synapse assets to separate bidders if she concludes that will provide the highest value to the Estate.

6.      The Debtor is a party to two (2) pre-petition financing arrangements with (i) Silicon Valley Bank, as predecessor to First Citizens Bank & Trust Company ("SVB") and (ii) TriplePoint Capital LLC ("TriplePoint").

7.      **SVB.** Pursuant to a Loan and Security Agreement dated February 19, 2021 between SVB, on the one hand, and the Debtor and S Credit (collectively, the "SVB Borrowers"), on the other hand, and related agreements (collectively, the "SVB Loan Documents"), SVB agreed to make advances in two (2) tranches (Tranche A and Tranche B), with Tranche A not to exceed principal amount of $4 million, and Tranche B not to exceed principal amount of $2 million. All advances are to be repaid "interest only" through January 31, 2022, and beginning February 1, 2022, and the advances are to be repaid in 36 equal monthly installments of principal plus accrued but unpaid interest. As of April 26, 2024, the Debtor valued SVB's secured claim at $1,513,472 in its Schedule D. The SVB Loan Documents grant to SVB a security interest and lien upon all personal property of the Debtor, *other than intellectual property[3]*, to secure its obligations, and SVB recorded a UCC

---

[3] The Collateral of SVB does not include Intellectual Property; however, all Accounts and proceeds of Intellectual Property are purported to be included. The SVB Loan Documents' definition of

financing statement on February 19, 2021, with the Delaware Secretary's Office to perfect such security interest and liens upon such assets.

8.    **TriplePoint**. Pursuant to a Plain English Growth Capital Loan and Security Agreement dated July 29, 2022 between certain designated "lenders" (identified as TPVG, TPVL and TPC) and TriplePoint, as Collateral Agent, on the one hand, and the Debtor, on the other hand, and related agreements (collectively, the "TriplePoint Loan Documents"), TriplePoint agreed to make three (3) facilities available to the Debtor with Part 1 in the principal amount of $9 million, Part 2 in the principal amount of $6 million (upon satisfaction of certain milestones and the signing of warrant agreements), and Part 3 in the principal amount of $5 million (upon satisfaction of certain milestones). The TriplePoint Loan Documents grant to TriplePoint a security interest and lien upon all personal property of the Debtor to secure its obligations and, as illustrated below, TriplePoint recorded a UCC financing statement on July 29, 2022, with the Delaware Secretary's Office to perfect such security interest and liens upon such assets. As of April 26, 2024, the Debtor valued TriplePoint's secured claim at $7,199,624 in its Schedule D.

**C.    Cash Collateral Order.**

9.    Pursuant to the interim, second interim and final cash collateral orders, the Debtor was authorized to use cash collateral in its estate to operate its business and honor certain prepetition obligations (collectively, the "Cash Collateral Orders"). [Dkt. No. 60, 90 and 201.] Pursuant to the Cash Collateral Orders and Section 361 of the Bankruptcy Code, in addition to all the existing security interests and liens previously granted to SVB and TriplePoint as adequate protection for, and to secure the payment of an amount equal to the diminution of the value of the prepetition collateral, SVB and TriplePoint were granted (i) continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "Adequate

---

"Collateral" states that, "[i]f judicial authority (including a U.S. Bankruptcy Court) would hold that a security interest in the underlying Intellectual Property is necessary to have a security interest in such Accounts and such property that are proceeds of Intellectual Property, then the Collateral shall automatically, and effective as of the Effective Date, include the Intellectual Property to the extent necessary to permit perfection of Bank's security interest in such Accounts and such other property of Borrower that are proceeds of the Intellectual Property." The Debtor's sole Intellectual Property asset is a registered trademark. The Debtor does not have any copyright or patent related assets.

Protection Liens") all prepetition and postpetition tangible and intangible property and assets, whether real or personal of the Debtor and (ii) allowed superpriority administrative expense claims in the Debtor's bankruptcy case and any successor cases (the "Adequate Protection Superpriority Claim") with priority over all other administrative expense claims and unsecured claims against the Debtor or its estate. The amount of diminution of the value of the secured creditor's prepetition collateral and, therefore, the value of the Adequate Protection Liens is uncertain at this time.

**D.    Assets to be Sold.**

10.    The Trustee seeks to sell all of the Debtor's right, title and interest in and to all of the assets of Debtor used in connection with its business and which are summarized below (the "Purchased Assets"), free and clear of all liens, claims and interests pursuant to Section 363 of the Bankruptcy Code. As the Debtor no longer has an operating business, the Purchased Assets may be sold to separate bidders or retained by the Estate for subsequent liquidation if the Trustee believes, in her business judgment, that selling such assets will be in the best interest of the Estate and its stakeholders. Subject to the particular terms and conditions of the APA between the Trustee and the Winning Bidder, or the Trustee and the Winning Back-Up Bidder, the Purchased Assets generally consist of, but are not limited to, the following:

(a)    All of the Debtor's supplies, computers, printers, equipment, furniture, fixtures and other similar assets or tangible personal property owned by Sellers;

(b)    All of the Debtor's respective interests in Synapse Financial Technologies, Inc., which wholly owns Synapse Brokerage, LLC and Synapse Credit, LLC.

(c)    All of Debtor's rights, title, interest and benefits under the Debtor's agreements, contracts, licenses, instruments, commitments and understandings;

(d)    All advance payments, claims for refunds and deposits, and other prepaid items relating to the Purchased Assets or the obligations assumed by a buyer, existing as of the closing date of a sale;

14

(e)     All of the Debtor's accounts and notes receivable related to the Debtor's business and all schedules, records and other documentation related to such accounts or notes receivable, unless designated by the Debtors as an Excluded Asset (defined below);

(f)     All of the Debtor's books and records directly related to, or used in connection with, the conduct of the Debtor's business or pertaining to the Purchased Assets, regardless of the medium on which such information is stored or maintained including, without limitation, all customer and employment records, vendor information and contracts, business plans and strategies, financial and operational data and reports, and marketing information and materials;

(g)     To the extent transferable, all of the Debtor's licenses, permits or other authorizations of governmental or regulatory entities that are required under any laws, rules and regulations applicable to or affecting the business;

(j)     All of the Debtor's intellectual property rights and all goodwill associated with such intellectual property rights, including, without limitation, (i) the right to use, copy, modify, exploit, license, assign, convey and pledge the intellectual property rights, (ii) the right to exclude others from using the intellectual property rights, (iii) the right to sue others and collect damages for past, present and future infringement of the intellectual property rights, (iv) the right to create derivatives of the intellectual property and retain full ownership thereof and (v) the right to file and prosecute applications for registration, now pending or hereinafter initiated, to protect any rights in the intellectual property rights;

(m)     Customer lists and contact information; and

(n)     All goodwill associated with the Debtor's business and the Purchased Assets.

15

**E.** **The Bidding Procedures.**

Concurrently with this Motion, the Trustee filed with the Bankruptcy Court, the *Chapter 11 Trustee's Motion For Entry of Order Approving Bidding Procedures For Free And Clear Sale Of Assets And Granting Related Relief* (the "Bidding Procedures Order").

Since her appointment, the Trustee has received inbound interest for the Debtor's assets. The Trustee has responded to this inbound interest, but has not sought to effectuate a sale until this point to avoid interrupting the reconciliation process underway with Partner Financial Institutions. With the completion of the reconciliation process in sight, the Trustee now seeks approval to sell select assets of the Debtor's Estate in accordance with the process set forth in the Bidding Procedures Order. The Trustee does not have a stalking horse bid lined up at the time of the filing of this Motion and has concluded that initiating a formal sale process in accordance with the Bidding Procedures without a stalking horse is the best option for the bankruptcy estate, given the financial situation of the Estate. The Trustee retains the right to seek an alternative order from the Court if facts and circumstances dictate otherwise.

The Bidding Procedures, subject to approval by the Bankruptcy Court, are designed to ensure that the highest price possible is paid for the Purchased Assets by a purchaser who has the financial ability to close on a purchase of the Purchased Assets. This is being done by providing all prospective buyers with a level playing field with no bidder having any financial advantage over any other bidder. Discussions that the Trustee and her advisors have had with prospective purchasers so far have indicated that prospective purchasers have interest in different assets held by the Debtor's estate.

The Bidding Procedures explain to prospective bidders how a prospective bidder becomes qualified to participate in the Auction and how the Auction will proceed. The Trustee, in consultation with B. Riley, is confident that the Bidding Procedures make the most sense under the circumstances of the Case and will help result in the highest and best price being paid for the Purchased Assets.

For all of the reasons set forth herein and in the accompanying Memorandum of Points and Authorities and concurrently filed Declaration of Jelena McWilliams, the Trustee has concluded that

consummating a sale of the Purchased Assets pursuant to the process set forth in the Bidding Procedures is in the best interests of the Debtor's estate.

## III. DISCUSSION

### A. The Bankruptcy Court Should Authorize the Trustee To Sell Substantially All the Debtor's Assets.

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." 11 U.S.C. § 363(b)(1). To approve a use, sale or lease of property other than in the ordinary course of business, the court must find "some articulated business justification." *See, e.g., In re Lionel Corp. (Comm. of Equity SEC Holders v. Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)). *See generally In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp.* and requiring good faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate, and a business justification exists for authorizing the sale. *In re Huntington, Ltd.*, 654 F.2d 578, 589 (9th Cir. 1981); *In re Walter*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988) (*quoting* the Fifth Circuit Court of Appeals in *In re Continental Air Lines, Inc.*: "That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). The Ninth Circuit has also held that section 363 allows the sale of substantially all assets of a debtor's bankruptcy estate after notice and a hearing. *In re Qintex Ent., Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991).

In determining whether a sale satisfies the business judgment standard, courts have identified four requirements: (1) there must be a sound business reason for the sale; (2) there must be an accurate and reasonable notice of the sale be given to interested persons; (3) the sale must yield an adequate

price (*i.e.*, one that is fair and reasonable); and (4) the parties to the sale must have acted in good faith. *In re Titusville Country Club (Titusville Country Club v. Pennbank)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *see also, In re Walter*, 83 B.R. at 19-20 (*quoting* the factors listed in *In re Continental Air Lines, Inc.*: "such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.").

The Trustee submits that the proposed sale of assets pursuant to the terms of the Bidding Procedures Order clearly comports with each of these four criteria, and demonstrates that the Trustee's business judgment to proceed with the proposed sale of substantially all of the Debtor's assets in accordance with the terms of the Bidding Procedures Order is sound

### 1.   <u>Sound Business Purpose.</u>

"[T]here must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy court may order such disposition under section 363(b)." *In re Lionel Corp.*, 722 F.2d at 1070. The Ninth Circuit Bankruptcy Appellate Panel in *In re Walter*, 83 B.R. at 19 has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). In *In re Walter*, the Bankruptcy Appellate Panel, adopting the reasoning of the Fifth Circuit in *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) and the Second Circuit in *In re Lionel Corp.*, articulated the standard to be applied under Section 363(b) as follows:

> Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders, alike. He might, for example, look to such relevant facts as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-

vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In Re Walter*, 83 B.R. at 19-20, *quoting In re Continental Air Lines, Inc.*, 780 F.2d at 1226.

The facts pertaining to the Trustee's proposed sale of the Purchased Assets clearly substantiate the Trustee's business decision that such contemplated sale serves the best interests of the Debtor's estate and merits the approval of the Court.

For all of the reasons explained above, the Debtor faces serious financial and operational challenges. The Debtor's estate has very limited cash on hand, terminated all employees effective May 24, 2024, and has effectively ceased operations. Despite these challenges, the Debtor's estate includes proprietary technology and certain other assets that the Trustee believes have significant demand and value. The Trustee and her advisors are in receipt of numerous inquiries regarding the acquisition of the Purchased Assets from parties in the banking, payments, fintech, and alternative finance spaces.

Based on the foregoing, the Trustee determined in the exercise of her business judgment that the best option available would be to conduct an expedited free and clear asset sale process in a chapter 11 bankruptcy proceeding and consummate that asset sale before the Debtor's shutdown impacts the value of estate assets. The Trustee believes that proceeding in this manner will afford the best opportunity to achieve the maximum price possible for their assets for the benefit of the Debtor's creditors and other parties in interest.

The Trustee therefore submits that her proposed sale is justified by sound business purposes, satisfying the first requirement for a sale under Section 363(b) of the Bankruptcy Code.

**2.**    **Accurate and Reasonable Notice.**

In connection with a proposed sale under Section 363 of the Bankruptcy Code, "four pieces of information must be presented to the creditors. The notice should: place all parties on notice that the debtor is [selling its] business; disclose accurately the full terms of the sale; explain the effect of the sale as terminating the debtor's ability to continue in business; and explain why the proposed price is reasonable and why the sale is in the best interest of the estate." *In re Delaware & Hudson Ry. Co.*,

124 B.R. 169, 180 (D. Del. 1991). "A notice is sufficient if it includes the terms and conditions of the sale" and "if it states the time for filing objections". *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988). "The purpose of the notice is to provide an opportunity for objections and hearing before the court if there are objections." *Id.*

In connection with the Trustee's request for Court approval of bidding procedures, the Trustee has requested that the Court approve a form of sale notice (the "Sale Notice") which the Trustee submits complies with all of the requirements of providing notice of this Motion and the proposed sale and which will be served on all creditors and equity interest holders and any other required parties in interest. The Trustee submits that the foregoing will satisfy the requirements of the Bankruptcy Rules 6004(a) and (c), which provide as follows:

> (a) . . . Notice of a proposed . . . sale . . . of property . . . not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2),(c)(1),(i) and (k) . . . .
> (c) . . . A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession . . . .

Fed. R. Bankr. P. 6004(a)(c).

### 3. Fair and Reasonable Price.

In order to be approved under Section 363(b) of the Bankruptcy Code, the purchase price must be fair and reasonable. *Coastal Indus., Inc. v. U.S. Internal Revenue Serv. (In re Coastal Indus., Inc.)*, 63 B.R. 361, 366, 368 (Bankr. N.D. Ohio 1986). However, the Trustee also realizes that "[her] main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Res., Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992). "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Prods, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988); *see also In re Wilde Horse Enterprises*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold.").

The terms of the Bidding Procedures and the marketing and sale process undertaken by the Trustee and B. Riley are designed to ensure that the highest price possible is obtained for the Purchased Assets under circumstances where the Debtor's estate is financially constrained, and time is of the essence. The post-petition marketing process that the Trustee is undertaking in accordance with the Bidding Procedures approved by the Court ensures that under the circumstances, the highest and best price is paid for the Purchased Assets and that purchase price will necessarily be equal to the current fair market value of the Purchased Assets.

### 4.    Good Faith.

When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies*, 788 F.2d at 149-50. Such a procedure "ensures that section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of section 1129, that the bankruptcy court independently scrutinizes the debtor's reorganization plan and make[s] a finding that it has been proposed in good faith." *Id.* at 150 (internal quotations omitted).

"'Good faith' encompasses fair value, and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises*, 136 B.R. at 842. With respect to a debtor's conduct in conjunction with the sale, the good faith requirement "focuses principally on the element of special treatment of the debtor's insiders in the sale transaction". *See In re Indus. Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).

With respect to the buyer's conduct, this Court should consider whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders". *In re Abbotts Dairies*, 788 F.2d at 147 (*quoting In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 842; *In re Alpha Indus., Inc.*, 84 B.R. 703, 706 (Bankr. D. Mont. 1988). In short, "[l]ack of good faith is generally determined by fraudulent conduct during the sale proceedings." *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988) (*quoting In re Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983)); *see also In re M Capital Corp.*, 290 B.R. 743, 746 (B.A.P. 9th Cir. 2003).

In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the following test for determining whether a buyer is a good faith purchaser:

> A good faith buyer "is one who buys 'in good faith' and 'for value.'" [citations omitted.] '[L]ack of good faith is [typically] shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."' [citations omitted.]

*Id.* at 577.

The Ninth Circuit made clear in *Filtercorp* that this standard for determining good faith is applicable even when the buyer is an insider. To the extent the Winning Bidder requests or requires a good faith finding under section 363(m) of the Bankruptcy Code (which the Trustee believes will be the case), the Trustee will supplement this Motion either in writing or orally at the hearing on the Motion with additional information regarding the purchaser. Based on the foregoing, and a declaration to be submitted (or testimony provided) by the Winning Bidder describing its good faith conduct throughout the sale process, the Trustee submits that the Court should find that the Winning Bidder constitutes a good faith purchaser entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

**B.**     **Section 363(f) of the Bankruptcy Code Permits the Trustee's Sale of the Purchased Assets To Be Free and Clear of Any and All Liens, Claims, Encumbrances and Interests.**

The Purchased Assets are of uncertain value. It is the Trustee's hope that marketing and sale efforts will result in the payment in full of all secured debt, and thus, SVB and TriplePoint will consent to the sale under section 363(f)(3). In the event that is not possible, the Trustee intends to seek the consent of SVB and TriplePoint to sell the Purchased Assets free and clear of their liens and interests pursuant to Section 363(f)(2). However, in order to maintain flexibility in the unlikely event that section 363(f)(2) and (3) are not satisfied, and with respect to any other parties-in-interest other than the SVB and TriplePoint asserting a lien, claim, interest or encumbrance in the Purchased Assets, the Trustee's discussion below includes an analysis of sections 363(f)(1), (4) and (5).

Section 363(f) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1)   applicable non-bankruptcy law permits the sale of such property free and clear of such interest; ...

(2)   such entity consents;

(3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)   such interest is in bona fide dispute; or

(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive. Thus, a debtor in possession or trustee need only meet the provisions of one of the five subsections of section 363(f) in order for a sale of property to be free and clear of any and all liens, claims, interests, or encumbrances of any nature (defined collectively as "Encumbrances").[4] The Trustee submits that one or more of the tests of Bankruptcy Code section 363(f) are satisfied with respect to the Trustee's proposed sale of the Purchased Assets, free and clear of Encumbrances.

## 1.    The Trustee's Proposed Sale Is Permissible Pursuant to Section 363(f)(1).

Applicable non-bankruptcy law permits the sale of the Purchased Assets free and clear of such interest. *See e.g., In the Matter of Spanish Peaks Holdings II, LLC,*872 F.3d 892 (9th Cir. 2017) ("Section 363(f)(1) does not require an actual or anticipated foreclosure sale. It is satisfied if such a sale would be legally permissible") (holding that, under Montana law, a foreclosure sale to satisfy a mortgage terminates a subsequent lease on the mortgaged property, and, therefore, the sale free and clear of a lease was permitted under section 363(f)(1)).

For example, under California law, a foreclosure sale of a personal property interest would terminate junior interests if conducted pursuant to the lien of a deed of trust, or an execution sale pursuant to a judgment lien. Specifically, a junior lienholder in California could be compelled to accept

---

[4] "The Bankruptcy Code does not define the phrase 'interest in ... property' for purposes of § 363(f)." *See In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 825 (Bankr. C.D. Cal. 2017). "The Third Circuit has held that the phrase 'interest in ... property' is 'intended to refer to obligations that are connected to, or arise from, the property being sold.' *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259 (3d Cir. 2000). That conclusion is echoed by *Collier on Bankruptcy*, which observes a trend in caselaw 'in favor of a broader definition [of the phrase] that encompasses other obligations that may flow from ownership of the property.' 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[1] (16th ed. 2017)." *Id.*

23

a money satisfaction upon a senior secured party's disposition of collateral under the default remedies provided in § 9617 of California's Uniform Commercial Code.

Based on the foregoing, the Trustee submits that applicable non-bankruptcy law permits the sale of the Property, free and clear of Encumbrances.

**2.    The Trustee's Proposed Sale Is Permissible Pursuant to 11 U.S.C. Section 363(f)(2).**

Section 363(f)(2) of the Bankruptcy Code authorizes a sale to be free and clear of an interest if the interest holder consents to the sale. However, the "consent" of an entity asserting an interest in the property sought to be sold, as referenced in section 363(f)(2) of the Bankruptcy Code, can be implied if such entity fails to make a timely objection to the sale after receiving notice of the sale. *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

As discussed above, the Trustee is optimistic that SVB and TriplePoint will consent to the Trustee's sale of the Purchased Assets free and clear of their liens. In the event that there are any other Encumbrance holders, the Trustee requests that the Bankruptcy Court approve the sale of the Purchased Assets free and clear of all Encumbrances of those parties who do not file a timely objection to the sale, by deeming all such parties to have consented to the sale pursuant to section 363(f)(2) of the Bankruptcy Code.

**3.    The Trustee's Proposed Sale Is Projected To Be Permissible Pursuant to 11 U.S.C. Section 363(f)(3).**

Section 363(f)(3) of the Bankruptcy Code authorizes a sale to be free and clear of an interest if such interest is a lien and the price at which the property to be sold is greater than the aggregate value of all liens against the property. The value of the Purchased Assets is currently uncertain, and in the event the Purchased Assets can be sold for an amount in excess of the aggregate value of all liens against the Debtor's property Section 363(f)(3) would be satisfied.

4.      **The Trustee's Proposed Sale Is Permissible Pursuant to 11 U.S.C. Section 363(f)(4).**

Section 363(f)(4) permits a sale free and clear of an interest if such interest is in bona fide dispute. Here, the Trustee is not seeking Bankruptcy Court approval of the sale under section 363(f)(4) as it pertains to SVB's or TriplePoint's security interest. However, to the extent any other party in interest asserts an Encumbrance against the Purchased Assets, the Trustee reserves the right to contend that such Encumbrance is in bona fide dispute.

5.      **The Trustee's Proposed Sale Is Permissible Pursuant to 11 U.S.C. Section 363(f)(5).**

Section 363(f)(5) of the Bankruptcy Code permits a sale of property free and clear of liens and interests if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest". 11 U.S.C. § 363(f)(5).

The Bankruptcy Appellate Panel for the Ninth Circuit has scrutinized § 363(f)(5) in the context of the sale of real property. *See Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*), 391 B.R. 25 (9th Cir. B.A.P. 2008). In *Clear Channel*, the senior secured creditor attempted to purchase the debtor's real property by way of a credit bid, free and clear of the interest of a nonconsenting junior lienholder outside of a plan of reorganization. The Bankruptcy Court approved the sale to the senior lender under § 363(f)(5), finding that § 363(f)(5) permits a sale free and clear of the creditor's interest in property "whenever a claim can be paid with money". 391 B.R. at 42.

In reversing the Bankruptcy Court's decision, the Bankruptcy Appellate Panel found that § 363(f)(5) requires that "(1) a proceeding exists or could be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest." *Id*. at 41. Taking up these factors in reverse order, the Bankruptcy Appellate Panel concluded that a lien, such as the lien of a secured lender, constitutes an "interest" for purposes of § 363(f)(5). With respect to the second factor, the Bankruptcy Appellate Panel ruled that § 363(f)(5) refers to those proceedings in which the creditor "could be compelled to take *less* than the value of the claim secured by the interest". *Id*. at 42. In order to approve a sale free and clear under § 363(f)(5), the Court must "make a finding of the existence of

… a mechanism [to address extinguishing the lien or interest without paying such interest in full] and the [debtor in possession] must demonstrate how satisfaction of the lien 'could be compelled'". *Id*. at 45. Finally, the Bankruptcy Appellate Panel held that § 363(f)(5) requires that there be, "or that there be the possibility of, some proceeding, either at law or at equity, in which the nondebtor could be forced to accept money in satisfaction of its interest". *Id.*

In *In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D. Wash. 2009), decided after *Clear Channel*, the bankruptcy court held that *Clear Channel* "does not preclude a §363(b) sale free and clear for an amount less than enough to satisfy all liens". *Id.* at 867. "The [Bankruptcy Appellate] Panel nowhere addressed non-contractual mechanisms whereby a lienholder might get less than full payment yet lose the lien. In fairness, the appellees [in *Clear Channel*] did not even argue that there were any qualifying legal or equitable proceedings beyond cramdown under §1129." *Id.* at 869.[5]

"As in *Clear Channel*, subsection (f)(5) is the only subsection of § 363 which might here permit the trustee's proposed auction if the proceeds do not cover the debts secured by the collateral sold. But there are legal and equitable proceedings in Washington in which a junior lienholder could be compelled to accept a money satisfaction: a senior secured party's disposition of collateral under the default remedies provided in part VI of Article 9, Secured Transactions of Washington's Uniform Commercial Code, RCW 62A.9A." *Id.*

Other examples provided by the *Jolan* court included: (1) a receiver's sale free and clear of liens under applicable Washington law; (2) the liquidation of a probate estate under applicable Washington law; (3) a personal property tax sale; (4) a federal tax lien sale; and (5) a judicial or nonjudicial foreclosure of real property.

As discussed above in connection with section 363(f)(1), there are legal and equitable proceedings available in California and other jurisdictions that parallel the proceedings discussed by the bankruptcy court in *Jolan*.

---

[5] *But see Clear Channel*, 391 B.R. at 44, n. 21 ("*Collier* seems to indicate that UCC §9-320, which permits a sale free and clear of a consensual security interest if the collateral is sold in the ordinary course of business of the debtor, might satisfy paragraph (5). We think, however, that such a use is better classified under paragraph (1).").

Here, all of the factors set forth in *Clear Channel* for a sale free and clear of claimants' interests could be satisfied. Specifically, any party who asserts an "interest" in the Purchased Assets could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. Similarly, any unsecured creditor of the Debtor's estate could undeniably be forced to accept, via court proceedings whereby such creditors could obtain money judgments against the Debtor, money satisfaction of their claims.

Based upon all of the foregoing, all creditors of the Debtor's estates, could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interest.

## C.    The Bankruptcy Court Should Authorize the Trustee To Assume and Assign to The Winning Bidder or the Winning Back-Up Bidder All of the Assigned Contracts That the Winning Bidder or the Winning Back-Up Bidder, as the Case May Be, Desires.

Barring exceptions not herein relevant, sections 365(a) and 1107(a) authorizes a trustee or debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor." A trustee or debtor in possession may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996). In reviewing a trustee's or debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *In re Continental Country Club, Inc.,* 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *see also In re Gucci*, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the trustee or debtor unless that judgment is the product of bad faith, whim or caprice. *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory contracts and unexpired leases, provided that the debtor first assumes such executory contracts and unexpired leases in accordance with section 365(b)(1), and provides adequate assurance of future

performance by the assignee. Pursuant to section 365(b)(1), assumption of executory contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1); *see also In re Bowman*, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995); *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P. 1993). Pursuant to section 365(f)(1) of the Bankruptcy Code, a debtor may assign an executory contract or unexpired lease pursuant to section 365(f)(2) of the Bankruptcy Code notwithstanding any provision in such executory contract or unexpired lease that prohibits, restricts or conditions the assignment of such executory contract or unexpired lease.

The assumption and assignment of executory contracts furthers the goals of Chapter 11 of promoting reorganization by balancing the debtor's interest in maximizing the value of its estate against the contracting party's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred. *In re Embers 86th Street. Inc.*, 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

By way of this Motion, the Trustee is also seeking the Court's approval of the Trustee's assumption and assignment to the Winning Bidder and the Winning Back-Up Bidder of those unexpired leases and executory contracts, respectively, that the Winning Bidder and the Winning Back-Up Bidder, respectively, wish to assume.

As the Debtor rejected substantially all its executory contracts pursuant to the Court's *Order Granting Debtor's First Omnibus Motion for Entry of an Order Authorizing Rejection of Executory Contracts and Unexpired Leases* dated May 9, 2024, the Trustee does not anticipate assuming and assigning contracts in accordance with these procedures, but seeks their approval out of an abundance of caution.

If applicable, the Trustee will file and serve on contracting counterparties that certain *Notice Of: (1) Assumption And Assignment Of Executory Contracts And Unexpired Leases; (2) Establishment Of Cure Amounts In Connection Therewith; (3) Procedures And Deadlines Regarding Oppositions To*

*Assumption And Assignment, And Cure Amounts; And (4) Hearing Thereon* as approved by the Court (the "Assumption/Assignment Notice")[6] setting forth a schedule of all of the Debtor's known executory contracts and unexpired leases (the "Contracts and Leases Schedule"), along with the Trustee's belief as to all outstanding cure amounts owing by the Debtor to the other parties to those executory contracts and unexpired leases (the "Cure Amount").

By way of this Motion, the Trustee is seeking the Court's authority to assume and assign to the Winning Bidder/Winning Back-Up Bidder all of the Debtor's executory contracts and unexpired leases that the buyer wants to have assigned to it and to fix the required Cure Amounts that would need to be paid to the other parties to the executory contracts and unexpired leases to enable compliance with the provisions of Section 365(b)(1)(A) of the Bankruptcy Code at the Cure Amounts set forth in the Contracts and Leases Schedule unless the other parties to the executory contracts and unexpired leases file a timely objection to the Motion and the Court determines that the required Cure Amount is different than the amount set forth in the Contracts and Leases Schedule. By way of this Motion, the Trustee is also seeking a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtor so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code.

The Trustee submits that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtor so that no further payments beyond the proposed Cure Amounts are required to enable compliance with the provisions of Section 365(b)(1)(B) of the Bankruptcy Code. The Trustee therefore submits that any party that fails to file a timely objection to this Motion should be deemed to have consented to the Trustee's proposed Cure Amounts and pecuniary loss amounts and be forever barred from challenging the Trustee's proposed Cure Amounts and pecuniary loss amounts.

Pursuant to the Bidding Procedures, an Initial Bid (due November 1, 2024) must identify all of the Debtor's executory contracts and unexpired leases with respect to which a Bidder seeks

---

[6] The Trustee has requested in her motion for approval of bidding procedures that the Court approve the Trustee's proposed form of the Assumption/Assignment Notice.

assignment from the Debtor, with the Winning Bidder having the right to amend such list at any time prior to the commencement of the hearing on this Motion.

**D.**   **The Trustee Requests the Court to Waive the Fourteen-Day Waiting Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d).**

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use, sale or lease of property . . . is stayed until the expiration of fourteen days after entry of the Court order, unless the Court orders otherwise. Bankruptcy Rule 6006(d) has a similar provision with respect to an order approving of a debtor's assumption and assignment of unexpired leases and executory contracts.

For all of the reasons set forth above, the Trustee believes that selling the Purchased Assets in accordance with the timeline provided in the Bidding Procedures is in the best interest of the Debtor's estate. Closing the sale of the Purchased Assets as soon as possible will minimize the need for the Trustee to expend further cash or accrue administrative expenses for estate operations. In order to facilitate the most expeditious closing possible, the Trustee requests that the order granting this Motion be effective immediately upon entry by providing that the fourteen-day waiting periods of Bankruptcy Rule 6004(h) and 6006(d) are waived.

## IV.   <u>CONCLUSION</u>

Based upon all of the foregoing, the Trustee respectfully requests that the Court enter an order granting this Motion in its entirety and all of the relief requested above in this Motion.

Dated: October 7, 2024

CRAVATH, SWAINE & MOORE LLP

By: _____
GEORGE H. ZOBITZ (*pro hac vice*)
ALEXANDER GERTEN (*pro hac vice*)
Two Manhattan West
375 9th Avenue
New York, NY 10001

KELLER BENVENUTTI KIM LLP

By:  */s/ Thomas B. Rupp*
JANE KIM
JEREMY V. RICHARDS
THOMAS B. RUPP
425 Market Street, 26th Floor
San Francisco, CA 94105

Counsel for Jelena McWilliams,
in her capacity as Chapter 11 Trustee for
Synapse Financial Technologies, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Cravath, Swaine & Moore LLP, 2 Manhattan West, 375 Ninth Avenue, New York, NY 10001

A true and correct copy of the foregoing document entitled (*specify*):  CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; (C) WAIVING THE 14-DAY STAY PERIODS OF BANKRUPTCY RULES 6004(h) AND 6006(d); AND (D) GRANTING RELATED RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/7/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Raymond O Aghaian    raghaian@kilpatricktownsend.com, ndelman@kilpatricktownsend.com;moroberts@ktslaw.com
Ron Bender    rb@lnbyg.com
David A Berkley    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
J Scott Bovitz    bovitz@bovitz-spitzer.com
Rudy J Cerone    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
Sara Chenetz    schenetz@perkinscoie.com,
docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
Russell Clementson    russell.clementson@usdoj.gov
Andrew Michael Cummings    andrew.cummings@hklaw.com,
philip.dobbs@hklaw.com;hapi@hklaw.com;reena.kaur@hklaw.com
Michael G. Farag    mfarag@gibsondunn.com
Paul R. Glassman    pglassman@stradlinglaw.com
Nicholas Christian Glenos    cglenos@bradley.com
Michael H Goldstein    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
Michael I. Gottfried    mgottfried@elkinskalt.com,
cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
Steven T Gubner    sgubner@bg.law, ecf@bg.law
Ralph P Guenther    rguenther@guentherlawgroup.com
Robert T. Honeywell    robert.honeywell@klgates.com
Lance N Jurich    ljurich@loeb.com,
pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
Jeffrey C Krause    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
William J Levant    wlevant@kaplaw.com, wlevant@gmail.com
Adam A Lewis    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
Jelena McWilliams (TR)    jmcwilliams@cravath.com, mao@cravath.com
Krikor J Meshefejian    kjm@lnbyg.com
Fred Neufeld    fneufeld@stradlinglaw.com, tingman@sycr.com
Valerie Bantner Peo    vbantnerpeo@buchalter.com
David M Poitras    dpoitras@bg.law
Holly Roark    holly@roarklawoffices.com, courtnotices@roarklawoffices.com
Paul M Rosenblatt    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
Brandy A Sargent    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
Callan C Searcy    bk-csearcy@texasattorneygeneral.gov
Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
Jason D Strabo    jstrabo@mwe.com, jbishopjones@mwe.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
Jeffrey C Wisler    jwisler@connollygallagher.com, dperkins@connollygallagher.com
Claire K Wu    claire.wu@pillsburylaw.com, irene.hooper@pillsburylaw.com;docket@pillsburylaw.com
Beth Ann R. Young    bry@lnbyg.com, bry@lnbyb.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 10/7/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Darren Azman
One Vanderbilt Avenue
New York, NY 10017-3852

Jake Jumbeck
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street, Suite 4000
Chicago, IL 60606-0029

Robert J Labate
400 South Hope Street, 8th Floor
Los Angeles, CA 90071

Neda Shapourian
Unit21, Inc.
49 Geary St. Ste 200
San Francisco, CA 94108

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 10/7/2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/7/2024 | Robert N. Greenfield | /s/ *Robert N. Greenfield* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.