| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| M. Douglas Flahaut SBN 245558<br>ECHO PARK LEGAL, APC<br>2210 Sunset Blvd. #301<br>Los Angeles, CA 90026<br>(310) 709-0658<br>df@echoparklegal.com<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Victor Medeiros | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.<br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 1:24-bk-10646-MB<br><br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE: 02/11/2025<br>TIME: 10:00 a.m.<br>COURTROOM: 303 & ZoomGov (Info below and at http://ecf-ciao.cacb.uscourts.gov/kioskPDF/MB_021125.pdf. |

**Movant**: Victor Medeiros

1. **Hearing Location**:
   - ☐ 255 East Temple Street, Los Angeles, CA 90012
   - ☒ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☐ 3420 Twelfth Street, Riverside, CA 92501
   - ☐ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  01/21/2025

ECHO PARK LEGAL, APC
_____
Printed name of law firm (if applicable)

M. Douglas Flauaut
_____
Printed name of individual Movant or attorney for Movant

/s/ M. Douglas Flahaut
_____
Signature of individual Movant or attorney for Movant

_____
This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 2                        **F 4001-1.RFS.NONBK.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☐ Plaintiff

   b. ☐ Defendant

   c. ☒ Other (*specify*):  Subpoena Respondent

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*: N/A

   b. *Docket number*: N/A

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending*:
      United States District Court for the Southern District of New York

   d. Causes of action or claims for relief (Claims):
      N/A - Grand jury investigation.

3. **Bankruptcy Case History:**

   a. ☒ A voluntary  ☐ An involuntary   petition under chapter   ☐ 7 ☒ 11 ☐ 12 ☐ 13
      was filed on (*date*)  04/22/2024  .

   b. ☐ An order to convert this case to chapter   ☐ 7 ☐ 11 ☐ 12 ☐ 13
      was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☒ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☐ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 3                              **F 4001-1.RFS.NONBK.MOTION**

f.    ☐  The bankruptcy case was filed in bad faith.

   (1) ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐  The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

   (3) ☐  Multiple bankruptcy cases affect the Nonbankruptcy Action.

   (4) ☐  The Debtor filed only a few case commencement documents.  No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g.    ☒  Other (*specify*):
      Movant, an insured under Debtor's D&O insurance policy, requests order authorizing payment of policy proceeds. Proceeds are not estate property; alternatively, balance of hardships justifies terminating stay.

5.    **Grounds for Annulment of Stay.**  Movant took postpetition actions against the Debtor.

a.    ☐  The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.    ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c.    ☐  Other (*specify*):

6.    **Evidence in Support of Motion:  (*Important Note:  declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)**

a.    ☒  The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b.    ☒  Supplemental declaration(s).

c.    ☐  The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d.    ☒  Other evidence (*specify*):
      Insurance policy documents and coverage position letter, attached to and authenticated by Declaration of Anden Chow.

7.    ☒  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1.    Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2.    ☐  Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3.    ☐  The stay is annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                          Page 4                          **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.


Date:  01/21/2025

ECHO PARK LEGAL, APC
Printed name of law firm (*if applicable*)

M. Douglas Flahaut
Printed name of individual Movant or attorney for Movant


/s/ M. Douglas Flahaut
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*) __Anden Chow_____, declare as follows:

1.   I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding (Nonbankruptcy Action) because:

   ☐  I am the Movant.
   ☒  I am Movant's attorney of record in the Nonbankruptcy Action.
   ☐  I am employed by Movant as (*title and capacity*):
   ☐  Other (*specify*):

2.   I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

3.   In the Nonbankruptcy Action, Movant is:

   ☐  Plaintiff
   ☐  Defendant
   ☒  Other (*specify):* Subpoena Respondent

4.   The Nonbankruptcy Action is pending as:

   a.  *Name of Nonbankruptcy Action*: N/A
   b.  *Docket number*: N/A
   c.  *Nonbankruptcy court or agency where Nonbankruptcy Action is pending*:
       United States District Court for the Southern District of New York

5.   **Procedural Status of Nonbankruptcy Action**:

   a.  The Claims are:
       N/A - Grand jury investigation


   b.  True and correct copies of the documents filed in the Nonbankruptcy Action are attached as Exhibit _____.

   c.  The Nonbankruptcy Action was filed on (*date*) _____.

   d.  Trial or hearing began/is scheduled to begin on (*date*) _____.

   e.  The trial or hearing is estimated to require _____ days (*specify*).

   f.  Other plaintiffs in the Nonbankruptcy Action are (*specify*):

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g.   Other defendants in the Nonbankruptcy Action are (*specify*):

6.   **Grounds for relief from stay:**

a.   ☐   Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.   ☐   Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.   ☒   Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.  The insurance carrier and policy number are (*specify*):

   Euclid Financial, Policy No. EFI1203189-02

d.   ☐   The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

   (1)  ☐   It is currently set for trial on (*date*) _____.

   (2)  ☐   It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____. The basis for this belief is (*specify*):

   (3)  ☐   The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.   ☐   The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

   (1)  ☐   Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2)  ☐   The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

   (3)  ☐   Multiple bankruptcy cases affecting the Property include:

   (A) Case name:
       Case number:                        Chapter:
       Date filed:          Date discharged:          Date dismissed:
       Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(B) Case name:
Case number:                          Chapter:
Date filed:            Date discharged:              Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

(C) Case name:
Case number:                          Chapter:
Date filed:            Date discharged:              Date dismissed:
Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not  granted.

☐ See attached continuation page for information about other bankruptcy cases affecting the
Nonbankruptcy Action.

☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f.  ☒ See attached continuation page for other facts justifying relief from stay.

7.  ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached
supplemental declaration(s).

a.  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would
have been entitled to relief from stay to proceed with these actions.

b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed
with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set
forth in Exhibit ____

c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

1/21/2025     Anden Chow
Date          Printed name                              Signature

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                           Page 8                    F 4001-1.RFS.NONBK.MOTION

M. Douglas Flahaut SBN 245558
ECHO PARK LEGAL, APC
2210 Sunset Blvd. #301
Los Angeles, CA 90026
(310) 709-0658
df@echoparklegal.com

Attorney for Movant Victor Medeiros

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re<br><br>SYNAPSE FINANCIAL TECHNOLOGIES, INC.,<br><br>        Debtor. | Case No. 1:24-bk-10646-MB<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS & AUTHORITIES AND DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM STAY OR, IN THE ALTERNATIVE, FOR AN ORDER CONFIRMING THE AUTOMATIC STAY DOES NOT PROHIBIT THE PAYMENT OF INSURANCE PROCEEDS TO MOVANT**<br><br>Date:    February 11, 2025<br>Time:    10:00 a.m. PST<br>Place:    Courtroom 303<br>        21041 Burbank Boulevard<br>        Woodland Hills, CA 91367 |

Zoom Information

Web Address: https://cacb.zoomgov.com/j/1601291562

Meeting No.: 160 129 1562

Password: 098151

Telephone Conference Lines:  +1 (669) 254 -252 or

+1 (646) 828-7666

# INTRODUCTION

Movant Victor Medeiros was the Corporate Controller of Debtor Synapse Financial Technologies, Inc. ("Synapse," or the "Debtor") from 2021 to 2024.  On October 16, 2024, Mr. Medeiros received a grand jury subpoena for records and information relating to his work at Synapse.  As a result, Mr. Medeiros has incurred and will continue to incur substantial legal fees, which he has thus far paid out of his own pocket.  But those costs are covered by an insurance policy previously taken out by the Debtor to cover its employees—the policy's claims adjuster has said so in writing.  Yet the insurer refuses to disburse funds to Mr. Medeiros without an order from the Court authorizing it to do so.  Mr. Medeiros now seeks such an order, on two independently sufficient grounds: (1) the proceeds of the policy are not property of the estate subject to the automatic stay; and (2) cause exists to terminate the stay with respect to payments to Mr. Medeiros under the insurance policy.  The Trustee does not oppose this relief, which will remedy clear, immediate, and ongoing harm to Mr. Medeiros.  The Court should grant the motion.

# FACTUAL BACKGROUND

## A.    The D&O Policy

The Debtor holds a Directors & Officers and Corporate Securities Liability Insurance Policy, No. EFI1203189-02, underwritten by Certain Underwriters at Lloyd's of London and Associated Industries Insurance Company (the "D&O Policy").  Chow Decl. Ex. 1 at 18.  The policy period runs through July 15, 2030.  *Id*. at 48.

The D&O Policy contains four Coverages.  *Id*. at 30.  Coverage A—the most relevant here—provides:  "The Insurer shall pay Loss of an Individual Insured arising from a Claim first made against such Individual Insured during the Policy Period . . . for any Wrongful Act of such Individual Insured, except when and to the extent that a Company has indemnified the Individual Insured for such Loss."  *Id*.  "Individual Insured" encompasses any current or former employee of Synapse.  *Id*. at 31-33.  Compensable "Loss" includes "Defense Costs," defined as "reasonable and necessary fees, costs and expenses . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured."  *Id*. at 33.  And a "Claim" for a "Wrongful Act" can be, among other things, "a civil, criminal, administrative or regulatory investigation of an Individual Insured [ ] once such Individual Insured is

-1-

1   identified . . . as a person against whom a proceeding . . . may be commenced," where the investigation

2   relates to an "act . . . by an Individual Insured in his or her capacity as such."  *Id*. at 31, 35.  When

3   Coverage A is implicated, the D&O Policy provides for advancement, as well as reimbursement, of

4   Defense Costs.  *Id*. at 38-39.

5           The D&O Policy also includes coverage for Synapse itself.  Coverage B provides indemnification

6   coverage, obliging the Insurer to compensate the company "to the extent [Synapse] has indemnified [an]

7   Individual Insured" for a loss as defined in Coverage A.  *Id*. at 30.  Coverage C provides entity coverage,

8   insuring against "Securities Claims" made against the company.  *Id*.  And Coverage D covers

9   "investigation costs" incurred in responding to a stockholder derivative demand.  *Id*. at 30, 31.  Coverage

10  C (the entity coverage) is subject to a retention requiring the company to pay the first million dollars of

11  loss under that coverage.[1]  *Id*. at 29, 38.

12          The D&O Policy includes an aggregate limit of liability of $1,000,000 for all Coverages together.

13  *See id*. at 18, 37.  As of January 6, 2025, no claims have been made by any insured on the D&O Policy.

14  Chow Decl. ¶8.  The Debtor also holds an excess insurance policy underwritten by Texas Insurance

15  Company (the "Excess Policy"), which provides an additional $1,000,000 of coverage "in the event of

16  the exhaustion of [the D&O Policy]."  *See* Chow Decl. Ex. 2 at 3, 7.  The D&O Policy also contains a

17  priority rule in the event a given "Loss" would exceed the liability cap:  Individual Insureds under

18  Coverage A get paid first.  Chow Decl. Ex. 1 at 40.  That rule applies regardless of Synapse's solvency.

19  *Id*. at 41.

20          **B.      Mr. Medeiros's Claim**

21          From 2021 to 2024, movant Victor Medeiros was the Corporate Controller and Senior Director

22  of Finance and Accounting for Synapse Financial Technologies, Inc.  Chow Decl. ¶2.  On October 16,

23  2024, Mr. Medeiros received a federal grand jury subpoena related to his time working at Synapse (the

24  "Subpoena").  Chow Decl. ¶3.  The Subpoena directed Mr. Medeiros to appear before the grand jury and

25  to produce enumerated categories of documents relevant to the investigation.  *Id*.  After receiving the

---

[1] Coverage B is also subject to a $1 million retention, but that retention does not apply in bankruptcy.  Chow Decl. Ex. 1 at 29, 38.

-2-

MEMORANDUM OF POINTS & AUTHORITIES AND DECLARATION IN SUPPORT OF MOTION FOR RELIEF
FROM STAY OR, IN THE ALTERNATIVE AN ORDER CONFIRMING THE AUTOMATIC STAY DOES NOT
PROHIBIT THE PAYMENT OF INSURANCE PROCEEDS TO MOVANT

Subpoena, Mr. Medeiros retained Anden Chow of MoloLamken LLP to represent him in responding to the Subpoena. *Id*. The matter remains ongoing, and Mr. Chow continues to represent Mr. Medeiros. Chow Decl. ¶ 10.

On November 1, 2024, Mr. Medeiros submitted a notice of claim to Euclid Financial, the claims representative for the D&O Policy. Chow Decl. ¶ 5. The notice sought a coverage evaluation, specifically inquiring about advancement of attorney's fees. *Id*. On November 18, 2024, Euclid issued a coverage position, advising that "the Policy provides coverage to Victor Medeiros for the submitted matter." Chow Decl. Ex. 3 at 1. Notwithstanding that determination, Euclid informed Mr. Medeiros that the insurer would not disburse any funds to which he was entitled—neither reimbursement for costs already incurred nor advancement of future costs—without an order from this Court authorizing such payments. Chow Decl. ¶ 7.

Mr. Medeiros now asks the Court for such an order.[2] Mr. Medeiros has consulted the Trustee in connection with this motion; the Official Committee of Unsecured Creditors was dissolved on September 5, 2024, Dkt. 368. The Trustee advised that she takes no position on the relief sought. Chow Decl. ¶ 9.

## ARGUMENT

The Court should permit Mr. Medeiros to receive the funds to which the D&O Policy entitles him, for two independently sufficient reasons. First, the proceeds of the D&O Policy are not assets of the estate subject to the automatic stay. In the absence of any pending or contemplated claims on the Policy by the debtor, the D&O Policy does not "actually protect[] the estate's assets from diminution" such that "depletion of the proceeds [due to claims by individuals] would have an adverse effect on the estate." *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010). Second, even if the stay applies, cause exists to lift it. Mr. Medeiros is incurring "'clear, immediate, and ongoing' losses" as a result of the stay. *In re Hoku Corp.*, No. 13-br-40838, 2014 WL 1246884, at *4 (Bankr. D. Idaho Mar.

---

[2] Mr. Medeiros is a "party in interest" authorized to bring this motion by § 362(d), as his "interests would be harmed by continuance of the stay." *In re Veal*, 450 B.R. 897, 913-14 (B.A.P. 9th Cir. 2011) (quoting *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009)). Individual insureds regularly bring procedurally identical motions. *See, e.g.*, *In re SVB Fin. Grp.*, 650 B.R. 790 (Bankr. S.D.N.Y. 2023); *In re Hoku Corp.*, No. 13-br-40838, 2014 WL 1246884 (Bankr. D. Idaho Mar. 25, 2014).

-3-

25, 2014) (quoting *In re MILA, Inc.*, 423 B.R. 537, 545 (B.A.P. 9th Cir. 2010)).   Lifting the stay, meanwhile, would work no hardship on the Debtor:   The Trustee does not oppose this motion, and any claim on the D&O policy is purely speculative.   Courts regularly grant analogous motions in analogous situations.[3]   This Court should follow suit.

## I.   THE D&O POLICY PROCEEDS ARE NOT SUBJECT TO THE AUTOMATIC STAY

Although a debtor's insurance ***policy*** is property of the bankruptcy estate and subject to the automatic stay, *In re Minoco Grp. of Cos., Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986), ***proceeds*** of that policy are governed by a different rule.   *See MILA*, 423 B.R. at 543 (*Minoco* does not answer whether "a D&O policy's proceeds . . . are property of the policy owner's bankruptcy estate").   When a directors & officers insurance policy with an aggregate liability cap covers both individual insureds and the debtor, policy proceeds are deemed estate property only if "depletion of the proceeds [due to claims by individuals] would have an adverse effect on the estate" because the policy "***actually protects*** the estate's other assets from diminution." *Downey*, 428 B.R. at 603 (emphasis added) (quoting *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004)).   Accordingly, courts assess the likelihood of the debtor actually making a claim under its direct coverage.   *See id.* at 604-05; *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53-54 (S.D.N.Y. 2003).

Here, there is no indication that claims under Coverages B or C are contemplated.   The Trustee has advised that she does not oppose this motion, Chow Decl. ¶ 9, strongly suggesting she does not foresee relying on the D&O Policy.   Moreover, claims under Coverage C are subject to a $1 million retention, further decreasing the likelihood the Debtor will need to make a claim under that coverage.   Thus, it would require a great deal of imaginative (and counterfactual) speculation to arrive at a scenario where the D&O Policy is actually protecting estate assets here.

---

[3] *See, e.g.*, *In re MILA, Inc.*, 423 B.R. 537, 544 (B.A.P. 9th Cir. 2010); *In re Hoku Corp.*, No. 13-br-40838, 2014 WL 1246884 (Bankr. D. Idaho Mar. 25, 2014); *In re Celsius Network LLC*, 652 B.R. 34 (Bankr. S.D.N.Y. 2023); *SVB Fin. Grp.*, 650 B.R. 790; *In re Licking River Mining, LLC*, No. 14-br-10201, 2016 WL 3251890 (Bankr. E.D. Ky. June 6, 2016); *In re MF Glob. Holdings Ltd.*, 469 B.R. 177 (Bankr. S.D.N.Y. 2012); *In re Downey Fin. Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc.*, 369 B.R. 805 (Bankr. D. Del. 2007); *In re Allied Digital Techs., Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49 (S.D.N.Y. 2003); *In re CyberMedica, Inc.*, 280 B.R. 12 (Bankr. D. Mass. 2002); *In re Youngstown Osteopathic Hosp. Ass'n*, 271 B.R. 544 (Bankr. N.D. Ohio 2002); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir. 1987).

-4-

1    *Adelphia Communications* is instructive. There, as here, the insurance policy covered both the

2    debtors and the individual insureds. 298 B.R. at 51. And there, as here, the debtors had not incurred any

3    costs their direct coverage would reimburse. *Id*. at 53. In those circumstances, the court thought calling

4    the proceeds estate property was laughable: "Such [an] argument would be akin to a car owner with

5    collision coverage claiming he has the right to proceeds from his policy simply because there is a

6    prospective possibility that his car will collide with another tomorrow . . . ." *Id*. So too here. The Court

7    should issue an order stating the proceeds of the D&O Policy are not property of the estate subject to the

8    stay.

9    **II.    CAUSE EXISTS TO LIFT THE STAY AS TO PAYMENTS TO MR. MEDEIROS**

10    Even if the stay applies, cause exists to terminate it with respect to the payments to which Mr.

11    Medeiros is entitled. Section 362(d) provides that a bankruptcy court "shall grant relief from the

12    [automatic stay] . . . for cause." The term "cause" is not defined in the statute—instead, § 362 "gives the

13    bankruptcy court wide latitude in crafting relief from the automatic stay." *In re Delaney-Morin*, 304 B.R.

14    365, 369 (B.A.P. 9th Cir. 2003).

15    "In cases involving D&O policy proceeds, the bankruptcy court must balance the harm to the

16    debtor if the stay is modified with the harm to the directors and officers if they are prevented from

17    executing their rights to defense costs." *In re MILA, Inc.*, 423 B.R. 537, 543 (B.A.P. 9th Cir. 2010); *see*

18    *also In re SVB Fin. Grp.*, 650 B.R. 790, 798-99 (Bankr. S.D.N.Y. 2023) (considering "the lack of any

19    connection with or interference with the bankruptcy case" and "the impact of the stay on the parties and

20    the balance of harms"); *Downey*, 428 B.R. at 609 (considering "[w]hether any great prejudice to either

21    the bankrupt estate or the debtor will result from a lifting of the stay" and "[w]hether the hardship to the

22    non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor").

23    When the policy in question contains an aggregate liability cap, "courts factor whether defense costs

24    might exhaust the coverage available to pay a future covered loss under the policy . . . ." *Hoku*, 2014

25    WL 1246884, at *4. But " 'clear, immediate, and ongoing' losses to the directors and officers in incurring

26    defense costs trump[ ] only 'hypothetical or speculative' claims by the [debtor]." *Id*. (quoting *MILA*, 423

27    B.R. at 545).

28    
-5-

1    Here, the balance of hardships favors lifting the stay. "Courts have routinely found that the need

2    for defense costs is a harm that justifies lifting the stay." *SVB Fin. Grp.*, 650 B.R. at 800-01 (collecting

3    cases). Mr. Medeiros is incurring "clear, immediate, and ongoing" losses as he responds to the Subpoena.

4    *See* Chow Decl. ¶ 10. Those efforts have required expenditure of significant time and, by extension,

5    money. *Id.* Mr. Medeiros has limited personal funds to pay legal fees already incurred, let alone

6    additional fees expected in the future. *Id.* In short, like the movant in *CyberMedica,* Mr. Medeiros is "in

7    need *now* of [his] contractual right to payment of defense costs"—he "may suffer substantial and

8    irreparable harm if prevented from exercising [his] right[] to defense payments." *In re CyberMedica,*

9    *Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002) (emphasis original).

10    On the other side of the scale, there is no apparent hardship to the Debtor. The Trustee has advised

11    she does not oppose Mr. Medeiros's motion, perhaps the surest sign that lifting the stay does not

12    meaningfully threaten the estate. That makes sense. Coverage B covers only indemnification payments,

13    Chow Decl. Ex. 1 at 30: Given Synapse's bankruptcy, it is unlikely that an individual would seek

14    indemnification from Synapse in lieu of a direct claim under Coverage A. Coverage C, meanwhile, only

15    covers loss related to "Securities Claims, *id.*—but Synapse was not publicly-traded, eliminating many of

16    the "Securities Claims" contemplated by the policy.[4] *See* Chow Decl. Ex. 1 at 34 (listing as exemplary

17    "Securities Claims" suits regarding public stock offerings and actions by a company's security-holders).

18    The likelihood and likely amount of those claims are further reduced by Coverage C's retention—in the

19    event of a (purely hypothetical) "Securities Claim," the Debtor is not entitled to proceeds until it has

20    already paid the first $1 million in covered loss. *See* p. 2, *supra*; Chow Decl. Ex. 1 at 29, 38. Finally,

21    the fact the Debtor has not submitted a claim under the Policy to date suggests such claims are unlikely

22    to be made. *Cf. In re First Cent. Fin. Corp.*, 238 B.R. 9, 17 (Bankr. E.D.N.Y. 1999) ("[T]he estate is in

23    no need of protection" because, "[d]uring the eighteen months this bankruptcy case has been pending,

24    there have been no claims filed against the Debtor which would implicate the narrow scope of the Policy's

25    entity coverage. . . .").

26

27    _____

[4] For similar reasons, Coverage D regarding stockholder derivative demands is irrelevant here.

28                                         -6-

1    But even if the Debtor might need the D&O Policy in the future, there is $2 million available to

2  pay Mr. Medeiros **and** those hypothetical claims by the Debtor.  *See* p. 2, *supra*; Chow Decl. ¶ 8; *see also*

3  *Hoku*, 2014 WL 1246884, at *5 (lifting stay where "it is likely that the Movants' claims to the proceeds

4  can be satisfied with ample coverage remaining if needed by the bankruptcy estate to address future

5  claims").   At present, Mr. Medeiros does not expect his Defense Costs to even approach the D&O

6  Policy's cap, let alone the limits of the Excess Policy.   Chow Decl. ¶ 10; *cf. Downey*, 428 B.R. at 610

7  (finding no hardship to debtor where claimed defense costs totaled less than 10% of policy limit).   And

8  even if there **were** a danger this claim might exhaust the policy, the Policy itself gives **Mr. Medeiros**

9  priority to the policy proceeds.[5]  *See* p. 2, *supra*; Chow Decl. Ex. 1 at 40.

10    In sum, Mr. Medeiros faces "clear, immediate, and ongoing losses," while any impact on the

11  debtor is only "hypothetical or speculative."  *Hoku*, 2014 WL 1246884, at *4.   In such circumstances,

12  cause exists to lift the stay.  *See, e.g., id.* at 4-5 (lifting stay over Trustee's objection where "Movants are

13  experiencing 'clear, immediate, and ongoing' defense costs . . . likely covered by the Policy" while

14  "potential harm to the bankruptcy estate inherent in granting the Movants relief is negligible, if any"); *In*

15  *re Celsius Network LLC*, 652 B.R. 34, 44-45 (Bankr. S.D.N.Y. 2023) (lifting stay where "there are

16  pending actions that warrant the immediate use of insurance proceeds for defense costs of Individual

17  Insureds," "[t]he Debtor and Committee do not oppose lifting the stay," and "no other parties have shown

18  that there would be any harm posed to the Debtor . . . that would warrant denial of relief"); *SVB Fin.*

19  *Grp.*, 650 B.R. at 800-01 (lifting stay where "the harm in denying the Movants access [to policy proceeds]

20  is imminent and significant" but "the potential harm to the Debtor—that insurance proceeds the Debtor

21  [may] need in the future will [be] depleted—at this point is merely speculative").   The Court should lift

22  the stay and permit Mr. Medeiros to receive the insurance payments to which he is entitled.[6]

23

24    [5] Hypothetical hardship to other individual insureds is no reason to maintain the stay.  Mr. Medeiros's co-insureds have
no greater claim on the policy proceeds than he does.  Outside of bankruptcy, Mr. Medeiros's first-filed claim would take

25  precedence over other, later-filed claims; the reverse should not be true just because the policyholder is now in bankruptcy.
"Bankruptcy does not grant debtors rights greater than those they would receive outside bankruptcy"—the same is true for

26  third parties.  *See Hillis Motors, Inc. v. Hawaii Auto. Dealers Ass'n*, 997 F.2d 581, 592 (9th Cir. 1993); *In re Thorpe*, 881
F.3d 536, 542 (7th Cir. 2018).

27    [6] Given the urgency with which Mr. Medeiros needs the D&O Policy proceeds, the Court should exercise its power to
waive application of Fed. R. Bankr. P. 4001(a)(4)'s 14-day stay of an order granting relief from the stay.

28

-7-

## CONCLUSION

The Court should issue an order authorizing payment of proceeds of the D&O Policy to Mr. Medeiros, either because those proceeds are not property of the estate or because cause exists to lift the automatic stay with respect to said payments.  If the Court grants relief from the stay pursuant to § 362(d), it should further order that the 14-day stay provided for in Fed. R. Bankr. P. 4001(a)(4) does not apply.


DATED:  January 21, 2025

/s/ M. Douglas Flahaut

M. Douglas Flahaut
Attorney for Movant Victor Medeiros

-8-

## <u>DECLARATION OF ANDEN CHOW</u>

I, Anden Chow, declare and state as follows:

1.      I am a partner with the law firm MoloLamken LLP and represent movant Victor Medeiros in connection with responding to the subpoena discussed below.  I offer this declaration in support of Mr. Medeiros's Motion for Relief From Stay or, in the Alternative for an Order Confirming the Automatic Stay Does Not Prohibit the Payment of Insurance Proceeds to Movant.  I am admitted to practice law in the State of New York.  I have personal knowledge of the facts set forth herein and if called as a witness, I could and would testify competently thereto.

2.      Based on my conversations with Mr. Medeiros and my review of other records, I am informed and believe that Mr. Medeiros was the Corporate Controller and Senior Director of Finance and Accounting for Synapse Financial Technologies, Inc. ("Synapse").

3.      Mr. Medeiros received a federal grand jury subpoena, dated October 16, 2024, related to his time working at Synapse (the "Subpoena").  The Subpoena directed Mr. Medeiros to appear before the grand jury and to produce enumerated categories of documents relevant to the investigation.  Mr. Medeiros retained me to represent him in connection with responding to the Subpoena.

4.      On October 29, 2024, I learned from Synapse's insurance broker, Alliant Insurance Services, Inc. ("Alliant"), that Synapse holds two directors & officers liability insurance policies.  A true and accurate copy of Synapse's Directors & Officers and Corporate Securities Liability Policy underwritten by Certain Underwriters at Lloyd's of London and Associated Industries Insurance Company, Policy No. EFI1203189-02 (the "D&O Policy"), as provided to me by Alliant, is attached as Exhibit 1 to this Declaration.  A true and accurate copy of Synapse's Excess Liability Insurance Policy underwritten by Texas Insurance Company, Policy  No. BFLXPFTCA010300_020145_03 (the "Excess Policy"), as provided to me by Alliant, is attached as Exhibit 2 to this Declaration.

5.      On November 1, 2024, I submitted a notice of claim on behalf of Mr. Medeiros to Euclid Financial, the claims representative for the D&O Policy.  The notice of claim attached the Subpoena and requested a coverage evaluation under the D&O Policy, including with respect to advancement of attorney's fees.

-1-

6. On November 18, 2024, I received a coverage position from Euclid responding to Mr. Medeiros's November 1 notice of claim. That letter stated Euclid's determination that "the Policy provides coverage to Victor Medeiros for the submitted matter." A true and accurate copy of Euclid's coverage position is attached as Exhibit 3 to this Declaration.

7. Notwithstanding this determination, a claims adjuster at Euclid informed me on December 30, 2024, that it would not disburse the funds to which Mr. Medeiros was entitled under the D&O Policy—neither reimbursement for costs already incurred nor advancement of future costs— without a "comfort order" from the Bankruptcy Court authorizing a payment to Mr. Medeiros.

8. On January 6, 2025, a claims adjuster for Euclid informed me that, as of that date, no other claims by any insured had been submitted in connection with the D&O Policy. Accordingly, no payments have been made that count toward the D&O Policy's aggregate limit of liability, nor have any payments been made under the Excess Policy.

9. Throughout November and December 2024, I contacted counsel for the Chapter 11 Trustee to determine the Trustee's position regarding a motion for an order authorizing payment of insurance proceeds to Mr. Medeiros under the D&O Policy. On January 9, 2025, counsel for the Chapter 11 Trustee advised me that the Trustee would take no position with respect to such a motion.

10. Mr. Medeiros has incurred legal costs associated with the services I have already provided to date. Because the matter remains ongoing, I anticipate Mr. Medeiros will continue to incur legal costs in the future, though at present I do not expect those costs to even approach $1 million. Given that Mr. Medeiros has already paid these costs out of his own pocket without reimbursement, I have doubts about his ability to continue to pay the legal costs necessary to navigate this sensitive and complex matter using only his personal funds.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York, on January 21, 2025.

Anden Chow

-2-

# EXHIBIT 1





# Certificate of Insurance

1. Signature Required. This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. Correspondent Not Insurer. The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Insurers set forth herein.

3. Cancellation. If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. The above-named are authorized and directed to accept service of process on behalf of Insurers in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Insurers' behalf in the event such a suit shall be instituted.

5. Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Insurers hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

6. Assignment. This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

7. Attached Conditions Incorporated. This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

8. Short Rate Cancellation. If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

All inquiries regarding this Certificate should be addressed to the following Correspondent:
Euclid Financial Institution Underwriters, LLC
234 Spring Lake Drive
Itasca, IL 60143

**Short Rate Cancellation Table For Term of One Year.**

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.  If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.  If insurance has been in force for more than one year:

1.  Determine full annual premium as for insurance written for a term of one year.

2.  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3.  Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

**This Declaration Page is attached to and forms part of Certificate provisions**

Previous No. EFI1203189-01      Authority Ref. No. B087523E02R5002      Certificate No. EFI1203189-02

1.      Name and address of the Assured:
        Synapse Financial Technologies, Inc.
        101 2nd Street, Suite 525
        San Francisco, CA 94105

2.      Effective from October 15, 2023 to July 15, 2024
        both days at 12:01 a.m. standard time.

3.      Insurance is effective with:

        **Underwriters at Lloyd's of London**                    **55%**
        **RenaissanceRe Syndicate 1458**
        **One Lime Street, London,**
        **EC3M 7HA, UK**

        **Associated Industries Insurance Company, Inc.**        **45%**
        **800 Superior Ave. E., 21st Floor**
        **Cleveland, OH 44114**

4.      Amount            Coverage            Rate            Premium

        As per Items 3 and 6 of the attached Euclid Financial Declaration page

5.      Forms attached hereto and special conditions:
        1.  Certificate of Insurance
        2.  LMA5218 (12/01/2015) U.S. Terrorism Risk Insurance Act of 2002
        3.  LMA9104 (12/01/2015) Policyholder Disclosure Notice of Terrorism Ins.
        4.  NMA1998 (24/04/1986) Service of Suit Clause (U.S.A.)
        5.  LMA3100 (15/09/2010) Sanction Limitation and Exclusion Clause
        6.  LMA5096 (07/03/2008) Several Liability Clause
        7.  LMA5062 (04/09/2006) Fraudulent Claim Clause
        8.  NMA1256 (17/03/1960) Nuclear Incident Exclusion Clause-Liability-Direct (Broad) (U.S.A.)
        9.  NMA1477 (13/02/1964) Radioactive Contamination Exclusion Clause –Liability –Direct- USA
        10. LMA9029 (01/09/2013) California Surplus Lines Notice 1
        11. LMA9030 (01/09/2013) California Surplus Lines Notice 2
        12. EF GT 001 0116 General Terms and Conditions
        13. EF DO 020 0116 Directors & Officers and Corporate Securities Liability Coverage Section
        14. CD 010 1015 Professional Services E&O Exclusion with Securities Carve Back
        15. CM 091 1119 Money Laundering Exclusion
        16. CM 096 0620 Theft or Loss of Crypto Currency Exclusion
        17. CD 057 0221 Cyber and Data Exclusion with Securities Claim Carve-back
        18. CD 059 0721 Securities Exclusion
        19. CG 136 1223 Run-Off Endorsement

**6.**     Service of Suit may be made upon:

The party as named in form NMA1998

**7.**     In the event of a claim, please notify the following:

As per Item 4 of the attached Euclid Financial Declaration page

Dated: <u>December 14, 2023</u>                By: _____

                                                     Correspondent

## U.S. Terrorism Risk Insurance Act of 2002 as amended  New & Renewal Business Endorsement

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended, as summarized in the disclosure notice.*

In consideration of an additional premium of USD $0.00 paid, it is  hereby noted and agreed with effect from inception that the Terrorism exclusion to which  this Insurance is subject, shall not apply to any "insured loss" directly resulting from any  "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended  ("TRIA").

The coverage afforded by this Endorsement is only in respect of any "insured loss" of the  type insured by this Insurance directly resulting from an "act of terrorism" as defined in  TRIA.  The coverage provided by this Endorsement shall expire at 12:00 midnight December  31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date   of the policy whichever occurs first, and shall not cover any losses or events which arise  after the earlier of these dates.  The Terrorism exclusion, to which this Insurance is  subject, applies in full force and effect to any other losses and any act or events that are  not included in said definition of "act of terrorism".

This Endorsement only affects the Terrorism exclusion to which this Insurance is subject.  All other terms, conditions, insured coverage and exclusions of this Insurance including  applicable limits and deductibles remain unchanged and apply in full force and effect to   the coverage provided by this Insurance.

Furthermore the Underwriter(s) will not be liable for any amounts for which they are not  responsible under the terms of TRIA (including subsequent action of Congress pursuant to  the Act) due to the application of any clause which results in a cap on the Underwriter's  liability for payment for terrorism losses.

LMA5218
12 January 2015

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, **as defined in Section 102(1) of the Act, as amended:**  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Any coverage you purchase for "acts of terrorism" shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate, or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE.  YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A USD100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS USD100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED USD100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

| | |
|---|---|
| | I hereby elect to purchase coverage for acts of terrorism for a prospective premium of USD $0.00 |
| | I hereby elect to have coverage for acts of terrorism excluded from my policy.  I understand that I will have no coverage for losses arising from acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
1458 Syndicate on behalf of certain underwriters
at Lloyd's

_____
Print Name

_____
Policy Number

_____
Date

LMA9104
12 January 2015

## SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Wilson, Elser, Moskowitz, Edelman & Dicker
555 S. Flower Street
Suite 2900
Los Angeles, CA 90071

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

NMA1998

24/04/1986

**Sanction Limitation and Exclusion Clause**

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100
15 September 2010

**SEVERAL LIABILITY CLAUSE**

**PLEASE NOTE – This notice contains important information.  PLEASE READ CAREFULLY**

The liability of an insurer under this contract is several and not joint with other insurers party to this contract.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.  Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this contract.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this contract.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

LMA5096 (Combined Certificate)

7 March 2008

**Fraudulent Claim Clause**

If the (re)insured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this contract shall become void and all claim hereunder shall be forfeited.

LMA5062

4 September 2006

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.     Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a)   with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions

or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.    As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)    any nuclear reactor,

(b)    any equipment or device designed or used for (1) separating the  isotopes of uranium or plutonium, (2) processing or utilizing spent  fuel,  or   (3)  handling, processing or packaging waste,

(c)    any equipment or device used for the processing, fabricating or
alloying of special nuclear material if at any time the total amount
of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)    any structure, basin, excavation, premises or place prepared or   used    for
the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

NMA1256

17/03/1960

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

NMA1477

13/02/1964

# CALIFORNIA SURPLUS LINES NOTICE 1

NOTICE:

1.    THE INSURANCE POLICY THAT YOU HAVE PURCHASED / ARE APPLYING TO PURCHASE IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA.    THESE    COMPANIES    ARE    CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2.    THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3.    THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW.    THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.    THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA    DEPARTMENT    OF    INSURANCE    AT    THE FOLLOWING TOLL-FREE TELEPHONE NUMBER _____.
ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER.  YOU MAY ALSO    CONTACT    THE    NAIC'S    INTERNET    WEBSITE    AT WWW.NAIC.ORG .

5.    FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6.   FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7.   CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS.   ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV .

8.   IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE.   IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

LMA9029
01 September 2013

## CALIFORNIA SURPLUS LINES NOTICE 2

This insurance is issued pursuant to the California Insurance Code, Sections 1760 through 1780, and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.

LMA9030
01 September 2013

 

**General Declarations**

NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I) **CLAIMS** FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE **EXTENDED REPORTING PERIOD**, AND (II) OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI. OF THE GENERAL TERMS AND CONDITIONS. ANY COVERED **DEFENSE COSTS**, AND **INVESTIGATION COSTS** SHALL REDUCE THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND MAY BE APPLIED AGAINST THE RETENTION AMOUNT. EXCEPT AS EXPRESSLY PROVIDED FOR IN THE EMPLOYMENT PRACTICES LIABILITY **COVERAGE SECTION** AND THE FIDUCIARY LIABILITY **COVERAGE SECTION**, THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

POLICY NUMBER:  EFI1203189-02
UMR:  B087523E02R5002

1. **NAMED INSURED**:  Synapse Financial Technologies, Inc.
**Named Insured** Address:  101 2nd Street, Suite 525
San Francisco, CA 94105

2. **POLICY PERIOD**:  Inception:  October 15, 2023
Expiration:  July 15, 2024
The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Insured** Address.

3. COVERAGES AND LIMITS OF LIABILITY APPLICABLE TO THIS POLICY:

Limit of Liability

☒ (a) Directors & Officers and Corporate Securities Liability **Coverage Section**     $1,000,000
☐ (b) Private Company Management Liability **Coverage Section**
☐ (c) Investment Adviser Professional Liability **Coverage Section**
☐ (d) Investment Fund **Coverage Section**
☐ (e) Insurance Company Professional Liability **Coverage Section**
☐ (f)  Bankers Professional Liability **Coverage Section**
☐ (g) Employment Practices Liability **Coverage Section**
☐ (h) Fiduciary Liability **Coverage Section**

POLICY AGGREGATE LIMIT OF LIABILITY
(i) For all **Coverage Sections** combined:     $1,000,000

4. **INSURER**:

(a) **Insurers:**  Certain Underwriters at Lloyd's of London   55%
Associated Industries Insurance Company   45%

(b) Notice of **Claim** or circumstances:
By E-Mail:  claimsmailbox@euclidfinancial.com
By Mail:  Euclid Financial Institution Underwriters, LLC
234 Spring Lake Drive
Itasca IL 60143

EF GT DEC 0116                           1 of 2

(c)  All other notices:

>Euclid Financial Institution Underwriters, LLC
>234 Spring Lake Drive
>Itasca IL 60143

5.   EXTENDED REPORTING PERIOD:

Period:          N/A
Premium:         N/A

6.   PREMIUM:          $325,000

IN WITNESS WHEREOF, the **Insurer** has caused this policy to be signed below by its President, Secretary or duly authorized representative.

_____

AUTHORIZED REPRESENTATIVE

 

**General Terms and Conditions**

In consideration of the premium charged, and in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

## I. TERMS AND CONDITIONS

In addition to the terms and conditions set forth in these General Terms and Conditions, the terms and conditions of each **Coverage Section** shall apply to, and only to that particular **Coverage Section** and in no way shall be construed to apply to any other **Coverage Section**. If any provision of the General Terms and Conditions is inconsistent or in conflict with terms and conditions of any **Coverage Section**, the terms and conditions of such **Coverage Section** shall control for purposes of that **Coverage Section**.

## II. DEFINITIONS

The following terms whenever set forth in boldface type in this policy, whether in singular or in plural, shall have the meanings indicated. Any other terms set forth in boldface type in the General Terms and Conditions will have the meanings indicated in the applicable **Coverage Section**.

A.  **Application** means

   1.  the signed application for this policy, if any; all applications for any policy of which this policy is a renewal or replacement; and any attachments, information, warranty, or other materials submitted therewith or incorporated therein; and
   2.  any filings made by the **Company** to the Securities Exchange Commission or any similar state, local, or foreign governmental entity, within the 12 months preceding the inception date of this policy.

   The materials defined in 1. and 2. above shall be deemed attached to and part of this policy.

B.  **Company** means

   1.  the **Named Insured**;
   2.  any **Subsidiary**; and
   3.  the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law.

   **Company** does not include and coverage shall not apply under any **Coverage Section** to, any **Subsidiary**, or any **Executive** or **Employee** of any **Subsidiary**, for any **Wrongful Act** committed, attempted, or allegedly committed or attempted, prior to or subsequent to such entity having met the definition of **Subsidiary** as defined in that **Coverage Section**.

C.  **Coverage Section** means collectively or individually the Directors and Officers Liability **Coverage Section**, the Investment Adviser Management Liability

**Coverage** Section, the Investment Adviser Professional Liability **Coverage Section**, the Investment Fund **Coverage Section**, the Insurance Company Professional Liability **Coverage Section**, the Bankers Professional Liability **Coverage Section**, the Employment Practices Liability **Coverage Section**, or the Fiduciary Liability **Coverage Section**, but only with respect to those indicated as included as part of this policy by all three of the following:

1. indicated by ☒ in the General Declarations. (☐ indicates the **Coverage Section** is not included)
2. for which a **Coverage Section** Limit of Liability is indicated in Item 4 of the General Declarations; and
3. for which such **Coverage Section** Declarations and coverage form are attached to and form part of this policy.

D. **Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local statutory or common law under the provisions of any formal program established by a **Company**.

E. **Financial Insolvency** means:

1. the appointment by any government official, agency, commission, court or other governmental authority of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate a **Company**;
2. the filing of a petition under the bankruptcy laws of the United States of America by a **Company**; or
3. as to both 1. or 2. of this Definition, any equivalent events outside the United States of America.

F. **Indemnifiable Loss** means **Loss** for which a **Company**, **Fund Organization** or **Outside Entity** is permitted or required to indemnify or advance to the **Individual Insureds**.

G. **Insurer** means the insurance company set forth in Item 4 of the General Declarations.

H. **Management Control** means

1. owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the members of the management board of a limited liability company; or
2. having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the management board of a limited liability company.

I. **Named Insured** means the entity set forth in Item 1. of the General Declarations.

J. **Non-indemnifiable Loss** means **Loss** which an **Individual Insured** becomes legally obligated to pay on account of any **Claim**, for which a **Company**, **Fund Organization** or **Outside Entity** fails to indemnify such **Individual Insured** and:

1. such entity's failure to indemnify is a result of such entity's insolvency; or
2. such entity is not permitted to indemnify such **Individual Insured** pursuant to statutory or common law.

K. **Policy Period** means the period of time from the inception date set forth in Item 2 of the General Declarations to the earlier of the expiration date set forth in Item 2 of the General Declarations or the effective date of cancellation of this policy. In the event of cancellation of this policy, the effective date of cancellation shall replace the expiration date in Item 2 of the General Declarations.

L. **Related Wrongful Acts** means **Wrongful Acts** which are the same, repeated or continuous **Wrongful Acts**, or **Wrongful Acts** which arise from a common causal connection or cause the same or related damages, or have a common nexus or nucleus of facts. **Claims** can allege **Related Wrongful Acts** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

## III. SPOUSES, ESTATES

Subject otherwise to the terms, conditions and limitations of this policy, this policy provides coverage for any **Claim** solely for **Wrongful Acts** committed or allegedly committed by the **Individual Insureds** made against:

A. the estates, heirs, or legal representatives of such **Individual Insureds**, in the event of their incompetency, insolvency or bankruptcy; or

B. the lawful spouse or legally recognized **Domestic Partner** (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world and hereinafter included in the term "spouse") of any such **Individual Insured** for all **Claims** arising solely out of his or her status as spouse of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse, or property transferred from the **Individual Insured** to the spouse.

This extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the policy's terms, conditions and exclusions.

## IV. LIMITS OF LIABILITY

A. The Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss**, including **Defense Costs**, under all **Coverage Sections** combined. The purchase of the Extended Reporting Period shall not in any way increase or reinstate any Limits of Liability.

B. The **Coverage Section** Limit of Liability set forth in Items 4(a), 4(b), 4(c), 4(d), 4(e), 4(f), 4(g), and 4(h) of the General Declarations shall be the maximum aggregate limit of the **Insurer**'s liability under each applicable **Coverage Section** for all **Loss**, including **Defense Costs**, under that respective **Coverage Section**. Each such **Coverage Section** Limit of Liability shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations. The Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations

shall be reduced and may be exhausted by payments of **Loss** under any one or more of the applicable **Coverage Sections**.

C. Any sub-limits of liability set forth in any applicable **Coverage Section** Declarations shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 4(i) of the General Declarations and the applicable **Coverage Section** Limit of Liability set forth in that respective **Coverage Section** Declarations.

D. The **Insurer**'s obligations for all **Claims** shall cease upon exhaustion of the Policy Aggregate Limit of Liability and, to the extent any individual applicable **Coverage Section** Limit of Liability is exhausted, the **Insurer**'s obligations for all **Claims** under that particular **Coverage Section** shall cease.

E. **Defense Costs** incurred by the **Insurer** or by the **Insureds** shall be part of and not in addition to the applicable limits of liability. Payment of **Defense Costs** by the **Insurer** shall reduce and may exhaust all applicable limits of liability.

F. All **Claims** arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be deemed a single **Claim** and shall be deemed to be first made against the **Insureds** on the date the earliest of such **Claims** is first made against any **Insureds.**

## V. RETENTIONS

A. The Retentions set forth in the respective **Coverage Section** Declarations are separate Retentions pertaining only to **Claims** under that applicable **Coverage Section**. The application of a Retention under one **Coverage Section** shall not reduce or eliminate the Retention under any other applicable **Coverage Section**.

B. With respect to a **Claim** under any applicable **Coverage Section**, the **Insurer** shall only pay **Loss** which is in excess of the amount set forth in the **Coverage Section** Declarations as the Retention applicable to each such **Claim** under the applicable **Coverage Section**. Such Retention shall be borne by the **Insureds** and shall remain uninsured.

C. If more than one Retention is applicable to any one **Claim**, the applicable Retentions will be applied separately to the **Loss** resulting from such **Claim**, and the payment of any Retention under one **Coverage Section** will not reduce or eliminate the Retention under any other.

D. Amounts incurred for **Defense Costs** shall be applied against the applicable Retention.

## VI. REPORTING AND NOTICE

A. The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** by mail or electronically to the address set forth in Item 4(b) of the General Declarations of:

1. any **Claim** made against an **Insured,**
2. any matter which could involve the payment of **Voluntary Compliance Loss** under the **Fiduciary Liability Coverage Section,** if purchased; or
3. any **Derivative Demand** under the Directors and Officers Liability **Coverage Section**, Investment Adviser Management Liability **Coverage Section**, or Investment Fund **Coverage Section**, if purchased,

as soon as practicable but no later than (i) the earlier of 60 days after the expiration date shown in Item 2 of the General Declarations or cancellation of the policy or (ii) prior to the end of the Extended Reporting Period, if applicable.

Any subsequent **Claim** which is made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts, circumstances, or a **Wrongful Act** alleged in a prior **Claim** for which notice already has been given, or which alleges any **Wrongful Act** which is a **Related Wrongful Act** shall be deemed a **Claim** first made at the time the prior **Claim** was first noticed to the **Insurer**.

B.  If during the **Policy Period** or the Extended Reporting Period**,** if applicable, the **Insureds** become aware of any circumstances and a **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and notice is given to the **Insurer** by mail or electronically to the address set forth in Item 4 (b) of the General Declarations of such circumstances, along with a description of the alleged **Wrongful Act,** the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances and a **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

Notice pursuant to A. or B. above shall reference the policy number set forth in the General Declarations. If mailed, the date received by the **Insurer** shall constitute the date that such notice was given.

C.  All notices other than those notices provided for in A. and B. above shall be sent to the **Insurer** at the address set forth in Item 4(c) of the General Declarations.

## VII. CANCELLATION

This policy or any individual **Coverage Section** may be canceled by the **Named Insured** at any time by mailing written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire policy is to be canceled and when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the **Policy Period** either for the entire policy or for that respective **Coverage Section**, whichever is cancelled.

This policy may be canceled by or on behalf of the **Insurer** only in the event of non-payment of premium by the **Named Insured**. In the event of non-payment of premium by the **Named Insured**, the **Insurer** may cancel this policy by delivering to the **Named Insured** or by mailing to the **Named Insured**, by registered, certified or other first class mail, at the **Named Insured**'s address as stated in Item 1 of the General Declarations, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice.

If the policy or any **Coverage Section** shall be canceled by the **Named Insured**, the **Insurer** shall retain the short rate proportion of the applicable premium herein.

If the Policy is canceled by the **Insurer**, the **Insurer** shall retain the pro rata proportion of the applicable premium herein.

Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

## VIII. EXTENDED REPORTING PERIOD

Upon expiration or cancellation of this policy, other than for non-payment of premium, the **Insureds** shall have the right, upon payment of the additional premium indicated in Item 5. of the General Declarations, to an extension of the Notice of Claim provision described in VI. Reporting and Notice of these General Terms and Conditions, for the length of time shown in Item 5 of the General Declarations, commencing on the earlier of the expiration date or effective date of cancellation. Such extension of time to report a **Claim** (herein referred to as the Extended Reporting Period wherever it appears in this policy) shall apply only to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, prior to the earlier of the expiration date or effective date of cancellation, and which are not otherwise excluded by any terms and conditions of this policy. Any **Claim** first made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period**.

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this policy must have been paid and the premium for the Extended Reporting Period must be paid in full with written notice of the **Insured**'s election to purchase the Extended Reporting Period not more than 30 days after the earlier of the expiration date or effective date of cancellation. The **Insured**'s right to purchase the Extended Reporting Period shall otherwise lapse.

If the Extended Reporting Period is purchased, the additional premium shall be deemed fully earned, and the Extended Reporting Period cannot be canceled by any **Insured** or the **Insurer**.

If any premium is owed for the policy, any premium received from the **Named Insured** shall first be applied to the premium owing for the policy with the remainder applied to the premium for the Extended Reporting Period. The Extended Reporting Period shall not take effect unless the outstanding premium for the policy is paid in full and the premium for the Extended Reporting Period is paid when due.

The purchase of the Extended Reporting Period shall not in any way increase or reinstate any limits of liability.

## IX. CHANGE OF CONTROL

If during the **Policy Period**:

A.  the **Named Insured** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert, or

B.  any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Insured**,

(A. and/or B. herein referred to as a Change In Control), then this policy may not be cancelled thereafter and it shall not, in any event, apply to any **Claim** alleging in whole or in part any **Wrongful Acts** committed, attempted or allegedly committed or attempted by any **Insured** subsequent the date of such Change In Control.

The **Named Insured** shall give the **Insurer** written notice of the Change In Control as soon as practicable, but no later than 30 days after the effective date of the Change In Control together with such other information as the **Insurer** may require.

## X. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all the **Insureds'** rights of recovery thereof, and the **Insureds** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit effectively in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Individual Insured** under this policy unless such **Individual Insured** has been convicted of a criminal act or been determined by a final, non-appealable adjudication in any underlying proceeding to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such **Individual Insured** was not legally entitled.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer**'s subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances. Additionally, upon the **Insurer** making any payment of **Loss** within the applicable Retention, the **Insurer** shall have a direct contractual right under this policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States), such **Loss** which was paid within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer**'s subrogation right pursuant to this Section X. and any other rights the **Insurer** may have under applicable law.

## XI. REPRESENTATIONS AND SEVERABILITY

A.  The **Insureds** represent that the information contained in the **Application** is true, accurate and complete. This policy is issued in reliance upon the material representations contained in the **Application**. If the **Application** contains material misrepresentations or omissions made with intent to deceive or that materially affect the acceptance of the risk or the hazard assumed by the **Insurer**, this policy shall not afford any coverage for any **Insured** who knew at the inception of the **Policy Period** of the facts that were misrepresented in, or were omitted from, the **Application**. The **Application** shall be deemed attached to, and incorporated into, this policy.

B.  For the purpose of determining coverage for each **Insured**:

1.  the **Application** shall be construed as a separate application for coverage by each **Insured**;
2.  knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and

3. only knowledge possessed by the **Named Insured's** chief executive officer, chief financial officer, or general counsel or the person signing the **Application** shall be imputed to a **Company**.

C. Except as described above, knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

D. Notwithstanding any other provision of this policy, the **Insurer** shall not rescind this Policy.

## XII. NOTICE AND AUTHORITY

The **Named Insured** shall act on behalf of all **Insureds** with respect to the giving of notice of any **Claim**, the giving and receiving of notice of cancellation and non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer,** and the exercising or declining to exercise any right to an Extended Reporting Period**.**

## XIII. ASSIGNMENT

No change in, modification of or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized representative of the **Insurer**.

## XIV. ACTION

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the **Insured**'s obligation to pay shall have been finally determined either by final judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or entity, or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or entity shall have any right under this policy to join the **Insurer** as a party to any action against the **Insured** or a **Company** to determine the **Insured**'s liability, nor shall the **Insurer** be impleaded by the **Insured** or a **Company** or their legal representative.

## XV. BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or the **Insured**'s estate shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this policy.

## XVI. COVERAGE TERRITORY

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

For **Claims** made and maintained and **Wrongful Acts** committed in any jurisdiction other than the United States of America or any of its territories or possessions, all premiums, limits of liability, Retentions, **Loss** and other amounts are expressed and payable in the currency of the United States of America. If judgment is rendered,

settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Insured**) or in United States of America dollars at the rate of exchange published in The Wall Street Journal on the next publication date of The Wall Street Journal after the **Insurer**'s obligation to pay such **Loss** is established.

## XVII. GOVERNMENTAL RESTRICTIONS

This policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit the **Insurer** from providing insurance.

## XVIII. HEADINGS

The descriptions in the headings and subheadings of this policy, including in any **Coverage Section**, are solely for convenience and form no part of the terms and conditions of coverage.

 

**Directors & Officers and Corporate Securities Liability Coverage Section Declarations**

1. **NAMED INSURED**:        Synapse Financial Technologies, Inc.

2. **POLICY PERIOD**:        Inception:      October 15, 2023
                              Expiration:     July 15, 2024
                              The **Policy Period** incepts and expires as of 12:01 A.M. at the
                              **Named Insured** Address.

3. (a) **COVERAGE SECTION** LIMIT OF LIABILITY:                $1,000,000
   (b) **Derivative Demand** Investigation Sub-Limit of Liability:     $150,000

4. RETENTIONS:

(a) Each **Claim** under Coverage A:                          $0
(b) Each **Claim** other than a **Securities Claim** under Coverage B: $1,000,000
(c) Each **Securities Claim** under Coverage B or C:          $1,000,000
(d) Each **Derivative Demand** under Coverage D:              $0

5. CONTINUITY DATE:        July 21, 2016

CONCENTRIC
Management & Professional Liability Portfolio

**Directors & Officers and Corporate Securities Liability Coverage Section**

In consideration of the premium charged, in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, and subject to all terms and conditions, the **Insurer** agrees as follows:

## I. Insuring Agreements

**Coverage A: Individual Insurance Coverage**

The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

**Coverage B: Company Reimbursement Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period**,** if applicable, for any **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss.**

**Coverage C: Company Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Securities Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any **Wrongful Act** of a **Company**.

**Coverage D: Derivative Demand Investigation Costs Coverage**

The **Insurer** shall pay **Investigation Costs** up to the amount of the **Derivative Demand** Investigation Sub-Limit of Liability set forth in Item 3(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations incurred by a **Company** solely in response to a **Derivative Demand** first made and reported to the **Insurer** during the **Policy Period.** Payment of any **Investigation Costs** under this **Coverage Section** shall not waive any of the **Insurer**'s rights under this policy or at law.

## II. Definitions

In addition to the Definitions in the General Terms and Conditions, the following terms whenever set forth in boldface type in this **Coverage Section**, whether in singular or in plural, shall have the meanings indicated.

A. **Claim** means

   1. a written demand, other than a **Derivative Demand,** for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute

of limitations and including any demand for mediation, arbitration or any other alternative dispute resolution process);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:

   (i)    service of a complaint or similar pleading;
   (ii)   return of an indictment, information or similar document (in the case of a criminal proceeding); or
   (iii)  receipt or filing of a notice of charges;

3. a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:

   (i)  once such **Individual Insured** is identified in writing by such investigating authority or enforcement body as a person against whom a proceeding described in subparagraph 2 of this Definition may be commenced; or
   (ii) in the case of an investigation by the Securities and Exchange Commission("**SEC**") or a similar state or foreign government authority, after:

      (a) the service of a subpoena upon such **Individual Insured**; or
      (b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**;

4. a formal request for the extradition of an **Individual Insured** in any country by another country for trial or to answer a criminal accusation.

B. **Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall not include any fees, costs or expenses incurred prior to the time that a **Claim** is first made against an **Insured**.

C. **Derivative Demand** means a written demand by one or more security holders of a **Company,** without the assistance, participation or solicitation of any **Executive**, upon the board of directors (or equivalent management body) of such **Company** requesting that it file on behalf of the **Company** a civil proceeding in a court of law against any **Executive** for a **Wrongful Act.**

D. **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including:

1. any part-time, seasonal and temporary employee,
2. volunteer, individual who is contracted to perform work for a **Company**, or independent contractor for a **Company** in his or her capacity as such, or
3. any individual who is leased to a **Company**,

but only if such **Company** provides indemnification to such employees, volunteers or individuals in the same manner as is provided to such **Company's** own employees; provided, however, a **Company** may request that no coverage be provided under this **Coverage Section** for an independent contractor or leased employee named in a specific **Claim**. Such request must be made in writing and within 90 days of the **Claim** being reported to the **Insurer**. If no such request is made, this **Coverage Section** shall apply as if the **Company** determined that such independent contractor or leased employee shall receive coverage.

E. **Employment Practices Violation** means the following actual or alleged acts whether committed directly or indirectly, intentionally or unintentionally:

1. wrongful, including constructive termination of employment (actual or constructive),dismissal or discharge;
2. breach of an implied contract of employment;
3. harassment, sexual harassment or creation of a hostile work environment;
4. discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);
5. **Retaliation**;
6. employment-related misrepresentations to an **Employee** of a **Company** or applicant for employment with a **Company** or an **Outside Entity**;
7. employment-related libel, slander, humiliation, defamation or invasion of privacy;
8. wrongful failure to employ or promote;
9. wrongful deprivation of a career opportunity with a **Company**, wrongful discipline, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an **Employee** reference;
10. failure to grant tenure; or
11. with respect to 1 through 10 above, negligent hiring, retention, training, supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent organizational policies and procedures, or violation of an individual's civil rights;

but only if the actual or alleged **Employment Practices Violation** is brought by an **Employee** or an **Outside Entity Employee**, or by an applicant for employment with a **Company** or an **Outside Entity**.

F. **Executive** means

1. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a **Company**;
2. any past, present or future person in a duly elected or appointed position in a **Company** which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or
3. any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the **Named Insured**.

G. **Individual Insured** means any

1. **Executive**;
2. **Employee**; or
3. **Outside Entity Executive**

H. **Insured** means any

   1. **Company**; or
   2. **Individual Insured**.

I. **Investigation Costs** means the reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** (including, but not limited to, attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors(or any equivalent management body), solely in connection with the investigation or evaluation of a **Derivative Demand.**

J. **Loss** means

   1. the amount that any Insured becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to:

      (i)    judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and
      (ii)   damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

   2. **Defense Costs**;
   3. with respect to Coverage D of this **Coverage Section**, **Investigation Costs**.

   **Loss** shall not include, other than **Defense Costs**:

   1. any amount for which the **Insureds** are not financially liable or which are without legal recourse to the **Insureds**;
   1. matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed, provided that the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this **Coverage Section**;
   2. civil or criminal fines or penalties;
   3. taxes or tax penalties (whether imposed by federal, state, local or other governmental authority);
   4. the costs and expenses of complying with any injunctive relief or other form of nonmonetary relief;
   5. compensation, salary, wages, fees, benefits, overhead, charges or expenses of any **Insured;**

6. any amounts owed pursuant to the terms of any contract or agreement, including any amounts related to any such exposures based on the contract or agreement;

7. any amount representing the increase in price or consideration where the **Claim** involves allegations that the price or consideration paid or offered to be paid for a merger, consolidation or acquisition of all or a majority of stock issued by or assets owned by any person or entity is inadequate or unfair; or

8. any reimbursement required under the Sarbanes-Oxley Act of 2002 or any rules, regulations or amendments promulgated thereunder, or any other type of reimbursement, restitution or disgorgement.

K. **Outside Entity** means any not-for-profit organization, other than a **Subsidiary.**

L. **Outside Entity Executive** means any **Executive** of a **Company** serving in the capacity as director, officer, trustee, trustee emeritus or governor of an **Outside Entity**, but only if such service is at the specific request or direction of a **Company**. In the event of a disagreement between a **Company** and an individual as to whether such individual was acting at the specific request or direction of such **Company**, this **Coverage Section** shall abide by the determination of the **Named Insured** on this issue and such determination shall be made by written notice to the **Insurer** within 90 days after the **Claim** first is reported to the **Insurer** pursuant to the terms of the policy. In the event no determination is made within such period, this **Coverage Section** shall apply as if the **Named Insured** determined that such **Executive** was not acting at such **Company**'s specific request or direction.

M. **Pollutants** means any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

N. **Securities Claim** means a **Claim** made against any **Insured**:
1. alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:
   (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale of, or offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or
   (ii) brought by a security holder of a **Company** with respect to such security holder's interest in securities of such **Company**; or
2. brought derivatively on behalf of a **Company** by a security holder of such **Company**.

O. **Subsidiary** means
1. any entity in which the **Company** has or had **Management Control** on or before the inception date of the policy either directly or indirectly through one or more other **Subsidiaries**;
2. any entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries**; and whose assets do not exceed 35% of the assets of the **Company**, prior to the **Company** acquiring **Management Control** of the **Subsidiary**; or
3. any entity in which the **Company** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Subsidiaries** and whose assets exceed 35% of the assets of the Company,

prior to the Company acquiring **Management Control** of the **Subsidiary** but only for a period of 90 days subsequent to the **Company** acquiring **Management Control** of the **Subsidiary.**

P.  **Wrongful Act** means
1.  any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act, including but not limited to an **Employment Practices Violation,** by an **Individual Insured** in his or her capacity as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive, Employee,** or **Outside Entity Executive**; or
2.  any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company** in connection with a **Securities Claim**.

## III. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.  alleging, arising out of, based upon or attributable to:
1.  gaining of any profit, remuneration or advantage to which the **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding establishes the gaining of such profit, remuneration or advantage; or
2.  committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed.

For purposes of determining the applicability of this Exclusion, (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer or chief financial officer shall be imputed to such **Company;**

B.  alleging, arising out of, based upon or attributable to the circumstances alleged or the same **Wrongful Act** or **Related Wrongful Act** alleged or contained in any claim or demand which has been reported, or to any circumstances, **Wrongful Act** or **Related Wrongful Act** of which notice has been given, under any prior insurer's policy or policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time;

C.  alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured** on or prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations**,** or the alleging of any **Wrongful Act** which is the same as or a **Related Wrongful Act** to that alleged in such pending or prior demand, suit or proceeding or in the underlying demand, order, decree or judgment;

D.  alleging, arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed by an **Individual Insured** in his or her capacity as an **Outside Entity Executive** prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations if any **Insured**, as of such **Continuity Date**, knew or could have

reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **Coverage Section**;

E. alleging, arising out of, based upon or attributable to any actual or alleged act, error or omission of an **Individual Insured** serving in any capacity other than as an **Executive** or **Employee** of a **Company** or as an **Outside Entity Executive** of an **Outside Entity**;

F. which is brought by or on behalf of any **Insured** in any capacity, or by any entity that owns more than 50% of the outstanding securities of the **Named Insured**. This Exclusion shall not apply to:

    1. any **Claim** brought or maintained derivatively on behalf of a **Company** by one or more securityholders of such **Company**; provided such **Claim** is brought and maintained without any active assistance or participation of, or solicitation by any **Individual Insured**, other than assistance, for which 18 U.S.C. 1514A(a) (the Sarbanes-Oxley Act of 2002), or any similar "whistleblower" protection provision of any applicable federal, state, local or foreign securities law, affords protection to such **Individual Insured**;

    2. any employment **Claim** brought or maintained by or on behalf of an **Individual Insured**;

    3. any **Claim** brought or maintained by an **Individual Insured** for contribution or indemnity, if such **Claim** directly results from another **Claim** covered under this **Coverage Section**;

    4. any **Claim** brought or maintained against an **Individual Insured** by a bankruptcy or insolvency trustee, examiner, receiver, any assignee of such trustee, examiner or receiver, or any creditors' committee, that has been appointed to take control of, supervise, manage or liquidate the **Named Insured**;

    5. any **Claim** brought or maintained by an **Individual Insured** if such **Individual Insured** has not served in the capacity of an **Individual Insured** within any of the three (3) years immediately preceding the date the **Claim** was made, and such **Claim** is brought and maintained totally independent of and without the solicitation, assistance, active participation, or intervention of any other **Insured**;

    6. any **Claim** brought and maintained outside the United States of America or any of its territories or possessions, Canada or any other common law country (including any territories thereof); or

    7. any **Claim** brought or maintained by an **Employee** of a **Company**; provided such **Employee** is not and has never been an **Executive** of any **Company**;

G. for bodily injury, personal injury, emotional distress, mental anguish, sickness, disease or death of any person, or damage to, loss of use or destruction of any data or tangible property. This Exclusion shall not apply to a **Securities Claim**;

H. for any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**. Other than for expenses (including, but not limited to, legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants,** this Exclusion shall not apply to:

A. a **Claim** under Coverage A of this **Coverage Section;** or
B. **Loss** in connection with a **Securities Claim**;

I.   for any actual or alleged violations of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any workers' compensation, unemployment compensation, unemployment insurance, retirement benefits, social security benefits, disability benefits, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto, or any similar federal, state, local or foreign statutory law or common law. This Exclusion shall not apply to a **Securities Claim**;

J.   The **Insurer** shall not be liable to make any payment for any **Investigation Costs** in connection with any **Derivative Demand** under Coverage D**:**

1.   alleging, arising out of, based upon or attributable to any fact, circumstance, situation, transaction, event or **Wrongful Act** which has been reported under any policy of which this **Coverage Section** is a renewal or replacement or which it may succeed in time;
2.   alleging, arising out of, based upon or attributable to any demand, suit or other proceeding pending against, or order, decree or judgment entered for or against, any **Insured** on or prior to the Continuity Date set forth in Item 5 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations**,** or involving any **Derivative Demand** which is the same or related to that at issue in any pending or prior demand, suit, proceeding or in the underlying demand, order, decree or judgment;

## IV. Limit of Liability

The following provisions shall apply in addition to the provisions of Section IV. Limit of Liability of the General Terms and Conditions:

A.   Subject to the Policy Aggregate Limit of Liability set forth in Item 3 of the General Declarations, the **Coverage Section** Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall be the maximum aggregate limit of the **Insurer**'s liability for all **Loss** under this **Coverage Section.** Upon exhaustion of the Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations, or the Policy Aggregate Limit of Liability in Item 3 of the General Declarations, the **Insurer**'s obligations under this **Coverage Section** shall be deemed completely fulfilled and extinguished.

B.   The maximum limit of the **Insurer**'s liability for all **Investigation Costs** incurred in response to **Derivative Demands** made during the **Policy Period**, in the aggregate, shall be the **Derivative Demand Investigation** Sub-Limit of Liability set forth in Item 3(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations. The **Derivative Demand Investigation** Sub-Limit of Liability shall be the maximum limit of the **Insurer** under this **Coverage Section** for all **Investigation Costs** regardless of the number of **Derivative Demands** made during the **Policy Period** or the number of **Executives** subject to such **Derivative Demands** and shall be part of, and not in addition to, the **Coverage Section** Limit of Liability set forth in Item 3(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations which is also part of and not in addition to the Policy Aggregate Policy Limit of Liability set forth in Item 3 of the General Declarations.

## V. Retentions

The following provisions shall apply in addition to the provisions of Section V. Retentions of the General Terms and Conditions:

A. The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 4 of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations. The Retention shall be borne by the **Insureds** and shall remain uninsured, with regard to:

   1. all **Loss** for which the **Company** is required or permitted to provide indemnification to an **Individual Insured**; and
   2. **Loss** of a **Company**.

B. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

C. The Retention set forth in Item 4(a) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Claim** under Coverage A of this **Coverage Section**. The Retention set forth in Item 4(b) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Claim** other than a **Securities Claim** under Coverage B of this **Coverage Section**.  The Retention set forth in Item 4(c) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Securities Claim** under Coverage B or Coverage C of this **Coverage Section**.  The Retention set forth in Item 4(d) of the Directors & Officers and Corporate Securities Liability **Coverage Section** Declarations shall apply to each **Derivative Demand** under Coverage D of this **Coverage Section**.

D. The Retention applicable to Coverage B shall apply to **Indemnifiable Loss**, whether or not actual indemnification is made, unless such indemnification is not made by a **Company** solely by reason of its **Financial Insolvency**. A **Company**'s certificate of incorporation, charter or other organization documents, including by-laws and resolutions, shall be deemed to require indemnification and advancement to an **Individual Insured** to the fullest extent permitted by law.  In the event a **Company** is unable to pay the applicable Retention due to **Financial Insolvency**, then the **Insurer** shall advance payment for **Loss** within the applicable Retention. The **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from such **Company** pursuant to Section VI.B. of this **Coverage Section** and Section X. Subrogation of the General Terms and Conditions.

## VI. Defense Costs, Defense Counsel, Settlements & Judgments

A. Defense

   The **Insurer** does not assume any duty to defend a **Claim**. The **Insureds** shall defend and contest any **Claim** made against them. An **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. An **Insured** may select a defense counsel different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest and only with the express prior written consent of the **Insurer**.

B. Advancement

The **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the Terms and Conditions of this **Coverage Section** to payment of such **Loss**.

C. Cooperation

The **Insurer** shall have the right to associate fully and effectively with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insurer**'s judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

D. Prior Written Consent

The **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** or **Investigation Costs** without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments, **Defense Costs** and **Investigation Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **Coverage Section**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **Coverage Section**. In addition, the **Insured** shall not take any action which prejudices the **Insurer**'s rights under this **Coverage Section.**

## VII. Other Insurance

Such insurance as is provided by this **Coverage Section** shall apply only as excess over any other valid and collectible insurance, unless such other insurance is expressly written to be excess over any applicable Limit of Liability for this policy or any **Coverage Section**. This policy specifically shall be excess of any other policy pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. For any **Claim** involving an **Outside Entity Executive**, this policy shall be specifically excess of any indemnification by the **Outside Entity** and any insurance coverage afforded to any such **Outside Entity Executive** or **Outside Entity.**

## VIII. Allocation

If both **Loss** covered under this **Coverage Section** and loss not covered under this **Coverage Section** are incurred by the **Insureds** on account of any **Claim** because such **Claim** against the **Insureds** includes both covered and non-covered matters and/or includes both covered and non-covered parties, then amounts incurred by the **Insured** on account of such **Claim** shall be allocated between covered **Loss** and non-covered loss based on the relative legal liability and financial exposure of the **Insureds**

to covered and non-covered matters and/or based on the relative legal and financial exposure of the covered and non-covered parties.  The **Insureds** and **Insurer** agree to use their best efforts to determine a fair and proper allocation.

If the **Insureds** and the **Insurer** cannot agree on an allocation of covered **Loss** and non-covered loss:

A.  the **Insurer** shall pay the amount of **Loss** that the **Insurer** and **Insureds** agree is not in dispute until a different allocation is negotiated, arbitrated, or judicially determined;

B.  no presumption as to allocation shall exist in any arbitration, suit or other proceeding; and

C.  the **Insurer**, if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators.

## IX. Coverage under Coverage D

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **Coverage Section** for **Investigation Costs** not greater than 90 days after the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and such decision has been communicated to the security holders who made the demand upon the **Company**.

Nothing in this **Coverage Section**, including Coverage D, shall be construed to afford coverage for any **Claim** brought by the **Company** against one or more of its own **Executives**, other than **Investigation Costs** incurred in a covered **Derivative Demand** or as otherwise provided under Section III.F. of this **Coverage Section**.

## X. Order of Payments

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **Coverage Section** but which **Loss**, in the aggregate, exceeds the remaining available Limits of Liability applicable to this **Coverage Section**, (including by virtue of the depletion of the Policy Aggregate Limit of Liability), then the **Insurer** shall:

A.  first pay such **Loss** for which coverage is provided under Coverage A of this **Coverage Section**;

B.  then pay such **Loss** for which coverage is provided under Coverage B of this **Coverage Section**; and

C.  then pay such other **Loss** for which coverage is provided under this policy.

Upon the written request of the **Named Insured**, the **Insurer** shall either pay or withhold payment for **Loss** otherwise payable under Coverages B, C, or D. In the event that the **Insurer** withholds payment as requested by the **Named Insured**, then the **Insurer** shall at any time in the future, at the request of the **Named Insured**, release such **Loss** payment to a **Company**, or make such **Loss** payment directly to the **Individual Insured** in the event of any **Claim** under Coverage A of this **Coverage Section**. The **Insurer**'s liability with respect to any payments of **Loss** withheld shall not be increased, and shall not include any interest, as a result of such withholding.

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Section** pursuant to this Section X.

**ENDORSEMENT NUMBER**      1
**NAMED INSURED**      Synapse Financial Technologies, Inc.
**POLICY NUMBER**      EFI1203189-02
**EFFECTIVE DATE**      October 15, 2023


This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒    Directors & Officers and Corporate Securities Liability Coverage Section
☐    Private Company Management Liability Coverage Section
☐    Investment Adviser Professional Liability Coverage Section
☐    Investment Fund Coverage Section
☐    Insurance Company Professional Liability Coverage Section
☐    Bankers Professional Liability Coverage Section
☐    Employment Practices Liability Coverage Section
☐    Fiduciary Liability Coverage Section

## PROFESSIONAL SERVICES E&O EXCLUSION


The **Insurer** shall not be liable to pay any **Loss** from any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **Coverage Section**; provided, however, that this Exclusion shall not apply to **Loss** in connection with a **Securities Claim**.


All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 2 |
| **NAMED INSURED** | Synapse Financial Technologies, Inc. |
| **POLICY NUMBER** | EFI1203189-02 |
| **EFFECTIVE DATE** | October 15, 2023 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# MONEY LAUNDERING EXCLUSION

In consideration of the premium charged, it is agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any act or acts (or alleged act or acts) of **Money Laundering,** or any act or acts (or alleged act or acts) which are in breach of and/or constitute an offense or offenses under any money laundering legislation.

**Money Laundering** means:
(i) the concealment, or disguise, or conversion, or transfer, or removal of criminal property (including concealing or disguising its nature, source, location, disposition, movement or ownership or any rights relating thereto); or
(ii) the entering into or becoming in any way concerned in an arrangement which is known or suspected to facilitate (by whatever means) the acquisition, retention, use or control of criminal property by or on behalf of another person; or
(iii) the acquisition, use or possession of criminal property; or
(iv) any act which constitutes an attempt, conspiracy or incitement to commit any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii); or
(v) any act which constitutes aiding, abetting, counselling or procuring the commission of any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii).

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 3 |
| **NAMED INSURED** | Synapse Financial Technologies, Inc. |
| **POLICY NUMBER** | EFI1203189-02 |
| **EFFECTIVE DATE** | October 15, 2023 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## THEFT OR LOSS OF CRYPTO CURRENCY EXCLUSION

In consideration of the premium charged, it is agreed that Section III, Exclusions, of the Private Company Management Liability Coverage Section is amended by the addition of the following:

The **Insurer** shall not be liable to make any payment of **Loss** in connection with any **Claim** alleging, arising out of, based upon, in consequence of or attributable to any theft, appropriation, misappropriation, conversion, loss, or disappearance of any crypto currency, crypto token or coin, digital token or coin, utility token or coin, or similar digital asset

All other terms, conditions and limitations of this Policy shall remain unchanged.

**ENDORSEMENT NUMBER**      4
**NAMED INSURED**           Synapse Financial Technologies, Inc.
**POLICY NUMBER**           EFI1203189-02
**EFFECTIVE DATE**          October 15, 2023

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒  Directors & Officers and Corporate Securities Liability Coverage Section
☐  Private Company Management Liability Coverage Section
☐  Investment Adviser Professional Liability Coverage Section
☐  Investment Fund Coverage Section
☐  Insurance Company Professional Liability Coverage Section
☐  Bankers Professional Liability Coverage Section
☐  Employment Practices Liability Coverage Section
☐  Fiduciary Liability Coverage Section

## CYBER AND DATA EXCLUSION WITH SECURITIES CLAIM CARVE-BACK

In consideration of the Premium charged, it is agreed that:

1.  Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any **Loss** arising out of:

    •  a **Cyber Incident**;

    •  a **Cyber Act**; or

    •  a breach of **Data Protection Law** by the **Insured**, or parties acting for the **Insured**, involving access to, processing of, use of or operation of any **Computer System** or **Data;**

    unless subject to the provisions of paragraph 2.

2.  Subject to all the terms, conditions, limitations and exclusions of this Policy or any endorsement thereto, paragraph 1 shall not apply to any **Securities Claim.**

### Definitions

3.  **Computer System** means any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility, owned or operated by the Insured or any other party.

4.   **Cyber Act** means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any **Computer System**.

5.   **Cyber Incident** means:

5.1   any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any **Computer System**; or

5.2   any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any **Computer System**.

6.   **Data** means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a **Computer System**.

7.   **Data Protection Law** means all applicable data protection and privacy legislation, regulations in any country, province, state, territory or jurisdiction which governs the use, confidentiality, integrity, security and protection of personal data, and any guidance or codes of practice issued by any data protection regulator or authority from time to time (all as amended, updated or re-enacted from time to time).

All other terms, conditions and limitations of this Policy shall remain unchanged.

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 5 |
| **NAMED INSURED** | Synapse Financial Technologies, Inc. |
| **POLICY NUMBER** | EFI1203189-02 |
| **EFFECTIVE DATE** | October 15, 2023 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

## SECURITIES EXCLUSION

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. the public offer, sale, solicitation, or distribution of securities of a **Company** or an **Outside Entity**; or

2. the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder;

provided, however, this exclusion will not apply to: i) any offer, purchase or sale of securities of a **Company**, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction"); or ii) any **Claim** made by a security holder of a **Company** for the failure of such **Company** to undertake or complete a public offering or sale of securities of such **Company**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

CD 059 0721

| | |
|---|---|
| **ENDORSEMENT NUMBER** | 6 |
| **NAMED INSURED** | Synapse Financial Technologies, Inc. |
| **POLICY NUMBER** | EFI1203189-02 |
| **EFFECTIVE DATE** | October 15, 2023 |

This endorsement modifies only the selected COVERAGE SECTION(s) as indicated by an "X" below, and if applicable, the GENERAL TERMS AND CONDITIONS as they apply to the COVERAGE SECTION(s) indicated by an "X" below

☒ Directors & Officers and Corporate Securities Liability Coverage Section
☐ Private Company Management Liability Coverage Section
☐ Investment Adviser Professional Liability Coverage Section
☐ Investment Fund Coverage Section
☐ Insurance Company Professional Liability Coverage Section
☐ Bankers Professional Liability Coverage Section
☐ Employment Practices Liability Coverage Section
☐ Fiduciary Liability Coverage Section

# RUN-OFF ENDORSEMENT

1. Item 2. POLICY PERIOD of the General Declarations, and the applicable Coverage Section Declarations as indicated above, is amended to read:

   2. POLICY PERIOD:    Inception:  October 15, 2023
                        Expiration:  July 15, 2030, or the Six Year Anniversary of the date of a "Change of Control," predicated on whichever date occurs first

   The Policy Period incepts and expires as of 12:01 A.M. at the Named Insured Address.

2. Section VIII. EXTENDED REPORTING PERIOD of the General Terms and Conditions and any reference there-to is deleted in its entirety.

3. Notwithstanding anything contained in the policy to the contrary, the coverage afforded by this policy shall not apply to:
   a. any **Wrongful Act**, (including any **Related Wrongful Acts** any of which were), committed or alleged to have been committed,
   b. any matter which could involve the payment of **Voluntary Compliance Loss** under the Fiduciary Liability **Coverage Section** occurring, or
   c. any **Derivative Demand**

   subsequent to either July 15, 2024, or the date of a "Change of Control," predicated on whichever date occurs first.

4. Section VI REPORTING AND NOTICE of the General Terms and Conditions is deleted and replaced with the following:

   A. The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** by mail or electronically to the address set forth in Item  4(b) of the General Declarations of:

      (i)   any **Claim** made against an **Insured**,

      (ii)  any matter which could involve the payment of **Voluntary Compliance Loss** under the Fiduciary Liability **Coverage Section**, if purchased, or

      (iii) any **Derivative Demand Investigation** under the Private Company Management Liability **Coverage Section** or Public Company Directors & Officers and Entity Securities **Coverage Section**, if purchased,

   as soon as practicable but no later than July 15, 2030, or on the date of the Six Year Anniversary of a "Change of Control," predicated on whichever dates occurs first.

5. The Premium paid for this policy is deemed fully earned.  Section VII CANCELATION of the General Terms and Conditions is deleted in its entirety and this policy may not be canceled for any reason by either the **Insured** or the **Insurer**.

6. For the avoidance of doubt, the term "Change of Control" is as defined in Section IX. CHANGE OF CONTROL in the "General Terms and Conditions" section of this policy

All other terms, conditions and limitations of this Policy shall remain unchanged.

# EXHIBIT 2

## IMPORTANT NOTICE:

**1. The insurance policy that you have purchased is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC— the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**



### Applied Financial Lines
### Excess Liability Insurance
### Policy Declarations

POLICY NUMBER: BFLXPFTCA010300_020145_03          RENEWAL OF NUMBER: BFLXPFTCA011200_020145_02

1. **Named Insured:**   Synapse Financial Technologies, Inc.

   **Address:**      101 2nd Street, Suite 525
   San Francisco, CA 94105

2. **Policy Period:**   **From:**  October 15, 2023

   **To:**    July 15, 2024

   at 12:01 a.m. at the **Named Insured** Address.

3. **Limit of Liability:**   $1,000,000 per **Claim** and in the aggregate for the **Policy Period** in excess of the attached Schedule of Underlying Insurance.

4. **Annual Premium:**   $227,500

5. **Insurer:**      **Texas Insurance Company**

6. **Claims Address:**   email:   newclaim@auw.com

   mail:   Applied Risk Services, Inc. – if **Named Insured Address** is outside NY
   Applied Risk Services of New York, Inc. – if **Named Insured Address** is in NY
   PO Box 3216
   Omaha, NE 68103-0216

7. In accordance with the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

   This policy consists of the following coverage: excess liability insurance.

8. Forms and endorsement(s) are made a part of this policy at the time of issue.

   These declarations, form and endorsements, if any, complete the above numbered policy. "**Application**", "**Loss**", "**Claim**", "**Defense Costs**", and all other **bold** terms, not otherwise defined herein, shall have the meanings set forth for them, or an equivalent term, in the "**Followed Policy**".





Signed: _____

JEFFREY A. SILVER, Secretary
Authorized Representative





# SCHEDULE OF UNDERLYING INSURANCE

| Underlying Insurance Carrier | Policy Number | Limit of Liability |
|---|---|---|
| *Primary Policy: Certain Underwriters at Lloyd's of London/Associated Industries Insurance Company | EFI1203189-02 | $1,000,000 |





**SERVICE OF SUIT**
BFLXPFTCA010300_020145_03

# SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Texas Insurance Company
Attn: General Counsel
10805 Old Mill Road
Omaha, NE 68154

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**EXCESS LIABILITY POLICY**

BFLXPFTCA010300_020145_03

In consideration of the premium paid and in reliance on the completeness of the **Application**, all statements made and information furnished by the **Insureds** in connection with the underwriting of this **Policy**, and subject to the terms and conditions of this **Policy**, the **Insurer**, and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

## I. INSURING CLAUSE

This **Policy** shall provide to the **Insureds** insurance coverage for any **Loss** resulting from **Claims** and shall attach to the **Insurer** only: (i) in the event of the exhaustion of the **Underlying Policy(ies)** by reason of payment by, on behalf of, or in place of, the insurers of the **Underlying Policy(ies)** paying in legal currency, which, except for the amount thereof, would have been covered hereunder; and (ii) after the **Insureds** shall have paid any applicable retention or deductible under the **Primary Policy**.

The **Limit of Liability** set forth in Item 3. of the **Declarations** shall be the maximum amount payable by the **Insurer** under this **Policy**.

## II. TERMS AND CONDITIONS

**A.**   This **Policy**, except as stated herein, is subject to all terms, conditions and limitations as contained in the **Followed Policy** at the inception of this **Policy**, and to the extent coverage is further limited or restricted thereby, in any other **Underlying Policy(ies)**.

**B.**   If any coverage under the **Underlying Policy(ies)** is subject to a sub-limit of liability, this **Policy** shall not apply to such coverage, but the **Insurer** shall recognize any **Loss** paid under such coverage in any manner described in the **Insuring Clause** as reducing the **Underlying Limit** by the amount of such paid **Loss**.

**C.**   If any **Underlying Policy(ies)** is changed or terminated, the **Insurer** shall not be liable under this **Policy** to a greater extent than it would have been had such **Underlying Policy(ies)** been so maintained unless the **Insurer** agrees to the change in writing. The risk of collectability of the **Underlying Policy(ies)** whether because of insolvency of an underlying insurer or for any other reason is expressly retained by the **Insureds**.

**D.**   Notice to the **Insureds** may be given to the **Named Insured** at the address shown in Item 1. of the **Declarations**.

Notice to any insurer of an **Underlying Policy(ies)** shall not constitute notice to the **Insurer**. With respect to any **Claim**, circumstance that could give rise to a **Claim**, or other matter as to which insurance may be sought under this **Policy**, the **Insured(s)** shall, as a condition precedent to any rights to payment under this **Policy**, give the **Insurer** notice in writing, at the address shown in Item 6 of the **Declarations**, contemporaneously with the notice provided under the applicable **Underlying Policy(ies)**.



E.    The **Insurer** may, at its sole discretion, participate in the investigation, defense or settlement of any **Claim** or other matter to which coverage under this **Policy** could apply even if the **Underlying Limit** has not been exhausted. No action by any other insurer shall bind the **Insurer** under this **Policy**. The **Insurer** shall not be liable under this **Policy** for any settlements, stipulated judgments, or **Defense Costs** to which the **Insurer** has not consented, which consent shall not be unreasonably withheld.

F.    If the **Insured(s)** elect and are granted an extended reporting period under the **Followed Policy**, then the **Insured(s)** may elect an extended reporting period under this **Policy** under the terms and conditions of the **Followed Policy**.

## III. DEFINITIONS

A.    **Followed Policy** means the policy in the attached Schedule of Underlying Insurance with a "*" at the beginning of its row.

B.    **Named Insured** means the entity named in Item 1 of the **Declarations**.

C.    **Primary Policy** means the first listed policy in the attached Schedule of Underlying Insurance.

D.    **Policy Period** means the period of time specified in Item 2 of the **Declarations**, subject to prior termination in accordance with the **Primary Policy**.

E.    **Underlying Limit** means an amount equal to the aggregate of all limits of liability, as set forth in the Schedule of Underlying Insurance, for all **Underlying Policy(ies)**, plus any applicable retention or deductible under the **Primary Policy**.

F.    **Underlying Policies** means those policies listed in the attached Schedule of Underlying Insurance.

| Endorsement No. | Named Insured | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 1 | Synapse Financial Technologies, Inc. | BFLXPFTCA010300_020145_03 | 10/15/2023 | 10/15/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PENDING AND PRIOR LITIGATION EXCLUSION ENDORSEMENT

In consideration of the payment of the premium for this **Policy**, it is hereby understood and agreed that the **Insurer** shall have no liability to make payment for any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to, as of 07/21/2016, any pending or prior (i) litigation; (ii) administrative or regulatory proceeding; or (iii) investigation of which an **Insured** had notice, or alleging or based upon the same or similar acts alleged in such pending or prior (i) litigation; (ii) administrative or regulatory proceeding; or (iii) investigation.

As used in this endorsement, "**Insured**" shall have the meaning set forth in the **Followed Policy**.

All other terms and conditions remain unchanged.

FL-05011A-NAC
(08-2022)

| Endorsement No. | Named Insured | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 2 | Synapse Financial Technologies, Inc. | BFLXPFTCA010300_020145_03 | 10/15/2023 | 10/15/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FULLY EARNED PREMIUM ENDORSEMENT

In consideration of the payment of the premium for this **Policy**, it is hereby understood and agreed that the entire premium amount as set forth in Item 4 of the Declarations of this **Policy** is deemed to be fully earned and non-refundable as of the inception date of this **Policy**.

Notwithstanding the paragraph above, if this **Policy** is cancelled by the **Insurer** in accordance with the provisions of this **Policy** and any applicable state law, the **Named Insured** shall be entitled to a return premium amount, such amount to be determined by any cancellation provision of this **Policy**.

All other terms and conditions remain unchanged.

| Endorsement No. | Named Insured | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 3 | Synapse Financial Technologies, Inc. | BFLXPFTCA010300_020145_03 | 10/15/2023 | 10/15/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# RUNOFF COVERAGE/PROVISION FOLLOW FORM ENDORSEMENT
# (ADDITIONAL PREMIUM)

In consideration of the additional premium payment of $0, which shall be fully earned at the effective date of this endorsement, it is hereby understood and agreed that coverage under this **Policy** follows all of the **Followed Policy's** terms, conditions and limitations, including, but not limited to, the coverage or provision(s) referenced in the below Followed Schedule of this endorsement, subject to the terms, conditions and limitations of this **Policy**:

**FOLLOWED SCHEDULE**

| Followed Coverage Parts |
|---|
| Endorsement CG 136 1223 RUN-OFF ENDORSEMENT: 6 year term, to effect on July 15, 2024 or the date of a "Change of Control", whichever occurs first |

All other terms and conditions remain unchanged.

# EXHIBIT 3



November 18, 2024

achow@mololamken.com

Anden Chow

**Re:** **Coverage Position**

| | |
|---|---|
| **Matter:** | **United States Department of Justice Subpoena** |
| **Claim No:** | **AMRR284** |
| **Policy No:** | **EFI1203189-02** |
| **Insurance Co:** | **Underwriters at Lloyd's of London; Associated Industries Insurance** |
| **Insured:** | **Synapse Financial Technologies, Inc.** |

Dear Mr. Chow:

As you recall, Euclid Financial is the program administrator and authorized claims representative for Certain Underwriters at Lloyd's of London and Associated Industries Insurance Company in connection with the above referenced matter submitted for coverage under the Directors & Officers and Corporate Securities Liability Policy issued to the **Named Insured**[1] (the "Policy"). We recognize that circumstances may change. As such, any coverage position set forth in this letter is preliminary in nature and is not intended to be exclusive or exhaustive.

As explained herein, the Policy provides coverage to Victor Medeiros for the submitted matter.

Please know that Underwriters value their relationship and welcome any questions or comments you may have regarding their coverage position. After you have reviewed this letter, please feel free to contact us if you would like to discuss further.

**Matter Submitted**

We have received a subpoena dated October 16, 2024 to Victor Medeiros, former Corporate Controller and Senior Director of Finance and Accounting of Synapse Financial Technologies, Inc. to appear in front of a Grand Jury of the People of the United States for the Southern District of New York on November 30, 2024 in connection with an official criminal investigation of a suspected felony. The subpoena also seeks documents for production on or before the return date. The subpoena is investigating violations of 15 U.S.C. §§ 78j(b) &

---

[1] Terms in Bold are defined within the Policy. We encourage you to review this letter with the Policy.

78ff and 17 C.F.R. §240.10b-5; 15 U.S.C. §§ 7202, 7242, and 78f and 17 C.F.R. § 240.13b-2; 18 U.S.C. §§ 371, 1343, 1348, & 1349.

**The Policy**

Underwriters issued Policy No. EFI1203189-02 for the policy period October 15, 2023 to July 15, 2024 (Extended to July 15, 2030) (the "Policy") with a Directors & Officers and Corporate Securities Liability Limit of $1,000,000 subject to a retention of $1,000,000 per **Claim** for Insuring Agreements B&C (the "Policy").

The Directors & Officers and Corporate Securities Liability Coverage Section provides as follows:

**Directors & Officers and Corporate Securities Liability Coverage Section**

In consideration of the premium charged, in reliance upon the statements made by the **Insureds** in the **Application**, which forms a part of this policy, and subject to all terms and conditions, the **Insurer** agrees as follows:

## I. Insuring Agreements

**Coverage A: Individual Insurance Coverage**

The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.

**Coverage B: Company Reimbursement Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period**,** if applicable, for any **Wrongful Act** of such **Individual Insured**, but only when and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss.**

**Coverage C: Company Coverage**

The **Insurer** shall pay **Loss** of a **Company** arising from a **Securities Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any **Wrongful Act** of a **Company**.

## II. Definitions

In addition to the Definitions in the General Terms and Conditions, the following terms whenever set forth in boldface type in this **Coverage Section**, whether in singular or in plural, shall have the meanings indicated.

A. **Claim** means:

1. a written demand, other than a **Derivative Demand,** for monetary, nonmonetary or injunctive relief (including any request to toll or waive any statute of limitations and including any demand for mediation, arbitration or any other alternative dispute resolution process);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:
(i) service of a complaint or similar pleading;
(ii) return of an indictment, information or similar document (in the case
of a criminal proceeding); or
(iii) receipt or filing of a notice of charges;

3. a civil, criminal, administrative or regulatory investigation of an **Individual Insured**:
(i) once such **Individual Insured** is identified in writing by such investigating authority or enforcement body as a person against whom a proceeding described in subparagraph 2 of this Definition may be commenced; or
(ii) in the case of an investigation by the Securities and Exchange Commission("**SEC**") or a similar state or foreign government authority, after:
(a) the service of a subpoena upon such **Individual Insured**; or
(b) the **Individual Insured** is identified in a written "Wells" or other notice from the **SEC** or a similar state or foreign government authority that describes actual or alleged violations of laws by such **Individual Insured**;

4. a formal request for the extradition of an **Individual Insured** in any country by another country for trial or to answer a criminal accusation.

G. **Individual Insured** means any
1. **Executive**;
2. **Employee**; or
3. **Outside Entity Executive**

D.  **Employee** means any past, present or future employee of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including:

1. any part-time, seasonal and temporary employee,
2. volunteer, individual who is contracted to perform work for a **Company**, or independent contractor for a **Company** in his or her capacity as such …

F. **Executive** means

1. any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, governor, general partner, managing general partner, venture partner, administrative general partner, principal, management committee member of a duly constituted committee, or member of the Board of Managers of a **Company**;
2. any past, present or future person in a duly elected or appointed position in a **Company** which is organized and operated in a jurisdiction other than the United States of America or any of its territories or possessions that is equivalent to an executive position listed in paragraph 1. of this Definition; or
3. any past, present or future General Counsel, Chief Compliance Officer, or Risk Manager (or equivalent position) of the **Named Insured**.

G. **Individual Insured** means any: 1. **Executive**; 2. **Employee**; or 3. **Outside Entity Executive**.

H. **Insured** means any: 1. **Company**; or 2. **Individual Insured**.

J. **Loss** means:

1. the amount that any **Insured** becomes legally obligated to pay in connection with any covered **Claim**, including, but not limited to: (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and (ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages to the extent allowed by applicable law. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;

2. **Defense Costs** …

P. **Wrongful Act** means

1. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act, including but not limited to an **Employment Practices Violation**, by an **Individual Insured** in his or her capacity as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive, Employee,** or **Outside Entity Executive**; or

2. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company** in connection with a **Securities Claim**.

We will acknowledge the matter as a Claim against Mr. Medeiros as the subpoena appears to be a regulatory investigation commenced by service of a subpoena and alleging Wrongful Acts as defined by the Policy.

Notwithstanding Underwriters' acknowledgement that the Policy is triggered by the Subpoena served on Mr. Medeiros, we note that certain provisions, definitions, exclusions and/or endorsements of the Policy could limit and/or preclude coverage for these matters, depending on developments in these investigations.

Please refer to the following exclusions which may be applicable:

## III. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A. alleging, arising out of, based upon or attributable to:

1. gaining of any profit, remuneration or advantage to which the **Insured** was not legally entitled, if a final, non-appealable adjudication in any underlying proceeding establishes the gaining of such profit, remuneration or advantage; or

2. committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if a final, non-appealable adjudication in any underlying proceeding establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed.  For purposes of determining the applicability of this Exclusion, (i) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any **Individual Insured**; and (ii) only facts pertaining to and knowledge possessed by any past, present or future chief executive officer or chief financial officer shall be imputed to such **Company;**

## PROFESSIONAL SERVICES E&O EXCLUSION

The **Insurer** shall not be liable to pay any **Loss** from any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this **Coverage Section**; provided, however, that this Exclusion shall not apply to **Loss** in connection with a **Securities Claim**.

## MONEY LAUNDERING EXCLUSION

In consideration of the premium charged, it is agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to any act or acts (or alleged act or acts) of **Money Laundering,** or any act or acts (or alleged act or acts) which are in breach of and/or constitute an offense or offenses under any money laundering legislation. **Money Laundering** means:

(i) the concealment, or disguise, or conversion, or transfer, or removal of criminal property (including concealing or disguising its nature, source, location, disposition, movement or ownership or any rights relating thereto); or

(ii) the entering into or becoming in any way concerned in an arrangement which is known or suspected to facilitate (by whatever means) the acquisition, retention, use or control of criminal property by or on behalf of another person; or

(iii) the acquisition, use or possession of criminal property; or

(iv) any act which constitutes an attempt, conspiracy or incitement to commit any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii); or

(v) any act which constitutes aiding, abetting, counselling or procuring the commission of any act or acts mentioned in the foregoing paragraphs (i), (ii) or (iii).

## SECURITIES EXCLUSION

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. the public offer, sale, solicitation, or distribution of securities of a **Company** or an **Outside Entity**; or

2. the actual or alleged violation of any federal, state, local or provincial statute relating to securities, including but not limited to the Securities Act of 1933 and the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder; provided, however, this exclusion will not apply to: i) any offer, purchase or sale of securities of a **Company**, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933 (an "Exempt Transaction"); or ii) any **Claim** made by a security holder of a **Company** for the failure of such **Company** to undertake or complete a public offering or sale of securities of such **Company**.

Finally, Underwriters note that the definition of **Loss** could also limit and/or preclude coverage for this matter.

The D&O Coverage Section of the Policy provides that:

**Loss** shall not include, other than **Defense Costs**: 1. any amount for which the Insureds are not financially liable or which are without legal recourse to the **Insureds**; 1. [sic] matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed, provided that the Insurer shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements,

judgments and **Defense Costs** as constituting **Loss** under this **Coverage Section**; 2. civil or criminal fines or penalties; 3. taxes or tax penalties (whether imposed by federal, state, local or other governmental authority); 4. the costs and expenses of complying with any injunctive relief or other form of nonmonetary relief;... 6. any amounts owed pursuant to the terms of any contract or agreement, including any amounts related to any such exposures based on the contract or agreement ... 8. any reimbursement required under the Sarbanes-Oxley Act of 2002 or any rules, regulations or amendments promulgated thereunder, or any other type of reimbursement, restitution or disgorgement.

### Defense Costs, Defense Counsel, Settlements & Judgments

A. Defense

The **Insurer** does not assume any duty to defend a **Claim**. The **Insureds** shall defend and contest any **Claim** made against them. An **Insured** shall not retain defense counsel or incur any **Defense Costs** without the prior written consent of the **Insurer**, such consent not to be unreasonably withheld. An **Insured** may select a defense counsel different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest and only with the express prior written consent of the **Insurer**.

B. Advancement

The **Insurer** shall advance **Defense Costs** in excess of the applicable Retention on behalf of the **Insured** prior to final disposition of the **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured**, severally according to their respective interests, in the event and to the extent that any such **Insured** shall not be entitled under the Terms and Conditions of this **Coverage Section** to payment of such **Loss**.

C. Cooperation

The **Insurer** shall have the right to associate fully and effectively with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation and take such actions which, in such **Insurer**'s judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**.

D. Prior Written Consent

The **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** or **Investigation Costs** without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments, **Defense Costs** and **Investigation Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **Coverage Section**, provided that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Claim** (or any portion thereof) is not covered under the terms of this **Coverage Section**. In addition, the **Insured** shall not take any action which prejudices the **Insurer**'s rights under this **Coverage Section.**

Underwriters will reimburse Defense Costs from the date Underwriters was notice of the Claim at issue. We note that Synapse is not in a position to indemnify Mr. Medeiros pursuant to the bankruptcy, thereby triggering Insuring Clause A which does not maintain a self insured retention. We approve Anden Chow of Molo Lanken to defend the matter and approve the rates previously provided. Please refer to the enclosed billing guidelines with respect to the defense of the matter. Please also keep Underwriters apprised of the status of these investigations and let us know if you receive any further information or documentation relative to matters referenced herein.

**Reservation**

Please be advised that Underwriters reserve all rights and defenses that they may have under the Policy, at law and in equity, whether or not specifically referenced herein, including the right to deny coverage upon any terms, conditions, exclusions, endorsements and other provisions of the Policy.  Underwriters specifically reserve the right to amend and/or supplement this correspondence as circumstances may warrant.  This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by Underwriters.

If you have any questions or concerns, please feel free to contact me directly.  Thank you.

Very Truly Yours,

Claims Counsel
908-370-1354
elevine@euclidfinancial.com

cc:     Malia.shappell@alliant.com
        Brendan.quinlan@alliant.com
        Lena.lee@alliant.com
        Steven.cuccinelli@alliant.com
        Drew.logue@alliant.com
        Specialtyclaims@alliant.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Echo Park Legal, APC, 2210 W Sunset Blvd. #301, Los Angeles, CA 90026.

A true and correct copy of the foregoing document entitled (*specify*):_____
_____ *Notice of Motion and Motion for Relief from the Automatic Stay Under 11 U.S.C. 362* will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 21, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

X Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) January 21, 2025 I *caused to be* served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*I caused the document noted above to be served by utilizing the services of BK Attorney Service, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P 9001(9) and 2002(g)(4) as provided in the following pages*

X Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| 1/21/2025 | M. Douglas Flahaut | /s/ M. Douglas Flahaut |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):</u>

- **Ron Bender**    rb@lnbyg.com
- **David A Berkley**    david.berkley@wbd-us.com,
  mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
- **J Scott Bovitz**    bovitz@bovitz-spitzer.com
- **Rudy J Cerone**    rcerone@mcglinchey.com,
  lgraff@mcglinchey.com;jingargiola@mcglinchey.c
  om
- **Sara Chenetz**    schenetz@perkinscoie.com,
  docketLA@perkinscoie.com;cmallahi@perkinscoi
  e.com;jkulow@perkinscoie.com;chenetz-sara-
  perkins-coie-
  8670@ecf.pacerpro.com;rleibowitz@perkinscoie.c
  om
- **Russell Clementson**
  russell.clementson@usdoj.gov
- **Andrew Michael
  Cummings** andrew.cummings@hklaw.com,
  philip.dobbs@hklaw.com;hapi@hklaw.com;reena.
  kaur@hklaw.com
- **Michael G. Farag**    mfarag@gibsondunn.com
- **Jacqueline Foroutan**
  jacqueline.foroutan@akerman.com,
  akermanlas@akerman.com
- **Paul R. Glassman**    pglassman@stradlinglaw.com
- **Nicholas Christian Glenos**    cglenos@bradley.com
- **Michael H Goldstein**
  mgoldstein@goodwinprocter.com,
  ASchaefer@goodwinlaw.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  cavila@elkinskalt.com,lwageman@elkinskalt.com,
  docketing@elkinskalt.com,tparizad@elkinskalt.co
  m
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Ralph P Guenther**
  rguenther@guentherlawgroup.com
- **Robert T. Honeywell**
  robert.honeywell@klgates.com
- **Lance N Jurich**    ljurich@loeb.com,
  pmatsuda@loeb.com;ladocket@loeb.com;ljurich@
  ecf.courtdrive.com;fmckeown@loeb.com
- **Jane Kim**    jkim@kellerbenvenutti.com
- **Monica Y Kim**    myk@lnbyg.com,
  myk@ecf.inforuptcy.com
- **Jeffrey C Krause**    jkrause@gibsondunn.com,
  dtrujillo@gibsondunn.com;jstern@gibsondunn.co
  m
- **William J Levant**    wlevant@kaplaw.com,
  wlevant@gmail.com
- **Adam A Lewis**    alewis@mofo.com, adam-lewis-
  3473@ecf.pacerpro.com

- **Norman Norman Lueck**
  dennis.lueck@akerman.com,
  katie.solem@akerman.com
- **Jelena McWilliams (TR)**
  jmcwilliams@cravath.com, mao@cravath.com
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Fred Neufeld**    fneufeld@stradlinglaw.com,
  tingman@sycr.com
- **Valerie Bantner Peo**
  vbantnerpeo@buchalter.com
- **David M Poitras**    dpoitras@bg.law
- **Jeremy V Richards**    jrichards@kbkllp.com,
  bdassa@pszjlaw.com;imorris@pszjlaw.com
- **Holly Roark**    holly@roarklawboise.com,
  RoarkLawOffices@jubileebk.net
- **Paul M Rosenblatt**
  prosenblatt@kilpatricktownsend.com,
  moroberts@ktslaw.com
- **Thomas B Rupp**    trupp@kbkllp.com
- **Brandy A Sargent**    brandy.sargent@klgates.com,
  litigation.docketing@klgates.com;janna.leasy@klg
  ates.com
- **Callan C Searcy**    bk-
  csearcy@texasattorneygeneral.gov
- **Zev Shechtman**    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;hannah.richmon
  d@saul.com;LitigationDocketing@saul.com
- **Jason D Strabo**    jstrabo@mwe.com,
  jbishopjones@mwe.com
- **United States Trustee (SV)**
  ustpregion16.wh.ecf@usdoj.gov
- **Jeffrey C Wisler**    jwisler@connollygallagher.com,
  dperkins@connollygallagher.com
- **Claire K Wu**    claire.wu@pillsburylaw.com,
  renee.evans@pillsburylaw.com;docket@pillsburyl
  aw.com
- **Beth Ann R. Young**    bry@lnbyg.com,
  bry@lnbyb.com

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION

IN RE:                                          CASE NO: 24-10646

Synapse Financial Technologies, Inc.            **CERTIFICATE OF SERVICE**
                                                **DECLARATION OF MAILING**

                                                Chapter: 11

On 1/21/2025, a copy of the following documents, described below,

Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. 362

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 1/21/2025

Miles Wood
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
M. Douglas Flahaut
Echo Park Legal, APC
2210 Sunset Blvd. #301
Los Angeles, CA  90026

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

| | | |
|---|---|---|
| SYNAPSE FINANCIAL TECHNOLOGIES, INC.<br>21255 BURBANK BOULEVARD SUITE 120<br>WOODLAND HILLS, CA 91367-0000 | 1505 CORPORATION NATIONAL REGISTERED<br>AGENTS, INC.<br>ATTN: AMANDA GARCIA<br>330 N BRAND BLVD GLENDALE, CA 91203 | DARREN AZMAN<br>ONE VANDERBILT AVENUEŸ<br>NEW YORK, NY 10017-3852 |
| JERA L BRADSHAW<br>GREENBERG TRAURIG LLP<br>2200 ROSS AVE #5200Ÿ<br>DALLAS, TX 75201 | NEDA SHAPOURIAN<br>UNIT21, INC.<br>49 GEARY ST. STE 200Ÿ<br>SAN FRANCISCO, CA 94108 | JAKE JUMBECK<br>MCDERMOTT WILL & EMERY LLP<br>444 W. LAKE STREET, SUITE 4000Ÿ<br>CHICAGO, CA 60606-0029 |
| ROBERT J LABATE<br>400 SOUTH HOPE STREET, 8TH FLOORŸ<br>LOS ANGELES, CA 90071 | NEDA SHAPOURIAN<br>UNIT21, INC.<br>49 GEARY ST. STE 200Ÿ<br>SAN FRANCISCO, CA 94108 | KROLL ASSOCIATES, INC.<br>600 3RD AVE. FL 4<br>NEW YORK, NY 10016 |
| THOMSON REUTERS<br>PO BOX 6292 ? WEST PAYMENT CENTER<br>CAROL STREAM, IL 601-6292 | LINEAGE BANK<br>3359 ASPEN GROVE DRIVE SUITE 150<br>FRANKLIN, TN 37067 | AMAZON WEB SERVICES, INC.<br>PO BOX 84023<br>SEATTLE, WA 98124-8423 |
| JONES DAY<br>555 CALIFORNIA STREET 26TH FLOOR<br>SAN FRANCISCO, CA 94104-1500 | TRULIOO INFORMATION SERVICES, INC<br>400-114 EAST 4TH ST<br>VANCOUVER, CA 94104 | MASTERCARD INTERNATIONAL<br>2200 MASTERCARD BOULEVARD<br>O' FALLON, MO 63368-7263 |
| GOODWIN PROCTER LLP<br>THREE EMBARCADERO CENTER<br>SAN FRANCISCO, CA 94111 | LOWENSTEIN SANDLER LLP<br>ONE LOWENSTEIN DRIVE<br>ROSELAND, NJ 07068 | FIRST HORIZON BANK<br>4385 POPLAR AVENUE<br>ATTN: PROCTOR FORD<br>MEMPHIS, TN 38117 |
| BERGESON LLP<br>111 MARKET STREET, SUITE 600<br>SAN JOSE, CA 95113 | SLOANNE & COMPANY, LLC<br>285 FULTON STREET 69TH FLOOR<br>NEW YORK, NY 10007 | NEWFRONT INSURANCE, INC<br>55 2ND STREET, 18TH FLOOR<br>SAN FRANCISCO, CA 94105 |
| LINKEDIN CORPORATION<br>62228 COLLECTIONS CENTER DRIVE<br>CHICAGO, IL 60693-0622 | FISERV, INC<br>PO BOX 208457<br>DALLAS, TX 75320-8457 | PERFORMILINE, INC<br>58 SOUTH STREET 2ND FLOOR<br>MORRISTOWN, NJ 07960 |
| DIGITAL 365 MAIN, LLC<br>365 MAIN STREET SUITE 1500<br>SAN FRANCISCO, CA 94105 | TABAPAY, INC<br>605 ELLIS STREET 110<br>MOUNTAIN VIEW, CA 94043 | FLEMINGMARTIN, LLC<br>822 HARTZ WAY SUITE 215<br>DANVILLE, CA 94526 |

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

YOTTA TECHNOLOGIES INC
33 IRVING PL
NEW YORK, NY 10003