STEVEN T. GUBNER – Bar No. 156593
DAVID M. POITRAS – Bar No. 141309
BG LAW LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone:  (818) 827-9000
Facsimile:   (818) 827-9099
Email:       sgubner@bg.law
             dpoitras@bg.law

JEFFREY NAIMON – DC Bar No. 429409 (*Admitted Pro Hac Vice*)
ARAVIND SWAMINATHAN – WA Bar No. 33883 (*Admitted Pro Hac Vice*)
EDWARD SOMERS – IL Bar No. 6300920 (*Admitted Pro Hac Vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
2001 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 339-8400
Email:       jnaimon@orrick.com
             aswaminathan@orrick.com
             esomers@orrick.com

Attorneys for Evolve Bank & Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:24-bk-10646-MB |
| SYNAPSE FINANCIAL TECHNOLOGIES, INC., | Chapter 11 |
| Debtor. | **EVOLVE BANK & TRUST'S OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH RULE 2004 SUBPOENA ISSUED TO EVOLVE BANK & TRUST; DECLARATION OF EDWARD SOMERS IN SUPPORT THEREOF** |
| | **[Docket No. 594]** |
| | [No Hearing Set] |

**TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE, MOVING PARTY JUSTIN NEWBERN, AND INTERESTED PARTIES:**

Evolve Bank & Trust ("Evolve"), a creditor and party-in-interest in the above-referenced chapter 11 case, hereby files its opposition ("Opposition") to the *Notice of Motion and Motion to Compel Compliance with Rule 2004 Subpoena Issued to Evolve Bank and Trust* (the "Motion") [Docket No. 594] filed by Justin Newbern ("Movant") on July 15, 2025.

## I.    INTRODUCTION

Through his Motion, Movant seeks an order (without a hearing or an application for an order shortening time) to compel Evolve to appear for examination and produce documents well beyond what the Court ordered on June 24, 2025.  [Docket No. 562].  Movant served his Subpoena on Evolve on July 7, 2025, with a compliance date of eleven days later, on July 18, 2025.  Importantly, Movant filed his Motion *prior* to the date for compliance and without following this Court's Local Rules to meet and confer prior to seeking the relief sought by the Motion.  Thus, as set forth below, Movant's Motion is, among other infirmities, premature, procedurally improper, and seeks to enforce a facially improper subpoena.  Accordingly, the Motion should be denied or held in abeyance pending compliance with Local Bankruptcy Rules ("LBR") 2004-1, 7026-1, 9013-1 and/or 9075-1.

Counsel for Evolve wrote to Movant on July 15, 2025, providing its objections to his Subpoena (which Movant acknowledges in his Motion would be due on July 21, 2025, *after* the date provided for compliance), and offering to meet and confer pursuant LBRs 2004-1(g) and 7026-1(c) to discuss compliance with a substantially narrowed Subpoena that is consistent with this Court's prior order.  In order to do so, however, Evolve submits that the parties should be afforded a meaningful opportunity to confer and informally resolve their dispute without the need for the Court's assistance.

## II.    BACKGROUND

Synapse Financial Technologies, Inc., the chapter 11 debtor and debtor-in-possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), filed a voluntary petition under Chapter

11 of Title 11, 11 U.S.C. Sections 101 *et seq.* (the "Bankruptcy Code") on April 22, 2024 (the "Petition Date").

On May 24, 2024, an order was entered appointing a chapter 11 trustee and Jelena McWilliams was appointed by the U.S. Trustee as the chapter 11 trustee in this case (the "Trustee"). [Docket No. 196]. Ms. McWilliams has served as the Trustee in this case since that date.

On June 13, 2025, Movant filed a Motion for Rule 2004 examination [Docket No. 547] (the "2004 Exam Motion"). The Court entered an *Order Granting Motion of Justin Newbern for Order Authorizing 2004 Examination of Evolve Bank & Trust* on June 24, 2025 (the "2004 Order") [Docket No. 562]. The Court's Order limited the production of documents for inspection and copying to the requests identified at ECF pages 7:9 through 8:15 and the oral examination of person(s) most knowledgeable about the matters identified at ECF page 6:25 through 7:5 of the 2004 Exam Motion. On July 7, 2025, Movant served a *Subpoena for Rule 2004 Examination* (the "Subpoena") on Evolve's registered agent for service of process. A copy of the Subpoena is attached to this Opposition as Exhibit 1. As set forth below, the Subpoena includes numerous categories of documents that well exceed the scope of the 2004 Order, and consistent therewith, the proposed oral examination also exceeds the scope of the 2004 Order. Movant's Subpoena requests the production of a voluminous amount of substantially unauthorized documents and corresponding oral examination within eight business days after service. The time for compliance is therefore facially unreasonable. For the reasons set forth herein, the Subpoena can and should be quashed. If the parties are unable to resolve their differences through the meet and confer process, Evolve will bring a separate motion to quash.

Specifically, the 2004 Order ordered the following documents to be produced, all of which relate specifically to Movant's account:

- Internal records and communications relating to the October 12, 2023 transfer of $153,679.14, in which **Movant's account** was migrated from a demand deposit account to a cash management or brokerage structure, including any approvals, oversight processes, or third-party communications regarding that transaction;

- Internal records and communications relating to the February 21, 2024 transaction reflecting a ledgered credit of $137,516.69 to **Movant's account** that was not supported by custodial funds;

- All ACH, wire, or internal transfers involving **Movant's account** from August 19, 2021 (account opening) through May 31, 2024, including metadata, authorization records, and reconciliation status;

- Evolve's daily reconciliation reports, exception reports, custodial account records, or internal audits that mention or concern **Movant's account**, or explain any failure to reconcile funds purportedly transferred to Movant;

- All communications that reference **Movant's account**, including communications between Evolve and Synapse Financial Technologies; The Chapter 11 Trustee; Other financial institutions, to the extent they relate to transfers into or out of Movant's account; Juno (or its parent), including any discussions of Movant or account migration;

- Documents or communications reflecting Evolve's role in authorizing or overseeing the use of its brand, name, or logo in connection with **Movant's account** or the Juno platform;

- Any planning, approval, or implementation documentation related to the migration of **Movant's account** from a demand deposit structure to a brokerage or cash management model;

- All documents or communications reflecting any fees, revenue, or compensation Evolve received from Synapse in connection with its oversight, compliance monitoring, reconciliation, custodial responsibilities relating to **Movant's account**, including internal billing records, statements of work, invoices, or service-level expectations that reference consumer funds or reconciliation duties.

[Docket No. 562 (emphasis added)].

Subject to and without waiver of its objections to certain categories within the above, on July 15, 2025, Evolve informed Movant that it was willing to meet and confer regarding the scope of the Subpoena prior to the July 18, 2025 date for compliance.  In that correspondence, Evolve informed Movant that it would not be producing a witness on July 18, but would be willing to discuss a

narrowed scope for production and examination, consistent with the Court's 2004 Order, as well as a reasonable time for compliance therewith.[1]

That is because, notwithstanding the clear limitations outlined in the 2004 Order, the Subpoena includes significantly expanded categories of documents, ***the vast majority of which do not concern Movant's account***. For example, the documents sought in Request Nos. 5 through 15 of the Subpoena fall well beyond the bounds of the Court's 2004 Order and are inconsistent with the ordered relief, primarily because they do not relate specifically to Movant's account:

- Request No. 5 seeks broad information concerning "Synapse Reserve and Risk Mitigation Accounts," including information "related to any reserve, escrow, or risk mitigation account established or maintained by Synapse…at Evolve";

- Request No. 6 seeks information concerning "Alleged Direct Debits from Custodial Accounts (Fee Deductions)," including information related to public statements made by former Synapse CEO Sankaet Pathak and documents concerning "Evolve's internal justifications, accounting treatment, and risk oversight practices," including "transaction records related to any debits, withdrawals, or transfer of funds initiated by Evolve…from any omnibus, custodial, or FBO ("For Benefit Of") account titled in any variation of "FBO Synapse End User Funds – Program Funding Account";

- Request No. 7 seeks confidential, commercially sensitive, and proprietary information concerning "Inter-Party Agreements and Communications" with Synapse and CapitalJ, Inc. ("Juno") relating to "custodial services, deposit accounts, compliance responsibilities, and fund flows applicable to Synapse-supported platforms (including Juno";

- Request No. 8 broadly seeks information concerning "Disclosures, Marketing Materials, and Compliance Oversight," including "consumer-facing disclosures and

---

[1] Evolve disputes Movant's claim that the requirements of Local Bankruptcy Rule 2004-1(a) have been satisfied. Evolve was in the process of responding to Movant's Subpoena and correspondence regarding the same, well before the deadline to serve objections to the July 7, 2025 Subpoena, which Movant admits would have been July 21, 2025, so that the parties could meaningfully discuss the Subpoena's scope, before Movant filed his Motion.

marketing materials made by Synapse, Juno, and other platforms" (none of which are controlled by Evolve), as well as compensation arrangements between such entities, which again do not concern Movant's account;

- Request No. 9 seeks information concerning "Reconciliation and Forensic Engagements," including broad details regarding Evolve's engagement of its forensic expert, Ankura Consulting Group, LLC, to include work product and summaries, which is protected from disclosure by the attorney-client privilege, the work product doctrine, and applicable protections and/or privileges;

- Request No. 10 seeks information concerning "Mercury-Associated Reconciliation Discrepancies" related to a third party fintech platform, Mercury Technologies, Inc. ("Mercury") notwithstanding the fact that Movant does not purport to have an account with Mercury;

- Request No. 11 seeks information concerning "Technical Logs and Transaction-Level Diagnostics" relating to "Synapse accounts" generally and documentation to policies, procedures, or internal guidelines related to Evolve's reconciliation processes with internal or third-party records;

- Request No. 12 seeks information concerning the "Migration of Custodial Accounts to Brokerage Structures" of "any…customer funds—including Juno platform users," including "[i]nternal discussions assessing the legal, operational, and custodial implications of such migration;"

- Request No. 13 seeks information concerning "Periodic Account Statements" delivered to "Synapse platform users (including Juno)" and "[a]ny objections raised, approval granted, or changes proposed by Evolve regarding period statements or account interfaces reflecting Evolve's custodial role";

- Request No. 14 seeks information concerning "Account Identifiers Post-Migration" regarding "the preservation of user-facing account numbers, routing numbers, debit card numbers, or other account identifiers following the migration of funds to brokerage structures"; and

- Request No. 15 seeks information concerning "FDIC Part 363 Audit Reports" related to Evolve's annual independent audit and management reports from August 2021 through present.

The fundamental problem with each of the categories enumerated above is the vast majority are not specifically outlined in Movant's 2004 Motion. To be sure, Movant's 2004 Motion was limited to information concerning his own account—it did not concern Synapse-related reserve, escrow, or mitigation accounts, information generally concerning Synapse-related accounts or end users, Mercury, third-party agreements, migration-related details, FDIC audit reports, and the like.

## III.    RESPONSE

### I.    The Motion is Premature.

Movant's Subpoena provided for a production and examination date of July 18, 2025. Movant has since advised that he will not be proceeding with an examination on that date. The Motion that is the subject of this opposition was filed three days prior to the date for compliance, on July 15, 2025. As a result, the Motion is premature because, as described more fully below, the parties have not yet had a meaningful to meet and confer consistent with the requirements of the Local Rules and the purported dispute is not ripe for the Court's consideration.[2]  Indeed, the parties are currently scheduled to meet and confer during the originally proposed date and time for examination provided for in the Subpoena, because Movant has indicated that he is unavailable to meet and confer sooner.

### II.    The Motion is Procedurally Improper.

LBR 2004-1(g) directs that "the parties must seek to resolve any dispute arising under this rule in accordance with LBR 7026-1(c)."  The Motion clearly sets forth a dispute invoking the procedures set forth in LBR 7026-1(c).  Evolve is seeking to meet and confer with Movant in accordance with LBR 7026-1(c) and remains willing to work with Movant to otherwise comply with the requirements of LBR 7026-1(c) and any properly issued subpoena.  Based thereon, Evolve

---

[2] Movant's 2004 Motion sought production within fourteen (14) days of service of the Court's order allowing his Subpoena to proceed. The Subpoena and 2004 Order was not served on Evolve until July 7, 2025 and provided only eleven (11) days for compliance.

requests that the Motion be denied, or otherwise held in abeyance, pending the parties' compliance with LBR 7026-1(c).

In addition, the Motion does not comply with the notice, hearing and response requirements set forth in LBR 9013-1 (for a hearing on regular notice) or LBR 9075-1 (for a hearing on shortened notice). Based thereon, Evolve requests that the Motion be denied, or otherwise set for hearing after compliance with LBR 9013-1 or LBR 9075-1, and otherwise in accordance with such rules.

### III.    Movant Failed to Provide Evolve with Reasonable Time to Respond to the Subpoena.

Federal Rule of Civil Procedure 45 states that the Court must quash or modify a subpoena that, among other things, fails to allow a reasonable time to comply. The Rule does not specify a time limit for timely serving a subpoena and merely requires the subpoenaing party to provide "reasonable notice." Fed. R. Civ. P. 45(c)(3)(A)(i). Reasonableness depends on the circumstances of every case. "Although Rule 45(c)(3)(A)(i) does not specify what constitutes a reasonable length of time for compliance with a subpoena, reasonableness seems to be related to the extent of the materials requested and the other underlying circumstances of the particular case." Charles A. Wright & Arthur R. Miller, 9A Fed. Prac. & Proc. Civ.3d § 2463.1 (2009). "[I]t appears that as Wright and Miller have stated based on its survey of the case law, reasonable time for compliance under Rule 45 on a particular document subpoena 'seems related to the extent of the materials requested and the other underlying circumstances of the particular case' as opposed to a set time period, such as 14 days or 30 days. 9A Wright and Miller, Federal Practice and Procedure, Civil (3d ed.) section 2463.1. * * * [R]ule 45 does not specify an exact time for compliance with a document subpoena as the time must be reasonable, which is dependent on the circumstances of the particular case." *In re Trinh*, 2022 WL 1769135 *4 (Bankr. C.D. Ca. 2022).

In the present case, Movant caused the Subpoena to be served on Evolve's agent for service of process on July 7, 2025, eleven days prior to the July 18, 2025 date for compliance provided therein, which included the production of voluminous documents in response to fifteen distinct requests, each of which included multiple sub-categories (and all of which spanned eleven pages) and the examination of person(s) most knowledgeable on the same. At least two-thirds of the

Subpoena requests were not authorized by the 2004 Order, are facially overbroad and unduly burdensome, and seek confidential, commercially sensitive and/or proprietary information, including privileged and/or information otherwise protected from disclosure. Evolve submits that eleven days' notice of such vast and overbroad document requests is patently unreasonable. *See, e.g., Nguyen v. Louisiana State Board of Cosmetology*, 2016 WL 320152, at *2 (M.D. La. Jan. 26, 2016) (subpoena giving non-party a mere 8 days to respond and produce documents was unreasonable and a clear end-run attempt around the discovery limitation provided by Federal Rule of Civil Procedure 34, which requires 30 days' notice of request for production of documents); *Hall v. Louisiana,* 2014 WL 1652791, at *13 (M.D. La. April 23, 2014) (quashing subpoenas that gave non-parties between 12 and 9 days to comply because the "timeframes are clearly unreasonable, particularly when the 14 day period for serving objections under [Rule 45(d)(2)(B) ] is generally considered a reasonable time"); *Hernandez v. City of Corpus Christi*, 2011 WL 2194254, at *1 (S.D. Tex. June 6, 2011) (quashing subpoena duces tecum that gave 10 days for compliance).

Evolve submits that after a determination regarding what documents are to be produced, it should be given a reasonable amount of time to produce such documents, at least thirty (30) days, and any examination to be scheduled fourteen days after production.

**IV.    The Subpoena is Facially Invalid, Defective and Improper.**

As set forth in detail above, the Subpoena seeks to compel a catch-all production of documents, the majority of which do not concern Movant's account and fall outside the scope of the documents authorized by the 2004 Order. Accordingly, at a minimum, the Subpoena must be modified to comply with the 2004 Order and Evolve must be given a reasonable amount of time to comply.

Moreover, the Subpoena lists the following location for the examination:

"VIRTUAL-LINK TO BE PROVIDED (GOOGLE MEET) or physical location to be mutually agreed upon"

The parties have not presently agreed on a physical or virtual location. The practice of unilaterally attempting to set a deposition by way of a video-conference platform as the location of a deposition has been rejected by the Ninth Circuit. In *In re Kirkland,* 75 F.4th 1030 (9th Cir. 2023),

the Ninth Circuit denied a bankruptcy trustee's attempt to take long-distance testimony in a bankruptcy action by listing a video-conference platform as the location of the testimony. The court reasoned that permitting such a practice would render superfluous Rule 45(d)(3)(A)(ii), which requires that courts "quash or modify" subpoenas exceeding Rule 45(c)'s "geographical limits." *Kirkland,* 75 F.4th at 1044-45. Rather, the plain language of Rule 45(c) reflects that subpoenas are for commanding a witness to "attend a trial." *Id.* at 1045. A "trial," the Ninth Circuit reasoned, "is a specific event that occurs in a specific place: where the court is located." *Id.* This rule applies to deposition subpoenas as well as trial subpoenas. "Though the subpoena indicates the deposition will take place 'remote via Zoom or other video conferring program' – this refers to the method for taking the deposition, not a place. *See Fed. Ins. Co.,* 2022 WL 2820667, at *7 ('A ZOOM VIDEO CONFERENCE,' however, is not a place.') *Frobe v. UPMC St. Margaret,* 20-cv-957, 2021 WL 9628848, at *2 (W.D. Pa. July 13, 2021) ('Zoom Videoconferencing is not a Place; rather, it is a method of taking the deposition." *Chavez v. Allstate Northbrook Indemnity Company,* 2025 WL 885055, fn. 4 (S.D. Cal. January 31, 2025).

Accordingly, to serve a valid subpoena on Evolve, Movant was required to provide a location for the examination within 100 miles of Evolve's principal place of business, which is Memphis, Tennessee. Notwithstanding this facial deficiency, Evolve will undertake to work with Movant to permit any examination to proceed on reasonable notice at a mutually agreeable location, including by video conference if that is deemed the most efficient and economical.

**V.    In The Alternative, Evolve Seeks Relief to File a Motion for Protective Order.**

In the event the Court grants relief sought by the Motion, in whole or in part, Evolve respectfully seeks leave from the Court to file a motion for protective order pursuant to Federal Rule of Civil Procedure 26(c) and Federal Rule of Bankruptcy Procedure 7026, because it is anticipated that such relief will be necessary due to the facial deficiencies of Movant's Subpoena identified above. Evolve's position remains that it should not be subject to overbroad and unduly burdensome requests for information that do not concern Movant's account. The Court's June 24, 2025 Order specified narrow categories of documents sought to be produced by Movant and examination

concerning the same. [Docket No. 562]. Any subpoena exceeding the 2004 Order, as Movant's Subpoena does here, should not be permitted to proceed.

Notwithstanding a subpoena:

"A party can, however, move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information."

*Scalia v. Unforgettable Coatings, Inc.*, 2020 WL 8881373, at *2 (D. Nev. Nov. 24, 2020) (quoting *G.K. Las Vegas Ltd. Partnership*, 2007 WL 119148, at *4 (D. Nev. Apr. 30, 2012) and citing Fed. R. Civ. P. 26(c)(1); *see also In re REMEC, Inc. Sec. Litig.*, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) (party can move for a Rule 26 protective order "if it believes its own interests are jeopardized by discovery sought from a third party ... regarding subpoenas issued to non-parties which seek irrelevant information"); *Wheel Group Holdings, LLC v. Cub Elecparts, Inc.*, 2018 WL 6264980, at *3, fn. 3 (C.D. Cal. Sept. 4, 2018) (citing *In re REMEC* affirmatively).

## VI.    **CONCLUSION**

Based upon the foregoing, Evolve requests that Movant's Motion be denied, or held in abeyance pending compliance with the Local Bankruptcy Rules and the parties' efforts to meet and confer.  Evolve will attempt to continue to meet and confer with the Movant to provide the documents authorized by the 2004 Order within a reasonable period of time and to schedule an oral examination of the person(s) most knowledgeable concerning the matters identified in the 2004 Order.  Evolve prays for relief in accordance with the foregoing, and for such other and further relief that the court may deem just and proper.

DATED:  July 17, 2025                                Respectfully submitted,

BG LAW LLP

By:  /s/ David M. Poitras
          Steven T. Gubner
          David M. Poitras
ORRICK, HERRINGTON & SUTCLIFFE LLP
Jeffrey Naimon
Aravind Swaminathan
Edward Somers

Attorneys for Evolve Bank & Trust

10

## DECLARATION OF EDWARD SOMERS

I, Edward Somers, declare as follows:

I am an attorney at Orrick, Herrington & Sutcliffe LLP, counsel to Evolve Bank & Trust ("Evolve") in this bankruptcy case, and other matters.  I have been admitted to appear before this court in this bankruptcy case *pro hac vice.*

1.    I have personal knowledge of the matters stated herein.  If called as a witness, I could and would competently testify to the truth of the facts set forth herein.

2.    I submit this declaration in support of Evolve's *Opposition to Motion to Compel Compliance with Rule 2004 Subpoena Issued to Evolve Bank & Trust* (the "Opposition") [Docket No. 594] filed by Movant, Justin Newbern ("Movant") on July 15, 2025.  Capitalized terms used in this declaration and not specifically defined herein shall have the meaning ascribed to such terms in the Opposition.

3.    Movant filed a Motion for Rule 2004 examination on June 13, 2025 [Docket No. 547] (the "2004 Exam Motion").  The Court entered an *Order Granting Motion of Justin Newbern for Order Authorizing 2004 Examination of Evolve Bank & Trust* on June 24, 2025 (the "2004 Order") [Docket No. 562].

4.    On July 7, 2025, Movant served a Subpoena on Evolve's registered agent for service of process.  The Subpoena included a compliance date for production and examination of July 18, 2025, eleven days after service. Thereafter, Movant filed his Motion three days before the Subpoena's noticed date for compliance.

5.    As set forth in detail in the Opposition, the Subpoena includes numerous categories of documents that exceed the scope of the 2004 Order, and consistent therewith, the proposed oral examination also exceeds the scope of the 2004 Order.

6.    I wrote to Movant on July 15, 2025, providing Evolve's objections to the Subpoena, which otherwise would have been due on July 21, 2025 (or fourteen days after service), which is after the Subpoena's stated compliance date of July 18, 2025.  In my July 15 correspondence, I offered to meet and confer with Movant pursuant LBRs 2004-1(g) and 7026-1(c) to discuss compliance with a substantially narrowed Subpoena that is consistent with this Court's prior order.

7. Through counsel, Evolve is seeking to meet and confer with Movant in accordance with LBR 7026-1(c), and remains willing to work with Movant to otherwise comply with the requirements of LBR 7026-1(c) and any properly issued subpoena.

8. The parties are currently scheduled to meet and confer during the originally proposed date and time for examination provided for in the Subpoena, July 18, 2025, because Movant indicated that he is unavailable to meet and confer sooner.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is being executed this 17th day of July, 2025 in Chicago, Illinois.


EDWARD SOMERS

# EXHIBIT 1

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

CENTRAL _____ District of    CALIFORNIA _____

In re   SYNAPSE FINANCIAL TECHNOLOGIES, INC.         Case No.   1:24-BK-10646-MB ____
                            Debtor

                                                    Chapter  11 _____


## SUBPOENA FOR RULE 2004 EXAMINATION

To: _____ EVOLVE BANK & TRUST _____

*(Name of person to whom the subpoena is directed)*


☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| **VIRTUAL- LINK TO BE PROVIDED (GOOGLE MEET) or physical location to be mutually agreed upon** | **JULY 18TH, 2025 8:00AM EST- 12:00PM EST** |

The examination will be recorded by this method:    **AUDIO** _____


☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

  **SEE 'EXHIBIT A'**

---

     The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  7/1/2025

            CLERK OF COURT

            *[signature]*                        OR        _____
            *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

---

The name, address, email address, and telephone number of the attorney representing *(name of party)*
**SELF - PRO SE** _____ ,  who issues or requests this subpoena, are:

  **JUSTIN NEWBERN, PRO SE, 360.870.9488, JAY@JAYNEWBERN.COM**
  **3701 WESLEY DR NW, OLYMPIA, WA 98502**
            **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

**EXHIBIT A**

**REQUEST FOR PRODUCTION OF DOCUMENTS AND ORAL EXAMINATION**

**PURSUANT TO RULE 2004 EXAMINATION**

**To:** Evolve Bank & Trust

**From:** Justin Newbern

**Re:** Rule 2004 Document Subpoena Relating to Custodial Account Activity and Related Matters

Pursuant to the United States Bankruptcy Court's Order entered on June 24, 2025 (Dkt. 562), authorizing a Rule 2004 examination of Evolve Bank & Trust, the following requests are issued. In addition to producing the document described below, Evolve is required to designate and produce one or more person(s) most knowledgeable to testify regarding the subjects and matters identified herein, including but not limited to custodial account structures, reconciliation activities, account migration, oversight responsibilities, and any transactions or processes involving Justin Newbern.

The deposition is scheduled for **July 18, 2025, at 8:00 AM Eastern Time**, to be conducted remotely or at a mutually agreeable location, unless otherwise agreed upon by the parties. This date is proposed in good faith based on the discovery window authorized by the Court. Evolve Bank & Trust is expected to either confirm its availability for the noticed date and time or promptly propose an alternative, in keeping with its obligation to cooperate with the examination as ordered. Failure to engage in timely scheduling discussions may result in the matter being brought back to the Court for further relief.

1

**15**

**Definitions and Scope**

- Evolve Bank & Trust / Evolve:

    include agents, officers, contractors, and related third parties.

- Synapse / Synapse Financial Technologies:

    Shall include Synapse Financial Technologies, Inc., its affiliates, agents, and any

    contractors acting on its behalf, including but not limited to Synapse Brokerage

    LLC.

- Juno:

    Shall include CapitalJ Inc., doing business as Juno, as well as any affiliated

    entities, officers, employees, or agents acting on its behalf.

- Custodial Account(s):

    Shall include any account—individual, omnibus, FBO ("for benefit of") structure,

    or sub-ledger—in which funds associated with or attributable to Justin Newbern

    were held, pooled, or otherwise administered.

- Disclosures:

    Shall mean any written, verbal, or digital representations made to end users or

    regulators regarding account structure, FDIC insurance, custodianship, fund

    access, or terms of service.

- Marketing Materials:

    Shall include consumer-facing advertisements, emails, pitch decks, promotional

    content, social media, and onboarding communications.

- Communications:

    Shall mean emails, instant messages (e.g., Slack), memoranda, meeting notes,

    documents shared via collaboration platforms (e.g., Google Drive, Dropbox), and

    internal or external correspondence in any form.

- Reconciliation:

**16**

1  Shall include any process of verifying, matching, or tracing customer account

2  balances, internal ledgers, or platform funds; including error investigations,

3  adjustment reports, and balances reviewed for audit or operational purposes.

4  • Ankura:

5  Shall refer to Ankura Consulting Group, LLC and any employees, subcontractors,

6  or consultants engaged by Evolve for reconciliation, forensic analysis, or internal

7  investigation related to Synapse-supported accounts.

8

9  **I. Account-Specific Records**

10  1.  a. All records, internal or external, reflecting the opening, maintenance, and

11  activity of any deposit account, custodial account, or brokerage account

12  associated with or held on behalf of Justin Newbern, beginning at account

13  opening in August 2021 through the present, including but not limited to:

14  • Account agreements, terms and conditions, and onboarding materials;

15  • Periodic statements, transaction logs, and account ledgers;

16  • All records of internal reconciliation related to the subject account(s).

17  • All internal customer service records, case logs, call notes, call recordings,

18  CRM entries, or internal communications documenting or referring to any

19  contact made by Justin Newbern to Evolve Bank & Trust staff, support channels,

20  or compliance representatives, from August 2021 to present.

21

22  This request includes any internal identifier, alias, reference number, or ledger

23  designation used by Evolve or Synapse to represent or segregate Justin Newbern's

24  funds, regardless of whether the account is formally titled in his name.

25

26

27

28

**17**

**II. Regulation E Dispute and Internal Investigation Materials**

2.    a. All records, internal notes, communications, and investigatory materials generated or reviewed by Evolve Bank & Trust in connection with Regulation E Dispute Ticket #1136382, including but not limited to:

- The consumer's initial dispute submission and any supporting documents;
- Internal investigation notes, assessments, and findings;
- Communications with Synapse, Juno, or any third party relating to the disputed transaction or the authorization of the October 2023 transfer;
- Any documents purporting to show customer authorization for the transaction in question;
- System logs, access records, or audit trails reviewed during the investigation;
- Non-privileged communications with legal or compliance staff concerning the handling, classification, or resolution of this dispute;
- Any documents or communications reflecting the final determination issued to the consumer.

For clarity, this request includes any documents Evolve relied on to determine that the transaction was authorized, as well as any documentation that supports or disputes that conclusion.

**III. Internal Communications Concerning Justin Newbern**

3.    a. All internal communications, including emails, memoranda, or meeting notes, between or among officers, executives, or employees of Evolve Bank & Trust concerning:

- Justin Newbern;
- His custodial or deposit accounts;
- His disputes, inquiries, or requests;
- The Rule 2004 motion or any legal filings by or involving Justin Newbern;

4

**18**

- Communications concerning internal handling, response coordination, or administrative consideration of Mr. Newbern's correspondence, complaints, or other submitted materials.

**IV. Custodial and Omnibus Account Documentation**

**4.**    a. All documents or communications reflecting:

- The flow of funds into, within, or out of any omnibus or custodial account in which Justin Newbern's funds were held;
- The structure, reconciliation process, and operational oversight of such accounts;
- The identities of any sub-accounts or ledger identifiers associated with Justin Newbern.

**V. Synapse Reserve and Risk Mitigation Accounts**

**5.**    a. All documents and communications relating to any reserve, escrow, or risk mitigation account established or maintained by Synapse Financial Technologies, Inc. at Evolve Bank & Trust, including but not limited to:

- Documents sufficient to identify the name, account number (including accounts ending in 0018), and terms of any such account;
- Statements or transaction records from August 2021 to the present;
- Policies or agreements governing the establishment, maintenance, or authorized use of the account(s);
- Communications between Evolve, Synapse, and/or any third party regarding:
- The purpose, balance, or sufficiency of the reserve;
- Use or access to such funds (including any withdrawals, offsets, or reallocations by Evolve);
- Disputes or anticipated disputes concerning the reserve;

**19**

1  • Internal analyses or reports discussing the reserve's role in risk mitigation or
2  reconciliation related to Synapse-supported end-user accounts.

3

4  This request includes communications authored by or addressed to (but not
5  limited to) Scot Lenoir, Jeff Theiler, Hank Word, the bank's legal department, and
6  any personnel in compliance, risk, operations, or executive leadership. This
7  request is intended to determine whether funds held in any reserve, escrow, or
8  offset accounts related to Synapse-supported platforms—including any "Program
9  Funding Accounts" or other aggregated fund vehicles—were funded by or served
10  to offset consumer balances held on behalf of end users such as Mr. Newbern.

11

12  **VI. Alleged Direct Debits from Custodial Accounts (Fee Deductions)**

13  **6.**  Public statements by Sankaet Pathak, former CEO of Synapse Financial
14  Technologies, have alleged that Evolve Bank & Trust directly debited substantial
15  fees—amounting to millions of dollars—from custodial accounts titled "FBO
16  Synapse End Users Funds." These accounts, including but not limited to one
17  ending in 0018, were purportedly used to hold aggregated customer funds. One
18  such debit was reportedly executed on or around May 8, 2024, in the amount of
19  $5,912,154.
20  This request seeks documents sufficient to assess Evolve's internal justifications,
21  accounting treatment, and risk oversight practices related to any such debits from
22  pooled custodial accounts or program funding accounts. It includes:
23  a. All documents, communications, and transaction records related to any debits,
24  withdrawals, or transfers of funds initiated by Evolve Bank & Trust from any
25  omnibus, custodial, or FBO ("For Benefit Of") account titled in any variation of
26  "FBO Synapse End User Funds – Program Funding Account" or similar,
27  including but not limited to the account ending in "0018."
28  This includes but is not limited to:

6

**20**

- Authorizations, internal approvals, or rationale for such transactions;
- Communications between Evolve, Synapse, or any platform (including Juno) discussing the purpose, legitimacy, or basis of such transfers;
- Accounting or ledger entries showing the disposition of the debited funds;
- Any reconciliation or clawback efforts involving these funds;
- Records of any fees, service charges, penalties, or amounts deducted from such FBO accounts from August 2021 through present.

## VII. Inter-Party Agreements and Communications

7. a. All agreements and amendments between Evolve and Synapse Financial Technologies, Inc. relating to custodial services, deposit accounts, compliance responsibilities, and fund flows applicable to Synapse-supported platforms (including Juno).

b. All communications between Evolve and Synapse or Juno relating to:

- Platform disclosures or user-facing representations concerning account structures, FDIC insurance, or fund custody;
- Disputed transactions or account errors involving Justin Newbern;
- Requests for, or approvals of, transaction reversals, adjustments, or reconciliations.

## VIII. Disclosures, Marketing Materials, and Compliance Oversight

8. a. All communications from August 2021 to present — including emails, shared drive access logs, and approval records — reflecting Evolve's review, approval, or commentary on consumer-facing disclosures, marketing materials, or representations made by Synapse, Juno, or other platforms concerning:

- Custodial arrangements;
- Use of Evolve's name or logo;
- Representations of FDIC insurance coverage;

7

**21**

b. All communications in which Evolve Bank & Trust provided feedback on, consulted on, or otherwise influenced any customer-facing document or communication prepared by Synapse, Juno, or any related platform—regardless of whether it referenced Evolve's name, logo, or FDIC status.

c. All documents sufficient to show any payments, transfers, or compensation of any kind made to Evolve Bank & Trust by Synapse, Juno, or any affiliated platform, whether direct or indirect, including:

- Payments specifically designated, described, or understood internally as relating to custodial services;
- Payments associated with or attributed to oversight responsibilities, compliance monitoring, audit support, risk assessments, regulatory review, or any related function;
- Fees, charges, or compensation for review, approval, or clearance of platform disclosures, marketing materials, or public-facing representations;
- Compensation or consideration for the use of Evolve's name, charter, or FDIC-insured status, whether explicitly invoiced or bundled with other service categories.

**IX. Reconciliation and Forensic Engagements**

9. a. All correspondence, contracts, and non-privileged deliverables associated with Ankura Consulting Group's engagement by Evolve Bank & Trust for reconciliation or forensic accounting related to Synapse-supported accounts, including:

- Work product or summaries provided to Evolve;
- Reports or documentation related to the reconciliation of customer balances, including balances attributed to Justin Newbern;
- Internal or third-party communications referencing Ankura's reconciliation findings.

- Any final reconciliation reports or determinations made by Ankura or Evolve regarding Justin Newbern's balances, allocations, or account status

b. Documents sufficient to show the dates and scope of Ankura's engagement, including:

- Statements of work;
- Task orders or amendments;
- Any reports summarizing findings on missing or misallocated funds.
- Reports or communications purporting to rebut or disprove the accuracy of transaction data as reported within Synapse's systems.

---

## X. Mercury-Associated Reconciliation Discrepancies

**10.**   a. All communications and documents relating to custodial fund flows and reconciliation activities involving Mercury accounts supported by Synapse:

- All documents, communications, and reconciliation records concerning fund transfers, account migrations, or ledger discrepancies in any custodial or FBO account(s) associated with Mercury platform users, including those managed or processed via Synapse Financial Technologies.
- Any reports, audits, or internal reviews prepared by or provided to Evolve Bank & Trust concerning the reconciliation status or accuracy of Mercury-related funds, including but not limited to any migration or allocation issues occurring in or around September through December 2023.
- Communications with Synapse, Mercury, or relevant third parties concerning any differences between ledger balances and actual funds held in custodial or omnibus accounts serving Mercury users.
- Any documentation related to Evolve's assessment of claims made publicly (e.g., blog posts, news reports, or regulatory inquiries) regarding reconciliation concerns involving Mercury platform users.

**23**

1   This request does not assume the accuracy of any third-party statements, but seeks

2   documentation sufficient to assess Evolve's own understanding, internal analysis,

3   and response to fund reconciliation issues involving Mercury-related accounts.

4   Given the interconnected nature of Synapse's pooled custodial structures and the

5   shared reconciliation systems across platforms, understanding whether systemic

6   reconciliation errors—including those potentially involving Mercury—impacted

7   the accuracy or integrity of account balances across the ecosystem, including my

8   own, is directly relevant to the examination authorized by the Court. Notably, a

9   shortfall between custodial records and available funds estimated at $65 to $95

10  million remains uncontested in the case record, further underscoring the need to

11  evaluate the scope and origin of reconciliation discrepancies across platforms,

12  especially where they may have distorted end-user balances or contributed to the

13  now-documented shortfall.

14

15  **XI. Technical Logs and Transaction-Level Diagnostics**

16  **11.**   a. All technical logs, including but not limited to access logs, server activity

17  reports, transaction processing records, reconciliation batch logs, error reports,

18  internal status updates, or outage alerts from any system used by Evolve or its

19  agents for reconciliation or transaction processing related to Synapse accounts.

20  This request specifically encompasses activity surrounding the following disputed

21  transactions, which were first brought to Movant's attention via account

22  statements shared by Scott Lenoir in or around August 2024:

23  • February 21, 2024 — Transaction ID 65d7bc2aa6ed060b6a52ab91

24  "Transfer from Brokerage": $137,516.69

25  Approx. timestamp of database entry: 2024-02-22 21:27:06 UTC

26  • April 30, 2024 — Transaction ID 6632b5db52c033d777c3a511

27  "Transfer from Brokerage": $22,004.48

28  Approx. timestamp of database entry: 2024-05-01 21:36:27 UTC

**24**

1      Note: The previous timestamps are approximated based on the hexadecimal

2      structure of the listed MongoDB ObjectIDs, which embed a Unix epoch

3      timestamp in their first four bytes. These values correspond to the moment each

4      transaction was recorded in Synapse's ledger database. Movant expects the

5      production of any error reports, downtime logs, access records, or reconciliation

6      anomalies occurring at or around the listed transaction dates as well as the

7      inferred database entry times, to fully account for any system events that may

8      have impacted performance, reconciliation, or transaction integrity.

9      b. Please include any documentation, monitoring reports, or internal

10     communications reflecting:

11     •    System uptime or outage status;

12     •    Processing delays;

13     •    Reconciliation anomalies;

14     •    Flags or escalations involving these transactions.

15     c. All documentation related to policies, procedures, or internal guidelines in

16     effect at any time from August 2021 to present governing how Evolve identifies,

17     flags, escalates, or otherwise handles ledger entries or transaction records that fail

18     to reconcile with internal or third-party records

19

20     **XII. Migration of Custodial Accounts to Brokerage Structures**

21   **12.**    All documents, communications, or internal records reflecting Evolve Bank &

22      Trust's awareness, review, or approval of any migration of customer funds—

23      including Juno platform users—from Evolve-held custodial deposit accounts to

24      brokerage sweep structures. This includes, but is not limited to:

25      •    Communications or notices received from Synapse or its partners regarding

26      changes to account structure, terms, or disclosures;

27      •    Internal discussions assessing the legal, operational, or custodial implications

28      of such migration;

**25**

- Communications or analyses reflecting whether Evolve considered the method of user notice (e.g., browsewrap, amended terms of service) to be adequate or problematic;
- Any documentation reflecting Evolve's position on whether user consent was obtained or required for this migration.

## XIII. Periodic Account Statements

13.  All documents, communications, or internal records reflecting Evolve Bank & Trust's role in the review, approval, or awareness of periodic account statements or balances delivered to Synapse platform users (including Juno), including:

- Communications discussing the content, format, or branding of statements (e.g., continued use of Evolve's name/logo or FDIC-insured indicators post-migration);
- Any objections raised, approvals granted, or changes proposed by Evolve regarding periodic statements or account interfaces reflecting Evolve's custodial role.

## XIV. Account Identifiers Post-Migration

14.  All documents and communications reflecting Evolve Bank & Trust's knowledge of, participation in, or decisions regarding the preservation of user-facing account numbers, routing numbers, debit card numbers, or other account identifiers following the migration of funds to brokerage structures, including:

- Any discussion of operational, strategic, legal, or reputational reasons for maintaining these identifiers;
- Communications between Evolve and Synapse, Juno, or any platform partner regarding the display or use of Evolve-issued account numbers and branding post-migration;

12

**26**

- Internal risk assessments, compliance reviews, or customer experience analyses related to the decision to retain or display such account information.

## XV. FDIC Part 363 Audit Reports

15.    a. All Annual Independent Auditors' Reports and Management Reports submitted by Evolve Bank & Trust under 12 CFR Part 363 from August 2021 through the present, including for each year:

- The annual audited financial statements;
- The management assessment of internal controls over financial reporting;
- The independent public accountant's attestation;
- Any accompanying communication to regulators or the FDIC;
- All documents or correspondence reflecting the Bank's determination not to provide these materials by mail or electronically in response to previous requests.

This request follows prior correspondence with Evolve in which in-person inspection was the only inspection method offered, imposing an undue burden inconsistent with 12 CFR Part 363's intent and guidance from FDIC staff.

If no such report exists for any requested year, please affirmatively state so and identify the reason (e.g., institution below reporting threshold for that year).

## Privilege and Withholding Instructions

To the extent that any document responsive to these requests is withheld or redacted on the basis of attorney–client privilege, the work product doctrine, or any other claim of privilege, Evolve Bank & Trust shall provide a privilege log identifying:

(i) the type of document,

(ii) its date,

13

**27**

1 (iii) a general description of its subject matter,

2 (iv) the identity of all authors and recipients, and

3 (v) the specific privilege asserted.

4 These requests are not intended to seek privileged legal advice. They are limited

5 to operational, contractual, compliance, and reconciliation-related documents

6 pertaining to custodial accounts and Synapse-supported platforms.

7

8 **Production Format and Accessibility**

9 Production shall be made in native digital format where applicable and practical.

10 If any responsive documents are produced in a proprietary or non-standard file

11 format that requires specialized software or licensing to be accessed or

12 understood, Evolve Bank & Trust must either:

13 (a) provide the necessary viewer or access credentials; or

14 (b) convert the document to a reasonably accessible format (e.g., PDF or CSV),

15 along with a description of any data fields or functionality not preserved in the

16 conversion.

17

18 Production should be made in native digital format where available and include

19 associated metadata, including but not limited to email headers, file creation and

20 modification dates, and authorship or custodial identifiers. Documents should be

21 transmitted to Justin Newbern at an address or secure location to be mutually

22 agreed upon.

23

24 If complete compliance by the deadline is not feasible, please propose a

25 reasonable format and schedule for rolling production. However, the

26 unavailability, dispute, or privilege review of certain items should not delay

27 production of other responsive materials. Fulfillment of all non-disputed, readily

**28**

1    accessible, or partially available materials is expected to proceed concurrently.

2    Failure to comply may result in further relief being sought from the Court.

3    Movant remains open to reasonable meet-and-confer communications regarding

4    scope, formatting, or production logistics, provided they are made in good faith

5    and without delay.

6

7    _____

8    Justin Newbern

9    Dated: July 2, 2025

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled: **EVOLVE BANK & TRUST'S OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH RULE 2004 SUBPOENA ISSUED TO EVOLVE BANK & TRUST; DECLARATION OF EDWARD SOMERS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **July 17, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **_____, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**\*\*PURSUANT TO PROCEDURES, JUDGE MARTIN R. BARASH WAIVES SERVICE OF JUDGE'S COPY.**

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 17, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**BY EMAIL**

Justin Newbern – jay@jaynewbern.com

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 17, 2025 | Mela Galvan | /s/ Mela Galvan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                         **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Ron Bender**    rb@lnbyg.com
- **David A Berkley**    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
- **J Scott Bovitz**    bovitz@bovitz-spitzer.com
- **Rudy J Cerone**    rcerone@mcglinchey.com, lgraff@mcglinchey.com;jingargiola@mcglinchey.com
- **Sara Chenetz**    schenetz@perkinscoie.com,
  docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
- **Russell Clementson**    russell.clementson@usdoj.gov
- **Andrew Michael Cummings**    andrew.cummings@hklaw.com,
  philip.dobbs@hklaw.com;hapi@hklaw.com;sandy.olalde@hklaw.com
- **Michael G. Farag**    mfarag@gibsondunn.com
- **M Douglas Flahaut**    df@echoparklegal.com
- **Jacqueline Foroutan**    jacqueline.foroutan@akerman.com, akermanlas@akerman.com
- **Maria L Garcia**    Maria.L.Garcia@lewisbrisbois.com
- **Paul R. Glassman**    pglassman@stradlinglaw.com
- **Nicholas Christian Glenos**    cglenos@bradley.com
- **Michael H Goldstein**    mgoldstein@goodwinprocter.com, ASchaefer@goodwinlaw.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com,
  lwageman@elkinskalt.com,docketing@elkinskalt.com,lmasse@elkinskalt.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **Ralph P Guenther**    rguenther@guentherlawgroup.com
- **Robert T. Honeywell**    robert.honeywell@klgates.com
- **Lance N Jurich**    ljurich@loeb.com,
  pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
- **Jane Kim**    jkim@kellerbenvenutti.com
- **Monica Y Kim**    myk@lnbyg.com, myk@ecf.inforuptcy.com
- **Jeffrey C Krause**    jkrause@gibsondunn.com, dtrujillo@gibsondunn.com;jstern@gibsondunn.com
- **Sabita Krishnan**    sabita.krishnan@cfpb.gov
- **Joseph Lake**    joseph.lake@cfpb.gov
- **William J Levant**    wlevant@kaplaw.com, wlevant@gmail.com
- **Adam A Lewis**    alewis@mofo.com, adam-lewis-3473@ecf.pacerpro.com
- **Norman Norman Lueck**    dennis.lueck@akerman.com, katie.solem@akerman.com
- **Jelena McWilliams (TR)**    jmcwilliams@cravath.com, mao@cravath.com
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **Fred Neufeld**    fneufeld@stradlinglaw.com, tingman@sycr.com
- **Berj Parseghian**    bparseghian@lippes.com
- **Valerie Bantner Peo**    vbantnerpeo@buchalter.com
- **David M Poitras**    dpoitras@bg.law
- **Jeremy V Richards**    jrichards@kbkllp.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- **Holly Roark**    holly@roarklawboise.com, RoarkLawOffices@jubileebk.net
- **Paul M Rosenblatt**    prosenblatt@kilpatricktownsend.com, moroberts@ktslaw.com
- **Thomas B Rupp**    trupp@kbkllp.com
- **Brandy A Sargent**    brandy.sargent@klgates.com, litigation.docketing@klgates.com;janna.leasy@klgates.com
- **Callan C Searcy**    bk-csearcy@texasattorneygeneral.gov
- **Zev Shechtman**    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- **Jason D Strabo**    jstrabo@mwe.com, jbishopjones@mwe.com;dnorthrop@mwe.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Jeffrey C Wisler**    jwisler@connollygallagher.com, dperkins@connollygallagher.com
- **Claire K Wu**    claire.wu@pillsburylaw.com, renee.evans@pillsburylaw.com;docket@pillsburylaw.com
- **Beth Ann R. Young**    bry@lnbyg.com, bry@lnbyb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.